UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOES 1-2, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 1:25-CV-00234 |
| OFFICE OF PERSONNEL MANAGEMENT, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Plaintiffs, two unidentified employees of agencies in the United States Executive Branch, have moved for a temporary restraining order to prevent the Office of Personnel Management ("OPM") from operating any computer systems connected to the HR@opm.gov address or requiring any current employees of the Executive Branch to send email messages to any variations of that address. *See* Plaintiffs' Memorandum of Points and Authorities in Support of Their Emergency Motion for a Temporary Restraining Order at 19, ECF No. 4, at 21 (Plaintiffs' TRO Motion). They seek this extraordinary relief based on allegations that OPM's email system lacks a Privacy Impact Assessment ("PIA") as set forth in the E-Government Act of 2002. Many of Plaintiffs' factual allegations—based on a since-deleted Reddit post, *see* Plaintiffs' TRO Motion at 6—are unsubstantiated and, if this case proceeds, will be rebutted in due course. But the case should not proceed. Plaintiffs' allegations fail as a matter of law, the TRO should be denied, and the case dismissed.

As an initial matter, this Court lacks jurisdiction. For one, this case is moot because—even though the E-Government Act does not require a PIA under these circumstances—OPM has now completed a PIA of the systems used in association with the hr@opm.gov address. Further, Plaintiffs have not established a cognizable injury, as required to demonstrate Article III standing. But even excusing these threshold defects, Plaintiffs' suit fails. Their position rests on an incomplete reading of the Act and conflicts with two-plus decades of Executive Branch practice—both of which make clear that a PIA is not required when a system applies only within the government and does not include members of the public. Moreover, Plaintiffs' highly speculative theory of injury cannot satisfy this Circuit's demanding standard for irreparable harm. Finally, the balance of equities also tips sharply in favor of not disrupting email communication with the entire federal workforce. Plaintiffs have not identified a single injunction ever granted against a government system based on a purported failure to conduct a PIA. The motion for emergency relief should be denied.

1

**LEGAL AND PROCEDURAL BACKGROUND**

I.     **Legal Background**

    A. **The E-Government Act of 2002**

Section 208 of the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. at 2921-22, codified at 44 U.S.C. § 3501 note, requires that an agency take specified steps before "(i) developing or procuring information technology that collects, maintains, or disseminates information that is in an identifiable form; or (ii) initiating a new collection of information that" "will be collected, maintained, or disseminated using information technology" and "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posted to, or identical reporting requirements imposed on, 10 or more persons, *other than agencies, instrumentalities, or employees of the Federal Government*." *Id.* § 208(b)(1)(A)(i)-(ii) (emphasis added).

Before either "developing or procuring information technology" or "initiating a new collection of information," an agency must: (1) conduct a "privacy impact assessment" ("PIA"); (2) "ensure the review of the privacy impact assessment by the Chief Information Officer, or equivalent official, as determined by the head of the agency"; and, "if practicable, after completion of the review . . . , make the privacy impact assessment publicly available through the website of the agency, publication in the Federal Register, or other means." *Id.* § 208(b)(1)(B). The privacy impact assessment is to address matters including "what information is to be collected," "why the information is being collected," "the intended use of the agency of the information," "with whom the information will be shared," "what notice or opportunities for consent would be provided to individuals regarding what information is collected and how that information is shared," "how the information will be secured," and "whether a system of records is being created under" the Privacy Act. *Id.* § 208(b)(2)(B)(ii).

The E-Government Act is designed, among other things, to "improv[e] the ability of the Government to achieve agency missions and program performance goals," "promot[e] the use of

Internet and emerging technologies within and across Government agencies," "promot[e] better informed decisionmaking by policy makers," and "utilize[e], where appropriate, best practices from public and private sector organizations." *Id.* § 2(b)(4), (5), (7), (10). The purpose of section 208 in particular is to "ensure sufficient protections for the privacy of personal information as agencies implement *citizen-centered* electronic Government." *Id.* § 208(a) (emphasis added). The Act works in conjunction with other statutes, most notably the Privacy Act of 1974, *see* 5 U.S.C. § 552a, to protect information stored in government systems.

Notably, the requirement that an agency complete a PIA when "initiating a new collection of information" does not apply when an agency is seeking to collect information about "agencies, instrumentalities, or employees of the Federal Government." *See id.* § 208(b)(1)(A)(ii); *see also* U.S. Office of Personnel Management, Privacy Impact Assessment (PIA) Guide, at 2 (Apr. 2010); U.S. Office of Management and Budget, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, at § II(B)(1)(b) (Sept. 26, 2003), https://georgewbush-whitehouse.archives.gov/omb/memoranda/m03-22.html#a (specifying that a PIA is necessary only when "developing or procuring IT systems or projects that collect, maintain or disseminate information in identifiable form *from or about members of the public*" or initiating a new collection of information from 10 or more persons "*excluding agencies, instrumentalities or employees of the federal government*") (emphasis added)).

