**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| JANE DOES 1-7, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-CV-00234 |
| | ) | |
| OFFICE OF PERSONNEL | ) | |
| MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.      THE E-GOVERNMENT ACT OF 2002 .................................................................. 2

II.     PROCEDURAL HISTORY ....................................................................................... 4

LEGAL STANDARDS ........................................................................................................ 4

ARGUMENT ....................................................................................................................... 6

I.      THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS ..................... 6

        A.      Plaintiffs Have Failed to Establish Standing ........................................... 6

        B.      Plaintiffs' Claim is Moot Because OPM Published a PIA .................... 8

        C.      Plaintiffs Fail to State a Claim ................................................................. 9

                1.      Plaintiffs Fail to State a Claim Under the E-Government Act................... 9

                2.      Plaintiffs Fail to State a Claim Under the APA ......................................... 9

                        a.      A PIA Is Not Agency Action for Purposes of the APA............... 10

                        b.      A PIA Is Not Final Agency Action under the APA..................... 11

                3.      Plaintiffs Fail to State a Claim Under the Declaratory Judgment
                        Act................................................................................................................ 13

II.     PLAINTIFFS' APPLICATION FOR A TRO FAILS ...................................................... 14

        A.      Plaintiffs Cannot Establish Irreparable Harm ...................................... 14

        B.      Plaintiffs Are Unlikely to Succeed on the Merits ................................. 15

        C.      The Public Interest Weighs Heavily Against Emergency Relief.......... 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Ali v. Rumsfeld*,
   649 F.3d 762 (D.C. Cir. 2011) ............................................................................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 5

*Am. Libr. Ass'n v. FCC*,
   401 F.3d 489 (D.C. Cir. 2005) .......................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 5

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................................................... 9, 11

*Boone v. MountainMade Found.*,
   684 F. Supp. 2d 1 (D.D.C. 2010) ................................................................... 14

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ..................................................................... 4, 14

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................ 7

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...................................................................................... 6, 7

*Doe v. Metro. Police Dep't*,
   445 F.3d 460 (D.C. Cir. 2006) .......................................................................... 5

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*,
   313 F.3d 852 (4th Cir. 2002) .......................................................................... 13

*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) ...................................................................... 7, 8

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) ..................................................................... 5

*Guerrero v. Clinton*,
   157 F.3d 1190 (9th Cir. 1998) ........................................................................ 13

*Hawkins v. Wash. Metro. Area Transit Auth.*,
   311 F. Supp. 3d 94 (D.D.C. 2018) .................................................................... 5

*Hearst Radio, Inc. v. FCC,*
   167 F.2d 225 (D.C. Cir. 1948) ................................................................................. 11

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ........................................................................................... 10

*Honig v. Doe,*
   484 U.S. 305 (1988) ............................................................................................. 9

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Lit.,*
   928 F.3d 42 (D.C. Cir 2019) ................................................................................. 7

*Indus. Safety Equip. Ass'n v. EPA,*
   837 F.2d 1115 (D.C. Cir. 1988) ...................................................................... 10, 11

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
   878 F.3d 371 (D.C. Cir. 2017) ............................................................................... 7

*Invention Submission Corp. v. Rogan,*
   357 F.3d 452 (4th Cir. 2004)......................................................................... 12, 13

*Joshi v. Nat'l Transp. Safety Bd.,*
   791 F.3d 8 (D.C. Cir. 2015) ................................................................................. 12

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................... 5, 6

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ........................................................................................... 13

*Miss. Comm'n on Env't. Quality v. EPA,*
   790 F.3d 138 (D.C. Cir. 2015) ............................................................................... 9

*Munaf v. Geren,*
   553 U.S. 674 (2008) ............................................................................................. 4

*Murthy v. Missouri,*
   603 U.S. 43 (2024), *remanded,* 114 F.4th 406 (5th Cir. 2024)............................. 6, 7

*Nat'l Black Police Ass'n v. District of Columbia,*
   108 F.3d 346 (D.C. Cir. 1997) ............................................................................... 9

*Nken v. Holder,*
   556 U.S. 418 (2009) ....................................................................................... 5, 17

