UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANE DOES 1-7, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:25-cv-00234 (RDM) |
| OFFICE OF PERSONNEL MANAGEMENT, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER**[1]

After Plaintiffs filed an emergency motion for a Temporary Restraining Order ("TRO") against Defendant Office of Personnel Management ("OPM") for failing to publish a required Privacy Impact Assessment ("PIA") for what came to be known as the Government-Wide Email System ("GWES"), OPM conducted and published a document at the last minute which, while purporting to be a PIA for that system, was both factually inaccurate and legally insufficient. OPM entitled this document *Privacy Impact Assessment for Government-Wide Email System (GWES)* ("GWES PIA")[2] and published it for pretextual reasons for the purpose of misleading this Court and arguing that its publication renders the case moot. Rather than simply produce a legally sufficient PIA which would arguably moot this case, OPM instead mischaracterizes both the facts and the relevant case law in a transparent attempt to obfuscate and minimize the true

---

[1] This is only a response to the Government's Opposition to Plaintiffs' motion for a Temporary Restraining Order. Due to the compressed briefing schedule, this is not a full response to the Government's motion to dismiss the case, and Plaintiffs will file a proper Opposition to that motion at a future date.

[2] Plaintiffs refer to this document as a PIA simply for convenience. They do not concede that this document is in any way a legitimate PIA as required by law.

nature of the controversy. This Court should soundly reject the GWES PIA and enter a TRO in this matter to mitigate the ongoing and irreparable harm presented by the continued operation of these systems without a legally sufficient PIA.

## ARGUMENT

For ease of reading, Plaintiffs will address the most problematic issues with OPM's arguments, none of which effectively refute any of Plaintiffs' contentions, in roughly the order in which they are presented in OPM's Opposition.[3]

As a preliminary matter, it is telling that, in response to a motion for a TRO, OPM admits up front that it is not going to offer any evidence to disprove Plaintiffs' allegations, instead stating, "Many of Plaintiffs' factual allegations, based on a since-deleted Reddit post, are unsubstantiated and, if this case proceeds, *will be rebutted in due course.*" (Def.'s Comb. Mem. P. & A. Supp. Def.'s Mot. Dismiss & Opp'n Pls.' Renewed Mot. TRO, Dkt. #17-1, at 1 (filed Feb. 11, 2025) [hereinafter OPM's Opp'n] (emphasis added).) The proper response to incorrect factual allegations which are critical to properly assessing the propriety of a TRO is to rebut them, not to say "trust us, they're wrong." The Court should accordingly credit all of Plaintiffs' factual allegations for the purposes of this Motion, since they are supported by significantly more evidence than "a since-deleted Reddit post." Since OPM elected to combine its Opposition with a motion to dismiss, yet provided no material evidence to contradict Plaintiffs' factual allegations, the Court should accept them and all reasonable inferences as true.

---

[3] Plaintiffs' decision to follow the course of OPM's Opposition should not be interpreted as a concession that OPM has properly framed the issues; it is solely to assist the Court in matching OPM's arguments with Plaintiffs' counterarguments. Similarly, given the compressed briefing schedule, Plaintiffs have elected not to repeat themselves unnecessarily, so if they do not address a relevant argument raised by OPM herein, that is simply an indication that they stand behind the corresponding argument in their Motion.

OPM's first argument attacks Plaintiffs' standing, adopting a cramped interpretation of injury which does not comport with either the record or the prevailing opinion in the case law. OPM argues, "Plaintiffs do not allege that any such [third-party] data breach has occurred, and any alleged injury stemming from a hypothetical, future data breach is too speculative to establish standing." (*Id.* at 6.) But in a case like this, Plaintiffs do not *have* to allege that a third-party data breach has occurred, since the harm is *the information being stored in an insecure system*. In fact, under OPM's theory, the only way for Plaintiffs to prove harm would be if there had been "a future, third-party breach of OPM's systems that is traceable not only to OPM's use of the GWES, but also to Plaintiffs' vague allegations about the adequacy of the PIA." (*Id.*) In other words, the only way that any court could ever enjoin any agency from operating an insecure system to prevent it from being hacked would be if it had already been hacked, at which point an injunction would be pointless. On the contrary, one need only imagine a scenario in which an agency posted a list of its employees' social security numbers on its website and then argued that no court could make it take the list down until someone's identity was stolen. From a cybersecurity perspective, the current situation is only slightly less dire.[4]

OPM's second major standing argument, like a later argument pertaining to OPM's legal responsibilities, is predicated on the Court forgetting the nature of the claims and the identities of

