```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2

 3    JANE DOE, et al,
                                         Civil Action
 4              Plaintiffs,              No. 1: 25-234

 5         vs.                           Washington, DC
                                         February 6, 2025
 6    OFFICE OF PERSONNEL
      MANAGEMENT                         10:57 a.m.
 7
                Defendant.
 8    _____/

 9
                TRANSCRIPT OF TRO/STATUS HEARING
10         BEFORE THE HONORABLE RANDOLPH D. MOSS
                UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

13    For the Plaintiff:      Kelly Brian McClanahan
                              NATIONAL SECURITY COUNSELORS
14                            1451 Rockville Pike
                              Suite 250
15                            Rockville, MD 20852

16
      For the Defendant:      Elizabeth J. Shapiro
17                            Olivia Grace Horton
                              U.S. DEPARTMENT OF JUSTICE
18                            1100 L Street, NW
                              Washington, DC 20530
19

20

21

22
      Court Reporter:         SHERRY LINDSAY
23                            Official Court Reporter
                              U.S. District & Bankruptcy Courts
24                            333 Constitution Avenue, NW
                              Room 6710
25                            Washington, DC 20001
```

1          P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Civil case number 25-234, *Jane*

3 *Doe, et al, versus Office of Personnel Management*.

4          Would counsel please approach the podium, state their

5 name for the record, starting with plaintiff's counsel.

6          MR. MCCLANAHAN:  Kyle McClanahan for the plaintiffs,

7 Your Honor.

8          THE COURT:  Good morning.

9          MS. SHAPIRO:  Good morning, Your Honor.  Elizabeth

10 Shapiro from the Department of Justice on behalf of OPM.  And

11 with me is Olivia Horton and Jacob Altic from OPM as well.

12          THE COURT:  Good morning to all of you as well.

13          All right.  So we are here for a hearing on

14 plaintiffs' emergency hearing for a temporary restraining

15 order.  I have reviewed the motion, OPM's response, as well as

16 the privacy impact assessment that OPM has now filed with the

17 Court.

18          And I suppose the question for you, Mr. McClanahan,

19 is where do we stand at this point?

20          MR. MCCLANAHAN:  Apologies, I have a lot of paper.

21          Your Honor, may I go ahead and just give you or give

22 your clerk something that I will be referring to and we can

23 admit it later, so I don't have to keep walking around?

24          THE COURT:  Any objection.

25          MS. SHAPIRO:  No.

1          THE COURT:  Okay.

2          THE COURTROOM DEPUTY:  Thank you.

3          THE COURT:  All right.  Thank you.

4          MR. MCCLANAHAN:  And, Your Honor, as an initial

5     matter, what I have just handed you, before we get into the

6     argument are declarations from uninvolved third parties.  The

7     plaintiffs move to seal these and file them in redacted form

8     with the PII redacted from the general public while the

9     defendant's counsel obviously can see them, for privacy reasons

10    and to avoid harassment.

11         THE COURT:  So these are declarations from the --

12    from the Does in the case?

13         MR. MCCLANAHAN:  No, other people.

14         THE COURT:  Other people?

15         MR. MCCLANAHAN:  Other people, yes, not the Does.

16         THE COURT:  So potential class members, is that what

17    you are saying?

18         MR. MCCLANAHAN:  Actually, no.  All of these people

19    are outside of the class.  We are offering these declarations

20    to show that it did not collect information from just

21    government employees and about federal government employees.

22         THE COURT:  I see.

23         MR. MCCLANAHAN:  And these people are employees

24    around the government.  And they fear for they will be harassed

25    for much the same reasons that Doe plaintiffs did.

1          THE COURT:  All right.  But that seems to me perhaps

2     a different case than the case that is in front of me; right?

3          MR. MCCLANAHAN:  No, that is this case.

4          THE COURT:  The case in front of me is brought by

5     government employees; correct?

6          MR. MCCLANAHAN:  Yes.

7          THE COURT:  Okay.

8          MR. MCCLANAHAN:  But it is the same harassment.  If I

9     am worried about being harassed for being a plaintiff,

10    Ms. Shapiro might be worried about being harassed for being a

11    declarant supporting the plaintiff.  And that is the argument

12    to seal these from the general public.

13         THE COURT:  I guess I am a little confused as to why

14    you are giving these to me.  What purpose they are serving in

15    this case?

16         MR. MCCLANAHAN:  Oh, that is easy.  The entire case

17    of the government hinges on the argument that the

18    government-wide email system only collects information from and

19    about federal executive branch employees.  And these are a list

20    of people who are not federal executive branch employees who

21    got emails from the system in question.  So, clearly, it is not

22    just collecting information about federal government employees.

23         THE COURT:  Okay.

24         MR. MCCLANAHAN:  I can get to the merits of that

25    whenever you want.  I am asking you to seal them preliminarily.

1          THE COURT:  Okay.  Any objection to sealing the two

2    declarations that have been handed to me?

3          MR. MCCLANAHAN:  There is actually four and I have

4    one on my computer that came to me as I was on the train, so I

5    can show you that electronically.

6          THE COURT:  All right.

7          MS. SHAPIRO:  Your Honor, we told plaintiffs counsel

8    that as long as we get the declarations we wouldn't oppose his

9    motion, but we haven't received a motion that has the six-part

10   test for --

11         THE COURT:  So I think I will -- tentatively, I will

12   take these and I won't put them on the public docket yet.  But

13   you will have to file the motion and you can file the motion

14   under seal addressing the test for filing materials under seal.

15         MR. MCCLANAHAN:  Thank you, Your Honor.

16         THE COURT:  Okay.

17         MR. MCCLANAHAN:  And I would ask that if you do deny

18   that motion, then discuss the matter before you put those on

19   the public record.  We may retract them to avoid harming these

20   people.

21         THE COURT:  Okay.

22         MR. MCCLANAHAN:  So that does go to the heart of this

23   case.  The defendant's case is --

24         THE COURT:  Speaking of this, I guess I should just

25   say for the record that I, like I think probably every other

1    judge in the country, also received the OPM email.  I did not

2    respond to it.  And I think there has been later communications

3    from the Administrative Office of the US Courts indicating that

4    we should just ignore the communication.  I suspect that it was

5    sent to the judges by mistake.  And I will be clear for the

6    record, to the extent that there is any question of whether I

7    could ever possibly be a member of the putative class in this

8    case, I hereby renounce any participation as a member of any

9    putative class in this case.

10              MR. MCCLANAHAN:  That is unfortunate.  I was looking

11   forward to representing you.

12              That being said, that is the perfect example here.

13   There are actually articles I believe about Chief Justice John

14   Roberts got one of these emails.  Lots of people got these

15   emails from this government-wide email server.  There were

16   contractors --

17              THE COURT:  But before -- before you just get to that

18   point --

19              MR. MCCLANAHAN:  Yes.

20              THE COURT:  It is my understanding that OPM has done

21   the privacy impact assessment that was the relief you are

22   seeking in this case, so what does that matter?

23              MR. MCCLANAHAN:  Because this privacy impact

24   assessment is not sufficient and it is misleading.  It states

25   several times that it only collected information about current

1    executive branch employees.  That by itself makes it wrong.  It

2    also did not meet any of the test for a sufficient I believe --

3    I believe the exact language from the OMB guidance is -- let me

4    find it.  We are skipping ahead.

5            THE COURT:  This just gets to my question before that

6    I -- my first question is isn't this just a different case than

7    the case you brought, in that the case you have brought is on

8    behalf of executive branch employees?  And I think I would have

9    to look at the complaint here, but I think that is what the

10   putative class was.

11           MR. MCCLANAHAN:  Correct, Your Honor.

12           THE COURT:  And so maybe there is some other case and

13   you would have to file a new complaint or an amended complaint

14   and have new plaintiffs if you wanted to bring that case, but

15   that is a different complaint to say that, well, it also went

16   to some others that perhaps it shouldn't have gone to and that

17   there was some problem with that.

18           MR. MCCLANAHAN:  I understand the confusion here.  We

19   are not offering these exhibits to show these people were

20   harmed.  These people are not members of the putative class.

21   We are offering these exhibits to show that all of their

22   arguments in the PIA and the brief, the opposition brief that

23   they wrote are predicated on no privacy act assessment is

24   required because it only collected information about executive

25   branch employees.  That is the first prong.  The second prong

1    is that -- and to the extent one was required, we did this PIA.

2    But the PIA does not reflect the functional requirements,

3    analysis, alternatives -- analysis, benefits --

4            THE COURT:  That is way, way, way too fast for a

5    court reporter to take down.

6            MR. MCCLANAHAN:  Oh, I'm sorry.

7            THE COURT:  There is not a court reporter in the

8    universe who could type that fast.

9            MR. MCCLANAHAN:  My apologies.

10            That the PIA they provided does not meet the legal

11    standard for a legitimate PIA.  And so that is the two prongs

12    of our analysis -- is number 1, they were required to do a PIA.

13    We have to cover that hurdle before we can get to whether or

14    not this one is sufficient.  And number 2, the PIA they did,

15    did not meet the legal standard and was not sufficient.

16            THE COURT:  How are -- how does any of that result in

17    any injury to Jane Doe 1 or Jane Doe 2 in this case if what was

18    done was sufficient as to them, it just wasn't sufficient as to

19    other folks?

20            MR. MCCLANAHAN:  Oh, the two are not related.  We are

21    saying it was not sufficient as to anyone.  We are saying that

22    even to the putative class, the PIA was not sufficient because

23    it did not meet any of the standards of a sufficient PIA.

24            THE COURT:  But I thought you were saying the reason

25    it didn't meet the standards was because it only addressed

1     executive branch employees and not third parties.

2              MR. MCCLANAHAN:  No, that is the first argument.

3     There are two separate arguments.

4              THE COURT:  You motion doesn't include -- I mean,

5     again, maybe this is another motion you need to bring some

6     other day if you wanted to.  Your motion doesn't say anything

7     about -- understandably because you didn't have the assessment.

8     But you don't -- your case is not a case in which says, the

9     problem here is, yes, they did a PIA, but the PIA doesn't

10    satisfy X, Y and Z.  There is no briefing in front of me on any

11    of that.  I mean, I can't imagine a world in which I could,

12    sitting here today, say, yes, I am going to grant you a TRO

13    based on arguments that were never presented to me.  And ones

14    which I have some doubt, I will have to say to start with,

15    because the standards for what has to be in the PIA are

16    relatively minimal.

17             And also the other thing is that, you would have to

18    point me to some authority.  We looked for authority relating

19    to section 208 of the E-Government Act.  And I don't think we

20    found a single case ever in the 20-some years that law has been

21    on the books in which any court has ever considered a challenge

22    based on the sufficiency of the PIA versus simply whether it

23    was done or not or whether one was required or not.  But I have

24    never seen -- we have never seen a case where a Court went

25    through and said, well, you know, you did it here, but this --

1    I am not sure that sentence really satisfies what you are

2    supposed to be doing on that particular topic.

3              MR. MCCLANAHAN:  So those are two different points

4    you made.

5              THE COURT:  They are.

6              MR. MCCLANAHAN:  And I am going to address them in

7    reverse order.

8              THE COURT:  Okay.

9              MR. MCCLANAHAN:  There is no authority that says this

10   because this has never happened before.  There are only, I

11   think, ten cases on section 208, period.  This is not a heavily

12   litigated area.  And this is the very first case, getting to

13   the second point, where a PIA has been offered with an

14   opposition to a motion.  And so I think it would be unfair,

15   with all due respect, to make me file another motion because

16   they issued a PIA after I filed my motion for a TRO saying they

17   didn't file a PIA.

18             THE COURT:  Okay.  In that case your motion for a TRO

19   is denied on the grounds that the grounds stated in the motion

20   for the TRO are no longer apt, because you said -- the grounds

21   that you cite for the TRO is that they didn't do a PIA.  They

22   have now done one.  The relief that you sought was I ordered

23   them to do it.  They have now done it.  So if that is where we

24   are, that is fine, I can deny it.  And then you file another

25   motion, if you think it is appropriate.  But I don't see how I

1    can possibly say, you are right, you know, I am going to grant

2    relief here based on something that is not even in your motion.

3                MR. MCCLANAHAN:  And I understand that, Your Honor.

4    My counterpoint would be that a PIA is implicit -- implied in

5    they must file a PIA.

6                THE COURT:  You have known about this now for at

7    least for 24 hours, if not longer.

8                MR. MCCLANAHAN:  Yes.

9                THE COURT:  You could have in the past day come in,

10   if you wanted to, and filed a supplement, a reply or another

11   motion saying, okay, here are the problems and you didn't do

12   that.

13               MR. MCCLANAHAN:  That is correct, Your Honor.  I was

14   preparing to make my arguments today.  And I was blindsided by

15   this PIA.  Now, that is not their fault.  They filed a PIA.

