**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JANE DOES 1-7, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:25-cv-00234 (RDM) |
| OFFICE OF PERSONNEL | * | |
| MANAGEMENT, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFFS' MOTION FOR SANCTIONS**[1]

In a bid to avoid a Temporary Restraining Order ("TRO") for failing to conduct and publish a Privacy Impact Assessment ("PIA") for the computer system which would later be referred to as the Government-Wide Email System ("GWES"), Defendant Office of Personnel Management ("OPM") published a document at the last minute which, while purporting to be a PIA for that system, was both factually inaccurate and legally insufficient. OPM entitled this document *Privacy Impact Assessment for Government-Wide Email System (GWES)* ("GWES PIA")[2] and published it for pretextual reasons for the purpose of misleading this Court and

---

[1] Because Plaintiffs are filing the version of this Motion that they served on Defendant's counsel on 23 February in accordance with Federal Rule of Civil Procedure 11(c)(2), it is not fully up-to-date. This Motion is bolstered by subsequent factual developments, which Plaintiffs will discuss in greater detail in their Reply. Additionally, some of the characterizations of Defendant's counsel's statements in previous hearings may not be 100% accurate due to the fact that Plaintiffs did not have transcripts at the time, and Plaintiffs will identify any necessary corrections in the Reply as well unless the Court requests an earlier notice. None of the discrepancies should change the Court's analysis, however. This footnote (and the necessary repagination and renumbering of subsequent footnotes) and the filing date are the only modifications made to this filed version (except for the correction of two minor typographical errors).

[2] Plaintiffs refer to this document as a PIA simply for convenience. They do not concede that this document is in any way a legitimate PIA as required by law.

arguing that its publication renders the case moot, just as the Government rescinded an Office of Management and Budget memo for similarly pretextual reasons in *National Council of Nonprofits v. OMB*, No. 25-239, 2025 WL 368852, at *7 (D.D.C. Feb. 3, 2025) ("[I]t appears that OMB sought to overcome a judicially imposed obstacle without actually ceasing the challenged conduct. The court can think of few things more disingenuous."). Because the Court is already familiar with the facts surrounding the GWES PIA and Plaintiffs' allegations regarding its inaccuracy and legal insufficiency, Plaintiffs will not belabor the issue further herein, and they will solely focus on the new developments which have led to this Motion for Sanctions.

Simply put, OPM and its counsel offered false evidence—in the form of an alleged PIA which made patently false statements about the GWES—and then proceeded to argue that this Court should deny Plaintiffs' TRO motion based on the assertion that those false statements were true. Furthermore, OPM and its counsel heavily implied that the information about individuals who were not Executive Branch employees had been purged from the system when it was discovered, which also turns out to be patently false. Both of these actions demonstrate a clear lack of candor to the tribunal and OPM and its counsel should be sanctioned for unreasonably multiplying the proceedings and violating the integrity of the court's process by entering statements into evidence which were known to be false and then citing them uncritically to the Court to convince the Court that OPM's actions were legal and that Plaintiffs were not at risk of imminent harm.

## BACKGROUND

1.      On 4 February 2025, Plaintiffs asked this Court for a TRO to re-establish the status quo and enjoin OPM from operating the GWES until a PIA had been conducted and published.

2.      On 5 February, OPM opposed Plaintiffs' motion on multiple grounds, one of which is relevant here. OPM argued that the GWES PIA, which it attached to its brief, rendered the case moot. (Def.'s Resp. Pls.' Mot. TRO, Dkt. #10, at 7-8 (filed Feb. 5, 2025).)

3.      The GWES PIA states at the beginning: "The GWES maintains only the names and government email addresses of federal government employees, as well as voluntary responses to mass emails." (*Privacy Impact Assessment for Government-Wide Email System (GWES)*, Dkt. #11-1, at 2 (filed Feb. 5, 2025) [hereinafter GWES PIA].)

4.      The GWES reiterates the claim that any responses to emails sent using the system are strictly voluntary—as well as being short and non-identifying—five more times:

- "GWES also collects and redistributes responses to emails sent to those addresses, *which are limited to short, voluntary, non-identifying information*." (*Id.* at 4 (emphasis added).)

- "After an email is sent using Employee Contact Data, GWES collects, maintains, and redistributes *short, voluntary responses*." (*Id.* (emphasis added).)

- "All individuals are provided advance notice of the Employee Response Data, as *it is voluntarily provided by the individuals themselves in response to an email*." (*Id.* at 7 (emphasis added).)

- "The Employee Response Data is *explicitly voluntary*. The individual federal government employees *can opt out simply by not responding to the email*." (*Id.* (emphasis added).)

- "This risk [that individuals will not realize their response is voluntary] is mitigated by ensuring that any email sent using GWES is clear, by *explicitly stating that the response is voluntary*, and by including specific instructions for a response." (*Id.* (emphasis added).)

5.      In the 6 February hearing, OPM's counsel advised the Court that the GWES PIA was accurate.

6.      After the Court denied Plaintiffs' requested TRO as moot, Plaintiffs filed an amended complaint and a renewed motion for a TRO on 7 February.

