UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JANE DOES 1-2, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:25-CV-00234 |
| OFFICE OF PERSONNEL MANAGEMENT, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

The Office of Personnel Management, and undersigned counsel, hereby respond to Plaintiffs' Motion for Sanctions. For the reasons that follow, the motion should be denied.

**INTRODUCTION**

Without a single citation to a transcript, Plaintiffs recklessly—and falsely—accuse undersigned counsel of having acted in bad faith in opposing Plaintiffs' Renewed Motion for a Temporary Restraining Order ("TRO"). The crux of Plaintiffs' accusation is that Defendant submitted to the Court a "false" document and "argued that the Court should rely on the statements made in that document." Pls.' Sanctions Mot. at 9 (Pls.' Mot.). But nothing could be further from the truth. Defendant's counsel never vouched for the substantive "accuracy" of the Privacy Impact Statement ("PIA") it submitted in connection with its opposition to Plaintiffs' motion for a TRO. To the contrary, Defendant argued that it was not required to prepare a PIA; that it did so anyway; that the published PIA contained the required statutory elements set forth in Section 208 of the E-Government Act; and that the Administrative Procedure Act ("APA") did not permit a challenge

1

to the substance and accuracy of the PIA because the PIA did not constitute final agency action. Plaintiffs' purported evidence of sanctionable conduct consists of nothing more than: (1) a re-hash of their argument that the PIA's accuracy is challengeable under the APA, which is an argument this Court declined to reach at the TRO stage because Plaintiffs "have not shown that they likely have standing to sue," Mem. Opinion and Order, at 13, ECF No. 21; and (2) misrepresentations of Defendant's arguments and statements, all without citation to the transcript.[1] This motion should be swiftly and sternly denied.

## LEGAL STANDARDS

*Fed. R. Civ. P. 11*: In adjudicating a Rule 11 motion, the court applies "an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Naegele v. Albers*, 355 F. Supp. 2d 129, 143–44 (D.D.C. 2005) (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enter.,* 498 U.S. 533, 554 (1991)). The imposition of Rule 11 sanctions is not to be taken lightly; Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings. *Trout v. Garrett,* 780 F. Supp. 1396, 1428 (D.D.C.1991) (noting that "the relatively blunt instrument of sanctions against individual attorneys ought to be applied with restraint").

*28 U.S.C. §1927*: Under Section 1927, a court "may," but is not required to, tax (1) an "attorney or other person admitted to conduct cases" in federal court (2) who "multiplies the proceedings . . . unreasonably and vexatiously" (3) with "the excess costs, expenses and attorneys' fees" (4) "reasonably incurred" by an opposing party "because of such conduct." Whether the standard is bad faith or recklessness, it is a high standard that may not be used as a "'catch all'

---

[1] This Court's court reporter was able to produce transcripts in two hours' time. Plaintiffs' counsel either could not be bothered to order transcripts before making unsupported statements accusing OPM's counsel of bad faith, or, worse, he ordered the transcripts and, finding no support, declined to include them.

2

provision . . . for sanctioning any and all . . . conduct courts want to discourage." *United States v. Wallace*, 964 F.2d 1214, 1218–19 (D.C. Cir. 1992).  In one case, where the D.C. Circuit imposed §1927 sanctions based on a recklessness standard, for example, counsel had refused, both in the trial court and at several turns on appeal, to identify the disputed facts that he contended required a trial of the case.  *Reliance Ins. Co. v. Sweeney Corp.*, 792 F.2d 1137, 1138–39 (D.C. Cir. 1986).  Moreover, "[a]n attorney who might be guilty of no more than a mistake in professional judgment" should not be penalized under §1927.  *Baker Indus. v. Cerberus, Ltd.*, 764 F.2d 204, 209 (3d Cir. 1985).  Indeed, courts are unanimous that unintended, inadvertent, or even negligent conduct will not support an assessment of fees and costs under §1927.  *Wallace*, 964 F.2d at 1219 (citing *Cruz v. Savage*, 896 F.2d 626, 631(1st Cir. 1990)).

*Inherent Authority:*  Federal courts are endowed with a wide array of inherent powers to protect their integrity and prevent abuses of the judicial process.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991) (discussing various inherent powers).  To impose a sanction based on its inherent authority, however, a court must find some connection between the sanctioned conduct and a process of the court in the litigation before it.  *Chambers*, 501 U.S. at 54 n. 17 (quoting *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 124 F.R.D. 120, 131 (W.D. La. 1989)).  In addition, even when there is a nexus between the conduct at issue and some judicial process, before exercising its inherent power to award sanctions, "the court must make an explicit finding that [the target of the sanctions] acted in bad faith."  *Wallace*, 964 F.2d at 1219.

