UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOES 1-7, | * |
| | * |
|     Plaintiffs, | * |
| | * |
| v. | * |
| | *   Civil Action No. 1:25-cv-00234 (RDM) |
| OFFICE OF PERSONNEL MANAGEMENT, | * |
| | * |
|     Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS**

Defendant Office of Personnel Management's ("OPM") Opposition to Plaintiffs' Motion for Sanctions essentially concedes that sanctions are appropriate in this case by failing to contest in any way that a document filed with this Court is false. All OPM needed to do to comply with Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") and the other cited authorities was to withdraw that document. Instead, OPM refused, filing an Opposition that itself continues to misstate the facts, the law, and this Court's rulings. Sanctions are plainly appropriate.

### **INTRODUCTION**

On 5 February 2025, at approximately 10:00 AM—just one hour before they were scheduled to appear before this Court for a status conference regarding Plaintiffs' motion for a Temporary Restraining Order ("TRO")[1]—OPM's counsel submitted a false document to this Court. (*See Privacy Impact Assessment for Government-Wide Email System (GWES)*, Dkt. #11-1 (filed Feb. 5, 2025) [hereinafter 1st PIA].) In doing so, OPM used that submission as the sole basis for arguing that this Court should not only deny the requested TRO but dismiss the entire

---

[1] That conference was rescheduled by one day due to an error by Plaintiffs' undersigned counsel. (*See* Min. Order (filed Feb. 5, 2025).)

case outright as "moot because . . . OPM *has now completed a PIA* of the systems used in association with the hr@opm.gov address." (Def's. Opp'n Mot. TRO, Dkt. #10, at 1 (filed Feb. 5, 2025) (emphasis added).)

That argument found favor with this Court, which denied Plaintiffs' motion and sent them back to the drawing board to amend their complaint:

> The Court held a hearing on the motion on February 6, 2025, and denied the motion as moot. See Min. Entry (Feb. 6, 2025). As the Court explained, *because OPM had conducted a PIA, the relief that Plaintiffs sought was no longer meaningful*; there was no reason for the Court to issue an order barring OPM from using computer systems connected to the HR@opm.gov email address because the condition precedent that Plaintiffs themselves specified had already been satisfied.

(Mem. Op. & Order, Dkt. #21, at 5-6 (filed Feb. 17, 2025) [hereinafter Feb. 17 Order].)

Now, with the benefit of hindsight, there is no meaningful dispute that the 5 February PIA ("1st PIA") relied upon by this Court was false. Specifically, the 1st PIA first correctly identified as a primary privacy vulnerability that government employees who received emails sent through the newly-created Government-Wide Email System ("GWES") might mistakenly believe they were required to respond to those emails. (*See* Pls.' Mot. for Sanctions, Dkt. #28, at 3-4 (filed Feb. 28, 2025) [hereinafter Pls.' Sanctions Mot.]; 1st PIA at 7 (identifying as a "privacy risk" in bold font that "[t]here is a risk that individuals will not realize their response is voluntary.").) In light of this privacy risk *identified by the government,* OPM initially represented and submitted to this Court a PIA assuring Plaintiffs, the Court, and the general public that any use of the GWES system would "explicitly" disclose that all responses are "voluntary." Indeed, the 1st PIA makes assurances of voluntariness at least six times in its brief eleven pages. (*See* Pls.' Sanctions Mot. at 3-4.)