### B. Standards for Emergency Relief

A temporary restraining order, like a preliminary injunction, is extraordinary relief granted only to preserve the status quo. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239, 2025 WL 314433, at *2 (D.D.C. Jan. 28, 2025). It is "an extraordinary and drastic remedy" and "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). A movant may be awarded such an extraordinary remedy only "upon a clear showing" that it is "entitled to such

3

relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To establish entitlement, a movant must demonstrate that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 20. The last two factors merge when the government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 789 (2020); *accord Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 20 (D.D.C. 2018). "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). Further, in the context of a mandatory injunction, like the one sought here, Plaintiffs "must meet a higher standard than in the ordinary case by showing clearly that [the movant] is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) ("*EPIC III*") (quoting *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997).

## II.   Procedural History

Plaintiffs filed this suit on January 27, 2025, raising claims under the E-Government Act of 2002 and the Administrative Procedure Act ("APA"). Plaintiffs electronically served the complaint and moved for a temporary restraining order ("TRO") on February 4, 2025. The same day, the Chief Judge granted plaintiffs motion to proceed using pseudonyms, and the case was assigned to this Court.

## ARGUMENT

## I.   PLAINITFFS CANNOT ESTABLISH IRREPARABLE HARM

In this Circuit, there is a "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Any alleged irreparable harm "must be both certain and great; it must be actual and not theoretical." *Id.* It also must be of such "*imminence* that there is a clear and present need for equitable relief." *Id.* (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.

4

Cir. 1985) (per curiam)) (emphasis in original).  Plaintiffs' TRO Motion can be denied solely on the basis that they have failed to demonstrate irreparable injury.  *See id.* ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." (citing *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1210–11 (D.C. Cir. 1989))).

Here, Plaintiffs allege that "the mere collection and aggregation" of personal data would cause irreparable harm to them, *see* Pls.' TRO Motion at 17, due to the asserted threat of a future security breach.  But such a speculative future injury cannot establish Article III standing.  Indeed, plaintiffs have not identified a single temporary restraining order or injunction ever granted in a PIA case, and the government is not aware of one.  In any event, although the E-Government Act does not require a PIA under these circumstances, OPM in fact prepared one.  *See* attachment A.

Lastly, Plaintiffs' delay also counsels against emergency relief.  Although OPM announced the new email system on January 23, Compl. ¶ 15, Plaintiffs did not seek a TRO until nearly two weeks later, on February 4.  That delay seriously undermines their claim of irreparable harm.

### A.   Plaintiffs Are Not Harmed Because They Have Failed to Establish Article III Standing

Article III standing is a prerequisite to federal court jurisdiction.  *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005).  To establish standing, a plaintiff must show: (1) an "injury in fact," that is, a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the defendant's conduct such that the injury is "fairly . . . traceable to the challenged action"; and (3) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)

(quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Plaintiffs here have failed to satisfy this requirement.

Plaintiffs allege two sources of injury, neither of which establishes standing. First, Plaintiffs argue that they could be harmed by a future data breach attributable to Defendant's alleged activities associated with operating computer systems connected to the HR@opm.gov and sending email messages to Federal Government employees from that address. *See* Compl. ¶ 37. But Plaintiffs do not allege that any such data breach has occurred, and any alleged injury stemming from a hypothetical, future data breach is too speculative to establish standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Indeed, for Plaintiffs to suffer an injury under this theory, there would have to be a future, third-party breach of OPM's systems that is traceable to OPM's use of the HR@opm.gov. But Courts have routinely rejected such theories of injury that "rel[y] on a highly attenuated chain of possibilities." *Id.* at 410; *see Murthy v. Missouri*, 603 U.S. 43, 57 (2024) ("The one-step-removed, anticipatory nature of [plaintiffs'] alleged injuries" fails to satisfy standing), *remanded*, 114 F.4th 406 (5th Cir. 2024). "[F]ears of hypothetical future harm that is not certainly impending," without more, cannot satisfy Article III. *Clapper*, 568 U.S. at 416. And the fact that, over ten years ago, OPM suffered a past data breach based on the intrusion of a sophisticated foreign actor, *see In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42, 76 (describing breach as "handiwork of foreign spies"), cannot establish a real or immediate threat of a future breach that is traceable to OPM's alleged failure to prepare a PIA or its use of the hr@opm.gov address to send internal emails to federal employees. *See L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (holding that an equitable remedy was unavailable where the plaintiff had failed to establish that a past harm was likely to occur again).