*Preiser v. Newkirk,*
   422 U.S. 395 (1975) ............................................................................................. 9

*Pursuing Ams.' Greatness v. FEC,*
   831 F.3d 500 (D.C. Cir. 2016) ................................................................ 17

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
   324 F.3d 726 (D.C. Cir. 2003) ................................................................ 12

*Sea Containers Ltd. v. Stena AB,*
   890 F.2d 1205 (D.C. Cir. 1989) .............................................................. 15

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) .................................................................................. 6

*Trudeau v. Fed. Trade Comm'n,*
   456 F.3d 178 (D.C. Cir. 2006) ................................................................ 12

*Warth v. Seldin,*
   422 U.S. 490 (1975) .................................................................................. 6

*Wilton v. Seven Falls Co.,*
   515 U.S. 277 (1995) ................................................................................ 14

*Winter v. Nat. Res. Def. Council Inc.,*
   555 U.S. 7 (2008) ...................................................................................... 4

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n,*
   758 F.2d 669 (D.C. Cir. 1985) ................................................................ 14

**STATUTES**

5 U.S.C. § 551 ............................................................................................ 10, 11

5 U.S.C. §§ 701–706 .......................................................................................... 9

5 U.S.C. § 704 .................................................................................................. 10

5 U.S.C. § 706 .................................................................................................. 10

44 U.S.C. § 3601 note ........................................................................................ 2

E-Government Act of 2002,
   Pub. L. No. 107-347, 116 Stat. 2899, codified at 44 U.S.C. § 3501 note ........................ *passim*

**RULES**

Fed. R. Civ. P. 12 ............................................................................................... 5

**STATUTES**

U.S. Attorney General Opinions, 7 Op. O.L.C. 123 ...................................... 16

U.S. Office of Management and Budget, OMB Guidance for Implementing the Privacy
    Provisions of the E-Government Act of 2002 (Sept. 26, 2003),
    https://georgewbush-whitehouse.archives.gov/omb/memoranda/m03-22.html#a.................. 3, 8

U.S. Office of Personnel Management, Privacy Impact Assessment (PIA) Guide (Apr. 2010),
    https://www.opm.gov/information-management/privacy-policy/privacy-references
    /piaguide.pdf.................................................................................................................... 3, 4

## INTRODUCTION

Plaintiffs, two unidentified employees of agencies in the United States Executive Branch and five other individuals with .gov email addresses, have moved for a temporary restraining order ("TRO") to prevent the Office of Personnel Management ("OPM") from operating the Government-Wide Email System ("GWES") or any computer system connected to it prior to the completion and public release of a "legally sufficient" Privacy Impact Assessment ("PIA").  *See* Pls.' Renewed Mot. for a TRO at 19, ECF No. 15 (Pls.' Renewed TRO Mot.).  Plaintiffs seek this extraordinary relief based on allegations that the E-Government Act of 2002 requires OPM to complete a PIA for its GWES and that the PIA OPM completed and publicly released on February 5, 2025, is legally insufficient.  *See id.* at 1.  Many of Plaintiffs' factual allegations, based on a since-deleted Reddit post, are unsubstantiated and, if this case proceeds, will be rebutted in due course.  But this case should not proceed because Plaintiffs' allegations fail as a matter of law on multiple grounds.

As a preliminary matter, the Court should deny Plaintiffs' Renewed TRO Motion because Plaintiffs have failed to establish an injury that satisfies this Circuit's demanding standard for irreparable harm and because the balance of equities tips sharply against disrupting email communication with the entire federal workforce.  In addition, Plaintiffs' claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs lack standing to assert their claims.  Specifically, Plaintiffs have not established an actual or imminent injury in fact, as required to demonstrate Article III standing.  Plaintiffs' claims also should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs have failed to state a claim.  Even if the E-Government Act required a PIA under these circumstances, which it does not, OPM has already published a PIA.  Plaintiffs' claim is therefore moot.  To the extent Plaintiffs attempt to challenge the substance of the PIA or its accuracy, that claim also fails.

The PIA is not a final agency action that can be challenged under the APA. Likewise, the E-Government Act does not provide a cause of action for Plaintiffs to challenge its sufficiency. For these reasons, the case should be dismissed, and the application for a temporary restraining order denied.