---

[4] Regarding OPM's implicit argument that the GWES and associated systems are not at risk of cyberattack, Plaintiffs already introduced into evidence the opinion of a cybersecurity professional that these systems are at risk. (*See* Pls.' Mem. P. & A. Supp. Renewed Mot. TRO, Dkt. #15, at 22 (filed Feb. 7, 2025) [hereinafter Pls.' Mot.] (citing Allison Gill, *A Fork in the Road: Is Federal Employee Privacy Compromised?* Mueller She Wrote (Jan. 29, 2025), *at* https://www.muellershewrote.com/p/a-fork-in-the-road-is-federal-employee (last accessed Feb. 4, 2025)).) This expert is willing to testify on these matters in this case. Moreover, this analysis has been supported elsewhere. *See DOGE Exposes Once-Secret Government Networks, Making Cyber-Espionage Easier than Ever* Cyber-Intelligence Brief (Feb. 9, 2025), *at* https://cyberintel.substack.com/p/doge-exposes-once-secret-government (last accessed Feb. 13, 2025).

the Plaintiffs. OPM argues, "Other than speculation on social media, Plaintiffs provide no evidence that OPM took any of the actions that would trigger the PIA requirement under section 208(b)(1)(A)(i)-(ii) of the E-Government Act." (OPM's Opp'n at 7.) For this argument, OPM relies on the assertion: "The privacy protection covers 'citizen-centered' information being gathered 'from or about members of the public.'" (*Id.* at 8.) According to OPM, that requirement does not apply in this case because "the PIA does not suggest that the GWES is limited to the 'Executive Branch.' Instead, it refers to "federal government employees.' Plaintiffs provide no examples of Plaintiffs whose email domains are other than .gov or .mil." (*Id.* at 16 (citation omitted).) Practically all of OPM's Opposition requires the Court to accept this statement as accurate, when it is decidedly not.

  First, nowhere does OPM offer any legal support for the contention that federal judges or Library of Congress employees satisfy the statutory definition of "agencies, instrumentalities, or employees of the Federal Government" in a law specifically designed to apply to the Executive Branch. 44 U.S.C. § 3501 note § 208(b)(1)(A). However, even if such individuals did fall within this definition, OPM does not offer any legal support for the contention that "an employee of a National Resources Conservation District," "a Conservation Legacy Individual Placement member funded by Americorps," and "an employee of the State of California—which has a partnership with an agency in the United States Executive Branch," none of whom are U.S. Government employees, (1st Am. Compl., Dkt. #14, ¶¶ 5-7 (filed Feb. 7, 2025) [hereinafter 1st Am. Compl.]) are "agencies, instrumentalities, or employees of the Federal Government." Critically, even if *these* individuals did fall within this definition, one plaintiff is "a contractor for the Department of State." (*Id.* ¶ 8.) OPM's argument that a *contractor* is a "federal government employee" is frivolous on its face.

4

OPM's justification for this argument in the last sentence is equally frivolous and is arguably offered in bad faith. OPM asks this Court to state as a matter of fact and law that the defining characteristic of "federal government employees" is that they have "email domains . . . other than .gov or .mil." (OPM's Opp'n at 16.) If the Court were to simply ask OPM's counsel in the hearing how many government contractors have email addresses which end in .gov or .mil, the answer would refute this argument more thoroughly than any brief Plaintiffs could write.

OPM then shifts its argument, contending that "the publication of a PIA is not a reviewable final agency action." (*Id.* at 10.) In doing so, it unreasonably diminishes the statutory requirement that it create a legally mandated document which is legally required to: (a) address certain information; (b) be formally approved by a senior agency official; and (c) be made publicly available. Instead, OPM argues that PIAs are akin to "agency reports, opinions, press releases, and similar publications." (*Id.* at 12.) However, in doing so, it ignores the basic fact that if an agency does *not* create a PIA, that is recognized as a violation of the APA. If creating a PIA is not a final agency action, then nobody could sue an agency for not creating one. Since it is well-recognized that they can, this is a meritless argument.

Once OPM's reasons for dismissal are resolved in Plaintiffs' favor, the Court is left with only a few weak arguments against the issuance of a TRO, many of which again raise more questions than they answer. First, OPM proffers that the PIA was purportedly signed by OPM's Chief Information Officer ("CIO") Greg Hogan ("Hogan") (*id.* at 15), while ignoring the fact that Plaintiffs have raised cognizable concerns about Hogan's authority to sign it in the first place. While Plaintiffs concede that a CIO is authorized to sign a PIA in the statute, it is hardly original to recognize that only someone legally authorized to hold a position is able to approve a document which can only be approved by someone in that position. This Court has already

conclusively decided that question. *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 9 (D.D.C. 2020) ("On the merits, the Court concludes that Cuccinelli was not lawfully appointed to serve as acting Director and that, as a result, he lacked authority to issue the [relevant] directives.").