16   But --

17               THE COURT:  That is what you wanted them to do.

18               MR. MCCLANAHAN:  I will highly contest that.

19   Because, as I was saying, a PIA -- a PIA -- the requirements

20   that they file PIA -- forget about the details, just the basic

21   threshold requirement is that an agency must file a PIA in

22   accordance with the law defining a PIA.  They cannot file a PIA

23   saying we looked at stuff, bye, and that is a sufficient PIA.

24   And this is only slightly better than that.  I would push back

25   a lot on your statement that the requirements for a PIA are

1    relatively straight -- simple.  The guidance -- the OMB rules

2    for what must go into a PIA, especially for a significant

3    system, are extensive.  And those say that they need to

4    require --

5              THE COURT:  Is a failure to comply with the OMB

6    guidance actionable under the APA --

7              MR. MCCLANAHAN:  I would argue so.  We haven't

8    briefed it yet.

9              THE COURT:  Right.

10             MR. MCCLANAHAN:  And -- right.  But my point is the

11   OMB was given -- they cite the OMB rules.  They are relying on

12   the OMB rules, even if we say they are relying on the OMB

13   rules, well, then the OMB rules they are citing don't support

14   their case.  So it is not really fair.

15             THE COURT:  So what the statute says is that the PIA

16   has to indicate what information is to be collected, why the

17   information is being collected, the intended use of the

18   agency -- of the information, with whom the information will be

19   shared, what notice or opportunities for consent would be

20   provided.  How the information will be secured and whether the

21   system of records is being created -- or a system of records is

22   being created under the Privacy Act.  And I believe that, you

23   know, one can at least look at what they filed and check each

24   of those boxes.  You may think they have erred in some

25   respects, but I think each of those boxes can be checked based

1    on what that they have filed.

2         MR. MCCLANAHAN:  The statute also says, it must be

3    commensurate with the size of the information system being

4    assessed, the sensitivity of the information that is in

5    identifiable form in that system and the risk of harm to --

6         THE COURT:  Slow down, please.  Slow.

7         MR. MCCLANAHAN:  Sorry.  The sensitivity of the

8    information that is in identifiable form in that system and the

9    risk of harm from unauthorized release of that information.

10   That is section 208(b)(2)(B)(i).  This did not do that.

11        Even if you say that what information is collected

12   was met by -- we collected email addresses and names.

13        THE COURT:  So can I just pause for a second?  I

14   think maybe we are getting a little bit ahead of ourselves --

15        MR. MCCLANAHAN:  Okay.

16        THE COURT:  -- at this point.  And I am happy to hear

17   from Ms. Shapiro as well about this.  But my sense of where we

18   stand is just that there is a different, perhaps, case and

19   certainly a different motion in front of me at this point.  And

20   I am not in a position to know whether the arguments you are

21   making are right or wrong now.  But I just can't imagine that I

22   am going to based on an oral motion enjoin a government system

23   without providing OPM with some opportunity to respond.  And

24   they are presumably hearing your arguments for the first time

25   now as well.

1          And so what I would propose is that I deny the

2    pending motion for a temporary restraining order and

3    preliminary injunction.  And we can talk about whether I deny

4    it as moot or what the proper form of the denial is and then

5    set a schedule.  And if you want to file something else in the

6    case, you may need to amend your complaint.  It is still early

7    in the litigation under Rule 15.  I suspect you would be

8    entitled to file an amendment.  Do that and then tee things up

9    in a way in which we all know what the arguments are, if there

10   are cases to cite, cite the cases.  The government can respond

11   and then we can have another hearing at this point in time.

12         MR. MCCLANAHAN:  Your Honor, that is mostly

13   unfeasible due to the fact that federal employees are being

14   told that if they are going to respond to this email they have

15   to do so by today.

16         THE COURT:  Right.

17         MR. MCCLANAHAN:  And the delay in this TRO, contrary

18   to the government's position, is not on me, because I was

19   waiting for permission to file John Doe.  It wasn't even

20   assigned to you until yesterday, even though I filed it on

21   Monday of last week.  So I filed it as soon as I could.  And

22   I -- I apologize that we are under the gun here.  But even if

23   you were to issue an administrative hold for a day to allow us

24   time to brief it today, I can write the motion you want this

25   afternoon and we can have a hearing tomorrow.  But we are under

1    a ticking clock here.

2            THE COURT:  I understand that.  You know, I, quite

3    frankly, think that that is somewhat on you.  I mean, I think

4    what you had filed with Judge Boasberg -- my recollection is

5    that it wasn't sufficient and you had to go back and fix some

6    things that were not adequate on what you filed with him.  But

7    the real thing that is on you --

8            MR. MCCLANAHAN:  I filed it again the same day.

9            THE COURT:  But what I was saying, I think the real

10   thing that is on you is that, as soon as you got the PIA if you

11   had a different motion, you should have filed something with

12   the Court even on an emergency basis, so that we weren't doing

13   this orally in court here today.

14           MR. MCCLANAHAN:  So --

15           THE COURT:  For example, I take your point about the

16   fact that -- I mean, I know judges received the OPM email.

17   There may be others outside of the executive branch that did

18   so.

19           MR. MCCLANAHAN:  Outside the entire government.  We

20   have contractors in there.

21           THE COURT:  That may be the case.  But the real

22   question is, whether going forward, OPM is doing that, because

23   this isn't a case seeking damages.  It is an APA case seeking

24   injunctive relief going forward.  And, again, I know that the

25   judges received that one email and that whatever problem was

1    there was apparently fixed.  And the judges have not received

2    any communications from OPM since then.

3            MR. MCCLANAHAN:  One of the sources that offered a

4    declaration received an email this morning saying, reminder, it

5    is the final day to respond.

6            THE COURT:  Okay.  All right.  That may be, but the

7    government hasn't had a chance to respond in any way to that.

8    And so I don't really know how I can proceed.  And I understand

9    that people are under pressure to respond, but the people who

10   are under pressure to respond are the executive branch

11   employees who are covered by the PIA.  So to the extent there

12   is deficiency in the PIA it is maybe that it doesn't address

13   non-executive branch employees.  But, you know, it is hard for

14   me to see what the irreparable injury would be to the

15   government employees in responding where the only real problem

16   that you have identified, or there may be others, but the only

17   one that you have identified to me thus far is that --

18           I think that is just an echo.

19           I think we are on the public line, that is why we are

20   getting an echo, that is all.

21           But the problem that you have identified for me is it

22   went to people who were not executive employees.

23           MR. MCCLANAHAN:  But that is not -- just to clarify,

24   I am not --

25           Can we turn off --

1          THE COURTROOM DEPUTY:  It is the public line.

2          MR. MCCLANAHAN:  Okay.

3          I am not saying that the people who received it

4    outside the executive branch are harmed.  My point is this PIA

5    misleads the Court.  It is no different than if the PIA said,

6    we only collect names and then they also collected email

7    addresses.  They filed a PIA with incorrect, fundamentally

8    wrong information in it.  You cannot accept that as evidence.

9          THE COURT:  But the irreparable injury that you point

10   to is the risk that because OPM did not give adequate attention

11   to privacy interests when it created this email list, that

12   there is a greater risk of a hacking incident in which people's

13   PII could be misappropriated.

14         MR. MCCLANAHAN:  Correct.  And that remains.

15         THE COURT:  But nothing you are telling me now about

16   the deficiencies, as far as I can tell, go to that question.

17   The fact that there -- this may have inadvertently or

18   inappropriately been sent to government contractors or

19   executive branch contractors and not executive branch employees

20   or the fact that it may have gone to somebody who worked for

21   Library of Congress.  And the Library of Congress is in the

22   legislative branch and not in the executive branch, although

23   there may be debates about that, I don't know.  But I don't see

24   how those issues go to the irreparable injury that Jane Doe 1

25   or Jane Doe 2 suffer.  Because someone has looked at it and

1    said, here is what we are doing to protect the privacy of those

2    who are responding.

3              MR. MCCLANAHAN:  So I think I can make this crystal

4    clear with a hypothetical.  If they issued a PIA that was full

5    of just transparent lies -- and I am not saying they did.  But

6    if they did and I could show, nothing in this PIA is true, it

7    is factually wrong.  Then they have not submitted a PIA.  They

8    have not submitted true evidence.  They have submitted false

9    evidence and therefore the irreparable harm remains unchanged

10   that they have not issued a PIA, they have issued a false PIA.

11   If the PIA, we can show, factually misrepresents the most

12   fundamental question:  What information is in the system, then

13   you cannot trust anything else in it.

14             THE COURT:  All right.  All right.  Anything else you

15   want to add before I hear from Ms. Shapiro?

16             MR. MCCLANAHAN:  No, Your Honor.  But I would ask

17   that I be able to come back up and address what she says.

18             THE COURT:  That is fine, you can respond.

19             MR. MCCLANAHAN:  Thank you, Your Honor.

20             MS. SHAPIRO:  Good morning, Your Honor.

21             THE COURT:  Good morning.

22             MS. SHAPIRO:  Our position is that the case is moot,

23   that if he wants to -- plaintiff wants to challenge the

24   adequacy of the PIA, then that he needs at a minimum to amend

25   the complaint.  There is certainly no irreparable harm.  Even

1    if there were mistakes in the initial test batch, that doesn't

2    mean that the PIA is wrong in what it describes.  And that is

3    not what this complaint asks for.  It asks to -- it

4    specifically asks relief in the form of an injunction until a

5    PO was filed.  That was done.  Although OPM maintains that

6    there was no need to file the PIA, but it did do the PIA.  It

7    is a PIA that looks very much like others.  It contains all of

8    the requisite elements.

9              And in terms of irreparable harm, I just don't know

10   what it is.  I suspect that if this email -- if the contents of

11   this government-wide email had been to tell every executive

12   branch employee that they were getting a raise, we wouldn't be

13   here fighting about the adequacy of the PIA.  So I don't really

14   think this is a sort of data adequacy lawsuit.  There is no

15   harm being suffered by the fact that people who can receive

16   emails from their own agencies and from OPM are receiving them

17   at one time and instead of separately.  So I guess I don't see

18   the injury.  There is certainly no basis for irreparable harm.

19             And I -- you know, I guess I think of *TransUnion*,

20   with respect to Your Honor, even if there is a mistake in

21   there, until there is an actual harm, if you correct that

22   mistake, I think that was exactly the *TransUnion* case.

23             THE COURT:  One of the problems here is that as

24   perhaps these affidavits demonstrate, I am not sure I know the

25   facts terribly well here.  And you indicate that, well, this is

1    no different from people just getting emails from their

2    agencies that they work for.  You know, there obviously is some

3    reporting which may or may not be true, you know, indicating

4    that the system was originally set up by non-OPM employees who

5    came in and set it up, you know, raising some of the security

6    concerns I suppose that Mr. McClanahan is concerned about.

7            Do you have a suggestion of what we could do to

8    actually make sure we understand the -- if we are going to

9    proceed further here and if I do what I am suggesting makes

10    sense, which is to deny the current motion for a TRO or

11    preliminary injunction, grant Mr. McClanahan leave to amend and

12    file a new motion, if he has a basis for doing so and he deemed

13    it appropriate, how do we then get an administrative record

14    which I can then intelligently look at those materials and not

15    simply be guessing or relying on media reports about what was

16    going on?

17            MS. SHAPIRO:  Well, I think we would have to see what

18    the amended complaint looked like and what the motion says and

19    on what basis they establish standing.  I think we, of course,

20    would want to have the opportunity to evaluate those

21    allegations and threshold defenses that we likely would have.

22    And I can't sort of predict factually what the arguments are.

23            THE COURT:  Right.

24            MS. SHAPIRO:  I do understand that only OPM employees

25    are working on the system.

1      THE COURT:  What about past tense?  I mean, you --

2  that is current tense.  What about past tense?

3      MS. SHAPIRO:  My understanding -- and, again, my --

4  it is my understanding only, I am not -- I don't have

5  declarations or anything of that nature -- is that anybody in

6  the agency was a special government employee who was bound by

7  all of the normal restrictions and commitments that government

8  employees are bound by.

9      THE COURT:  Okay.  All right.  Okay.  Anything else

10  you want to add?

11      MS. SHAPIRO:  No.  I think that the TRO should be

12  denied.  And I would hope if there is an amended complaint that

13  we wouldn't be back here on an emergency basis.  As you can

14  imagine, it is taxing for everybody involved, the Court, the

15  parties.  There are a lot of TROs right now and --

16      THE COURT:  I have noticed.

17      MS. SHAPIRO:  -- the fact that we were here yesterday

18  and today on the same TRO is not helpful.  So I would hope that

19  we could proceed in a more orderly fashion in whatever claim

20  that plaintiff wants to bring at this point.