7.      On 11 February, OPM again opposed Plaintiffs' motion on multiple grounds, two of which are relevant here. First, as before, OPM argued that the publication of the GWES PIA rendered the case moot. (Def.'s Comb. Mem. P. & A. Supp. Def.'s Mot. Dismiss & Opp'n Pls.' Renewed Mot. TRO, Dkt. #17-1, at 8-9 (filed Feb. 11, 2025) [hereinafter OPM's TRO Opp'n].) In doing so, OPM explicitly stated that the GWES was accurate. (*See id.* at 15 ("[T]he PIA addresses each substantive element that the statute requires[.]").)

8.      OPM's opposition also implicitly referenced the fact that the GWES PIA stated that sending email responses to the system was voluntary, analogizing the case to *Reliable Automatic Sprinkler Co. v. CFPB*, 324 F.3d 726 (D.C. Cir. 2003), and describing the letter from that case as "request[ing] voluntary corrective action" and a "request for voluntary compliance [which] had no legally binding effect." (OPM's TRO Opp'n at 12.)

9.      In the 14 February hearing, OPM's counsel told the Court that the inclusion of contractors and other individuals who were not Executive Branch employees was accidental and that "filtering" has been done to ensure that they did not receive any more emails. Plaintiffs' undersigned counsel advised the Court at that time that it was very likely that all of this information remained in the GWES and that the "filtering" just ensured that OPM did not email non-Executive Branch employees.

10.     Additionally, OPM's counsel again stated that the GWES PIA was accurate and referenced the voluntary nature of any responses to emails sent using that system.

11.     On 17 February, the Court denied Plaintiffs' motion for a TRO. In doing so, it appears to have assumed that the GWES PIA was accurate. (Mem. Op. & Order, Dkt. #21, at 4-5 (filed Feb. 17, 2025) ("As far as the Court can discern, however, the following facts are either uncontested or are reflected in the one administrative document before the Court, the February 5, 2025 PIA prepared by OPM and reviewed by the agency's newly installed Chief Information Officer, Greg Hogan.").)

12.     On 19 February, President Donald Trump publicly stated, "I signed an order creating the Department of Government Efficiency and put a man named Elon Musk in charge." Anna Bower (@annabower.bsky.social), Bluesky (Feb. 19, 2025 6:11 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3likvkcjnr22h (last accessed Feb. 23, 2025).

13.     On 22 February, President Trump posted on social media, "ELON IS DOING A GREAT JOB, BUT I WOULD LIKE TO SEE HIM GET MORE AGGRESSIVE." Donald J. Trump (@realDonaldTrump), Truth Social (Feb. 22, 2025 8:04 AM), *at* https://truthsocial.com/@realDonaldTrump/posts/114047677181856301 (last accessed Feb. 23, 2025).

14.     Later on 22 February, Elon Musk posted on social media, "Consistent with President @realDonaldTrump's instructions, all federal employees will shortly receive an email requesting to understand what they got done last week. *Failure to respond will be taken as a resignation*." Elon Musk (@elonmusk), X.com (Feb. 22, 2025 2:46 PM), *at* https://x.com/elonmusk/status/1893386883444437415 (last accessed Feb. 23, 2025) (emphasis added).

15.     Later on 22 February, OPM sent an email using the GWES with the subject line "What did you do last week?" The email read, "Please reply to this email with approx. 5 bullets of what you accomplished last week and cc your manager. Please **do not send** any classified information, links, or attachments. *Deadline is this Monday at 11:59pmEST*." Allison Gill (@muellershewrote.bsky.social), Bluesky (Feb. 22, 2025 5:07 PM), *at* https://bsky.app/profile/muellershewrote.bsky.social/post/3lisdfirajk2c (last accessed Feb. 23, 2025) (emphasis added).

16.     The 22 February email was sent outside of the Executive Branch. *See*, *e.g.*, Subodh Chandra (@subodhchandra.bsky.social), Bluesky (Feb. 22, 2025 11:20 PM), *at* https://bsky.app/profile/subodhchandra.bsky.social/post/3lisy7nwnrk2q (last accessed Feb. 23, 2025) (including screenshot of email from the Administrative Office of U.S. Courts stating that "some judges and judiciary staff have received an email from HR@opm.gov directing the recipient to reply with 5 accomplishments from the prior week").

17.     Later on 22 February, the Department of Justice ("DOJ") Assistant Attorney General for Administration advised all DOJ component heads that "employees should be prepared to follow the instructions on Monday as requested." Marisa Kabas (@marisakabas.bsky.social), Bluesky (Feb. 22, 2025 10:22 PM), *at*

https://bsky.app/profile/marisakabas.bsky.social/post/3lisuxs4yjs2u (last accessed Feb. 23, 2025).