## ARGUMENT

### PLAINTIFFS PRESENT NO EVIDENCE OF SANCTIONABLE CONDUCT

The argument section of Plaintiffs' motion consists of two pages reciting case law on sanctions standards, Pls.' Mot. at 7–8, with a one sentence conclusion:  "OPM and its counsel

intentionally, unreasonably, vexatiously, and in bad faith entered a document containing false information into evidence and argued that the Court should rely on the statements made in that document." Pl. Mot. at 9. Plaintiffs are wrong in every respect.

### A. Plaintiffs Misrepresent Undersigned Counsel's Arguments and Statements

Plaintiffs, without support, recite a number of purported facts that they claim constitute sanctionable conduct.[2] For example, Plaintiffs assert that at both the February 6 and the February 14 hearings OPM counsel "stated that the GWES PIA was accurate." Pls.' Mot. at ¶¶ 5, 10. No citation accompanies either paragraph. In fact, OPM counsel argued only that the PIA contained the statutory elements. *See* Transcript of February 6, 2025 ("Feb. 6 Transcript"), at 19 ("Although OPM maintains that there was no need to file the PIA, but it did do the PIA. It is a PIA that looks very much like others. It contains all of the requisite elements."); Transcript of February 14, 2025 ("Feb. 14 Transcript"), at 17–18 ("And the relief they are requesting is a PIA . . .Our position is that is what we have produced. The statute requires seven different things to be included in a PIA. All of those are there. There is no cause of action to challenge the substance of a PIA beyond that."). The word "accurate" does not appear in either transcript. *Id*. Moreover, contrary to Plaintiffs' assertion, stating that the PIA addresses each element required by statute—as the Court itself remarked from the bench, Feb. 6 Transcript at 12–13—does not in any way equate to "OPM explicitly stat[ing] that the GWES was accurate." Pl. Mem at 4, ¶ 7.

---

[2] Plaintiff, in a footnote added to the motion that he served on Defendant's counsel, essentially concedes that he mischaracterized defense counsel's statements. Pl. Mem at 1, n.1 Remarkably, Plaintiffs' counsel uses as an excuse the fact that he did not have the transcripts. *Id*. ("[S]ome of the characterizations of Defendant's counsel's statements in previous hearings may not be 100% accurate due to the fact that Plaintiffs did not have transcripts at the time."). In other words, it did not occur to Plaintiffs' counsel that he should order the transcript *before* misrepresenting the record, accusing Defendants' counsel of bad faith, and moving for sanctions.

Such an assurance of accuracy, moreover, would have been superfluous in light of OPM's legal position that "Plaintiffs' asserted right to challenge the substance and accuracy of the PIA is not actionable under the APA." *See* Def.'s Mot. to Dismiss, ECF No. 17-1 at 9; *see also* Feb. 14 Transcript at 22 ("It is sufficient under all of the elements that the statute requires . . . [T]here is no provision in the statute that allows any plaintiff to challenge the actual substance beyond those seven elements."). Indeed, Defendant's legal argument posited that even if the PIA were entirely inaccurate, it would still not constitute challengeable final agency action. Def.'s Mot. to Dismiss, ECF No. 17-1 at 11 (citing *Hearst Radio, Inc., v. FCC*, 167 F. 2d 225, 227 (D.C. Cir. 1948) and explaining that the D.C. Circuit had reached that conclusion "even accepting for purposes of the motion to dismiss that the report was false, libelous, and caused actual damages to the owner of a station").

Likewise, Plaintiffs' statement that OPM counsel "heavily implied that the information about individuals who were not Executive Branch employees had been purged from the system when it was discovered" is without citation and equally unsupported. Pls.' Mot. at 2.[3] When asked by the Court whether individuals outside the Executive Branch who received the first GWES email had "been removed," Feb 14. Transcript at 19, OPM counsel clearly and candidly expressed uncertainty regarding the facts relevant to that inquiry. *Id.* ("Your Honor, I don't know all of the facts regarding that. But I do know that it seems the judiciary hasn't continued to receive the emails, other groups have not received the emails."). Responding to further comments from the Court, counsel did note that she "believe[d] filtering ha[d] been done to crosscheck who the emails [were] going to," but continued to clarify that OPM counsel was not in a position to make

---

[3] The PIA was not limited to "Executive Branch" employees, but rather stated that the system encompassed information pertaining to "federal government employees." Sec. 2.1.