OPM does not contest that, after filing the 1st PIA and prevailing in this Court, federal government employees were subsequently told that responses to GWES emails were *not*, in fact, voluntary. (*Id.* at 6-7 (detailing how GWES was used to send emails where failure to respond would be taken as a termination).) Indeed, OPM makes literally no effort in its Opposition to defend the veracity of the 1st PIA (*see* Def.'s Opp'n Pls.' Mot. Sanctions, Dkt. #29, at 4-6 (filed Feb. 28, 2025) [hereinafter OPM's Opp'n]), and apparently concedes that the 1st PIA is false by referencing (but not attaching as an exhibit) a supposedly "updated" PIA ("2d PIA") in a footnote. (*See id.* at 8 n.4 (citing OPM, *Privacy Impact Assessment for Government-Wide Email System (GWES)* (Feb. 28, 2025), *available at* https://www.opm.gov/media/kfpozkad/gwes-pia.pdf (last accessed Mar. 2, 2025) [hereinafter 2d PIA]).)[2] OPM's "updated" PIA has now deleted all references to voluntariness, *including the primary vulnerability first identified by OPM itself*. (*Compare* 2d PIA at 8 ("The consequences for failure to provide the requested information will vary depending on the particular email at issue."), *with* Dkt. #11-1 at 7 ("The Employee Response Data is explicitly voluntary. The individual federal government employees can opt out simply by not responding to the email.").)

The obvious inference is that OPM generated a PIA literally at the 11th hour in a self-described effort to try and "moot" this litigation with, at minimum, disregard for the actual content and repeated assurances of that PIA itself. Rule 11 demands more. (*See* Pls. Sanctions Mot. at 7-9.)

Instead of defending its false PIA, OPM makes three arguments, none of which have merit. First, it contends that its counsel never vouched for the 1st PIA's accuracy. (*See, e.g.,*

---

[2] Plaintiffs do not know why OPM declined to attach the 2d PIA as an exhibit to their Opposition despite attaching the 1st PIA as an exhibit. Plaintiffs reserve all rights in connection with OPM's reliance on and citation to the 2d PIA, including the right to request additional sanctions with this Court in connection therewith.

OPM's Opp'n at 4 ("The word "accurate" does not appear in either transcript.").) Second, it argues that this Court did not rely on the 1st PIA and therefore OPM or its counsel cannot be sanctioned for its falsity. (*Id.* at 7 ("Further, the Court's ruling was not based on the content of the PIA.").) Finally, OPM's counsel Olivia Horton claims that she was unaware at the time the 1st PIA was submitted to this Court of how her client might use that information just days after the Court denied Plaintiffs' second request for a TRO. (*Id.* at 7-8.)

## ARGUMENT

### I.     OPM SUBMITTED AND RELIED UPON THE 1ST PIA TO THIS COURT

Rule 11(b)(3) requires that an attorney certify to this Court that, on "the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions" in a document submitted to this Court "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

OPM does not even attempt to allege that the primary factual contention underlying the 1st PIA—that recipients of GWES emails will have the voluntary choice whether to reply to those emails or not—has or is likely to have evidentiary support. Indeed, the 2d PIA referenced by OPM states the exact opposite:

> **4.2. What opportunities are available for individuals to consent to uses, decline to provide information, or opt out of the project?**
> Individual federal government employees can decline to provide information by not responding to the email. *The consequences for failure to provide the requested information will vary depending on the particular email at issue.*

2d PIA at 8 (italics added).

If a government employee can suffer "consequences for failure" to respond to a GWES email, the representations made at least six times in the 1st PIA are obviously false. OPM does

4

not argue otherwise, instead quibbling with how counsel characterized the 1st PIA at oral argument. Those arguments fail.

A.  **OPM ASSURED ALL PARTIES AND THIS COURT THAT THE 1ST PIA WAS LEGALLY SUFFICIENT**

OPM first argues that "OPM counsel argued only that the PIA contained the statutory elements," and not that the PIA itself was "accurate" such that this court could rely on it. (*See* OPM's Opp'n at 4 ("The word 'accurate' does not appear in either transcript.").)[3]

Not so. After this Court denied Plaintiffs' first TRO motion, it held oral argument on 14 February 2025 on Plaintiffs' 2d TRO motion in light of the obviously deficient 1st PIA. At that hearing, literally the *very first thing* that OPM's counsel said was that the 1st PIA was "legally sufficient":

> MS. HORTON: I want to refocus on the claims that plaintiffs have brought in this case. This is an E-Government Act suit. And the relief that they are requesting is a PIA. The difference between the last time that we were here and today is that they have asked for a legally sufficient PIA. *Our position is that is what we have produced.*

(Ex. B at 17:19-24 (emphasis added).)