Second, Plaintiffs allege that they have suffered an informational injury because OPM did not conduct a PIA for a purported "email server or any system which collects or maintains Personally Identifiable Information ('PII') obtained from its use," which Plaintiffs believe was used in connection

6

with the hr@opm.gov address. *See* Compl. ¶ 32–36. A plaintiff suffers a "sufficiently concrete and particularized informational injury" only if "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (*EPIC*) (internal quotation marks omitted) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). But other than speculation on social media, Plaintiffs provide no evidence that OPM took any of the actions that would trigger the PIA requirement under sections 208(b)(1)(A)(i)-(ii) of the E-Government Act. Moreover, Plaintiffs disregard entirely the fact that the E-Government Act does not require a PIA when an agency is seeking to collect information about "agencies, instrumentalities, or employees of the Federal Government." *Id.* § 208(b)(1)(A)(ii). Because the E-Government Act does not require disclosure of the information Plaintiffs allege they were denied, the Court need not proceed past the first prong of the informational standing test under *EPIC*. *See Friends of Animals*, 828 F.3d at 992–93 (informational injury not sufficiently alleged where statutory provision could not be read to require disclosure plaintiffs sought). Nevertheless, the second prong also supports Defendant's position that Plaintiffs have not suffered an informational injury. Section 208 of the E-Government Act purports to be "citizen-centered," E-Government Act § 208(a), i.e., focused on systems that are external to the government. It expressly excludes its application to where the system applies only to "agencies, instrumentalities, or employees of the Federal Government." *Id.* § 208(b)(1)(A)(ii).

      **B.**      **Plaintiffs Are Not Harmed Because Their Claim is Moot**

Although the E-Government Act expressly exempts the email system at issue here, which includes only federal government employees, OPM nevertheless has now prepared a PIA. *See* Attachment A (executed February 5, 2025). That is the sole relief sought through this litigation, and

7

the sole source of Plaintiffs' asserted irreparable harm. Because the agency has in fact published a PIA (despite it not being required to do so), this case is moot, and Plaintiffs cannot establish irreparable harm.

## II.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

As discussed, Plaintiffs' only claim in this case is that Defendant failed to complete a PIA for actions allegedly taken by OPM in order to send emails from hr@opm.gov to Federal Government employees at their official, Federal Government email addresses. Compl. at ¶ 27–39. But Plaintiffs cannot succeed on the merits of their claim for numerous reasons. First, they lack Article III standing. *See supra*, I.A.

Second, the E-Government Act does not require a PIA when the dissemination is internal only to federal employees. *See supra*, I.B. Indeed, consistent with the Act's plain text, that has been the uniform practice of the Executive Branch for two-plus decades. *See* E-Government Act, § 208(b)(1)(A)(i)-(ii). That is how the Executive interpreted it through OMB guidance right on the heels of the Act's passage. *See* U.S. Office of Management and Budget, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, at § II(B)(1)(b) (Sept. 26, 2003), https://georgewbush-whitehouse.archives.gov/omb/memoranda/m03-22.html#a (explaining PIAs not required where Information Technology systems apply only to "agencies, instrumentalities, or employees of the federal government"). Indeed, OMB's guidance expressly states that "*[n]o PIA is required where information relates to internal government operations*," as is the case "for government-run websites, IT systems, or collections of information to the extent that they do not collect or maintain information in identifiable form about members of the general public." *Id.* And it has remained constant since. U.S. Office of Personnel Management, Privacy Impact Assessment (PIA) Guide, at 2 (Apr. 2010) (explaining PIA required when system involves "members of the public"). And third, OPM—despite having no obligation to do so—has published the PIA about which Plaintiffs

8

complain. This case is, accordingly, moot, and should be dismissed. Even were the case to continue, Plaintiffs clearly cannot establish a likelihood of success on the merits.

### III. THE PUBLIC INTEREST WEIGHS SQUARELY AGAINST RELIEF

Plaintiffs cannot establish that the balance of equities and the public interest favor granting the extraordinary remedy of a temporary restraining order. These final two factors merge in cases where relief is sought from the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (when the government is a party, these two factors merge and "are one and the same, because the government's interest is the public interest").

Here, the harms to the government of having to cease operating any computer systems connected to the HR@opm.gov address and from merely communicating with Federal Government employees through their official email addresses would be tremendous. Indeed, although Plaintiffs argue that their request for a TRO seeks to "reestablish [] the status quo," Pls.' TRO Motion at 18, a TRO would greatly disrupt the status quo by interfering with OPM's ability to perform one of its core functions—managing the civil service of the federal government. On the other side of the balance, Plaintiffs suffer no harm – they have received the relief they requested. The final factor weighs heavily and dispositively in OPM's favor.

### CONCLUSION

For the aforementioned reasons, Plaintiffs' Emergency Motion for a Temporary Restraining Order should be denied.

Dated: February 5, 2025                                    Respectfully submitted,

                                                BRETT A. SHUMATE
                                                Acting Assistant Attorney General

                                                ELIZABETH J. SHAPIRO
                                                Deputy Branch Director, Federal Programs Branch

                                                */s/ Olivia G. Horton*

OLIVIA G. HORTON (TX Bar #24120357)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0747
Facsimile: (202) 616-8460
Email: olivia.g.horton@usdoj.gov