## BACKGROUND

### I.    THE E-GOVERNMENT ACT OF 2002

The E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2899, 2921-22, codified at 44 U.S.C. § 3501 note, is designed, among other things, to "improve the ability of the Government to achieve agency missions and program performance goals," "promote the use of the Internet and emerging technologies within and across Government agencies," "promote better informed decisionmaking by policy makers," and "utilize[e], where appropriate, best practices from public and private sector organizations." *Id.* § 2(b)(4), (5), (7), (10) (codified at 44 U.S.C. § 3601 note). Section 208 of the Act, which is at issue in this case, exists "to ensure sufficient protections for the privacy of personal information as agencies implement *citizen-centered* electronic Government." *Id.* § 208(a) (emphasis added). Accordingly, Section 208 requires that an agency take specified steps before "(i) developing or procuring information technology that collects, maintains, or disseminates information that is in an identifiable form; or (ii) initiating a new collection of information that" "will be collected, maintained, or disseminated using information technology" and "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posted to, or identical reporting requirements imposed on, 10 or more persons, *other than agencies, instrumentalities, or employees of the Federal Government*." *Id.* § 208(b)(1)(A)(i)–(ii) (emphasis added).

2

Before either "developing or procuring information technology" or "initiating a new collection of information," an agency must: (1) conduct a PIA; (2) "ensure the review of the privacy impact assessment by the Chief Information Officer, or equivalent official, as determined by the head of the agency"; and, "if practicable, after completion of the review . . . , make the privacy impact assessment publicly available through the website of the agency, publication in the Federal Register, or other means." *Id.* § 208(b)(1)(A), (B). The privacy impact assessment is to address matters including "what information is to be collected," "why the information is being collected," "the intended use of the agency of the information," "with whom the information will be shared," "what notice or opportunities for consent would be provided to individuals regarding what information is collected and how that information is shared," "how the information will be secured," and "whether a system of records is being created under" the Privacy Act. *Id.* § 208(b)(2)(B)(ii).

Notably, it has long been understood that "no PIA is required where information relates to internal government operations." U.S. Office of Management and Budget, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, § II(B)(9)(c) (Sept. 26, 2003), https://georgewbush-whitehouse.archives.gov/omb/memoranda/m03-22.html#a; *see also id.* § II(B)(1)(a), (b) (specifying that a PIA is necessary only when "developing or procuring IT systems or projects that collect, maintain or disseminate information in identifiable form *from or about members of the public*" or initiating a new collection of information from 10 or more persons "*excluding agencies, instrumentalities or employees of the federal government*") (emphases added)); U.S. Office of Personnel Management, Privacy Impact Assessment (PIA) Guide, at 2 (Apr. 2010), https://www.opm.gov/information-management/privacy-policy/privacy-

references/piaguide.pdf (stating that a PIA is not required when an agency is seeking to collect information about agencies, instrumentalities, or employees of the Federal Government).

## II.    PROCEDURAL HISTORY

Plaintiffs filed this suit on January 27, 2025, raising claims under the E-Government Act of 2002 and the Administrative Procedure Act ("APA").  Plaintiffs electronically served the complaint and moved for a TRO on February 4, 2025.  The same day, the Chief Judge granted plaintiffs motion to proceed using pseudonyms, and the case was assigned to this Court.  Mem. Op. & Order, ECF No. 7.  On February 6, the Court held a Motion Hearing, where it heard both parties' arguments and denied Plaintiffs' Motion for a Temporary Restraining Order.  Minute Entry (Feb. 6, 2025).  Plaintiffs then filed a Motion for leave to add additional plaintiffs to the suit under pseudonyms, which the Court granted.  *See* Pls.' Mot. for Leave to Add Pseudonyms, ECF No. 12; Order, ECF No. 13.  The same day, Plaintiffs filed an Amended Complaint and submitted a Renewed Motion for a Temporary Restraining Order.  *See* First Am. Compl. Class Action, ECF No. 14 ("First Am. Compl."); Pls.' Renewed TRO Mot., ECF No. 15.