      This is one of the areas in which OPM willingly declined to offer *any* evidence to rebut Plaintiffs' allegations, and because of that the Court cannot credit its objections. Plaintiffs highlighted the long-prevailing OPM practice—until now—of having its Chief Privacy Officer approve PIAs, but cannot without discovery identify for certain the source of that practice. OPM, when given the chance to offer evidence for the record that it was simply a voluntary, ad hoc, informal policy, instead chose to ambiguously argue that "OPM has frequently relief on the provision of the E-Government Act that allows the Chief Privacy Officer to review the PIA." (OPM's Opp'n at 16.) The key problem with this argument is that there *is* no provision in the E-Government Act which allows the Chief Privacy Officer to review PIAs. What the E-Government Act *does* allow is for the "equivalent official, *as determined by the head of the agency*," 44 U.S.C. § 3501 note § 208(b)(1)(B)(ii) (emphasis added), to review PIAs. This means that the OPM Director at some point formally determined in some formal document that the Chief Privacy Officer should review PIAs, and the exact wording and nature of that document is determinative in this matter. If the document states that *only* the Chief Privacy Officer may review PIAs, or in any way indicates that the CIO's authority to do so is limited (e.g., if the Chief Privacy Office must be consulted), then the wording of the statute does not apply. Federal agencies must "follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions." *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) (citing *United States ex rel. Accardi v. Shaugnessy*, 347 U.S. 260 (1954)). OPM's attempt to muddy the waters in this matter should not dissuade the Court from insisting on clarity.

This same rationale applies to OPM's refusal to say on the record if Hogan is a Special Government Employee. The OPM CIO position is considered a "General" position, which "may be filled by any type of [Senior Executive Service] appointee – career, noncareer, limited term or limited emergency." OPM, *Overview*, *at* https://www.opm.gov/policy-data-oversight/senior-executive-service/overview-history/# (last accessed Feb. 13, 2025). To avoid any ambiguity, "career, noncareer, limited term, or limited emergency" appointees do not include Special Government Employees. *Id.* Given the persuasive evidence that Plaintiffs have offered to support their reasonable belief that one or both of the signatories on the PIA are Special Government Employees not authorized to issue a PIA, and OPM's stubborn refusal to rebut that evidence, the Court should find that OPM has conceded the point.[5]

OPM's final argument ends as its Opposition began: with hyperbole and unsupported ambiguity. First it argues that the harm from "preventing OPM from merely communicating with Federal Government employees through their official email addresses[] would be tremendous." (OPM's Opp'n at 17.) This assertion requires the Court to conclude that prohibiting an agency from doing something *it just started doing* and requiring it to do *the thing it always did previously* is a "tremendous harm," and that doing so would "disrupt the status quo by interfering with OPM's ability to perform one of its core functions – managing the civil service of the federal government." (*Id.*) The Court should disregard this blatant hyperbole.

---

[5] OPM's inapposite citation to an Office of Legal Counsel ("OLC") opinion should be ignored, but to the extent that the Court does consider it, it does not support OPM's argument. OPM states that the opinion demonstrates that "[a]n SGE's status as such as an ethics designation, not a hiring authority." (OPM's Opp'n at 16.) However, the opinion itself opens with a statement that it was asked to provide an opinion about a government lawyer's responsibilities solely "from the perspective of conflict of interest and professional ethics." 7 Op. O.L.C. 123, 123 (1983). It is no surprise that an opinion specifically about ethics should discuss only ethics.

OPM then "reject[s]" Plaintiffs' contention "that OPM created the GWES system for the sole purpose of communicating with employees about the deferred resignation program." (*Id.*) Despite rejecting this assertion, OPM provides no evidence to show that it is using the GWES for any other purpose or intends to do so in the next fourteen days—the maximum length of a TRO. In contrast, the GWES has literally only been used to send out two test messages and myriad subsequent messages about the deferred resignation program. OPM cannot be heard to complain about how a TRO would harm it by preventing it from doing something that it will not specify.

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' Motion, Plaintiffs' Renewed Motion for a Temporary Restraining Order should be granted, and OPM should be restrained from continuing to operate the GWES and any system(s) connected to it prior to the completion and public release of a required legally sufficient PIA.

Date:   February 7, 2025

                                                  Respectfully submitted,

                                                   /s/ Kelly B. McClanahan
                                                  Kelly B. McClanahan, Esq.
                                                  D.C. Bar #984704
                                                  National Security Counselors
                                                  1451 Rockville Pike
                                                  Suite 250
                                                  Rockville, MD  20852
                                                  501-301-4672
                                                  240-681-2189 fax
                                                  Kel@NationalSecurityLaw.org

                                                  *Counsel for Plaintiffs*