21      THE COURT:  Okay.  Thank you.  Let me hear then from

22  Mr. McClanahan.

23      MR. MCCLANAHAN:  Your Honor, just a few brief points.

24  I mentioned an administrative stay.  That is under 5 U.S.C. 705

25  as laid out in *United States v. Texas* by Justice Barrett at 144

```
1    S.Court 797.  An administrative stay --

2              THE COURT:  I see you found Judge AliKhan's opinion

3    when she cited to Judge Barrett on that.

4              MR. MCCLANAHAN:  Yeah.

5              THE COURT:  But, I mean, I have to say, to the extent

6    you are talking about an administrative stay under section 705,

7    the case law says it is the same standard that applies there

8    that applies for a TRO or a preliminary injunction.  To the

9    extent you are talking about an administrative stay in the

10   sense that courts of appeals or the Supreme Court at times has

11   issued administrative stays, I think there may well be times

12   when that is appropriate.  I am not convinced as we sit here

13   today, that this is such a circumstance where I have to

14   preserve the status quo just long enough for me to even be able

15   to consider a TRO.  A TRO has been filed in front of me.  There

16   is -- as I said, there was an opportunity to amend which hasn't

17   occurred.  And so, quite frankly, I don't think that this is a

18   case in which the case gets mooted in some way, for example, if

19   I don't do something in the next several hours.  Presumably

20   this is a system that is in place going forward.  And the case

21   is not -- this case also is not about the offer to federal

22   employees to respond by the end of the day today with respect

23   to whether they want to take advantage of the opportunity to

24   resign while still maintaining their salary and perhaps some

25   status through or until September.
```

1        And that at least that maybe tangentially at issue,

2   because they are using the system for this purpose.  It is not

3   really what the case is about itself.

4        MR. MCCLANAHAN:  I agree that we are not challenging

5   the deferred resignation program, but when the government says,

6   if you wish to do this, you may only do so by sending an email

7   to this server that we are saying is insecure.

8        THE COURT:  Yeah.

9        MR. MCCLANAHAN:  The administrative stay, as I say in

10  the motion -- and I don't mention the administrative stay in

11  the motion obviously.  But in the motion I say, there is

12  nothing stopping them from sending out a memo saying, you may

13  respond by contacting your HR office.  And then they can

14  continue with the deferred resignation program.

15       THE COURT:  How could they do that?  Would they send

16  that message using the OPM email address or how would they get

17  that to everybody?

18       MR. MCCLANAHAN:  I would suggest they use the normal

19  system and contact the agencies and the agencies will send out

20  messages.  That is the way they have done it since computers

21  were in the federal government.

22       THE COURT:  Right.  So as is probably evident at this

23  point, I am not convinced at this point there is enough there

24  there to take the extraordinary step of issuing either a TRO or

25  an administrative stay.  But what I would really like to talk

1   about now is just schedule what you want to do going forward

2   with the case.

3           MR. MCCLANAHAN:  May I first correct something that

4   Ms. Shapiro said?

5           THE COURT:  Yes.  Sure.

6           MR. MCCLANAHAN:  So she was talking about how there

7   may have been mistakes in the initial test batch.  And as I

8   said, one of the declarants is not in the declaration

9   obviously, because the declaration was signed before this

10  happened, but got it this morning.  That is the one that is on

11  my computer that I can show you if you want.  Page 2 of the

12  ones that I gave you, got four emails.  There are only two test

13  emails.  And so it is wrong to suggest that that was corrected

14  by OPM.  The Library of Congress stopped getting them because

15  they stuck a filter in to stop them from going through to

16  recipients.

17          And so it is not safe to say that this information

18  is -- was just a couple of tests and then it got taken out.  We

19  have no evidence of that.  I don't think that is relevant, but

20  I wanted to push back on that factual assertion.  And it does

21  not change the fact that for all of those, we don't know what

22  was ingested into this system.  Because they said they only

23  ingested federal government -- executive branch employees'

24  information and they didn't.  So your information may still be

25  in there.  Her information may still be in there.  We don't

1    know.  And we think that it is a gross violation of the privacy

2    intent of the E-Government Act to allow this server to stay up

3    until we know.  And I am -- that is my diatribe.

4          THE COURT:  Okay.  All right.  So what do you want to

5    do about schedule?

6          MR. MCCLANAHAN:  Well, if you don't grant a TRO or a

7    stay today, we still want to move on this quickly.  And so, as

8    I said, I can file the new motion today.  And I would ask that

9    at the very latest, they file their opposition tomorrow, if not

10   tonight, because this is still an urgent matter.

11         THE COURT:  Why is it that urgent?

12         MR. MCCLANAHAN:  Because every day that the server

13   stays up, it is more likely to be hacked.  Every minute that

14   the server stays up, it is more likely that someone sends

15   information to it that will be hacked.  This server needs to go

16   down until we resolve the privacy issues.

17         THE COURT:  Well, you are welcome to file when you

18   would like to.  And you are going to have to, I think, also

19   file an amended complaint as well; correct?  I mean, I think

20   your challenge now is just a different challenge than it was

21   yesterday.

22         MR. MCCLANAHAN:  I mean, to the extent that you draw

23   a distinction between must file a PIA and must file a

24   sufficient PIA.  I can file an amended complaint, but it is

25   going to have like two words different in it.  Yes, I am

1    willing to do that.

2           THE COURT:  You are welcome to make two-word changes,

3    but you may be aware that the government may move to dismiss on

4    the grounds that it only has two words different from the

5    current version.  It does seem to me that you are making a very

6    different challenge now than you have previously.  And I would

7    just encourage you to spell it out as much as possible.  And,

8    quite frankly, I don't know whether any of these people who are

9    not executive branch employees have approached you about

10   representing them in the case as well, but I think that is

11   something that would be better resolved now rather than later.

12   Because I don't know how I come out on this, but I am certainly

13   unsure whether two executive branch employees would have either

14   constitutional or statutory or prudential standing to come in

15   and complain about the fact that emails went to nine executive

16   branch employees.  And so I think it is --

17          MR. MCCLANAHAN:  You have already said you won't be

18   part of the class, so I will have to go find somebody else.

19          THE COURT:  Well, there you go.  And I am not

20   suggesting that you do so, I am just suggesting that you do so

21   earlier rather than later with another round that delays things

22   further, if that is what you are pursuing.

23          MR. MCCLANAHAN:  Agreed, Your Honor.

24          THE COURT:  So just tell me when you want to file an

25   amended complaint.  And you are welcome to file a new motion if

1    you want to.  But you need to tell me when and I will hear from

2    Ms. Shapiro about when she wants to respond.

3            MR. MCCLANAHAN:  I have but ten fingers and so it is

4    one of the things of -- amended complaint or the TRO.

5            THE COURT:  I will also tell you that, it is

6    Thursday.  It is -- I am not going to have a hearing on this

7    over the weekend, so I don't think it is -- I really don't

8    think it is likely we are going to be in a position until we

9    could have a hearing until sometime next week again.

10           MR. MCCLANAHAN:  Are you formally saying you are

11   denying the motion?  Like, it is not up in the air that --

12           THE COURT:  I think I have sort of outlined it, but I

13   will before we adjourn today put on the record my formal

14   decision.

15           MR. MCCLANAHAN:  You are denying the administrative

16   stay?

17           THE COURT:  Yes, correct.

18           MR. MCCLANAHAN:  In that case, I would file my

19   motion -- I mean, we can do -- oh, I just realized something.

20           How about a one-day turn around?  That I file -- I

21   will file my motion by midnight tonight.  She files hers by

22   midnight tomorrow tonight and we have a hearing on Monday?

23           THE COURT:  Well, I don't -- that seems to me to be a

24   little faster than is necessary.  And I do realize that -- let

25   me put it this way:  The lawyers in the Justice Department who

1    are responding to all of these motions, they are not the ones

2    who are creating the rather chaotic world in which we live

3    right now.  And they are human beings who are doing their best

4    to deal with the various motions they are facing.  And I don't

5    want to put them through any unnecessary pain in the process.

6    If you want to file by midnight tonight, that is fine.  I think

7    I would give them though until --

8              MR. MCCLANAHAN:  May I say something before you

9    answer?

10              THE COURT:  Yes.

11              MR. MCCLANAHAN:  So I have a security clearance

12    appeal hearing that is going to take all day on Wednesday that

13    cannot be rescheduled.

14              THE COURT:  Okay.

15              MR. MCCLANAHAN:  It is out of my control.  And I am

16    spending all day Tuesday in prep for that.  So if this hearing

17    doesn't happen on Monday, it can't happen until the end of the

18    week.

19              THE COURT:  When you say you are in prep for it, is

20    that prep that you can do Monday instead?

21              MR. MCCLANAHAN:  Witness prep.

22              THE COURT:  But couldn't you just move that?  If I

23    set something on Tuesday, couldn't you do that on Monday

24    instead, do your prep on Monday instead?

25              MR. MCCLANAHAN:  You are saying that we'll have the

1    hearing on Tuesday and then --

2            THE COURT:  I mean, if you are telling me you can't

3    do it on Wednesday, then we could do it on Tuesday, then you

4    might have to move your prep to Monday.

5            MR. MCCLANAHAN:  I can do that, but that means I

6    can't work on this hearing.  And so I am in the same boat as

7    the government of having to respond to more things.

8            THE COURT:  Of course, I am sympathetic to all

9    involved.  I am not trying to make anyone's lives miserable.  I

10   just am --

11           MR. MCCLANAHAN:  I can do that if I must, but my

12   request is that it be on Monday, but it is up to you obviously.

13           THE COURT:  Yeah, thank you.

14           Well, I am going to give the government until noon on

15   Monday to respond.  And then let's see if we have time.  Do we

16   have time for a hearing on Tuesday?

17           THE COURTROOM DEPUTY:  Your Honor, if we do it on

18   Tuesday, the only available time would be 3:00 p.m.

19           THE COURT:  Okay.

20           MR. MCCLANAHAN:  I can do that.  Are we going to run

21   into the same problem we ran into today, where if they file

22   something brand new and I don't file a reply brief because I am

23   prepping, you are going to say, well, you didn't file a reply

24   brief.

25           THE COURT:  If that happens and you say to me, Judge,

1   I need to be able to respond to this, can we push it to

2   Thursday or Friday, I will do that.  I am -- the only reason we

3   are on such a tight schedule here is you are requesting the

4   schedule, the tightness.

5           MR. MCCLANAHAN:  Right.

6           THE COURT:  So if you look at it and you say, I need

7   more time and you file something with the Court saying, I need

8   more time to respond to this, I understand we will have to push

9   the hearing, that is fine with me.

10          MR. MCCLANAHAN:  Okay.  Thank you, Your Honor.

11          THE COURT:  Okay.

12          MR. MCCLANAHAN:  Do you want me still up here or --

13          THE COURT:  Let me hear from Ms. Shapiro.

14          Yeah, come on back.

15          MS. SHAPIRO:  Thank you.

16          I guess I don't understand the accelerated timeframe

17  because the only harm that has been articulated today is that

18  it is more likely to be hacked.

19          THE COURT:  Yeah.

20          MS. SHAPIRO:  There is no difference today versus,

21  you know, two days.  That statement is not sufficient even to

22  get to standing.  It is purely speculative.  So if that is the

23  basis for sort of working through the weekend and rushing a

24  hearing, I don't understand that.

25          THE COURT:  Yeah.

1          MS. SHAPIRO:  I mean, we are briefing some of these

2    on a PI schedule which is 7 days.  He is looking for a TRO

3    schedule that I don't think it warranted.  Also, I am not

4    available Tuesday at that time.  I have a doctor's appointment,

5    which takes something like two years in advance, so I am not

6    willing to reschedule that.

7          THE COURT:  Okay.

8          MS. SHAPIRO:  And so I would suggest maybe at the end

9    of next week after the hearing that Mr. McClanahan has would be

10   more realistic timing.

11         THE COURT:  All right.  Mr. McClanahan, do you want

12   to respond to that?

13         It does seem to me to be --

14         MR. MCCLANAHAN:  Everyone's schedules are crowded.

15         THE COURT:  -- a fair point.

16         MR. MCCLANAHAN:  Believe me, I get that.  The -- let

17   me double check one thing.

18         THE COURT:  Okay.

19         MR. MCCLANAHAN:  Okay.  So we are now getting into

20   the counsel's respective schedules.  And while I am entirely

21   sympathetic to Ms. Shapiro's need, she has an entire Department

22   of Justice.  She didn't even sign the oppo'.  That was her

23   cocounsel.  And I do not have an entire Department of Justice.

24   And after that hearing on Wednesday, I am preparing for another

25   hearing that is the following week and interviewing about ten

1   witnesses, as well as having status conference on Thursday and

2   submitting a voluminous exhibit folder for the following week.

3            THE COURT:  So are you available on Friday the 14th,

4   Valentine's Day for a hearing here, which might give you a

5   little bit more time too and I can give the government a little

6   bit more time and give you a little bit more time if you want

7   to file a reply.  Quite frankly, I would rather have this be

8   presented in as coherent a fashion as possible.  I think we are

9   going to make more progress that way.