18.    On 23 February, the Small Business Administration directed "SBA Colleagues" to "please comply as instructed in the email." BlackHourglass50, Reddit (Feb. 23, 2025), *at* https://www.reddit.com/r/fednews/comments/1iwazsc/comment/mectk33/ (last accessed Feb. 23, 2025).

19.    On 23 February, the Social Security Administration directed "All SSA Employees" that "[y]ou must take the action requested by the deadline." Katie Stone (@abqkatiestone.bsky.social), Bluesky (Feb. 23, 2025 3:26 PM), *at* https://bsky.app/profile/abqkatiestone.bsky.social/post/3liuo6m2zkg2p (last accessed Feb. 23, 2025).

20.    By the time the 11:59 PM deadline passes on 24 February, there are likely to be numerous other agencies which direct their employees to reply to this email.

## **ARGUMENT**

Pursuant to 28 U.S.C. § 1927 ("Section 1927"), "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

According to Federal Rule of Civil Procedure 11 ("Rule 11"):

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11.

Lastly, "in the exercise of its inherent authority, a court may assess attorneys' fees and expenses against a party for certain abuses of its processes." *Alexander v. FBI*, 541 F. Supp. 2d 274, 299 (D.D.C. 2008) [hereinafter *Alexander II*] (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46 (1991)). Additionally, the Court possesses inherent authority to impose other sanctions above and beyond attorneys' fees and expenses "to protect their integrity and prevent abuses of the judicial process." *Shepherd v. ABC,* 62 F.3d 1469, 1474 (D.C. Cir. 1995) (citing *Chambers,* 501 U.S. at 46).

Sanctions are "not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Trulis v. Barton,* 107 F.3d 685, 694 (9th Cir.1995) (internal quotations and citations omitted). While "it is settled that a finding of bad faith is required for sanctions under the court's inherent powers," *United States v. Wallace,* 964 F.2d 1214, 1219 (D.C. Cir. 1992), the D.C. Circuit "has not yet established whether the standard [for unreasonable and vexatious conduct under Section 1927] should be 'recklessness' or the more

stringent 'bad faith.'" *LaPrade v. Kidder Peabody & Co., Inc.,* 146 F.3d 899, 905 (D.C. Cir.

1998) (citing *Wallace,* 964 F.2d at 1218-19). *See also Alexander v. FBI,* 192 F.R.D. 25, 31

(D.D.C. 2000) [hereinafter *Alexander I*]. Both a finding of "vexatiousness" under Section 1927

and a finding of litigation misconduct under the Court's inherent power must be supported by

clear and convincing evidence. Under Rule 11, "A sanction imposed under this rule must be

limited to what suffices to deter repetition of the conduct or comparable conduct by others

similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty

into court; or, if imposed on motion and warranted for effective deterrence, an order directing

payment to the movant of part or all of the reasonable attorney's fees and other expenses directly

resulting from the violation." Fed. R. Civ. P. 11(c)(4).

      Regardless of which authority the Court relies on, the evidence is clear that OPM and its

counsel[3] intentionally, unreasonably, vexatiously, and in bad faith entered a document containing

false information into evidence and argued that the Court should rely on the statements made in

that document. *Cf. Kungys v. United States*, 485 U.S. 759, 770 (1988) ("[A] concealment or

misrepresentation is material if it has a natural tendency to influence, or was capable of

influencing, the decision of the decisionmaking body to which it was addressed."). In doing so,

OPM convinced this Court to deny Plaintiffs' first request for a TRO, forced the parties to brief a

second motion for a TRO, and are forcing Plaintiffs to respond to a motion to dismiss which is

largely predicated on the fact that the invalid and inaccurate GWES PIA is in the record.

---

[3] Only two DOJ attorneys have entered an appearance in this case for OPM, but it is a well-known fact that other government lawyers in both DOJ and OPM are involved in the case. Since at this point it is unclear exactly who on OPM's legal team was responsible for this behavior and who had no knowledge of the falsity of the information, the term "OPM's counsel" will be used to denote not only the two attorneys who have noticed appearances but also any other DOJ attorneys or OPM attorneys who played a role in this case. *See* Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.").

Accordingly, NSC asks that the Court impose monetary and equitable sanctions on OPM and its counsel, including, but not limited to: a) striking the GWES PIA from the record; b) prohibiting OPM from relying on the GWES PIA at this stage of the litigation; c) ordering all of OPM's legal team to file sworn declarations and supporting evidence regarding their level of knowledge of the falsity of OPM's representations; and d) any other equitable remedy the Court considers appropriate and necessary to penalize OPM and its counsel for wasting the Court's and Plaintiffs' time and to deter repetition of the conduct or comparable conduct by others similarly situated.[4]

Pursuant to Rule 11(c)(2), Plaintiffs served this Motion on OPM's counsel on 23 February 2025 and has given OPM the required amount of time to voluntarily comply with Plaintiffs' demands, which it has not. A proposed Order accompanies this Motion.

Date:   February 28, 2025

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*

---

[4] One such possible equitable remedy would be denying OPM's motion to dismiss outright and explicitly authorizing the parties to begin discovery.