5

affirmative representations to the Court assuring the success of any filtering that may have been attempted.  *See id.* ("I can't represent that I know with certainty [the emails] are not going to anyone they shouldn't."); *see also id.* (THE COURT: "What about the Library of Congress or other congressional agencies that are not executive branch, do you know about that?" MS. HORTON: "I do not.").  Indeed, the transcript confirms that OPM counsel never represented that information had been deleted, merely that counsel had been informed that OPM was working to make sure emails did not go out to any individuals who were not intended to receive them.  Likewise, the Court's Opinion and Order makes clear that it did not rely on an understanding that any particular .gov email address had been deleted from the GWES system.  To the contrary, the Court stated that, "[e]ven assuming Plaintiffs' .gov email addresses are being held on an unsecured system, that alleged injury is no more concrete or actual than the alleged injury of" plaintiffs in *TransUnion* "who complained about uncommunicated erroneous OFAC alerts." Mem. Op. at 10–11.

Having no evidence to support any misstatement by OPM counsel, let alone any misstatement made in bad faith, Plaintiffs go so far as to insist that such alleged falsehoods were made "implicitly" through citation to *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm's*, 324 F.3d 726, 731 (D.C. Cir. 2003).  Pl. Mot. at 4, ¶ 8.  That case stands for the unremarkable proposition that agency action is final only "to the extent that it imposes an obligation, denies a right, or fixes some legal relationship."  Plaintiffs suggest, however, that the fact pattern in that particular case—involving a letter conveying a preliminary conclusion that a product presented a hazard and requesting voluntary corrective action—amounted to a false assurance to the Court that the substance of the PIA in this case was accurate.  Pls.' Mot. at 8.

Even if the connection were apparent, and it is not, such a torturous attempt to find an implied misstatement further underscores the spurious nature of Plaintiffs' motion.

Finally, based on all the above, Plaintiffs allege that this Court was misled into denying their TRO. Pl. Mot. at 4, ¶ 11 ("On 17 February, the Court denied Plaintiffs' motion for a TRO. In doing so, it appears to have assumed that the GWES PIA as [sic] accurate.") For support, Plaintiffs cite to the factual background section of the Court's Memorandum Opinion and Order, wherein it stated that it was uncontested that OPM prepared and signed a PIA dated February 5, 2025. *Id.* But the Court fully understood and recited the parties' respective arguments, which included OPM's argument that it had prepared a PIA, and that, "on OPM's telling, [ ] the Court lacks the authority to examine the 'substance and accuracy' of the PIA that the agency prepared." Mem. Op. at 2. Further, the Court's ruling was not based on the content of the PIA. The Court held that Plaintiffs failed to carry their burden that they had standing or that they were likely to suffer irreparable harm. *Id*; *see also* p. 7 ("The Court's inquiry begins and ends with Plaintiffs' asserted injuries…."). Even had there been mistaken representations about the content of the PIA—which there were not—the contents of the PIA played no role in the Court's denial of the TRO.

### B. Plaintiffs' Disagreement With OPM's Policy Choices Is Not Grounds for Sanctions

The remainder of Plaintiffs' motion for sanctions recites the events surrounding the February 22 email that was sent using the GWES system. Pls.' Mot. at 5–7. That email in no way suggests that, at the time of the TRO hearing, the PIA was inaccurate or that OPM's counsel had any reason to believe that it was inaccurate. Certainly, at the time of the TRO proceedings, counsel was entirely unaware this email would be forthcoming, as evidenced by a direct exchange with the Court:

>THE COURT: And do you know what the plans are going forward? I mean, I understand that the system was used for purposes of, among other things, notifying executive branch workers of the – I don't know what we are calling it, the payout, the retirement option. Are there other imminent plans for using the system that you are aware of?
>
>MS. HORTON: Your Honor, I don't know.

Feb. 14 Transcript at 22–23.

A vindictive and meritless motion for sanctions against opposing counsel is no way to re-litigate what in reality is a second bite at arguments already made in Plaintiffs' unsuccessful TRO motion. Plaintiffs are free to argue on the merits—if they can get there—that the PIA constitutes a final agency action subject to APA review, or that OPM should be required to amend its PIA (which it has recently done despite not being required to have a PIA in the first place)[4]. But that does not excuse Plaintiffs' counsel's conduct in filing a frivolous motion impugning the reputation of OPM's counsel without even taking the care to check his allegations against the official transcript. Undersigned counsel, and this Court, deserve better.

## CONCLUSION

For all the reasons state above, Plaintiff's motion should be denied.

Dated: February 28, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General


/s/Elizabeth J. Shapiro
ELIZABETH J. SHAPIRO (D.C. Bar #418925)

/s/Oliva G. Horton
OLIVIA G. HORTON (TX Bar #24120357)

---

[4] OPM updated its PIA on February 28, 2025. The latest version of the document can be found here: https://www.opm.gov/media/kfpozkad/gwes-pia.pdf

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 514-5302
Facsimile: (202) 616-8460
Email: elizabeth.shapiro@usdoj.gov

*Attorneys for Defendant.*