OPM's counsel[4] now appear to be arguing that by saying "legally sufficient," they were simply assuring this Court that the 1st PIA *looks* like a PIA but not that it actually *was* one upon

---

[3] A true and correct copy of the 6 February 2025 transcript of oral argument on Plaintiffs' first TRO motion is attached hereto as Ex. A. A true and correct copy of the 14 February 2025 transcript of oral argument on Plaintiffs' second TRO motion is attached hereto as Ex. B. Unless directed to do so by this Court, Plaintiffs will not respond to OPM's attempt to malign the undersigned for serving OPM's counsel with a motion for sanctions while awaiting a transcript which, prior to OPM's sudden and public reversal of its position, *he did not need*. Nor does the undersigned apologize for filing the served copy in accordance with Rule 11(c)(2) even though he then knew it to contain some minor inaccuracies which could later be addressed.

[4] To be clear, as noted in Plaintiffs' Motion for Sanctions, they do not know all the attorneys, including those who are not employees of the Department of Justice ("DOJ"), who have been involved in representing OPM in this case. For example, in addition to Ms. Shapiro and Ms. Horton, two additional attorneys have attended hearings: Jacob Altik and Simon Jerome. (Ex. A

which this Court and Plaintiffs could actually rely. (OPM's Opp'n at 4 ("It is a PIA that looks very much like others. It contains all of the requisite elements.").) OPM cites to no cases, and Plaintiffs know of none, either, in which any court has ever permitted a party to evade Rule 11 sanctions—let alone any other kind of sanctions—by claiming that the false document it submitted to the Court resembles a real one.

Even if this Court were inclined to entertain such an argument, it would not avail OPM, because one of the "requisite elements" of a proper PIA includes advising the affected individuals (here, more than 2.3 million government employees and countless others with .gov and .mil email addresses) as to "what notice of opportunity for consent would be provided" to them. As this Court explained:

> The statute also instructs OMB to "issue guidance to agencies specifying the required contents" of a PIA, and stipulates that such guidance must require at least that PIAs identify the information to be collected, why it is being collecting, the intended use of the information, "with whom the information will be shared," *"what notice of opportunity for consent would be provided to individuals* regarding what information is collected and how that information is shared," "how the information will be secured," and whether the information will be maintained in a system of records for purposes of the Privacy Act, 5 U.S.C. § 552a. E-Government Act, § 208(b)(2)(B).

(Feb. 17 Order at 4 (emphasis added).)

---

at 2; Ex. B at 2.) It is disingenuous for OPM to claim the no sanctions are appropriate because *Ms. Shapiro and Ms. Horton* were ignorant of the falsity of their proffered evidence—even if that were shown to be true. Simply put, the only way that no sanctions would be appropriate would be if not a single lawyer involved in this case and not a single official involved in the drafting of the 1st PIA knew it was false and inaccurate, and proving that is going to require much more evidence than the Opposition that OPM has filed. For example, while Mr. Altik was introduced to the Court as being from OPM (Ex. A at 2), he has since been revealed to be employed by the Department of Government Efficiency ("DOGE") with a "DOGE email address[] at the Executive Office of the President." Justin Elliott *et al.*, *The Elite Lawyers Working for Elon Musk's DOGE Include Former Supreme Court Clerks*, ProPublica (Feb. 7, 2025), *at* https://www.propublica.org/article/elon-musk-doge-lawyers-supreme-court (last accessed Mar. 7, 2025). It defies credulity that a senior DOGE lawyer would not know how the GWES would be used and what information it stored.

6

At oral argument on 14 February, counsel for OPM reiterated that the 1st PIA was "sufficient under all of the elements that the statute requires." (Ex. B at 22:11-12.) Counsel added that there is "no provision in the statute that allows for any plaintiff to challenge the actual substance *beyond those seven elements*," acknowledging that even in OPM's view of the law, Plaintiffs are at least entitled to challenge the "substance" of the opportunity for consent articulated in the PIA. (*Id.* at 22:14-16 (emphasis added).)