## LEGAL STANDARDS

A TRO, like a preliminary injunction, is "an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted), that is only to be awarded "upon a clear showing" by a movant that it is "entitled to such relief."  *Winter v. Nat. Res. Def. Council Inc.*, 555 U.S. 7, 22 (2008).  To secure a TRO, "the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  When "the Government is the opposing party," the assessment

of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Additionally, Plaintiffs bear the burden of establishing subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Under Rule 12(b)(1), Plaintiffs bear the burden of establishing by a preponderance of the evidence that they have standing to assert their claims. *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." A complaint must allege enough facts to state a claim for relief that is facially plausible. *See, e.g., Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 100 (D.D.C. 2018). Although a court must construe the complaint in the plaintiffs' favor, "[c]onclusory allegations . . . are not entitled to an assumption of truth, and even allegations pleaded with factual support need only be accepted insofar as 'they plausibly give rise to an entitlement of relief.'" *Id.* at 100–01 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that [the] defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Legal conclusions, "naked assertion[s] devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are legally insufficient to state a plausible claim. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). A complaint must be dismissed under 12(b)(6) where no cause of action exists. *Doe v. Metro. Police Dep't*, 445 F.3d 460, 467 (D.C. Cir. 2006).

ARGUMENT

I.    **THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS**

**A.  Plaintiffs Have Failed to Establish Standing**

Article III standing is a prerequisite to federal court jurisdiction. *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005).  To establish standing, a plaintiff must show: (1) an "injury in fact," that is, a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the defendant's conduct such that the injury is "fairly . . . trace[able] to the challenged action," and (3) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citations omitted).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Plaintiffs fail at step one.

Plaintiffs allege two sources of injury, neither of which establishes standing.  First, Plaintiffs argue that they "face a reasonably foreseeable risk that their PII will be unlawfully obtained from these unknown systems."  *See* First Am. Compl. ¶ 58.  But Plaintiffs do not allege that any such data breach has occurred, and any alleged injury stemming from a hypothetical, future data breach is too speculative to establish standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  Indeed, for Plaintiffs to suffer an injury under this theory, there would have to be a future, third-party breach of OPM's systems that is traceable not only to OPM's use of the GWES, but also to Plaintiffs' vague allegations about the adequacy of the PIA.  Courts have routinely rejected such theories of injury that "rel[y] on a highly attenuated chain of possibilities." *Id.*; *see Murthy v. Missouri*, 603 U.S. 43, 57 (2024) ("The one-step-removed, anticipatory nature

6

of [plaintiffs'] alleged injuries" fails to satisfy standing), *remanded*, 114 F.4th 406 (5th Cir. 2024).

"[F]ears of hypothetical future harm that is not certainly impending," without more, cannot satisfy

Article III. *Clapper*, 568 U.S. at 416. The fact that, over ten years ago, OPM suffered a past data

breach based on the intrusion of a sophisticated foreign actor and wholly unrelated to the adequacy

of any PIA, *see In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Lit.*, 928 F.3d 42, 76 (D.C. Cir

2019) (describing breach as "handiwork of foreign spies"), cannot establish a real or immediate

threat of a future breach that is traceable to OPM's alleged failure to prepare a PIA. *See City of

L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (holding that an equitable remedy was unavailable where

the plaintiff had failed to establish that a past harm was likely to occur again). Despite Defendant

having raised this argument in response to Plaintiffs' first Motion for a TRO, Plaintiffs have failed

to provide a single case citation in support of the proposition that such a hypothetical harm supports

standing.

Second, Plaintiffs allege that they have suffered an informational injury because OPM did

not conduct a "legally sufficient" PIA. *See* First Am. Compl. ¶¶ 58–59. A plaintiff suffers a

"sufficiently concrete and particularized informational injury" only if "(1) it has been deprived of

information that, on its interpretation, a statute requires the government or a third party to disclose

to it, and (2) it suffers, by being denied access to that information, the type of harm Congress

sought to prevent by requiring disclosure." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n

on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (*EPIC*) (quoting *Friends of Animals v.

Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). But Plaintiffs have not pointed to a specific piece of

information that they have been deprived of under the statute. Other than speculation on social

media, Plaintiffs provide no evidence that OPM took any of the actions that would trigger the PIA

requirement under sections 208(b)(1)(A)(i)–(ii) of the E-Government Act. Plaintiffs disregard

entirely the fact that "[n]o PIA is required where information relates to internal government operations." *OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002*, § II(B)(3). *See also* E-Government Act, Pub. L. No. 107-347, § 208(b)(1)(A)(i)–(ii). And Plaintiffs ignore that the PIA OPM did file provides all of the information required by the statute. Because the E-Government Act does not require disclosure of the information Plaintiffs allege they were denied, the Court need not proceed past the first prong of the informational standing test under *EPIC*. *See Friends of Animals*, 828 F.3d at 992–93 (informational injury not sufficiently alleged where statutory provision could not be read to require disclosure plaintiffs sought).

Plaintiffs also fail the second prong of the informational standing test. Section 208 is not about informational harm. The purpose of the Act is to "ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." E-Government Act, Pub. L. No. 107-347, § 208(a). The disclosure of information is thus not the primary objective of Section 208, in contrast to statutes such as the Freedom of Information Act. *See EPIC*, 878 F.3d 371 at 378. Further, Section 208's purpose is not the protection of personal privacy in intra-governmental data systems. The privacy protection covers "citizen-centered" information being gathered "from or about members of the public." *OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002* § II(B)(1)(a). Accordingly, Plaintiffs fail both prongs of the informational standing test. The complaint should be dismissed for want of jurisdiction.

### B.    Plaintiffs' Claim is Moot Because OPM Published a PIA

Even if Plaintiffs could establish an informational injury flowing from an alleged failure to prepare and publish a PIA, they still could not establish standing. OPM conducted a PIA and published it on its website. The alleged informational injury is therefore moot. Article III of the

Constitution restricts the federal courts to deciding only 'actual, ongoing controversies,' and a federal court has no 'power to render advisory opinions [or] . . . decide questions that cannot affect the rights of litigants in the case before them.'" *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988) and *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). The same goes for any allegation of a potential, future breach. Plaintiffs do not allege any breach has occurred, and OPM has now conducted the PIA.

### C.  Plaintiffs Fail to State a Claim

Even if Plaintiffs were able to demonstrate a cognizable injury sufficient to establish standing, this suit should be dismissed because the E-Government Act contains no private right of action; Plaintiffs' asserted right to challenge the substance and accuracy of the PIA is not actionable under the APA;[1] and the Declaratory Judgment Act does not create a stand-alone cause of action.

### 1.  *Plaintiffs Fail to State a Claim Under the E-Government Act*

Plaintiffs do not assert that the E-Government Act contains a private right of action or "constitutes a statutory mechanism by which [an agency's] conclusions . . . can be challenged." *See Miss. Comm'n on Env't. Quality v. EPA*, 790 F.3d 138, 185 (D.C. Cir. 2015) (emphasis omitted). Nor could they. As explained, the purpose of the E-Government Act is to ensure privacy protections "as agencies implement citizen-centered electronic Government." E-Government Act, Pub. L. No. 107-347, § 208(a). Congress did not intend to give private individuals a right to nitpick the government's internal IT choices, as Plaintiffs try to do here.

---

[1] Indeed, Plaintiffs do not cite a single case where a Court has reviewed the substance of a PIA, and Defendant is not aware of one.

### 2. *Plaintiffs Fail to State a Claim Under the APA*

The APA, 5 U.S.C. §§ 701–706, establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by agency action. *See id.* § 706(1)-(2); *see also Heckler v. Chaney*, 470 U.S. 821, 828 (1985). The APA permits judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154 (1997). Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory authority," *id.* § 706(2)(C), or "without observance of procedure required by law." *Id.* § 706(2)(D).

Plaintiffs fail to state a claim under the APA because the publication of a PIA is not a reviewable final agency action. To state a claim under the APA, a plaintiff must challenge a covered "agency action" which is "final." *Id.* § 704. The PIA does not meet the statutory definition of "agency action," and, even if it did, it does not constitute "final agency action" because it does not result in legal consequences for Plaintiffs.