10           MR. MCCLANAHAN:  As would I.

11           THE COURT:  I am also happy to push it into the

12  following week, if you prefer.

13           MR. MCCLANAHAN:  May I ask that if we have it on

14  Friday, we have it by Zoom?  Because that frees up two hours of

15  my day not having to commute down here.

16           THE COURT:  You know, I prefer doing these things in

17  person.  I think our exchange is better here than it will be by

18  Zoom.  And so I guess my preference would be to do it in

19  person.  If it was a matter of last resort, I would do it by

20  Zoom.  My preference is to try to do these in person.

21           MR. MCCLANAHAN:  I mean, I -- again, voluminous

22  exhibit folder due on Friday that I am not going to be working

23  on until Thursday of because of the hearing on Wednesday.

24           THE COURT:  So what does your schedule look like the

25  following week then?

1           MR. MCCLANAHAN:  I have a hearing on Thursday.

2           MS. SHAPIRO:  I can solve this, Your Honor.

3           THE COURT:  Okay.

4           MS. SHAPIRO:  My appointment is actually the

5 following Tuesday.  So if we are talking Tuesday the 11th, that

6 is fine.

7           THE COURT:  So do you want to stick with that date

8 then?

9           MS. SHAPIRO:  If that is the only date --

10           THE COURT:  I was also trying to frankly give you all

11 a little bit more time for briefing on this understanding --

12           MS. SHAPIRO:  That is very much appreciated.

13           THE COURT:  -- understanding the pressure you are all

14 under.  I take it if we can do it on Friday that it still would

15 be better for you, in that it gives everyone a little bit more

16 time.

17           MS. SHAPIRO:  Yes.

18           MR. MCCLANAHAN:  I would say Tuesday if in person,

19 Friday if by Zoom would be my stated preference.

20           THE COURT:  I will -- I am going to do it in person

21 on Friday.  But if you want to appear by Zoom, I will allow you

22 to do it.  But the government lawyers are going to be here in

23 person.  And if there is anything that you want me to look at,

24 you are going to have to provide copies to the government in

25 advance and make sure the Court has copies of it in advance if

1    there are any papers if you want to pass up or anything like

2    that.

3           MR. MCCLANAHAN:  In that case, as a procedural

4    matter, I would ask -- I am not going to try to enter these

5    into evidence that I gave you today yet.

6           THE COURT:  Okay.  Do you want me to pass those back

7    to you then?

8           MR. MCCLANAHAN:  I don't want to file a motion to

9    seal yet.

10           THE COURT:  Do you want me to pass these back then?

11           MR. MCCLANAHAN:  I trust you.  You can shred them.

12           THE COURT:  Okay.  Thank you.

13           So if we are going to do this on Friday --

14           What time on Friday, Glenda?

15           THE COURTROOM DEPUTY:  10:00 a.m. on Friday the 14th.

16           THE COURT:  I will allow plaintiffs' counsel to

17    appear by Zoom.  And in light of that, I am going to push

18    back --

19           MR. MCCLANAHAN:  Can we do it at 11:00?  I have to

20    take my kids to school and won't get back in time.

21           THE COURT:  Any objection to that?

22           MS. SHAPIRO:  No.

23           THE COURT:  Okay.  We'll do it at 11:00.  That is

24    fine.

25           And I am going to then push back the time for

1   Government to file its opposition until COB on Tuesday.  And

2   then --

3          MR. MCCLANAHAN:  Can I file mine tomorrow?

4          THE COURT:  Yes, that is fine.  COB Tuesday and then

5   if you are going to file a reply, make sure I have it by COB on

6   Wednesday.

7          MR. MCCLANAHAN:  I am in the hearing already on

8   Wednesday.  Can I do it Thursday by noon?

9          THE COURT:  Noon on Thursday, okay.

10         All right.  And then just for the record, I am

11  denying the motion for a TRO.  And I think what I am going to

12  do is just deny it as moot, because the relief that is sought

13  in the TRO is the issuance of the PIA.  And I understand that

14  your view is that the one that was issued is inadequate in some

15  respects.  But that is just a different request than that they

16  issue a PIA before they take any action.  They have done it

17  now.  You may argue that it is inadequate in various respects.

18  And I just think that is a different challenge and a different

19  argument than that one that is raised in the motion for a TRO,

20  so I will deny that as moot.

21         Anything else before we adjourn?

22         MR. MCCLANAHAN:  Just to clarify, my deadline is

23  midnight tomorrow night and not close of business?

24         THE COURT:  That is fine, yeah.

25         MR. MCCLANAHAN:  I do most of my work at night.

```
1              THE COURT:  All right.  That is fine.  Anyone who

2    wants to stay up is welcome to do so.

3              All right.  Anything else before we adjourn?

4              MR. MCCLANAHAN:  No, Your Honor.  Just please shred

5    those.  Or you can give them to me.

6              THE COURT:  I will hand them back to you, if that is

7    the way you feel about it.  I would rather hand them back.

8              I have already lost them, you see.

9              There we are.

10             All right.  I will hand those back.

11             All right.  Thank you all.

12             MR. MCCLANAHAN:  Thank you, Your Honor.

13             I do apologize for yesterday.  That was yesterday --

14             THE COURT:  You can apologize to them over there.

15             MR. MCCLANAHAN:  I apologize to them too.

16             (Proceedings concluded at 11:47 a.m.)

17

18

19

20

21

22

23

24

25
```

1           C E R T I F I C A T E

2

3           I, SHERRY LINDSAY, Official Court Reporter, certify

4    that the foregoing constitutes a true and correct transcript of

5    the record of proceedings in the above-entitled matter.

6

7

8

9

10          Dated this 13th day of February 2025.

11

12          _____
            Sherry Lindsay, RPR
13          Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

**MR. MCCLANAHAN: [95]**
2/9 2/25 5/7
18/20 18/22 20/17 20/24 21/3
21/11 21/17 30/15 30/20 31/1 31/8
33/2 33/4 33/9 33/12 33/17 34/22
**THE COURT: [113]**
**THE COURTROOM DEPUTY: [5]** 2/2
3/2 17/1 29/17 34/15

## 1

**10:00 a.m [1]** 34/15
**10:57 [1]** 1/6
**1100 [1]** 1/18
**11:00 [2]** 34/19 34/23
**11:47 [1]** 36/16
**11th [1]** 33/5
**13th [1]** 37/10
**144 [1]** 21/25
**1451 [1]** 1/14
**14th [2]** 32/3 34/15
**15 [1]** 14/7

## 2

**20-some [1]** 9/20
**20001 [1]** 1/25
**2025 [2]** 1/5 37/10
**20530 [1]** 1/18
**208 [3]** 9/19 10/11 13/10
**20852 [1]** 1/15
**234 [2]** 1/4 2/2
**24 [1]** 11/7
**25-234 [2]** 1/4 2/2
**250 [1]** 1/14

## 3

**333 [1]** 1/24
**3:00 p.m [1]** 29/18

## 6

**6710 [1]** 1/24

## 7

**705 [2]** 21/24 22/6
**797 [1]** 22/1

## A

**a.m [3]** 1/6 34/15 36/16
**able [3]** 18/17 22/14 30/1
**about [34]** 3/21 4/9 4/10 4/19
4/22 6/13 6/25 7/24 9/7 11/6
11/20 13/17 14/3 15/15 17/15
17/23 19/13 20/6 20/15 21/1 21/2
22/6 22/9 22/21 23/3 24/1 24/6
25/5 26/9 26/15 27/2 27/20 31/25
36/7
**above [1]** 37/5
**above-entitled [1]** 37/5
**accelerated [1]** 30/16
**accept [1]** 17/8
**accordance [1]** 11/22
**act [4]** 7/23 9/19 12/22 25/2
**action [2]** 1/3 35/16
**actionable [1]** 12/6
**actual [1]** 19/21
**actually [5]** 3/18 5/3 6/13 20/8
33/4
**add [2]** 18/15 21/10
**address [4]** 10/6 16/12 18/17
23/16
**addressed [1]** 8/25
**addresses [2]** 13/12 17/7
**addressing [1]** 5/14
**adequacy [3]** 18/24 19/13 19/14
**adequate [2]** 15/6 17/10
**adjourn [3]** 27/13 35/21 36/3
**administrative [12]** 6/3 14/23
20/13 21/24 22/1 22/6 22/11
23/9 23/10 23/25 27/15
**admit [1]** 2/23
**advance [3]** 31/5 33/25 33/25

**advantage [1]** 22/23
**affect [1]** 29/24
**after [3]** 10/16 31/9 31/24
**afternoon [1]** 14/25
**again [6]** 9/5 15/8 15/24 21/3
27/9 32/21
**agencies [4]** 19/16 20/2 23/19
23/19
**agency [3]** 11/21 12/18 21/6
**agree [1]** 23/4
**Agreed [1]** 26/23
**ahead [3]** 2/21 7/4 13/14
**air [1]** 27/11
**al [2]** 1/3 2/3
**AliKhan's [1]** 22/2
**all [31]** 2/12 2/13 3/3 3/18 4/1
5/6 7/21 10/15 14/9 16/6 16/20
18/14 18/24 19/7 21/7 21/9 24/21
25/4 28/1 28/12 28/16 29/8 31/11
33/10 33/13 35/10 36/1 36/3 36/10
36/11 36/11
**allegations [1]** 20/21
**allow [4]** 14/23 25/2 33/21 34/16
**already [3]** 26/17 35/7 36/8
**also [12]** 6/1 7/2 7/15 9/17 13/2
17/6 22/21 25/18 27/5 31/3 32/11
33/10
**alternatives [1]** 8/3
**although [2]** 17/22 19/5
**Altic [1]** 2/11
**am [45]**
**amend [4]** 14/6 18/24 20/11 22/16
**amended [7]** 7/13 20/18 21/12
25/19 25/24 26/25 27/4
**amendment [1]** 14/8
**analysis [3]** 8/3 8/3 8/12
**another [7]** 9/5 10/15 10/24 11/10
14/11 26/21 31/24
**answer [1]** 28/9
**any [18]** 2/24 5/1 6/6 6/8 6/8 7/2
8/16 8/17 8/23 9/10 9/21 16/2
16/7 26/8 28/5 34/1 34/21 35/16
**anybody [1]** 21/5
**anyone [2]** 8/21 36/1
**anyone's [1]** 29/9
**anything [9]** 9/6 18/13 18/14 21/5
21/9 33/23 34/1 35/21 36/3
**APA [2]** 12/6 15/23
**apologies [2]** 2/20 8/9
**apologize [4]** 14/22 36/13 36/14
36/15
**apparently [1]** 16/1
**appeal [1]** 28/12
**appeals [1]** 22/10
**appear [2]** 33/21 34/17
**APPEARANCES [1]** 1/12
**applies [2]** 22/7 22/8
**appointment [2]** 31/4 33/4
**appreciated [1]** 33/12
**approach [2]** 2/4
**approached [1]** 26/9
**appropriate [3]** 10/25 20/13 22/12
**apt [1]** 10/20
**are [106]**
**area [1]** 10/12
**argue [2]** 12/7 35/17
**argument [5]** 3/6 4/11 4/17 9/2
35/19
**arguments [8]** 7/22 9/3 9/13 11/14
13/20 13/24 14/9 20/22
**around [3]** 2/23 3/24 27/20
**articles [1]** 6/13
**articulated [1]** 30/17
**as [46]**
**ask [5]** 5/17 18/16 25/8 32/13
34/4
**asking [1]** 4/25
**asks [3]** 19/3 19/3 19/4
**assertion [1]** 24/20
**assessed [1]** 13/4
**assessment [5]** 2/16 6/21 6/24
7/23 9/7

**assigned [1]** 14/20
**attendance [1]** 33/7
**authority [3]** 9/18 9/18 10/9
**available [3]** 29/18 31/4 32/3
**Avenue [1]** 1/24
**avoid [2]** 3/10 5/19
**aware [2]** 26/3