OPM's Opposition does not dispute that the 1st PIA promised millions of GWES email recipients that any responses to such emails would be voluntary even though they were not, and even though now the Government no longer intends to stand by that promise.

The very purpose of the safe harbor provisions of Rule 11(b) are to "emphasize[] the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable while generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention."). Fed R. Civ. P. advisory notes (1993 Amendment); *see also Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 24 (D.D.C.2004) (imposing Rule 11 sanctions where plaintiff and counsel resubmitted the same claims after having been put "on notice that the factual allegations pled . . . were not sufficient").

B. **OPM HAS A DUTY OF CANDOR TO THIS COURT REGARDLESS OF ITS ARGUMENTS ABOUT STANDING**

In the alternative, OPM asserts that their misrepresentations to this Court are immaterial because they believe they will prevail on their legal arguments regarding standing. (*See* OPM's Opp'n at 5 ("Such an assurance of accuracy, moreover, would have been superfluous in light of OPM's legal position that 'Plaintiffs' asserted right to challenge the substance and accuracy of the PIA is not actionable under the APA.'").)

OPM once again cites zero cases for the proposition that parties are free to mislead the Court so long as they eventually win on the merits, and for good reason: that position was foreclosed with finality by the Supreme Court more than three decades ago in *Willy v. Coastal Corporation*, 503 U.S. 131 (1992) (upholding Rule 11 sanctions where the district court later determined that it lacked subject matter jurisdiction, and even where the sanctioned conduct was unrelated to the threshold jurisdictional question).

In other words: even if OPM sincerely believes that representing a pleading it filed is true would be "superfluous"—*and even if they are right*[5]—that would not obviate the duty of candor to this Court not to submit a false document. In this way this case resembles *National Security Counselors v. CIA*, No. 11-443 (D.D.C.) ("*NSC v. CIA*"), in which Judge Howell was presented with a motion for sanctions—also against the DOJ Federal Programs Branch and Ms. Shapiro, in part—over the efforts of the Central Intelligence Agency ("CIA") and DOJ to obfuscate the inaccuracy of an exhibit and, when backed into a corner over it, to attempt to blame the undersigned for "misunderstanding" the exhibit. In a Status Hearing in that case, Judge Howell harshly rebuked CIA's counsel:

> [MR. GLASS]: In this case we feel that we were simply slow on the uptake. That's regrettable. We're sorry. We'll try to be more -- we will try to be -- to act more promptly, to get the correct answer in the future more quickly. But we didn't here, and being slow on the uptake is not acting recklessly or efficaciously or in bad faith, and that's --
>
> THE COURT: Well, I have to tell you, this kind of apology was not in your papers. And the government making mistakes like this -- I understand the complications of working with agency counsel in order to make sure, particularly with classified information and, you know, that everything that's presented in court with a number of FOIA cases going on is totally accurate, but what really is of concern to me is the attitude reflected in the papers and how the government

---

[5] They are not. Plaintiffs dispute OPM's view of the law regarding what constitutes a final agency determination, but merely assume *arguendo* that even if OPM were to ultimately prevail on standing, it would nevertheless remain subject to the requirements of Rule 11 while this case is pending so long as it presents arguments to and files documents with this Court.