### a. *A PIA Is Not Agency Action for Purposes of the APA*

As an initial matter, "agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13). Although this definition is broad, it is not all-encompassing. *See Indus. Safety Equip. Ass'n v. EPA*, 837 F.2d 1115, 1120 (D.C. Cir. 1988) ("Clearly Congress did not intend that the APA definition of a rule be construed so broadly that every agency action would be subject to judicial review."). A PIA falls into none of these categories.

The D.C. Circuit has concluded that reports similar to PIAs issued by agencies fall outside reviewable agency action. For example, the D.C. Circuit concluded that a Federal

Communications Commission report that discussed the services of broadcast stations after the transfer of ownership was not "agency action" subject to APA review. *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948). In fact, the D.C. Circuit reached that conclusion even accepting for the purposes of the motion to dismiss that the report was false, libelous, and caused actual damages to the owner of a station. *Id.* Similarly, in *Industrial Safety Equipment*, the D.C. Circuit concluded that an Environmental Protection Agency report evaluating the effectiveness of respirators was not a reviewable agency action. *See* 837 F.2d at 1119–21 (determining that the report could only arguably be considered either a "sanction" or "rule," and concluding (1) that it was not a rule because it was "advisory," "[did] not change any law or official policy presently in effect," and (2) that it was not a sanction because it was not "intended to penalize producers or consumers" of criticized respirators).[2] Like these reports, the PIA did not change any official law or policy, was not published in the Federal Register or Code of Federal Regulations, and was not intended to penalize anyone. It is thus, neither a "rule" nor any other reviewable agency action listed in 5 U.S.C. § 551(13).

### b. A PIA Is Not Final Agency Action under the APA

In any event, the PIA is not a *final* agency action. In *Bennett*, the Supreme Court held that two conditions must be satisfied for a plaintiff to make the threshold showing of final agency action: First, the action must mark the "consummation" of the agency's decision-making process— it must not be of a merely tentative or interlocutory nature. 520 U.S. at 177–78 (citation omitted).

---

[2] The Court further noted that the report at issue in *Industrial Safety Equipment* was not a rule because it was not published in the Federal Register or Code of Federal Regulations. While Defendants acknowledge that the E-Government Act allows for publication of a PIA in the Federal Register, *see* E-Government Act, Pub. L. No. 107-347, § 208(b)(1)(B)(iii), it also allows for a PIA to be made publicly available through other means, such as publication on the agency website, *id.*, which is what OPM did here.

Second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Id.* (citation omitted). "Agency action is considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003).

Courts repeatedly have held that agency reports, opinions, press releases, and similar publications do not constitute final agency action under the APA because they fail the second requirement: they impose no obligation, deny no right, nor fix a legal relationship. For example, the D.C. Circuit has held that a letter sent by the Consumer Protection Safety Commission to a manufacturer after an investigation into its product—where the letter conveyed the agency's preliminary conclusion that the product presented a substantial hazard and requested voluntary corrective action—was not a final agency action because it carried no legal consequences, despite the likely practical consequences of the letter. *See id.* at 732 (stating that no legal consequences followed from the agency's conduct because the request for voluntary compliance had no legally binding effect); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189 (D.C. Cir. 2006) (observing that "we have never found a press release of the kind at issue here to constitute 'final agency action' under the APA"); *cf. also Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11 (D.C. Cir. 2015) (investigative report that identified a pilot as the likely cause of an accident was not a "final order" because it carried no legal consequences, despite the assertion of reputational, emotional, and financial harm).

The PIA is like these reports in that it does not impose obligations nor deny rights to Plaintiffs. It further does not alter the legal relationship between OPM and Plaintiffs in any way. Accordingly, it is not a final agency action under the APA. Indeed, Congress did not intend for the APA "to create private rights of actions to challenge the inevitable objectionable impressions"

created anytime a controversial document is published. *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (quoting *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 861 (4th Cir. 2002)). If the contrary view were adopted and the accuracy of agency statements could be challenged based on their persuasive effect, "almost any agency policy or publication issued by the government would be subject to judicial review." *Flue-Cured Tobacco*, 313 F.3d at 861. "Under these circumstances, the presumption of reviewability of agency action is woefully inapposite." *Guerrero v. Clinton*, 157 F.3d 1190, 1196 (9th Cir. 1998) (citation omitted). The same theory applies to reports that share information about Government activities. The APA does not provide a cause of action for private parties to dispute the factual truth of every routine act that an agency undertakes each day.