## B

**back [14]** 11/24 15/5 18/17 21/13
24/20 30/14 34/6 34/10 34/18
34/20 34/25 36/6 36/7 36/10
**Bankruptcy [1]** 1/23
**Barrett [2]** 21/25 22/3
**based [5]** 9/13 9/22 11/2 12/25
13/22
**basic [1]** 11/20
**basis [6]** 15/12 12/9 20/12 20/19
21/13 30/23
**batch [2]** 19/1 24/7
**be [54]**
**because [26]** 6/23 7/24 8/22 8/25
9/7 9/15 10/10 10/15 10/20 11/19
14/18 15/22 17/10 17/25 23/2 24/9
24/14 24/22 25/3 25/12 26/12
29/22 30/17 32/14 32/23 35/12
**been [9]** 5/2 6/2 9/20 10/13 17/18
19/11 22/15 24/7 30/17
**before [15]** 1/10 3/5 5/18 6/17
6/17 7/5 8/13 10/10 18/15 24/9
27/13 28/8 35/16 35/21 36/3
**behalf [2]** 2/10 7/8
**being [11]** 4/9 4/9 4/10 4/10 6/12
12/17 12/21 12/22 13/3 14/13
19/15
**beings [1]** 28/3
**believe [5]** 6/13 7/2 7/3 12/22
31/16
**benefits [1]** 8/3
**best [1]** 28/3
**better [4]** 11/24 26/11 32/17
33/15
**between [1]** 25/23
**bit [6]** 13/14 32/5 32/6 32/6
33/11 33/15
**blindsided [1]** 11/14
**Boasberg [1]** 15/4
**boat [1]** 29/6
**books [1]** 9/21
**bound [2]** 21/6 21/8
**boxes [2]** 12/24 12/25
**branch [19]** 4/19 4/20 7/1 7/8
7/25 9/1 15/17 16/10 16/13 17/4
17/19 17/19 17/22 17/22 19/12
24/23 26/9 26/13 26/16
**brand [1]** 29/22
**Brian [1]** 1/13
**brief [6]** 7/22 7/22 14/24 21/23
29/22 29/24
**briefed [1]** 12/8
**briefing [3]** 9/10 31/1 33/11
**bring [3]** 7/14 9/5 21/20
**brought [3]** 4/4 7/7 7/7
**business [1]** 35/23
**bye [1]** 11/23

## C

**came [2]** 5/4 20/5
**can [44]**
**can't [6]** 9/11 13/21 20/22 28/17
29/2 29/6
**cannot [4]** 11/22 17/8 18/13 28/13
**case [43]**
**cases [3]** 10/11 14/10 14/10
**certainly [4]** 13/19 18/25 19/18
26/12
**certify [1]** 37/3
**challenge [5]** 9/21 18/23 25/20
25/20 26/6 35/18
**challenging [1]** 23/4
**chance [1]** 16/7
**change [1]** 24/21

**C**

changes [1] 26/2
chaotic [1] 28/2
check [2] 12/23 31/17
checked [1] 12/25
Chief [1] 6/13
circumstance [1] 22/13
cite [4] 10/21 12/11 14/10 14/10
cited [1] 22/3
citing [1] 12/13
Civil [2] 1/3 2/2
claim [1] 21/19
clarify [2] 16/23 35/22
class [8] 3/16 3/19 6/7 6/9 7/10 7/20 8/22 26/18
clear [2] 6/5 18/4
clearance [1] 28/11
clearly [1] 4/21
clerk [1] 2/22
clock [1] 15/1
close [1] 35/23
COB [3] 35/1 35/4 35/5
cocounsel [1] 31/23
coherent [1] 32/8
collect [2] 3/20 17/6
collected [7] 6/25 7/24 12/16 12/17 13/11 13/12 17/6
collecting [1] 4/22
collects [1] 4/18
COLUMBIA [1] 1/1
come [5] 11/9 18/17 26/12 26/14 30/14
commensurate [1] 13/3
commitments [1] 21/7
communication [1] 6/4
communications [2] 6/2 16/2
commute [1] 32/15
complain [1] 26/15
complaint [13] 7/9 7/13 7/13 7/15 14/6 18/25 19/3 20/18 21/12 25/19 25/24 26/25 27/4
comply [1] 12/5
computer [2] 5/4 24/11
computers [1] 23/20
concerned [1] 20/6
concerns [1] 20/6
concluded [1] 36/16
conference [1] 32/1
confused [1] 4/13
confusion [1] 7/18
Congress [3] 17/21 17/21 24/14
consent [1] 12/19
consider [1] 22/15
considered [1] 9/21
constitutes [1] 37/4
Constitution [1] 1/24
constitutional [1] 26/14
contact [1] 23/19
contacting [1] 23/13
contains [1] 19/7
contents [1] 19/10
contest [1] 11/18
continue [1] 23/14
contractors [4] 6/16 15/20 17/18 17/19
contrary [1] 14/17
control [1] 28/15
convinced [2] 22/12 23/23
copies [2] 33/24 33/25
correct [9] 4/5 7/11 11/13 17/14 19/21 24/3 25/19 27/17 37/4
corrected [1] 24/13
could [12] 6/7 8/8 9/11 11/9 14/21 17/13 18/6 20/7 21/19 23/15 27/9 29/3
couldn't [2] 28/22 28/23
counsel [5] 2/4 2/5 3/9 5/7 34/16
counsel's [1] 31/20
COUNSELORS [1] 1/13
counterpoint [1] 11/4
country [1] 6/1

couple [1] 24/18
course [2] 13/21 29/1
court [17] 1/1 1/22 1/23 2/17 8/5 8/7 9/21 9/24 15/12 15/13 17/5 21/14 22/10 30/7 33/25 37/3 37/13
courts [3] 1/23 6/3 22/10
cover [1] 8/13
covered [1] 16/11
created [3] 12/21 12/22 17/11
creating [1] 28/2
crowded [1] 31/14
crystal [1] 18/3
current [4] 6/25 20/10 21/2 26/5

**D**

damages [1] 15/23
data [1] 19/14
date [2] 33/7 33/9
Dated [1] 37/10
day [13] 9/6 11/9 14/23 15/8 16/5 22/22 25/12 27/20 28/12 28/16 32/4 32/15 37/10
days [2] 30/21 31/2
DC [3] 1/5 1/18 1/25
deadline [1] 35/22
deal [1] 28/4
debates [1] 17/23
decision [1] 27/14
declarant [1] 4/11
declarants [1] 24/8
declaration [3] 16/4 24/8 24/9
declarations [6] 3/6 3/11 3/19 5/2 5/8 21/5
deemed [1] 20/12
Defendant [2] 1/7 1/16
defendant's [2] 3/9 5/23
defenses [1] 20/21
deferred [2] 23/5 23/14
deficiencies [1] 17/16
deficiency [1] 16/12
defining [1] 11/22
delay [1] 14/17
delays [1] 26/21
demonstrate [1] 19/24
denial [1] 14/4
denied [2] 19/10 21/12
deny [7] 5/17 10/24 14/1 14/3 20/10 35/12 35/20
denying [3] 27/11 27/15 35/11
DEPARTMENT [5] 1/17 2/10 27/25 31/21 31/23
describes [1] 19/2
details [1] 11/20
diatribe [1] 25/3
did [16] 3/20 3/25 6/1 7/2 8/1 8/14 8/15 8/23 9/9 9/25 13/10 15/17 17/10 18/5 18/6 19/6
didn't [8] 8/25 9/7 10/17 10/21 11/11 24/24 29/23 31/22
difference [1] 30/20
different [16] 4/2 7/6 7/15 10/3 13/18 13/19 15/11 17/5 20/1 25/20 25/25 26/4 26/6 35/15 35/18 35/18
discuss [1] 5/18
dismiss [1] 26/3
distinction [1] 25/23
DISTRICT [4] 1/1 1/1 1/10 1/23
do [59]
docket [1] 5/12
doctor's [1] 31/4
DOE [8] 1/3 2/3 3/25 8/17 8/17 14/19 17/24 17/25
does [11] 3/12 3/15 5/22 6/22 8/2 8/10 8/16 24/20 26/5 33/12 33/24
doesn't [6] 9/4 9/6 9/9 16/12 19/1 28/17
doing [7] 10/2 15/12 15/22 18/1 20/12 28/3 32/16
don't [30] 2/23 9/8 9/19 10/25 12/13 16/8 17/23 19/9 19/13 19/17 21/4 22/17 22/19 23/10 24/19 24/21 24/25 25/6 26/8 26/12

27/7 27/7 27/23 28/4 29/22 30/16 30/24 32/21 36/1
done [8] 6/20 8/18 9/23 10/22 10/23 19/5 22/20 35/16
double [1] 31/17
doubt [1] 9/14
down [4] 8/5 13/6 25/16 32/15
draw [1] 25/22
due [3] 10/15 14/13 32/22

**E**

E-Government [2] 9/19 25/2
each [2] 12/23 12/25
earlier [1] 26/21
early [1] 14/6
easy [1] 4/16
echo [2] 16/18 16/20
either [2] 23/24 26/13
electronically [1] 5/5
elements [1] 19/8
Elizabeth [2] 1/16 2/9
else [7] 14/5 18/13 18/14 21/9 26/18 35/21 36/3
email [14] 4/18 6/1 6/15 13/12 14/14 15/16 15/25 16/4 17/6 17/11 19/10 19/11 23/6 23/16
emails [8] 4/21 6/14 6/15 19/16 20/1 24/12 24/13 26/15
emergency [3] 2/14 15/12 21/13
employee [2] 19/12 21/6
employees [24] 3/21 3/21 3/23 4/5 4/19 4/20 4/22 7/1 7/18 7/25 9/1 14/13 16/11 16/13 16/15 16/22 17/19 20/4 20/24 21/8 22/22 26/9 26/13 26/16
employees' [1] 24/23
encourage [1] 26/7
end [3] 22/22 28/17 31/8
enjoin [1] 13/22
enough [2] 22/14 23/23
enter [1] 34/4
entire [4] 4/16 15/19 31/21 31/23
entirely [1] 31/20
entitled [2] 14/8 37/5
erred [1] 12/24
especially [1] 12/2
establish [1] 20/19
et [2] 1/3 2/3
evaluate [1] 20/20
even [13] 8/22 11/2 12/12 13/11 14/19 14/20 14/22 15/12 18/25 19/20 22/14 30/21 31/22
ever [3] 6/7 9/20 9/21
every [4] 5/25 19/11 25/12 25/13
everybody [2] 21/14 23/17
everyone [1] 33/15
Everyone's [1] 31/14
evidence [5] 17/8 18/8 18/9 24/19 34/5
evident [1] 23/22
exact [1] 7/3
exactly [1] 19/22
example [3] 6/12 15/15 22/18
exchange [1] 32/17
executive [19] 4/19 4/20 7/1 7/8 7/24 9/1 15/17 16/10 16/13 16/22 17/4 17/19 17/19 17/22 19/11 24/23 26/9 26/13 26/15
exhibit [2] 32/2 32/22
exhibits [2] 7/19 7/21
extensive [1] 12/3
extent [6] 6/6 8/1 16/11 22/5 22/9 25/22
extraordinary [1] 23/24

**F**

facing [1] 28/4
fact [8] 14/13 15/16 17/17 17/20 19/15 21/17 24/21 26/15
facts [1] 19/25
factual [1] 24/20
factually [3] 18/7 18/11 20/22

## F

failure [1]  12/5
fair [2]  12/14 31/15
false [2]  18/8 18/10
far [2]  16/17 17/16
fashion [2]  21/19 32/8
fast [2]  8/4 8/8
faster [1]  27/24
fault [1]  11/15
fear [1]  3/24
February [2]  1/5 37/10
federal [8]  3/21 4/19 4/20 4/22
 14/13 22/21 23/21 24/23
feel [1]  36/7
few [1]  21/23
fighting [1]  19/13
file [38]
filed [15]  2/16 10/16 11/10 11/15
 12/23 13/1 14/20 14/21 15/4 15/6
 15/8 15/11 17/7 19/5 22/15
files [1]  27/21
filing [1]  5/14
filter [1]  24/15
final [1]  16/5
find [2]  7/4 26/18
fine [9]  10/24 18/18 28/6 30/9
 33/6 34/24 35/4 35/24 36/1
fingers [1]  27/3
first [6]  7/6 7/25 9/2 10/12
 13/24 24/3
fix [1]  15/5
fixed [1]  16/1
folder [2]  32/2 32/22
folks [1]  8/19
following [5]  31/25 32/2 32/12
 32/25 33/5
foregoing [1]  37/4
forget [1]  11/20
form [5]  3/7 13/5 13/8 14/4 19/4
formal [1]  27/13
formally [1]  27/10
forward [5]  6/11 15/22 15/24
 22/20 24/1
found [2]  9/20 22/2
four [2]  5/3 24/12
frankly [5]  15/3 22/17 26/8 32/7
 33/10
frees [1]  32/14
Friday [10]  30/2 32/3 32/14 32/22
 33/14 33/19 33/21 34/13 34/14
 34/15
front [5]  4/2 4/4 9/10 13/19
 22/15
full [1]  18/4
functional [1]  8/2
fundamental [1]  18/12
fundamentally [1]  17/7
further [2]  20/9 26/22