>chose to correct it. When the government ultimately made its submission, it said only that it was submitting clear documents that were merely intended to clarify the issue, making it seem like Mr. McClanahan was confused and I was confused as opposed to the government had made an error. There was nothing in that filing or that notice that said, oops, we actually went back and reviewed, and we made a mistake. That filing was subterfuge, obfuscation, covering up of the government's error, and I find very disturbing. How did that notice get filed without bluntly saying it was an error?
>
>MR. GLASS: Your Honor, candor is always advisable.
>
>THE COURT: Always advisable. Candor to the Court.
>
>MR. GLASS: And we will make sure that that doesn't happen again.
>
>THE COURT: Well, to me, that lack of candor comes pretty close to bad faith --
>
>MR. GLASS: Well, Your Honor --
>
>THE COURT: -- just so you know how the Court's viewing those papers that have been filed in connection with this case.
>
>MR. GLASS: Well, as I said, we regret that. We apologize for that, and we will make sure that it doesn't happen again.
>
>THE COURT: And how are you going to do that? Because how do you know how this happened? I have gotten no declarations in response to -- in the government's submission in opposition to the motion for sanctions that I would have expected, particularly given the nonchalant filing on October 22nd, 2012, correcting the error. I would have expected some kind of declaration or explanation that said, this is what happened; this is how the error was made; this is how the -- this is how this filing got filed in Court without forthrightly saying our prior direct responses to the Court were in error. I got no declarations, just a lot of legal argument saying, it's -- you know, bad faith can't be shown here, you know, it was a trifling error. Nothing saying, this is how it came about, so please accept our apology.

Tr. of 2/15/13 Status Hearing at 27:12-29:24, *NSC v. CIA*, attached as Ex. C.

In that case, Judge Howell ultimately did not issue sanctions, but only after CIA's counsel filed sworn declarations from both a CIA lawyer and a DOJ lawyer explaining who knew what and when, ultimately blaming a CIA non-legal employee. *See* Lutz Decl., Dkt. #61-1 (filed Feb. 25, 2013), *NSC v. CIA*; Parker Decl., Dkt. #61-2 (filed Feb. 25, 2013), *NSC v. CIA*.

9

While the Court may not currently be convinced that sanctions are appropriate in this case, it should at the very least demand that every Government lawyer associated with this case file a declaration under oath regarding their knowledge of the falsity and inaccuracy of the 1st PIA, and only then decide if sanctions are appropriate.

**II.     THIS COURT RELIED ON THE 1ST PIA IN DENYING PLAINTIFFS' FIRST TRO MOTION AND REQUIRING PLAINTIFFS TO AMEND THEIR COMPLAINT**

The law is clear in this Circuit that "once the district court finds that a pleading is not well grounded in fact . . . Rule 11 *requires* that sanctions of some sort be imposed." *Raffety v. NYNEX Corp.*, 60 F.3d 844, 852 (D.C. Cir. 1995) (citing *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174-75 (D.C. Cir.1985)) (cleaned up); *see also Trump v. Clinton*, 640 F. Supp. 3d 1321, 1326 (S.D. Fla. 2022) ("Rule 11 sanctions are properly assessed . . . when a party files a pleading that has no reasonable factual basis.")

Contrary to OPM's assertion, there is no exception to this rule where a party files false documents that are not ultimately relied on by the Court. (*See* OPM's Opp'n at 7 (arguing that "the Court's ruling was not based on the content of the PIA" and "the contents of the PIA played no role in the Court's denial of the TRO").) OPM once again cite no case law in support of this argument. *Cf. Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (imposing Rule 11 sanctions where only one count in a complaint was false because "Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions").

In any event, OPM is also wrong on the facts. Presumably the Court is well aware of its own rulings, which clearly demonstrate that the filing of the 1st PIA led to this Court's denial of Plaintiffs' first TRO motion. (*See* Feb. 17 Order at 5-6 & *supra* at 1-2 (noting that this Court

10

denied Plaintiffs' first TRO motion as moot "because OPM had conducted a PIA").) Although the Court was clearly not prepared to delve into a full-blown analysis of the adequacy of the PIA at that first TRO hearing, the Court nevertheless looked to the substance of the PIA to determine whether it "checked the boxes" under the E-Government Act.

Indeed, at that first TRO hearing, after disclosing to the parties that the Court has "reviewed . . . the privacy impact assessment that OPM has now filed with the Court," literally the first substantive question the Court asked of Plaintiffs' counsel was framed as follows: "It is my understanding that OPM has done the privacy impact assessment that was the relief you are seeking in this case, so what does that matter?" (Ex. A at 2:15-17; 6:20-22.)