### 3. Plaintiffs Fail to State a Claim Under the Declaratory Judgment Act

Similarly, while not mentioned in their Renewed Motion for a TRO, Plaintiffs' Complaint suggests that they have may a cause of action under the Declaratory Judgment Act. *See* First Am. Compl. at 1. But the Declaratory Judgment Act does not create a stand-alone cause of action. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (explaining that the Declaratory Judgment Act does not itself "provide a cause of action," as the "availability of [declaratory] relief presupposes the existence of a judicially remediable right" (citation omitted)); *cf., e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (declaratory-judgment actions are subject to Article III and require "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). Rather than providing a cause of action, the Declaratory Judgment Act offers a remedy, typically for a potential defendant in an action that might otherwise be brought against them but has not yet been. Accordingly, the Declaratory Judgment Act is not an appropriate cause of action here.

Moreover, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). For example, courts may dismiss claims under the Declaratory Judgment Act when those claims are duplicative of other claims. *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010). Thus, to the extent Plaintiffs' Declaratory Judgment Act claim would be duplicative of their APA claim, it should be dismissed as redundant.

## II.    PLAINTIFFS' APPLICATION FOR A TRO FAILS

For the reasons stated above, Plaintiffs' Complaint fails as a matter of law. Thus, their motion for a TRO should be denied. Moreover, the factors governing issuance of such extraordinary relief also counsels against issuance of a TRO.

### A.    Plaintiffs Cannot Establish Irreparable Harm

In this Circuit, there is a "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Any alleged irreparable harm "must be both certain and great; it must be actual and not theoretical." *Id.* (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). It also must be of such "*imminence* that there is a clear and present need for equitable relief." *Id.* (quoting *Wis. Gas Co.*, 758 F.2d at 674) (emphasis in original). The fact that Plaintiffs have not demonstrated sufficient harm to establish standing is alone enough to deny Plaintiffs' renewed TRO Motion. *See id.* ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the

other three factors entering the calculus merit such relief." (citing *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1210–11 (D.C. Cir. 1989)).[3]

## B.  Plaintiffs Are Unlikely to Succeed on the Merits

Because OPM has completed the PIA that Plaintiffs request, despite having no obligation to do so because the GWES is an internal government system, *see supra* Part I.A, the case is moot and Plaintiffs therefore cannot prevail on the merits.  *See supra* Part I.A. Moreover, for the reasons explained in Part I.C, Plaintiffs cannot challenge the substance and accuracy of the PIA through the APA.  But even looking past these threshold arguments, Plaintiffs' allegations regarding the sufficiency PIA fail on their face.  *See* Pls.' Renewed TRO Mot. at 1 (alleging that the PIA published by OPM is "legally insufficient" and published for pretextual reasons).  Indeed, the PIA published by OPM includes each of the statutorily outlined requirements.  First, the PIA was signed by OPM's Chief Information Officer ("CIO"), pursuant to section 208 (b)(1)(B)(ii).  In addition, the PIA addresses each substantive element that the statute requires: (1) it explains what information is to be collected (PIA § 2.2); (2) it states why the information is being collected (PIA § 3.1, 5.1); (3) it states the intended use of the information (PIA § 3.1); (4) it states whom the information will be shared with (PIA § 6.1, 6.3, 8.3); (5) it addresses opportunities for consent (PIA § 4.2); (6) it discusses how the information will be secured (PIA § 1.3); and (7) it discusses whether a system of records is being created under the Privacy Act (PIA § 1.2).  *See* E-Government Act, Pub. L. No. 107-347 § 208 (b)(2)(B)(ii).

---

[3] Plaintiffs' delay also counsels against emergency relief.  Although OPM announced the new email system on January 23, First Am. Compl. ¶ 20, Plaintiffs did not seek a TRO until nearly two weeks later, on February 4.  Moreover, while Defendants wrote and filed a brief in opposition to Plaintiffs' initial TRO in less than 24 hours, Plaintiffs did not appear at the scheduled status conference on February 5 and did not file a reply to Defendants' position before the re-scheduled hearing took place on February 6.  These delays seriously undermine their claim of irreparable harm.