## G

gave [2]  24/12 34/5
general [2]  3/8 4/12
get [10]  3/5 4/24 5/8 6/17 8/13
 20/13 23/16 30/22 31/16 34/20
gets [2]  7/5 22/18
getting [7]  10/12 13/14 16/20
 19/12 20/1 24/14 31/19
give [10]  2/21 2/21 17/10 28/7
 29/14 32/4 32/5 32/6 33/10 36/5
given [1]  12/11
gives [1]  33/15
giving [1]  4/14
Glenda [1]  34/14
go [9]  2/21 5/22 12/2 15/5 17/16
 17/24 25/15 26/18 26/19
going [31]  9/12 10/6 11/1 13/22
 14/14 15/12 15/24 20/8 20/16
 22/20 24/1 24/15 25/18 25/25 27/6
 27/8 28/12 29/14 29/20 29/23 32/9
 32/22 33/20 33/22 33/24 34/4
 34/13 34/17 34/25 35/5 35/11

## H

gone [2]  7/16 17/20
Good [2]  2/11 2/14
got [7]  4/21 6/14 6/14 15/10
 24/10 24/12 24/18
government [29]  3/21 3/21 3/24
 4/5 4/17 4/18 4/22 6/15 9/19
 13/22 14/10 15/19 16/7 16/15
 17/18 19/11 21/6 21/7 23/5 23/21
 24/23 25/2 26/3 29/7 29/14 32/5
 32/22 33/24 35/1
government's [1]  14/18
government-wide [3]  4/18 6/15
 19/11
Grace [1]  1/17
grant [4]  9/12 11/1 20/11 25/6
greater [1]  17/12
gross [1]  25/1
grounds [4]  10/19 10/19 10/20
 26/4
guess [6]  4/13 5/24 19/17 19/19
 30/16 32/18
guessing [1]  20/15
guidance [3]  7/3 12/1 12/6
gun [1]  14/22

## H

hacked [3]  25/13 25/15 30/18
hacking [1]  17/12
had [5]  15/4 15/5 15/11 16/7
 19/11
hand [3]  36/6 36/7 36/10
handed [2]  3/5 5/2
happen [2]  28/17 28/17
happened [2]  10/20 24/10
happens [1]  29/25
happy [2]  13/16 32/11
harassed [3]  3/24 4/9 4/10
harassment [2]  3/10 4/8
hard [1]  16/13
harm [9]  13/5 13/9 18/9 18/25
 19/9 19/15 19/18 19/21 30/17
harmed [2]  7/20 17/4
harming [1]  5/19
has [19]  2/16 5/9 6/2 6/20 9/15
 9/20 9/21 10/10 10/13 12/16 17/25
 20/12 22/10 22/15 26/4 30/17 31/9
 31/21 33/25
hasn't [2]  16/7 22/16
have [81]
haven't [2]  5/9 12/7
having [3]  29/7 32/1 32/15
he [5]  18/23 18/24 20/12 20/12
 31/2
hear [5]  13/16 18/15 21/21 27/1
 30/13
hearing [5]  1/9 2/13 2/14 13/24
 14/11 14/25 27/6 27/9 27/22 28/12
 28/16 29/1 29/6 29/16 30/9 30/24
 31/9 31/24 31/25 32/4 32/23 33/1
 35/7
heart [1]  5/22
heavily [1]  10/11
helpful [1]  21/18
her [2]  24/25 31/22
here [26]  2/13 6/12 7/9 7/18 9/9
 9/12 9/25 11/2 11/11 14/22 15/1
 15/13 18/1 19/13 19/23 19/25 20/9
 21/13 21/17 22/12 30/3 30/12 32/4
 32/15 32/17 33/22
hereby [1]  6/8
hers [1]  27/21
highly [1]  11/18
him [1]  15/6
hinges [1]  4/17
his [1]  5/8
hold [1]  14/23
Honor [21]  2/7 2/9 2/21 3/4 5/7
 5/15 7/11 11/3 11/13 14/12 18/16
 18/19 18/20 19/20 21/23 26/23
 27/12 28/15 32/12 36/4 36/12
HONORABLE [1]  1/10
hope [2]  21/12 21/18

## I (right column, H continued then I)

Horton [2]  1/17 2/11
hours [1]  32/14
how [12]  8/16 8/16 10/25 12/20
 16/8 17/24 20/13 23/15 23/16 24/6
 26/12 27/20
HR [1]  23/13
human [1]  28/3
hurdle [1]  8/13
hypothetical [1]  18/4

## I

I'm [1]  8/6
identifiable [2]  13/5 13/8
identified [3]  16/16 16/17 16/21
ignore [1]  6/4
imagine [3]  9/11 13/21 21/14
impact [3]  2/16 6/21 6/23
implicit [1]  11/4
implied [1]  11/4
inadequate [2]  35/14 35/11
inadvertently [1]  17/17
inappropriately [1]  17/18
incident [1]  17/12
include [1]  9/4
incorrect [1]  17/7
indicate [2]  12/16 19/25
indicating [2]  6/3 20/3
information [22]  3/20 4/18 4/22
 6/25 7/24 12/16 12/18 12/18
 12/20 13/3 13/4 13/8 13/9 13/11
 17/8 18/12 24/17 24/24 24/24
 24/25 25/15
ingested [2]  24/22 24/23
initial [3]  3/4 19/1 24/7
injunction [4]  14/3 19/4 20/11
 22/8
injunctive [1]  15/24
injury [5]  8/17 16/14 17/9 17/24
 19/18
insecure [1]  23/7
instead [4]  19/17 28/20 28/24
 28/24
intelligently [1]  20/14
intended [1]  12/17
intent [1]  25/2
interests [1]  17/11
interviewing [1]  31/25
involved [2]  21/14 29/9
irreparable [7]  16/14 17/9 17/24
 18/9 18/25 19/9 19/18
is [208]
is mostly [1]  14/12
isn't [2]  7/6 15/23
issuance [1]  35/13
issue [3]  14/23 23/1 35/16
issued [6]  10/16 18/4 18/10 18/10
 22/11 35/14
issues [2]  17/24 25/16
issuing [1]  23/24
it [129]
it is [1]  26/16
its [1]  35/1
itself [2]  7/1 23/3

## J

Jacob [1]  2/11
JANE [6]  1/3 2/2 8/17 8/17 17/24
 17/25
John [2]  6/13 14/19
judge [6]  1/10 6/1 15/4 22/2 22/3
 29/25
judges [4]  6/5 15/16 15/25 16/1
just [36]  2/21 3/5 3/20 4/22 5/24
 6/4 6/17 7/5 7/6 8/18 11/20 13/13
 13/18 13/21 16/18 16/23 18/5 19/9
 20/1 21/23 22/14 24/1 24/18 25/20
 26/7 26/20 26/24 27/19 28/22
 29/10 35/10 35/12 35/15 35/18
 35/22 36/4
JUSTICE [7]  1/17 2/10 6/13 21/25
 27/25 31/22 31/23

## K

**Kelly [1]** 1/13
**kids [1]** 34/20
**know [24]** 9/25 11/1 12/23 13/20 14/9 15/2 15/16 15/24 16/8 16/13 17/23 19/9 19/19 19/24 20/2 20/3 20/5 24/21 25/1 25/3 26/8 26/12 30/21 32/16
**known [1]** 11/6
**Kyle [1]** 2/6

## L

**laid [1]** 21/25
**language [1]** 7/3
**last [2]** 14/21 32/19
**later [4]** 2/23 6/2 26/11 26/21
**latest [1]** 25/9
**law [3]** 9/20 11/22 22/7
**lawsuit [1]** 19/14
**lawyers [2]** 27/25 33/12
**least [1]** 11/7 12/23 23/1
**leave [1]** 20/11
**legal [2]** 8/10 8/15
**legislative [1]** 17/22
**legitimate [1]** 8/11
**let [5]** 7/3 21/21 27/24 30/13 31/16
**let's [1]** 29/15
**Library [3]** 17/21 17/21 24/14
**lies [1]** 18/5
**light [1]** 34/17
**like [16]** 21/19 25/13 25/14 29/7 25/18 25/25 27/11 31/5 32/24 34/1
**likely [5]** 20/21 25/13 25/14 27/8 30/18
**LINDSAY [3]** 1/22 37/3 37/12
**line [2]** 16/19 17/1
**list [2]** 4/19 17/11
**litigated [1]** 10/12
**litigation [1]** 14/7
**little [8]** 4/13 13/14 27/24 32/5 32/5 32/6 33/11 33/15
**live [1]** 28/2
**lives [1]** 29/9
**long [2]** 5/8 22/14
**longer [2]** 10/20 11/7
**look [6]** 7/9 12/23 20/14 30/6 32/24 33/23
**looked [4]** 9/18 11/23 17/25 20/18
**looking [2]** 6/10 31/2
**looks [1]** 19/7
**lost [1]** 36/8
**lot [3]** 2/20 11/25 21/15
**Lots [1]** 6/14

## M

**made [1]** 10/4
**maintaining [1]** 22/24
**maintains [1]** 19/5
**make [9]** 10/15 11/14 18/3 20/8 26/2 29/9 32/9 33/25 35/5
**makes [2]** 7/1 20/9
**making [2]** 13/21 26/5
**MANAGEMENT [2]** 1/6 2/3
**materials [2]** 5/14 20/14
**matter [7]** 3/5 5/18 6/22 25/10 32/19 34/4 37/5
**may [25]** 2/21 5/19 12/24 14/6 15/17 15/21 16/6 16/16 17/17 17/20 17/23 20/3 20/3 22/11 23/6 23/12 24/3 24/7 24/24 24/25 26/3 26/3 28/8 32/13 35/17
**maybe [6]** 7/12 9/5 13/14 16/12 23/1 31/8
**McClanahan [8]** 1/13 2/6 2/18 20/6 20/11 21/22 31/9 31/11
**MD [1]** 1/15
**me [38]**
**mean [13]** 9/4 9/11 15/3 15/16 19/2 21/1 22/5 25/19 25/22 27/19 29/2 31/1 32/21

**means [1]** 29/5
**meant [1]** 29/19
**meet [5]** 7/2 8/10 8/15 8/23 8/25
**member [2]** 6/7 6/8
**members [2]** 3/16 7/20
**memo [1]** 23/12
**mention [1]** 23/10
**mentioned [1]** 21/24
**merits [1]** 4/24
**message [1]** 23/16
**messages [1]** 23/20
**met [1]** 13/12
**midnight [4]** 27/21 27/22 28/6 35/23
**might [3]** 4/10 29/4 32/4
**mine [1]** 35/3
**minimal [1]** 9/16
**minimum [1]** 18/24
**minute [1]** 25/13
**misappropriated [1]** 17/13
**miserable [1]** 29/9
**misleading [1]** 6/24
**misleads [1]** 17/5
**misrepresents [1]** 18/11
**mistake [3]** 6/5 19/20 19/22
**mistakes [2]** 14/1 24/7
**Monday [9]** 14/21 27/22 28/17 28/20 28/23 28/24 29/4 29/12 29/15
**moot [4]** 14/4 18/22 35/12 35/20
**mooted [1]** 22/18
**more [14]** 21/19 25/13 25/14 29/7 30/7 30/8 30/18 31/10 32/5 32/6 32/6 32/9 33/11 33/15
**morning [7]** 2/8 2/9 2/12 16/4 18/20 18/21 24/10
**MOSS [1]** 1/10
**most [2]** 18/11 35/25
**mostly [1]** 14/12
**motion [36]** 2/15 5/9 5/9 5/13 5/13 5/18 9/4 9/5 9/6 10/14 10/15 10/16 10/18 10/19 10/25 11/2 11/11 13/19 13/22 14/2 14/24 15/11 20/10 22/10 22/18 23/10 23/11 23/11 25/8 26/25 27/11 27/19 27/21 34/8 35/11 35/19
**motions [2]** 28/1 28/4
**move [5]** 3/7 25/7 26/3 28/22 29/4 29/11
**Mr [6]** 2/18 20/6 20/11 21/22 31/9 31/11
**Ms [1]** 30/13
**Ms. [6]** 4/10 13/17 18/15 24/4 27/2 31/21
**Ms. Shapiro [5]** 4/10 13/17 18/15 24/4 27/2
**Ms. Shapiro's [1]** 31/21
**much [4]** 3/25 19/7 26/7 33/12
**must [7]** 11/5 11/21 12/2 13/2 25/23 25/23 29/11
**my [30]** 5/4 6/20 7/5 7/6 8/9 10/16 11/4 11/14 12/10 13/17 15/4 17/4 21/3 21/3 21/4 24/11 25/3 27/13 27/18 27/21 28/15 29/11 29/22 29/25 32/20 33/4 33/19 34/20 35/22 35/25

## N

**name [1]** 2/5
**names [2]** 13/12 17/6
**NATIONAL [1]** 1/13
**nature [1]** 21/5
**necessary [1]** 27/24
**need [9]** 9/5 12/3 14/6 19/6 27/1 30/1 30/6 30/7 31/2
**needs [2]** 18/24 25/15
**never [9]** 9/13 9/24 9/24 10/10
**new [6]** 7/13 7/14 20/12 25/8 26/25 29/22
**next [3]** 22/19 27/9 31/9
**night [2]** 35/23 35/25
**nine [1]** 26/15
**no [22]** 1/4 2/25 3/13 3/18 4/3