A few minutes later, the Court orally denied Plaintiffs' motion:

> THE COURT: Okay. In that case your motion for a TRO is denied on the grounds that the grounds stated in the motion for the TRO are no longer apt, because you said -- the grounds that you cite for the TRO is that they didn't do a PIA. *They have now done one*. The relief that you sought was I ordered them to do it. They have now done it.

(*Id.* at 11:18-23 (emphasis added).)

OPM argues that the "contents of the PIA played no role in the Court's denial of the TRO." (OPM's Opp'n at 7.) That, too, is false. Minutes after denying the TRO, the Court stated as follows:

> So what the statute says is that the PIA has to indicate what information is to be collected, why the information is being collected, the intended use of the agency -- of the information, with whom the information will be shared, *what notice or opportunities for consent would be provided*. How the information will be secured and whether the system of records is being created -- or a system of records is being created under the Privacy Act. And I believe that, you know, one can at least look at what they filed and check each of those boxes. You may think they have erred in some respects, but I think each of those boxes can be checked *based on what that they have filed*.

(Ex. A at 12:15-23 (emphasis added).)

11

In other words, although this Court was not prepared to render a full evaluation of the adequacy of the 1st PIA, it clearly *relied* on it in denying relief. Moreover, counsel for OPM suggested that the filing of the document itself rendered Plaintiffs' case "moot" and required them to amend their complaint. (*Id*. at 18:22-25 ("Our position is that the case is moot, that if he wants to -- plaintiff wants to challenge the adequacy of the PIA, then that he needs at a minimum to amend the complaint.").)

Here, Plaintiffs lost on their motion and were required to undertake the burden and expense of additional legal filings due to the false document submitted by defendants. This is the textbook case for awarding sanctions.

### III. OPM'S COUNSEL WERE REQUIRED TO MAKE A REASONABLE PRE-FILING INQUIRY, WHICH WAS NOT DONE

Finally, OPM suggests that its conduct and that of its counsel should be excused because "at the time of the TRO proceedings, counsel was entirely unaware" that GWES would be used to send a mandatory email in derogation of the 1st PIA. (OPM's Opp'n at 7-8 (quoting an exchange in which, when asked by the Court "do you know what the plans are going forward?" counsel replied "Your Honor, I don't know.").)

As OPM itself concedes, this Court's decision whether or not to impose Rule 11 sanctions does not turn on the subjective knowledge (or lack thereof) of OPM's counsel, but rather on "an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Naegele v. Albers*, 355 F. Supp. 2d 129, 143-44 (D.D.C. 2005) (cited in OPM's Opp'n at 2). Specifically, counsel have a duty to conduct that reasonable inquiry as to the factual and legal bases for a document *before* submitting it to the Court. Fed. R. Civ. P. 11(b); *see Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 43-44 (D.C. Cir. 1990) (upholding award of sanctions where

attorney "failed to conduct an adequate prefiling inquiry" into the veracity of the allegations made in the Complaint).

Moreover, an objectively reasonable inquiry must attempt "independently to corroborate" factual assertions made by the client. *Id.* ("Although we do not believe that it is *invariably* sanctionable to rely solely on the client's word before filing suit . . . we conclude that the District Court stood on firm ground in deeming it unreasonable for [the attorney] to do so here."). In other words: it was incumbent upon *all* counsel for OPM to determine whether or not their client intended to abide by the voluntariness language in the 1st PIA *at the time that document was filed* with the Court; i.e., on 5 February. Counsel's lack of knowledge as to how their client intended to use GWES nearly two weeks later—even if true—does not show a reasonable prefiling inquiry, especially when Plaintiffs had already identified indicia of responses not being voluntary. Sanctions are therefore appropriate. *Banov*, 899 F.2d at 40.