Although Plaintiffs suggest that the fact that this PIA was signed by OPM's CIO, Greg Hogan, as opposed to Chief Privacy Officer, Kirsten Moncada, invalidates the PIA, the difference in signatories is legally insignificant. *See* Pls.' Renewed TRO Mot. at 4. Section 208 of the E-Government Act explicitly states that the CIO may review a PIA. E-Government Act, Pub. L. No. 107-347, § 208(b)(1)(B)(ii). The fact that OPM has frequently relied on the provision of the E-Government Act that allows the Chief Privacy Officer to review the PIA does not have any bearing on the fact that the CIO is authorized to be the reviewer.

Likewise, there is no legal relevance as to whether the CIO is a Special Government Employee ("SGE"). *See* Pls.' Renewed TRO Mot. at 4. Even if one assumed, arguendo, that the CIO was an SGE (a fact for which Plaintiffs offer no evidence), an SGE is an agency employee. An SGE's status as such is an ethics designation, not a hiring authority. *See* U.S. Attorney General Opinions, 7 Op. O.L.C. 123. And Plaintiffs cite no authority whatsoever that an SGE cannot be a CIO.

Plaintiffs also complain that the PIA is inaccurate because the data used in the GWES goes beyond the names and government email addresses of Executive Branch employees. *See e.g.*, Pls.' Renewed TRO Mot. at 3. But the PIA does not suggest that the GWES is limited to the "Executive Branch." Instead, it refers to "federal government employees." *See* PIA at § 2.1. Plaintiffs provide no examples of Plaintiffs whose email domains are other than .gov or .mil. First Am. Compl. ¶ 3–9. At bottom, even if Plaintiffs could challenge the sufficiency or accuracy of the PIA—which they cannot for all the reasons explained above—Plaintiffs' claims of deficiencies lack in substance. Thus, Plaintiffs are unlikely to succeed on the merits.

**C. The Public Interest Weighs Heavily Against Emergency Relief**

Plaintiffs cannot establish that the balance of equities and the public interest favor granting the extraordinary remedy of a TRO. These final two factors merge in cases where relief is sought from the government. *Nken*, 556 U.S. at 435; *Pursuing Ams.' Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (when the government is a party, these two factors merge and "are one and the same, because the government's interest is the public interest").

Here, the harms to the government of having to cease operating the GWES and any computer systems connected to the GWES, and thereby preventing OPM from merely communicating with Federal Government employees through their official email addresses, would be tremendous. Indeed, although Plaintiffs argue that their request for a TRO seeks to "[r]eestablish[] the status quo," Pls.' Renewed TRO Mot. at 22–23, a TRO would greatly disrupt the status quo by interfering with OPM's ability to perform one of its core functions—managing the civil service of the federal government. Relatedly, Plaintiffs' allegation that the Government has no cognizable interest "in maintaining the GWES" after the period for Executive employees to respond to the Government's deferred resignation program lapses, *see id.* at 13, is unfounded. Plaintiffs do not present any evidence that OPM created the GWES system for the sole purpose of communicating with employees about the deferred resignation program, and Defendants reject any such assertion. Indeed, the GWES presents great efficiencies in allowing OPM to reach all federal employees instead of each agency having to circulate the same information on its own. On the other side of the balance, Plaintiffs suffer no harm. The E-Government Act did not require OPM to complete a PIA; OPM did complete and publicly publish a PIA anyway; and neither the APA nor the E-Government Act provide a private right of action for Plaintiffs to challenge the

17

adequacy of the PIA, which is adequate under the statute in any event.  Thus, the final factor weighs heavily and dispositively in OPM's favor.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Renewed Motion for a Temporary Restraining Order and dismiss the case under Rule 12(b)(1) and Rule 12(b)(6).

Dated:  February 11, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director, Federal Programs Branch

*/s/ Olivia G. Horton*
OLIVIA G. HORTON (TX Bar No. 24120357)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0747
Facsimile: (202) 616-8460
Email: olivia.g.horton@usdoj.gov

*Counsel for Defendant*