7/23 9/2 9/10 10/9 10/20 17/5 18/14 19/18 20/1 21/11 24/19 30/20 34/22 36/4
**non [2]** 16/13 20/4
**non-executive [1]** 16/13
**non-OPM [1]** 20/4
**noon [3]** 29/14 35/8 35/9
**normal [2]** 21/7 23/18
**not [75]**
**nothing [3]** 17/15 18/6 23/12
**notice [1]** 12/19
**noticed [1]** 21/16
**now [16]** 2/16 10/22 10/23 11/6 11/15 13/21 13/25 17/15 21/15 24/1 25/20 26/6 26/11 28/3 31/19 35/17
**number [3]** 2/2 8/12 8/14
**NW [2]** 1/18 1/24

## O

**objection [3]** 2/24 5/1 34/21
**obviously [5]** 3/9 20/2 23/11 24/9 29/12
**occurred [1]** 22/17
**off [1]** 16/25
**offer [1]** 22/21
**offered [2]** 10/13 16/3
**offering [3]** 3/19 7/19 7/21
**office [4]** 1/6 2/3 6/3 23/13
**Official [3]** 1/23 37/3 37/13
**oh [4]** 4/16 8/6 8/20 27/19
**okay [28]** 3/1 4/7 4/23 5/1 5/16 5/21 10/8 10/18 11/11 13/15 16/6 17/2 21/9 21/9 21/21 25/4 28/14 29/19 30/10 30/11 31/7 31/18 31/19 33/3 34/6 34/12 34/23 35/9
**Olivia [2]** 1/17 2/11
**OMB [8]** 7/3 12/1 12/5 12/11 12/11 12/12 12/12 12/13
**one [19]** 5/4 6/14 8/1 8/14 9/23 10/22 12/23 15/25 16/3 16/17 19/17 19/23 24/8 24/10 27/4 27/20 31/17 35/14 35/19
**one-day [1]** 27/20
**ones [3]** 9/13 24/12 28/1
**only [19]** 4/18 6/25 7/24 8/25 10/10 11/24 16/15 16/16 17/6 20/24 21/4 23/6 24/12 24/22 26/4 29/18 30/2 30/17 33/9
**opinion [1]** 22/2
**OPM [16]** 2/10 2/11 2/16 6/1 6/20 13/23 15/16 15/22 16/2 17/10 19/5 19/16 20/4 20/24 23/16 24/14
**OPM's [2]** 2/15
**oppo' [1]** 31/22
**opportunities [1]** 12/19
**opportunity [4]** 13/23 20/20 22/16 22/23
**oppose [1]** 5/8
**opposition [4]** 7/22 10/14 25/9 35/1
**oral [1]** 13/22
**orally [1]** 15/13
**order [3]** 2/15 10/7 14/2
**ordered [1]** 10/22
**orderly [1]** 21/19
**originally [1]** 20/4
**other [8]** 3/13 3/14 3/15 5/25 7/12 8/19 9/6 9/17
**others [4]** 7/16 15/17 16/16 19/7
**our [3]** 8/12 18/22 32/17
**ourselves [1]** 13/14
**out [7]** 21/25 23/12 23/19 24/18 26/7 26/12 28/15
**outlined [1]** 27/12
**outside [4]** 3/19 15/17 15/19 17/4
**over [2]** 27/7 36/14
**own [1]** 19/16

## P

**p.m [1]** 29/18
**Page [1]** 24/11

**P**

pain [1]  28/5
paper [1]  2/20
papers [1]  34/1
part [2]  5/9 26/18
participation [1]  6/8
particular [1]  10/2
parties [3]  3/6 9/1 21/15
pass [3]  34/1 34/6 34/10
past [3]  11/9 21/1 21/2
pause [1]  13/13
pending [1]  14/2
people [17]  3/13 3/14 3/15 3/18
 3/23 4/20 5/20 6/14 7/19 7/20
 16/9 16/9 16/22 17/3 19/15 20/1
 26/8
people's [1]  17/12
perfect [1]  6/12
perhaps [5]  4/1 7/16 13/18 19/24
 22/24
period [1]  10/11
permission [1]  14/19
person [6]  32/17 32/19 32/20
 33/18 33/20 33/23
PERSONNEL [2]  1/6 2/3
PI [1]  31/2
PIA [53]
PII [2]  3/8 17/13
Pike [1]  1/14
place [1]  22/20
plaintiff [5]  1/13 4/9 4/11 18/23
 21/20
plaintiff's [1]  2/5
plaintiffs [6]  1/4 2/6 3/7 3/25
 5/7 7/14
plaintiffs' [2]  2/14 34/16
please [3]  2/4 13/6 36/4
PO [1]  19/5
podium [1]  2/4
point [15]  2/19 6/18 9/18 10/13
 12/10 13/16 13/19 14/11 15/15
 17/4 17/9 21/20 23/23 23/23 31/15
points [2]  10/3 21/23
position [4]  13/20 14/18 18/22
 27/8
possible [2]  26/7 32/8
possibly [2]  6/7 11/1
potential [1]  3/16
predicated [1]  7/23
predict [1]  20/22
prefer [2]  32/12 32/16
preference [3]  32/18 32/20 33/19
preliminarily [1]  4/25
preliminary [3]  14/3 20/11 22/8
prep [6]  28/16 28/19 28/20 28/21
 28/24 29/4
preparing [2]  11/14 31/24
prepping [1]  29/23
presented [2]  9/13 32/8
preserve [1]  22/14
pressure [3]  16/9 16/10 33/13
presumably [2]  13/24 22/19
previously [1]  26/6
privacy [10]  2/16 3/9 6/21 6/23
 7/23 12/22 17/1 18/1 25/1 25/16
probably [2]  5/25 23/22
problem [6]  7/17 9/9 15/25 16/15
 16/21 29/21
problems [2]  11/11 19/23
procedural [1]  34/3
proceed [3]  16/8 20/9 21/19
proceedings [2]  36/16 37/5
process [1]  28/5
program [2]  23/5 23/14
progress [1]  32/9
prong [2]  7/25 7/25
prongs [1]  8/11
proper [1]  14/4
propose [1]  14/1
protect [1]  18/1
provide [1]  33/24

provided [2]  8/10 12/20
provides [1]  34/23
prudential [1]  26/14
public [3]  3/8 4/12 5/12 5/19
 16/19 17/1
purely [1]  30/22
purpose [2]  4/14 23/2
pursuing [1]  26/22
push [7]  11/24 24/20 30/1 30/8
 32/11 34/17 34/25
put [5]  5/12 5/18 27/13 27/25
 28/5
putative [5]  6/7 6/9 7/10 7/20
 8/22

**Q**

question [8]  2/18 4/21 6/6 7/5
 7/6 15/22 17/16 18/12
quickly [1]  25/7
quite [4]  15/2 22/17 26/8 32/7
quo [1]  22/14

**R**

raise [1]  19/12
raised [1]  35/19
raising [1]  20/5
ran [1]  29/21
RANDOLPH [1]  1/10
rather [5]  26/11 26/21 28/2 32/7
 36/7
real [4]  15/7 15/9 15/21 16/15
realistic [1]  31/10
realize [1]  27/24
realized [1]  27/19
really [7]  10/1 12/14 16/8 19/13
 23/3 23/25 27/7
reason [2]  8/24 30/2
reasons [2]  3/9 3/25
receive [1]  19/15
received [5]  5/9 6/1 15/16 15/25
 16/1 16/4 17/3
receiving [1]  19/16
recipients [1]  24/16
recollection [1]  15/4
record [8]  2/5 5/19 5/25 6/6
 20/13 27/13 35/10 37/5
records [2]  12/21 12/21
redacted [1]  3/7 3/8
referring [1]  2/22
reflect [1]  8/2
related [1]  8/20
relating [1]  9/18
relatively [2]  9/16 12/1
release [1]  13/9
relevant [1]  24/19
relief [6]  6/21 10/22 11/2 15/24
 19/4 35/12
relying [3]  12/11 12/12 20/15
remains [2]  17/14 18/9
reminder [1]  16/4
renounce [1]  6/8
reply [5]  11/10 29/22 29/23 32/7
 35/5
reporter [1]  1/22 1/23 8/5 8/7
 37/3 37/13
reporting [1]  20/3
reports [1]  20/15
representing [2]  6/11 26/10
request [2]  29/12 35/15
requesting [1]  30/3
require [1]  12/4
required [4]  7/24 8/1 8/12 9/23
requirement [1]  11/21
requirements [3]  8/2 11/19 11/25
requisite [1]  19/8
reschedule [1]  31/6
rescheduled [1]  28/13
resign [1]  22/24
resignation [2]  23/5 23/14
resolve [1]  25/16
resolved [1]  26/11
resort [1]  32/19

respect [3]  10/15 19/20 22/22
respectively [2]  23/12
respects [3]  12/25 35/15 35/17
respond [17]  6/2 13/23 14/10
 14/14 16/5 16/7 16/9 16/10 18/18
 22/22 23/13 27/2 29/7 29/15 30/1
 30/8 31/12
responding [3]  16/15 18/2 28/1
response [1]  2/15
restraining [2]  2/14 14/2
restrictions [1]  21/7
result [1]  8/16
retract [1]  5/19
reverse [1]  10/7
reviewed [1]  2/15
right [26]  2/13 3/3 4/1 4/2 5/6
 11/1 12/9 12/10 13/21 14/16 16/6
 18/14 18/14 20/23 21/9 21/15
 23/22 25/4 28/3 30/5 31/11 35/10
 36/1 36/3 36/10 36/11
risk [4]  13/5 13/9 17/10 17/12
Roberts [1]  6/14
Rockville [2]  1/14 1/15
Room [1]  1/24
round [1]  26/21
RPR [1]  37/12
Rule [1]  14/7
rules [5]  12/1 12/11 12/12 12/13
 12/13
run [1]  29/20
rushing [1]  30/23

**S**

S.Court [1]  22/1
safe [1]  24/17
said [11]  6/12 9/25 10/20 17/5
 18/1 22/16 24/4 24/8 24/22 25/8
 26/17
salary [1]  22/24
same [3]  3/25 4/8 15/8 21/18 22/7
 29/6 29/21
satisfies [1]  10/1
satisfy [1]  9/10
say [19]  5/25 7/15 9/6 9/12 9/14
 11/1 12/3 12/12 13/11 22/5 23/9
 23/11 24/17 28/8 28/19 29/23
 29/25 30/6 33/18
saying [17]  3/17 8/21 8/21 8/24
 10/16 11/11 11/19 11/23 15/9 16/4
 17/3 18/5 23/7 23/12 27/10 28/25
 30/7
says [8]  9/8 10/9 12/15 13/2
 18/17 20/18 22/7 23/5
schedule [8]  14/5 24/1 25/5 30/3
 30/4 31/2 31/3 32/24
schedules [2]  31/14 31/20
school [1]  34/20
seal [6]  3/7 4/12 4/25 5/14 5/14
 34/9
sealing [1]  5/1
second [3]  7/25 10/13 13/13
section [4]  9/19 10/11 13/10 22/6
secured [1]  12/20
security [1]  1/13 20/5 28/11
see [10]  3/9 3/22 10/25 16/14
 17/23 19/17 20/17 22/22 29/15 36/8
seeking [3]  6/22 15/23 15/23
seem [2]  26/5 31/13
seems [2]  4/1 27/23
seen [2]  9/24 9/24
send [2]  23/15 23/19
sending [2]  23/6 23/12
sends [1]  25/14
sense [3]  13/17 20/10 22/10
sensitivity [2]  13/4 13/7
sent [2]  6/5 17/18
sentence [1]  10/1
separate [1]  9/3
separately [1]  19/17
September [1]  22/25
server [6]  6/15 23/7 25/2 25/12
 25/14 25/15