## IV.  OTHER SANCTIONABLE CONDUCT

Plaintiffs have largely limited this Reply to just the question of voluntariness, but it is important for the Court to consider the 1st PIA in its entirety in the context of this inquiry. For example, not only the 1st PIA but also the 2d PIA persist in stating that the GWES does not contain information about individuals who are not federal government employees, and yet it clearly does. Similarly, and more egregiously, OPM's counsel led this Court to believe—through carefully chosen words designed to obfuscate the truth and apparent willful ignorance—that once information was identified as belonging to an individual who was not an Executive Branch employee (such as a judge or a contractor), it was removed:

> MS. HORTON: So if we look at the statute, it requires that the consultation about whether a PIA be performed be done before the action is taken by the government. And so even if there were errors that occurred, the intent that the government had was to send emails to federal government employees and to

> collect information from those people. And so there is no way that the government could have known that there would have been a PIA that needed to be produced when they were not intending to collect information or distribute information to people outside of that group.
>
> THE COURT: Has that group been removed at this point?
>
> MS. HORTON: Your Honor, I don't know all of the facts regarding that. But I do know that it seems the judiciary hasn't continued to receive the emails, other groups have not received the emails.
>
> THE COURT: It is probably a little harder -- it is probably easier to figure out who the judiciary emails are going to when it is the courts' name in the email versus if you are just a military contractor and you have a .mil email address.
>
> MS. HORTON: Sure.
>
> THE COURT: I'm not sure how you would easily go through and excise those.
>
> MS. HORTON: I do believe that filtering has been done to crosscheck who the emails are going to, but I can't represent that I know with certainty they are not going to anyone they shouldn't.

(Ex. B at 18:20-19:22.)

In other words, when the Court directly asked if those individuals had been *removed*, OPM's counsel responded that "*filtering* has been done to crosscheck who the emails are going to," with the clear implication being that once individuals were "filtered," they would be removed. However, the most recent series of emails sent from the GWES went in many cases to those same individuals. At the end of the 14 February hearing, the undersigned warned:

> And even now she says that, well, filtering has been done to stop these emails from going out, but she did not say the information had been deleted, just that it had been filtered to stop emails from going out. For all we know, all of the judicial employees who are no longer getting these emails still have their data in the GWES system. They have given us no reason to believe that that information was purged. And that goes for the legislative employees, that goes for the partners, the AmeriCorps members, it goes for the contractors and it goes for all of the federal employees. Now the federal employees you could argue, okay, they are allowed to still be there if you find that was a legitimate reason. But there is nothing in the record to show that everybody else's information isn't still in there.

14

(Ex. B at 24:8-21.) This prediction has been vindicated by the 2d PIA, which now explicitly states, "The GWES uses email address with government domains and uses a filtering mechanism to remove contact data erroneously captured *before emails are sent*." 2d PIA at 6 (emphasis added).[6]

Taken together, the conduct of OPM and its counsel with respect to the presentation of the PIAs to the Court "falls short of the level of representation that this Court [should] expect[] of a United States government agency," *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 139 (D.D.C. 2013), and the Court should soundly reject such litigation gamesmanship. This case is but the latest in a disturbing recent pattern of government lawyers failing—either negligently or intentionally—to learn any more than is absolutely necessary about the agency conduct they are defending, so that they may claim to the Court when called to task that they did not mislead anyone because they "did not know." It is therefore necessary for the Court to impose whatever sanctions it considers appropriate and necessary to penalize OPM and its counsel for wasting the Court's and Plaintiffs' time and to deter repetition of the conduct or comparable conduct by others similarly situated.

---

[6] Additionally, the fact that OPM's counsel used the same precise "filtering" terminology as the 2d PIA raises questions about the extent of her knowledge about the GWES system and how information is stored in it.

Date:   March 6, 2025

                            Respectfully submitted,

                            /s/ Kelly B. McClanahan
                            Kelly B. McClanahan, Esq.
                            D.C. Bar #984704
                            National Security Counselors
                            1451 Rockville Pike
                            Suite 250
                            Rockville, MD  20852
                            501-301-4672
                            240-681-2189 fax
                            Kel@NationalSecurityLaw.org

                            *Counsel for Plaintiffs*