**S**

serving [1]  4/14
set [4]  14/5 20/4 20/5 28/23
several [2]  6/25 22/19
Shapiro [8]  1/16 2/10 4/10 13/17
18/15 24/4 27/2 30/13
Shapiro's [1]  31/21
shared [1]  12/19
she [7]  18/17 22/3 24/6 27/2
27/21 31/21 31/22
SHERRY [3]  1/22 37/3 37/12
should [4]  5/24 6/4 15/11 21/11
shouldn't [1]  7/16
show [7]  3/20 5/5 7/19 7/21 18/6
18/11 24/11
shred [2]  34/11 36/4
sign [1]  31/22
signed [1]  24/9
significant [1]  12/2
simple [1]  12/1
simply [2]  9/22 20/15
since [2]  16/2 23/20
single [1]  9/20
sit [1]  22/12
sitting [1]  9/12
six [1]  5/9
six-part [1]  5/9
size [1]  13/3
skipping [1]  7/4
slightly [1]  11/24
Slow [2]  13/6 13/6
so [63]
solve [1]  33/2
some [16]  7/12 7/16 7/17 9/5 9/14
9/18 9/20 12/24 13/23 15/5 20/2
20/5 22/18 22/24 31/1 35/14
somebody [2]  17/20 26/18
someone [2]  17/25 25/14
something [13]  2/22 11/2 14/5
15/11 22/19 24/3 26/11 27/19 28/8
28/23 29/22 30/7 31/5
sometime [1]  27/9
somewhat [1]  15/3
soon [2]  14/21 15/10
sorry [2]  8/6 13/7
sort [4]  19/14 20/22 27/12 30/23
sought [2]  10/22 35/12
sources [1]  16/3
Speaking [1]  5/24
special [1]  21/6
specifically [1]  19/4
speculative [1]  30/22
spell [1]  26/7
spending [1]  28/16
stand [2]  2/19 13/18
standard [3]  8/11 8/15 22/7
standards [3]  8/23 8/25 9/15
standing [3]  20/19 26/14 30/22
start [1]  9/14
starting [1]  2/5
state [1]  2/4
stated [2]  10/19 33/19
statement [2]  11/25 30/21
states [4]  1/1 1/10 6/24 21/25
status [4]  1/9 22/14 22/25 32/1
statute [2]  12/15 13/2
statutory [1]  26/14
stay [11]  21/24 22/1 22/6 22/9
23/9 23/10 23/25 25/2 25/7 27/16
36/2
stays [3]  22/11 25/13 25/14
step [1]  23/24
stick [1]  33/7
still [8]  14/6 22/24 24/24 24/25
25/7 25/10 30/12 33/14
stop [1]  24/15
stopped [1]  24/14
stopping [1]  23/12
straight [1]  12/1
Street [1]  1/18
stuck [1]  24/15

**T**

stuff [1]  11/23
submitted [1]  17/14
submitting [1]  32/2
such [2]  22/13 30/3
suffer [1]  17/25
suffered [1]  19/15
sufficiency [1]  9/22
sufficient [13]  6/24 7/2 8/14
8/15 8/18 8/18 8/21 8/22 8/23
11/23 15/5 25/24 30/21
suggest [3]  23/18 24/13 31/8
suggesting [3]  20/9 26/20 26/20
suggestion [2]  20/7
Suite [1]  1/14
supplement [1]  11/10
support [1]  12/13
supporting [1]  4/11
suppose [2]  2/18 20/6
supposed [1]  10/2
Supreme [1]  12/10
sure [6]  10/1 19/24 20/8 24/5
33/25 35/5
suspect [2]  6/4 14/7 19/10
sympathetic [2]  29/8 31/21
system [16]  4/18 4/21 12/3 12/21
12/21 13/3 13/5 13/8 13/22 18/12
20/4 20/25 22/20 23/2 23/19 24/22

**T**

take [9]  5/12 8/5 15/15 22/23
23/24 28/12 33/14 34/20 35/16
taken [1]  24/18
takes [1]  31/5
talk [3]  14/3 23/25
talking [4]  22/6 22/9 24/6 33/5
tangentially [1]  23/1
taxing [1]  21/14
tee [1]  14/8
tell [5]  17/16 19/11 26/24 27/1
27/5
telling [2]  17/15 29/2
temporary [2]  2/14 14/2
ten [3]  10/11 27/3 31/25
tense [3]  21/1 21/2 21/2
tentatively [1]  5/11
terms [1]  19/9
terribly [1]  19/25
test [6]  5/10 5/14 7/2 19/1 24/7
24/12
tests [1]  24/18
Texas [1]  21/25
than [6]  4/2 7/6 11/24 17/5
25/20 26/6 26/11 26/21 27/24
32/17 35/15 35/19
thank [11]  3/2 3/3 5/15 18/19
21/21 29/13 30/10 30/15 34/12
36/11 36/12
that [295]
their [9]  2/4 7/21 11/15 12/14
19/16 20/1 22/24 25/9 28/3
them [23]  3/7 3/9 4/25 5/12 5/19
8/18 10/6 10/23 11/17 19/16 23/12
24/14 24/15 26/10 28/5 28/7 34/11
36/5 36/6 36/7 36/8 36/14 36/15
then [28]  5/18 10/24 12/13 14/4
14/8 14/11 16/2 17/6 18/7 18/12
18/24 20/13 20/14 21/21 23/13
24/18 29/1 29/3 29/3 29/15 32/25
33/8 34/7 34/10 34/25 35/2 35/4
35/10
there [51]
therefore [1]  18/9
these [24]  3/7 3/11 3/18 3/19
3/23 4/12 4/14 4/19 5/12 5/19
6/14 6/14 7/19 7/19 7/20 7/21
19/24 26/8 28/1 31/1 32/16 32/20
34/4 34/10
they [62]
thing [4]  9/17 15/7 15/10 31/17
things [6]  14/8 15/6 26/21 27/4
29/7 32/16
think [41]

**U**

third [2]  3/6 9/1
this [75]
those [13]  5/18 10/3 12/3 12/24
12/25 17/24 18/1 20/14 20/20
24/21 34/6 36/5 36/10
though [2]  14/20 28/7
thought [1]  8/24
threshold [2]  11/21 20/21
through [5]  9/25 22/25 24/15 28/5
30/23
Thursday [7]  27/6 30/2 32/1 32/23
33/1 35/8 35/9
thus [1]  16/17
ticking [1]  15/1
tight [1]  30/3
tightness [1]  30/4
time [18]  13/24 14/11 14/24 19/17
29/15 29/16 29/18 30/7 30/8 31/4
32/5 32/6 32/6 33/11 33/16 34/14
34/20 34/25
timeframe [1]  30/16
times [3]  6/25 22/10 22/11
timing [1]  31/10
today [15]  9/12 11/14 14/15 14/24
15/13 21/18 22/13 22/22 25/7 25/8
27/13 29/21 30/17 30/20 34/5
told [2]  5/7 14/14
tomorrow [5]  14/25 25/9 27/22
35/3 35/23
tonight [4]  25/10 27/21 27/22
28/6
too [3]  8/4 32/5 36/15
topic [1]  10/2
train [1]  5/4
transcript [2]  1/9 37/4
transparent [1]  18/5
TransUnion [2]  19/19 19/22
TRO [20]  1/9 9/12 10/16 10/18
10/20 10/21 14/17 20/10 20/11
21/18 22/8 22/15 22/15 23/24 25/6
27/4 31/2 35/11 35/13 35/19
TRO/STATUS [1]  1/9
TROs [1]  21/15
true [4]  18/6 18/8 20/3 37/4
trust [2]  18/13 34/11
try [2]  32/20 34/4
trying [2]  29/9 33/10
Tuesday [12]  28/16 28/23 29/1
29/3 29/16 29/18 31/4 33/5 33/5
33/18 35/1 35/4
turn [2]  16/25 27/20
two [13]  5/1 8/11 8/20 9/3 10/3
24/12 25/25 26/2 26/4 26/13 30/21
31/5 32/14
two-word [1]  26/2
type [1]  8/8

**U**

U.S [2]  1/17 1/23
U.S.C [1]  21/24
unauthorized [1]  13/9
unchanged [1]  18/9
under [12]  5/14 5/14 12/6 12/22
14/7 14/22 14/25 16/9 16/10 21/24
22/6 33/14
understand [10]  7/18 11/3 15/2
16/8 20/8 20/24 30/8 30/16 30/24
35/13
understandably [1]  9/7
understanding [5]  6/20 21/3 21/4
33/11 33/13
unfair [1]  10/14
unfeasible [1]  14/13
unfortunate [1]  6/10
uninvolved [1]  3/6
UNITED [3]  1/1 1/10 21/25
universe [1]  8/8
unnecessary [1]  28/5
unsure [1]  26/13
until [13]  14/20 19/4 19/21 22/25
25/3 25/16 27/8 27/9 28/7 28/17
29/14 32/23 35/1

## U

**up [13]**  14/8 18/17 20/4 20/5 23/2 25/13 25/14 27/11 29/12 30/12 32/14 34/1 36/2
**urgent [2]**  25/10 25/11
**us [2]**  6/3 14/23
**use [2]**  12/17 23/18
**using [2]**  23/2 23/16

## V

**Valentine's [1]**  32/4
**various [2]**  28/4 35/17
**version [1]**  26/5
**versus [3]**  2/3 9/22 30/20
**very [5]**  10/12 19/7 25/9 26/5 33/12
**view [1]**  35/14
**violation [1]**  25/1
**voluminous [2]**  32/2 32/21
**vs [1]**  1/5

## W

**waiting [1]**  14/19
**walking [1]**  2/23
**want [25]**  4/25 14/5 14/24 18/15 20/20 21/10 22/23 24/1 24/11 25/4 25/7 26/24 27/1 28/5 28/6 30/12 31/11 32/6 33/7 33/21 33/23 34/1 34/6 34/8 34/10
**wanted [5]**  7/14 9/6 11/10 11/17 24/20
**wants [5]**  18/23 18/23 21/20 27/2 36/2
**warranted [1]**  31/3
**was [46]**
**Washington [3]**  1/5 1/18 1/25
**wasn't [3]**  8/18 14/19 15/5
**way [10]**  8/4 8/4 8/4 14/9 16/7 22/18 23/20 27/25 32/9 36/7
**we [91]**
**we'll [2]**  28/25 34/23
**Wednesday [6]**  28/12 29/3 31/24 32/23 35/6 35/8
**week [8]**  14/21 27/9 28/18 31/9 31/25 32/2 32/12 32/25
**weekend [2]**  27/7 30/23
**welcome [4]**  25/17 26/2 26/25 36/2
**well [21]**  2/11 2/12 2/15 7/15 9/25 12/13 13/17 13/25 19/25 19/25 20/17 22/11 25/6 25/17 25/19 26/10 26/19 27/23 29/14 29/23 32/1
**went [4]**  7/15 9/24 16/22 26/15
**were [12]**  6/15 7/19 8/12 8/24 9/13 14/23 15/6 16/22 19/1 19/12 21/17 23/21
**weren't [1]**  15/12
**what [47]**
**whatever [2]**  15/25 21/19
**when [9]**  17/11 22/3 22/12 23/5 25/17 26/24 27/1 27/2 28/19
**whenever [1]**  4/25
**where [8]**  2/19 9/24 10/13 10/23 13/17 16/15 22/13 29/21
**whether [11]**  6/6 8/13 9/22 9/23 12/20 13/20 14/3 15/22 22/23 26/8 26/13
**which [15]**  9/8 9/11 9/14 9/21 14/9 17/12 20/3 20/10 20/14 22/16 22/18 28/2 31/2 31/5 32/4
**while [3]**  3/8 22/24 31/20
**who [17]**  4/20 4/20 8/8 16/9 16/11 16/22 17/3 17/20 18/2 19/15 20/4 21/6 26/8 27/25 28/2 28/3 36/1
**whom [1]**  12/18
**why [4]**  4/13 12/16 16/19 25/11
**wide [3]**  4/18 6/15 19/11
**will [26]**  2/22 3/24 5/11 5/11 5/13 6/5 9/14 11/18 12/18 12/20 23/19 25/15 26/18 27/1 27/5 27/13 27/21 30/2 30/8 32/17 33/20 33/21

34/16 35/20 36/6 36/10
**will... [2]**  26/18 31/17
**wish [1]**  23/6
**without [1]**  13/23
**Witness [1]**  28/21
**witnesses [1]**  32/1
**won't [3]**  5/12 26/17 34/20
**word [1]**  26/2
**words [2]**  25/25 26/4
**work [3]**  20/2 29/6 35/25
**worked [1]**  17/20
**working [3]**  20/25 30/23 32/22
**world [2]**  9/11 28/2
**worried [2]**  4/9 4/10
**would [42]**
**wouldn't [3]**  5/8 19/12 21/13
**write [1]**  14/24
**wrong [6]**  7/1 13/21 17/8 18/7 19/2 24/13
**wrote [1]**  7/23

## Y

**yeah [7]**  22/4 23/8 29/13 30/14 30/19 30/25 35/24
**years [2]**  9/20 31/5
**yes [12]**  3/15 4/6 6/19 9/9 9/12 11/8 24/5 25/25 27/17 28/10 33/17 35/4
**yesterday [5]**  14/20 21/17 25/21 36/13 36/13
**yet [4]**  5/12 12/8 34/5 34/9
**you [181]**
**your [37]**  2/7 2/9 2/21 2/22 3/4 5/7 5/15 7/11 9/6 9/8 10/18 11/2 11/3 11/13 11/25 13/24 14/6 14/12 15/15 18/16 18/19 18/20 19/20 21/23 23/13 24/24 25/20 26/23 28/24 29/4 29/17 30/10 32/24 33/2 35/14 36/4 36/12

## Z

**Zoom [6]**  32/14 32/18 32/20 33/19 33/21 34/17