1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3      JANE DOE, et al,
                                              Civil Action
4                Plaintiffs,                  No. 1: 25-234

5           vs.                               Washington, DC
                                              February 14, 2025
6      OFFICE OF PERSONNEL
       MANAGEMENT,                            11:06 a.m.
7
                 Defendant.
8      _____/

9
                     TRANSCRIPT OF MOTION HEARING
10           BEFORE THE HONORABLE RANDOLPH D. MOSS
                    UNITED STATES DISTRICT JUDGE
11

12     APPEARANCES:

13     For the Plaintiff:     Kelly Brian McClanahan
                              NATIONAL SECURITY COUNSELORS
14                            1451 Rockville Pike
                              Suite 250
15                            Rockville, MD 20852

16

17     For the Defendant:     Elizabeth J. Shapiro
                              Olivia Grace Horton
18                            Simon Jerome
                              U.S. DEPARTMENT OF JUSTICE
19                            1100 L Street, NW
                              Washington, DC 20530

20

21

22     Court Reporter:        SHERRY LINDSAY
                              Official Court Reporter
23                            U.S. District & Bankruptcy Courts
                              333 Constitution Avenue, NW
24                            Room 6710
                              Washington, DC 20001

25

Ex. B

1           P R O C E E D I N G S

2           THE COURTROOM DEPUTY:  Civil case number 25-234, *Jane*

3    *Doe, et al, versus Office of Personnel Management*.

4           Counsel, please approach the podium, state your name

5    for the record, starting with plaintiffs' counsel.

6           MR. MCCLANAHAN:  Good morning, Your Honor.  Kel

7    McClanahan for the plaintiffs.

8           THE COURT:  Good morning.

9           MS. SHAPIRO:  Good morning, Your Honor.  Elizabeth

10   Shapiro for the Department of Justice.  With me is Olivia

11   Horton and Simon Jerome.

12          THE COURT:  Okay.

13          MS. SHAPIRO:  A colleague, Ms. Horton, will be

14   addressing the Court today.

15          THE COURT:  Okay.

16          MS. SHAPIRO:  And I hope you are feeling better.

17          THE COURT:  Thank you.  All right.  It is your

18   motion, Mr. McClanahan, so why don't we start with you.

19          MR. MCCLANAHAN:  Thank you, Your Honor.

20          What we are asking for today is basically the same as

21   the order that Judge Engelmayer issued in New York on, I

22   believe, Monday.

23          THE COURT:  Although Judge Engelmayer, it is my

24   understanding, he was just acting as the emergency judge who

25   just entered a very temporary order to allow his colleague to

1    consider the motion and then his colleague ended up not

2    granting the same relief.

3                MR. MCCLANAHAN:  That is partially true.  He was the

4    emergency judge, you are correct, Your Honor.  But on

5    February -- I don't know what date it is.  But later the judge,

6    Judge Vargas, who was the permanent assigned judge --

7                THE COURT:  Yes.

8                MR. MCCLANAHAN:  -- did reaffirm what we were talking

9    about, which was access would result in systems that would be

10   more vulnerable to hacking, the harms that animated the grant

11   of the February 8 TRO.  What she did was she said, I don't

12   think that applies to certain officials.  But she did say that

13   the harms alleged in the complaint, that Judge Engelmayer

14   determined were sufficient to warrant the grant of the ex parte

15   TRO --

16               THE COURT:  You have got to slow down again.

17               MR. MCCLANAHAN:  Sorry.

18               The harms alleged in the complaint that Judge

19   Engelmayer determined were sufficient to warrant the grant of

20   the ex parte TRO are plainly linked to the alleged grant of

21   access to the BFS payment systems to such political appointees

22   and special government employees.  So she reiterated, I

23   believe, that Judge Engelmayer was correct.  So this is no

24   longer an emergency TRO granted by an emergency judge, but a

25   fully assigned judge saying, that was correct.  I am going to

1    change the details about who can have access, but I am going to

2    confirm that I agree with Judge Engelmayer on this.  And I

3    believe this was entered just a couple of days ago, although

4    for some -- I don't have the date of the order in front of me,

5    I apologize.  But February 8 was the first order, Judge

6    Engelmayer's order.

7            So that is what we are asking for.  We are asking for

8    a TRO or administrative stay or whatever -- however you want to

9    phrase it, to shut down this server, unplug the server until we

10   can get the details that we need for a preliminary injunction

11   motion.  And we would be asking for discovery in that.  We

12   would be asking to have an evidentiary hearing in that.  But

13   the injury is imminent, the threat of hack that Judge

14   Engelmayer and Judge Vargas recognized.  And I don't know the

15   degree to which you follow the media, but just this morning

16   there was an article about how the new Doge.gov server, website

17   left itself open to being hacked.  People are putting, this is

18   a fake website, to appear on an official government server.

19   That is what happens when these things are rushed.  And you

20   cannot do that with 2.2 million people's, at least, worth of

21   private information.

22           THE COURT:  So let's just talk for a second about the

23   private information that is at issue here.  It is principally

24   simply confirming that government -- certain government email

25   addresses are active; correct?

1     MR. MCCLANAHAN:  To our knowledge, that is correct.

2     But it is important to note that many of these mail addresses

3     are first name, dot, last name, at agency dot gov.  So for

4     instance, Ms. Shapiro's email address if she worked at OPM

5     would be Elizbeth.Shapiro@OPM.gov.  So you disclose that email

6     address, you disclose her name and that she works at OPM.

7           THE COURT:  Right.  But that is not the most

8     sensitive or core privacy information.  It may in a FOIA

9     litigation -- it might be protected, it might not be.  The

10    government could, if it wanted to, just publish a directory of

11    every government email address in the government, if it wanted

12    to.

13          MR. MCCLANAHAN:  That would violate the Privacy Act,

14    Your Honor.  That is not a routine use of the data is to

15    publish it publicly.

16          THE COURT:  Well, I don't know if that is right or

17    not.  I mean, but I guess my point is the same though is that,

18    you know, do you really think that -- I mean, I understand the

19    concern when OPM gets hacked and the people's background

20    investigations are stolen.  But this does seem very different

21    when you are just asking about what their government email

22    addresses are.

23          MR. MCCLANAHAN:  That is why we had talked about

24    related systems.  So not only -- even if we accept for the sake

25    of argument that this just contains your name and your email

1    address, it is linked to eOPF and EHRI, the two big human

2    resource databases that have your information in it, that have

3    everybody in this room on this side of the doors information in

4    it.  And the -- if the GWES gets hacked, you can then link to

5    those other servers.  That is how the original OPM hack worked.

6    The Chinese hackers logged into a system that had manuals in it

7    and used that to get into the rest of the system.  That is why

8    we are saying this needs to be shut down.

9            THE COURT:  And I understand why if I were the United

10   States Government, I might be deeply concerned about having

11   every .mil address out there hacked so that someone could

12   launch a fishing expedition against everyone with a .mil email

13   address and that would probably be probably pretty devastating

14   for the United States Government if that happened.  I am a

15   little less clear in my mind that the individual plaintiffs in

16   this case risk that same injury.  I mean, it is an injury that

17   principally would be one to the United States Government if

18   that were to happen.

19           MR. MCCLANAHAN:  I would disagree.  You made

20   reference to FOIA cases.  And you have handled many FOIA.  I

21   have been before you in FOIA cases.  And every time an email

22   address has come up in a FOIA case for a government employee,

23   if it is not a senior manager, the government says, we must

24   invoke (b)(6), we must withhold this for privacy reasons, not

25   because it will hurt the government, but because it will

1    subject those employees to harassment.  That it will subject

2    those employees to monitoring.  It will subject those employees

3    to receiving unwanted emails and having their inboxes flooded

4    or being otherwise harassed, if we just give out their email

5    address.  They are turning around now and saying, unless we

6    want to.  Well, they can't waive away all of the privacy

7    concerns they have been citing for the last 20 years.

8              THE COURT:  I also have to say, I am not convinced at

9    this point on that the risk of a hacking incident in which

10   these email addresses are stolen is anything more than

11   speculative at this point.  And I need -- in order to grant

12   relief, I need to find that you have demonstrated a likelihood

13   of success with standing, which would require me to find that

14   it is likely that these individuals will suffer a concrete

15   imminent injury which requires -- would require me to find that

16   there is a non-speculative risk that there will be a hacking

17   incident in the next whatever months or reasonable period of

18   time and that that hacking incident would not occur had OPM

19   done a more complete PIA.

20             MR. MCCLANAHAN:  And, Your Honor, that is where we

21   get back to Judge Engelmayer's and Judge Vargas' opinions.

22             THE COURT:  Put them aside for a minute, just

23   convince me on the merits without what they have said.

24             MR. MCCLANAHAN:  Right.  So --

25             THE COURT:  I know Judge Engelmayer quite well and I

1    have enormous respect for him.  I don't know Judge Vargas.  Put

2    their views aside and convince me on the merits.

3            MR. MCCLANAHAN:  So we introduced two articles into

4    evidence, one was by Allison Gill an interview that she did for

5    the "Mueller, She Wrote" podcast with a penetration tester.

6    That is someone who goes out and -- red teams that you would

7    hire someone to come and try to hack your system to see if it

8    is vulnerable.  That is what he does for a living.  And he

9    talked for 20 minutes about the OPM server and the OPM -- what

10   they did when they set it up, how they exposed hundreds of

11   systems to the public that were previously hidden behind

12   firewalls.  That is something that is material that we have had

13   an expert talk to the media about.

14           There was a second article that I linked to in the

15   reply that went beyond that to, here is all of the ways these

16   systems have been exposed to the greater public and the

17   Government.  That was a Substack called "Cyberintelligence

18   Brief."

19           THE COURT:  Are either of those about the particular

20   system we are talking about here?

21           MR. MCCLANAHAN:  The first one was, yes, the Allison

22   Gill interview was.

23           THE COURT:  And how would she have known how the

24   system was set up and be able to analyze its vulnerability?

25           MR. MCCLANAHAN:  So Allison was the interviewer, the

1    podcaster.

2         THE COURT:  Okay.

3         MR. MCCLANAHAN:  So the person who is currently going

4    under a pseudonym, but if he came to testify, which he is

5    willing to do today, he would obviously expose his real

6    identity.  He was able to do all of this from the outside.  He

7    was able to -- let's say that you have a house that has a

8    window and the window is tinted.  And you can change the tint

9    electronically, which is the equivalent of raising or lowering

10   a blind.  And you make it transparent when it use to be tinted.

11   Someone on the outside can see what you did and see inside your

12   house.  That is what he did.  He saw inside the house through

13   the window that they just opened.

14        THE COURT:  So he hacked into the new OPM -- in the

15   server with the HR.OPM server?

16        MR. MCCLANAHAN:  He didn't have to hack into it.

17   This information was publically available.  They were

18   broadcasting this the information.  That is how domain name

19   systems work.  He we can go into that in more detail than I

20   can.  When you advertise, hey, I am here, I am a server, that

21   is then public information that is indexed in various places

22   across the web.  When OPM set up this new server, they put

23   hundreds of those, hey, I am here, pay attention to me, I am a

24   new server, openly across the web, which that runs into the

25   same system -- you have seen FBI cases and other cases where --

1    FOIA cases where they say, even the URL at the bottom of the

2    page has to be redacted, because it would allow someone to hack

3    the system.  They just advertised 400 computers that were

4    previously hidden.  And after he started talking about it, they

5    took those 400 back offline.

6              THE COURT:  So what is the future risk?  Because we

7    are talking about injunctive relief.

8              MR. MCCLANAHAN:  The future risk is that we don't

9    know what else is going on with this server.  We don't know

10   what they have done.  They are doing all of the things behind

11   closed doors.  There is ample reporting that they are not even

12   letting career employees into the office where the server is

13   set up.  I included stories about that.

14             THE COURT:  I am not sure why that is an injury.

15   That may annoy the career employees, but I am not sure why that

16   would be an injury to your clients.

17             MR. MCCLANAHAN:  It is not an injury per se, but it

18   indicates for all that we can see on the outside, we are just

19   getting a tiny piece of the pie.  And the evidence is, had they

20   done a PIA, like they were supposed to, they would have to have

21   by OMB regulation, look to the consequences of collection, the

22   alternatives to collection, the appropriate measures to

23   mitigate risk.

24             THE COURT:  Slow down, please.

25             MR. MCCLANAHAN:  And they did not.  Had they done

1    that, people would have said, you can't do this.  Cybersecurity

2    professionals would have said, this is a big, gaping hole, you

3    need to not do this.  They didn't do that.  They didn't tell

4    the world what they have done so that the people who are more

5    intelligent than me in computer science can say that is a big

6    problem, you need to fix that.  Right now, they are saying,

7    trust us, we did good stuff.

8           And as I said, Jay, the -- who is -- I will identify

9    later if you need it -- he is willing to come testify in an

10   evidentiary hearing.  He is available to walk you through his

11   entire analysis.  But we need a TRO to give us time to do the

12   discovery, to have the evidentiary hearing to mitigate the

13   damage, so that while we are doing the briefing and the

14   testifying, someone doesn't hack the server.

15          THE COURT:  Although the problem is to grant a TRO, I

16   have to find that have you a likelihood of success on the

17   merits, which includes a likelihood of success on standing, I

18   have to find that there is a likelihood of irreparable injury.

19   And there is not a basis for granting a TRO simply to say,

20   well, we don't know, but let's hold it in place while we do the

21   work we need to do.

22          MR. MCCLANAHAN:  And that is where the

23   administrative --

24          THE COURT:  I am completely unpersuaded by that.

25          MR. MCCLANAHAN:  Okay.

1        THE COURT:  I don't think that is consistent with the

2   role of a District Court judge.  I don't think that is

3   consistent with Rule 65.  I don't think I get to ignore the TRO

4   standards and simply say, I will just call it an administrative

5   stay instead.

6        MR. MCCLANAHAN:  And that is a fair argument.  And to

7   that, I would say, I think we are likely to succeed.  I think

8   that the burden of proof you need to evaluate our complaint on,

9   since they filed a motion to dismiss and there is nothing in

10  the record, other than the complaint and a bunch of objections

11  from opposing counsel is, do we say on our face, on the face of

12  our complaint, things that if construed as true and accurate,

13  would grant us a relief?  And I think we do.

14       THE COURT:  So tell me, sort of in detail or

15  completely, what the injury is that your clients are asserting

16  for purposes of standing?

17       MR. MCCLANAHAN:  The injury is that their

18  information, especially the information of the plaintiffs who

19  are not government employees, the contractors --

20       THE COURT:  By information what you mean is their

21  email addresses?  You mean their government email addresses by

22  information; right?

23       MR. MCCLANAHAN:  The government email address, the

24  name, and unknown additional information that the PIA

25  identifies as information that we received from agencies, so we

1    don't know what information they received from other agencies.

2    But their PII was taken from secure systems, put into a system

3    with demonstrated flaws and maintained there in a system that

4    when they tried to send emails using the system, it set off

5    fishing alarms across the government.  About half, I think, of

6    the agencies that received this flagged it as fishing.  And I

7    don't mean that someone got the email and said, I think this is

8    fishing.  Their automatic firewalls said, this is possible

9    fishing.

10           THE COURT:  Yeah, but I guess I don't get that.  I

11    mean, it was a quirky email address that we had not seen

12    before.  That doesn't strike me as showing that there is a

13    vulnerability, the fact there is this new email address that

14    is -- or site that is going out extensively and someone says,

15    oh, this is weird, let's flag this.

16           MR. MCCLANAHAN:  So that is one of the things that

17    Jay talked about in the Allison Gill interview, how if you look

18    at the message headers, which are the sort of the machine code

19    of how an email address works, if you do view message headers

20    on the email, you will see a whole bunch of text.  And you will

21    see that the HR@OPM.gov email address was trying to be sent

22    from the OPM.gov domain, but it didn't have any of the required

23    security.  It did not have the recognized key that you have in

24    encrypted systems.  It didn't have servers that were

25    recognized.  This is different than if you have -- if you hire

1   a new clerk and you hire me as a clerk and you make -- give me

2   a new addresses that says Kelly_McClanahan@uscourts.gov, if I

3   send an email, if I have never sent email before, it will still

4   be recognized by the systems, because it came from the right

5   systems and it came with the right passwords and keys.  This

6   did not.  The entire server was being flagged as it looks like

7   someone on the outside is trying to spoof an OPM server.

8         And that is why all of these agencies had to send out

9   these warnings -- or not warnings -- had to send out the

10   emails, saying, no, no, no, this is a real email, trust it,

11   respond to it.

12         That is not a new, funky email address.  That is a

13   machine or possibly a virtual instance if you want to get into

14   whether it can be a hard machine versus an instance in an Azure

15   environment -- that came in wearing a fake glasses and mustache

16   and says, I am here and I am a member of this community.  That

17   is an insecure server.

18         And some of it was fixed, not all of it was fixed.

19         THE COURT:  What was not fixed?

20         MR. MCCLANAHAN:  They are still setting off fishing

21   alarms.  There was an article a couple of days ago.

22         THE COURT:  I still -- the same response to that.  I

23   am not sure why that means that it is vulnerable, the site

24   itself is vulnerable or the server itself is vulnerable.

25         MR. MCCLANAHAN:  Because if a system doesn't have the

1    required security protocols in place, that means two things.

2    That means that it is not talking to other machines the way it

3    should, but that also means that other machines can talk to it

4    that may not be able to.  And a good example is what happened

5    at NOAA.  At NOAA, the only way that they could make their

6    system accept emails from this address were to open up the

7    firewalls and they got spammed immediately.  And everybody in

8    NOAA started getting these porn ads and everything else because

9    they had to open the firewall completely in order to let this

10   one server's email go through.  What does that tell you about

11   how well that server is configured?  And at a certain point, we

12   do concede that we don't have the expert here, but we can have

13   the expert here.

14        And the justification for a TRO is not, have we

15   proven definitively that we will win.  It is have we made

16   sufficient allegations that we will likely win if our

17   witness --

18        THE COURT:  That is not quite right.  It is not have

19   you made sufficient allegations that you would likely win, it

20   is whether you have established that you have a likelihood of

21   success.

22        MR. MCCLANAHAN:  Through sufficient allegations,

23   would be my response.

24        THE COURT:  No.  I would be granting TROs, you know,

25   all day long if it was enough to simply come in and say, we

1    have got sufficient allegations for a TRO.  That is how you

2    maybe survive a motion to dismiss.  It is not the grounds for

3    granting a TRO.

4              MR. MCCLANAHAN:  That is where I think we are now.  I

5    think that the fact that the government did not offer any

6    contrary evidence puts this more like a motion to dismiss for

7    burden of proof, that we gave specific allegations -- we gave

8    citations to authorities, to news articles in our complaint.

9    And they responded, well, we don't think so, but we are not

10   going to offer any evidence to rebut it.  They could have

11   rebutted half of the allegations we made just by saying, no,

12   that is not true.  They did not.  So when we give proof and

13   they give argument, the balance shifts to us.

14             THE COURT:  I want to go back to the question of

15   injury.  Have you given me your complete list of injuries you

16   are relying on for standing purposes?

17             MR. MCCLANAHAN:  So we got sidetracked on how the

18   secure system works.

19             THE COURT:  That is why I wanted to come back to it.

20             MR. MCCLANAHAN:  So the injury is it is being put

21   into this unsecure system.  And as a result, it is more

22   vulnerable to hacking.  And you said not to mention Judge

23   Engelmayer, but it is the argument that it is more vulnerable

24   to hacking because it is stuck in a system that is vulnerable

25   to hacking.  And it is stuck in a system that they do not

1    already have, that they did not make a PIA for.  And we are not

2    saying that the publication of a PIA is the be all and end all.

3    It is the performance of it.  The report is the final result.

4    The report indicates what they did.  This report indicates that

5    they did not do anything.

6            They had somebody write this who had no experience

7    writing PIAs and gave conclusory and misleading and outright

8    false answers to things.  That is not a report from a privacy

9    impact assessment.  That is a report from a, write me something

10   to get this case mooted.

11           THE COURT:  Okay.  All right.  Anything else you want

12   to add at this point or do you want to reserve time?

13           MR. MCCLANAHAN:  I reserve time.

14           THE COURT:  All right.  Thank you.

15           MR. MCCLANAHAN:  Thank you, Your Honor.

16           THE COURT:  Ms. Horton.

17           MS. HORTON:  Good morning.

18           THE COURT:  Good morning.

19           MS. HORTON:  I want to refocus on the claims that

20   plaintiffs have brought in this case.  This is an E-Government

21   Act suit.  And the relief that they are requesting is a PIA.

22   The difference between the last time that we were here and

23   today is that they have asked for a legally sufficient PIA.

24   Our position is that is what we have produced.  The statute

25   requires seven different things to be included in a PIA.  All

1    of those are there.

2              There is no cause of action to challenge the

3    substance of a PIA beyond that.  And, in addition, going back

4    to what Your Honor was saying earlier, plaintiffs do not have

5    standing in this case because there is no injury.

6              THE COURT:  Just going back one second to the merits

7    on this.  The one argument that you made in your brief that I

8    was not terribly persuaded by was the argument that we said,

9    government employees and it was just government employees.  And

10   I think as Mr. McClanahan pointed out, I don't think there is

11   any reasonable argument that contractors are government

12   employees.  And you know, truth be told, I think that it is

13   probably fair to guess that whoever came up and set this up was

14   not terribly experienced in government, didn't consult career

15   people and didn't realize the fact that there are probably tens

16   if not hundreds of thousands of people out there who have .mil

17   or .gov email addresses and serve as government contractors.

18   So it does seem there is pretty gaping hole or problem with the

19   PIA for that reason.

20             MS. HORTON:  So if we look at the statute, it

21   requires that the consultation about whether a PIA be performed

22   be done before the action is taken by the government.  And so

23   even if there were errors that occurred, the intent that the

24   government had was to send emails to federal government

25   employees and to collect information from those people.  And so

1    there is no way that the government could have known that there

2    would have been a PIA that needed to be produced when they were

3    not intending to collect information or distribute information

4    to people outside of that group.

5                    THE COURT:  Has that group been removed at this

6    point?

7                    MS. HORTON:  Your Honor, I don't know all of the

8    facts regarding that.  But I do know that it seems the

9    judiciary hasn't continued to receive the emails, other groups

10   have not received the emails.

11                   THE COURT:  It is probably a little harder -- it is

12   probably easier to figure out who the judiciary emails are

13   going to when it is the courts' name in the email versus if you

14   are just a military contractor and you have a .mil email

15   address.

16                   MS. HORTON:  Sure.

17                   THE COURT:  I'm not sure how you would easily go

18   through and excise those.

19                   MS. HORTON:  I do believe that filtering has been

20   done to crosscheck who the emails are going to, but I can't

21   represent that I know with certainty they are not going to

22   anyone they shouldn't.

23                   THE COURT:  What about the Library of Congress or

24   other congressional agencies that are not executive branch, do

25   you know about that?

1          MS. HORTON:  I do not.

2          THE COURT:  Okay.

3          MS. HORTON:  But either way, there is no harm done to

4     these individuals at this point that is like a cognizable harm

5     for standing purposes.  As you have pointed out, there is the

6     only harm that plaintiffs are alleging is risk of a future

7     breach and that is not sufficient under *Lyons*.  This Court has

8     said -- or the Supreme Court has said that holding -- that an

9     equitable remedy is unavailable where plaintiffs have failed to

10    establish a past harm is likely to occur again.  They have

11    offered no evidence that that is possible here.

12         THE COURT:  I mean, I thought that, frankly, the

13    plaintiffs in his brief gave an example if you, for example,

14    published everyone's Social Security number on the web, that

15    probably would be sufficient without them having to show that

16    someone actually then went and started downloading all of that

17    information and that certainly seems to correct to me.  On the

18    other end of the spectrum, obviously not everything that every

19    administrator does of every government electronic system is

20    subject to judicial review just because there is always some

21    possibility that it may conceivably result in a hacking

22    incident is sufficient.

23          And the question here is just where on that continuum

24    we are.  And I have not listened to this podcast yet that

25    Mr. McClanahan has referenced.  I'm not quite sure that is

1    evidence or not.  And I don't know where that leaves us.

2         MS. HORTON:  Sure.  This is the first time that we

3    are hearing of the podcast as well, so I am not aware of the

4    facts there, but --

5         THE COURT:  Was it not cited in the brief?

6         MR. MCCLANAHAN:  It was in the complaint, Your Honor.

7         THE COURT:  In the complaint, okay.

8         MS. HORTON:  But either way, that brings us to the

9    next point which is that there is no claim to be stated here

10   because there is no cause of action under the statute.  And I

11   think a possible reason why is what Your Honor just got at.

12   You know, Congress didn't write a statute that allows fishing

13   expeditions into day-to-day activities of the government.  They

14   wrote a statute that would encourage the government in certain

15   circumstances to perform these reviews, which, whether it was

16   required or not, that the government has done in this instance,

17   and to publish those reviews.  That is the only thing that is

18   required by the statute.  There is no private cause of action

19   here and APA cause of action fails, so plaintiffs have no claim

20   that can be addressed through this lawsuit that they have

21   brought here today.

22         As to the TRO standard, the fact there is no

23   irreparable harm actually follows from what we have said which

24   is that there is no standing, because there is no harm at all.

25   But even if a hypothetical harm could be sufficient for

1    standing purposes, it is certainly not sufficient for the

2    purposes of a TRO.  As this Court held in *Wisconsin Gas* for the

3    purposes of a TRO, a harm must be actual and not theoretical

4    and of such imminence that the need for relief is clear.

5    Plaintiffs have not done that here today.

6            As for the likelihood to succeed on the merits, like

7    we said, there is no cause of action here.  In addition, the

8    PIA has been done.  Even if plaintiffs were -- even if the

9    Court held that plaintiffs were entitled to some -- or to a PIA

10   because of some of the individuals who had emails sent to them,

11   there is a PIA.  It is sufficient under all of the elements

12   that the statute requires.  And we have cited in our brief

13   exactly which sections of the PIA address those points.  And as

14   I said, there is no provision in the statute that allows for

15   any plaintiff to challenge the actual substance beyond those

16   seven elements.

17           As for public interest, the government has a

18   continued interest in operating its systems and communicating

19   with its employees and plaintiffs have not rebutted that.

20           THE COURT:  And do you know what the plans are going

21   forward?  I mean, I understand that the system was used for

22   purposes of, among other things, notifying executive branch

23   workers of the -- I don't know what we are calling it, the

24   payout, the retirement option.  Are there other imminent plans

25   for using the system that you are aware of?

1          MS. HORTON:  Your Honor, I don't know.

2          THE COURT:  Okay.  All right.  Let me see if I have

3    any other questions.

4          All right.  Thank you.

5          MS. HORTON:  Thank you.

6          THE COURT:  Do you have anything else you wanted to

7    say?

8          MS. HORTON:  No, Your Honor.

9          THE COURT:  Okay.  Thank you.

10         Mr. McClanahan.

11         MR. MCCLANAHAN:  Yes, Your Honor.

12         So just a few points.  And I apologize, I misstated.

13   The podcast was not in the complaint, but it was on page 22 of

14   our motion -- of our memo and note 4 of our reply.  So we

15   highlighted this podcast twice in the briefing.  And it is

16   understandable if they weren't able to listen to the one that

17   we did yesterday, but, you know, we filed it in our initial TRO

18   brief last Friday.

19         THE COURT:  Okay.

20         MR. MCCLANAHAN:  So I think that the government

21   arguments today exhibit the problem that we are talking about.

22         They said -- she said in response to your question

23   that there is no way the government could have known that

24   the -- this would -- that other people had .gov and .mil email

25   address.  That is why you do a privacy impact assessment, so

1  that you know that stuff.  And it does not matter if they

2  intended to only get executive branch employees and then did no

3  due diligence to make sure they were getting only executive

4  branch employees.  Anyone at OPM who had been there before

5  January 20th could have told them that eOPF and EHRI has data

6  about people who are not executive branch employees.  And they

7  didn't ask, they just did it.  And that is the problem here.

8           And even now she says that, well, filtering has been

9  done to stop these emails from going out, but she did not say

10  the information had been deleted, just that it had been

11  filtered to stop emails from going out.  For all we know, all

12  of the judicial employees who are no longer getting these

13  emails still have their data in the GWES system.  They have

14  given us no reason to believe that that information was purged.

15  And that goes for the legislative employees, that goes for the

16  partners, the AmeriCorps members, it goes for the contractors

17  and it goes for all of the federal employees.

18           Now the federal employees you could argue, okay, they

19  are allowed to still be there if you find that was a legitimate

20  reason.  But there is nothing in the record to show that

21  everybody else's information isn't still in there.

22           And as to one of the points --

23           THE COURT:  You know, irreparable injury has to be

24  substantial.  And you are right that certainly in the FOIA

25  context, the courts have consistently said that there is a

1   privacy interest for purposes of Exemption 6 in --

2            MR. MCCLANAHAN:  Substantial privacy interest.

3            THE COURT:  -- a substantial privacy interest in the

4   email address names.

5            But I will deny a PI if a company comes in here and

6   says, we are going to lose a million dollars if this happens

7   and we are never going to be able to recover it from the

8   government.  And I say, yeah, but is it going to threaten the

9   existence of the company?  And they say, no, it is not.  And

10  they say, that is not substantial enough for purposes of

11  irreparable injury to get the extraordinary relief for a

12  preliminary injunction.  And it does seem to me that knowing

13  what someone's government email address is may be somewhat

14  intrusive.  But the question of whether it rises to that level

15  particularly, when one weighs it against the risk of whether it

16  is actually going to become public or not here, which is an

17  unknown.  But where, you know, based on what is in front of me

18  at this point in time, I don't have any reason to believe is

19  going to happen.  It might, but I don't have reason to think it

20  will happen.

21            MR. MCCLANAHAN:  Your Honor, a couple of responses to

22  that.  The first issue is that I think that what has happened

23  in recent days with USAID and CFPB are informative.  I think

24  that the reasons that my clients requested to proceed under

25  pseudonyms is informative.  If you take the logic of why my

1   clients were able to proceed as pseudonyms and apply it to the

2   employees of agencies who the government -- who the President

3   and Elon Musk have gone out and said need to be fed into a wood

4   chipper, what do you think is going to happen to those people

5   if it gets out that they work for those agencies.  This is a

6   big problem.  Now, the average guy on the street may not care

7   if someone works for the Department of Commerce.  But they are

8   definitely going to care if they work for the CFPB or they work

9   for the IRS or if they work for the FBI.  This is a problem.

10          And to the point that no one has ever sued -- no

11  courts ever found on the sufficiency of a PIA, that is directly

12  relevant.  Because nobody has ever done this before.  I have

13  been unable to find any examples of anyone even alleging that a

14  PIA was insufficient.  And the reason for that is, they are

15  generally done by informed policymakers who know what they are

16  doing.  They are not done by outsiders who may or not be

17  legitimate employees coming in and writing something so they

18  can send out emails faster.

19          THE COURT:  But do any -- I would have to go back and

20  look at the -- I don't know if there are sealed filings that

21  tell me this.  I would have to look, but do any of your

22  clients, in fact, work for an agency where disclosing their

23  email address would expose them to harm?  I mean, I can

24  imagine, for example, maybe if it was .FBI or if it was -- you

25  know, someone in the intelligence community or something like

1    that maybe there could be particular circumstances.  But the

2    question I guess is whether any of your clients fall under

3    those categories.

4             MR. MCCLANAHAN:  At least one of them does and I

5    would say both of them do depending on how you phrase doing

6    harm.  For instance, one of them works in a position where she

7    is in a position to deny people's claims.  What would happen

8    if --

9             THE COURT:  But it is not -- the email address isn't

10   going to say that.  It is just going to say whatever agency the

11   person works for.

12            MR. MCCLANAHAN:  Right.  But her name would be on the

13   denial of the claims, maybe not her email address.  That opens

14   her up to harm.

15            THE COURT:  I'm sorry.  I don't follow.  If someone

16   gets the denial of the claim, they have the person's name there

17   already; right?

18            MR. MCCLANAHAN:  They have the person's name, but not

19   necessarily how to contact them directly, not necessarily how

20   to sign them up for mailing lists for penis enlargement tips.

21            THE COURT:  At their work address where --

22            MR. MCCLANAHAN:  Right.

23            THE COURT:  -- if that were to happen, they might

24   have to change the email address or put a some type of software

25   on to make sure that spam goes into a proper filter; right?

1          MR. MCCLANAHAN:  As someone who has dealt with spam

2     before, spam is very difficult to completely eradicate.

3          THE COURT:  I have to say, I would feel very

4     differently about this if you were talking about these people's

5     personal email addresses versus --

6          MR. MCCLANAHAN:  One of them --

7          THE COURT:  -- government email addresses.

8          MR. MCCLANAHAN:  Sorry.

9          If you know someone's name and you know their legal

10    name, not necessarily Kel McClanahan, but Kelly McClanahan, if

11    you know because of the way the email is formatted what my

12    given name is, that makes it easier to find more information

13    about me.  That makes it easier to find me in searches.

14         THE COURT:  Yeah.  But you have said for whoever the

15    person that can deny claims, it is going to be on the form.

16    And your claim is denied by Kelly Brian McClanahan.

17         MR. MCCLANAHAN:  Yeah.  And even if you set her

18    aside, if you say, okay, we are not going to talk about her,

19    the other one works for a security agency.  Not only does she

20    work for a security agency, she works for a component of the

21    security agency that is on blast every day from the Republican

22    loudspeakers.

23         THE COURT:  Well, I will have to go back and look at

24    that.  All right.

25         MR. MCCLANAHAN:  I have not filed that with the

1    Court, but I am happy to file that ex parte with the Court.

2            THE COURT:  So do I not know --

3            MR. MCCLANAHAN:  You don't know what agencies they

4    work at.

5            THE COURT:  Okay.  That is --

6            MR. MCCLANAHAN:  I can tell you that easily.

7            THE COURT:  Well, it is up to you.  If you want to

8    tell me, you can.  But if you do, I then obviously have to give

9    the government --

10           MR. MCCLANAHAN:  After here, I have to go file the ex

11   parte thing that Judge Boasberg ordered with their names and

12   addresses, so I can add that to it relatively easily.

13           THE COURT:  All right.  Make sure -- the government

14   needs to know that.

15           MR. MCCLANAHAN:  They are not entitled to know that

16   information.

17           THE COURT:  They need to know what agency, if you are

18   doing that.  If you want me to consider the fact they work for

19   particularly sensitive agencies, you have to tell them what

20   agency it is at least.  I don't see how I could possibly

21   consider that --

22           MR. MCCLANAHAN:  I am happy to tell you --

23           THE COURT:  I don't know how I could possibly say,

24   oh, well, I am going to grant a TRO here because this person

25   works for this particular sensitive agency and not tell the

1    government what the agency is.  And you don't have to -- it

2    doesn't involve revealing the name of the person just what

3    agency it is.

4            MR. MCCLANAHAN:  Well, if I am going to have to tell

5    them anyway, I can tell you now.  She works for FEMA and DHS.

6            THE COURT:  Okay.

7            MR. MCCLANAHAN:  That is a big risk.  And just to

8    sort of put an end to my points before you ask any other

9    questions, the rules state that they must file a PIA according

10   to these conditions, according to these criteria.

11           THE COURT:  Right.

12           MR. MCCLANAHAN:  You asked me in the last hearing if

13   there was any case law allowing you to sue for violations of

14   Circular A-130.  That is not entirely the right question.

15   Because no one, I have found, has sued, you violated Circular

16   A-130.  What they have done is said, you violated the Paperwork

17   Reduction Act, you violated this.  And the Court has found in

18   *Public Citizen v. Lou* in 2000 that the question of whether or

19   not the agency complied with the law was based on how it

20   complied with Circular A-130.  So it accepted that the Circular

21   set the parameters for what a legitimate action was under the

22   law.  In that case it was a question of what is a major

23   information system.

24           That is what we are doing here.  We are not suing

25   because they violated Circular A-130.  We are suing because

1   they violated the E-Government Act and all of the relevant

2   information about what a sufficient PIA is, is in the OMB

3   guideline.

4           THE COURT:  So that actually reminds me of a question

5   to ask you, which is, other than pointing to the one case I

6   think from Alabama, what is your response to the government's

7   argument that there is just not final agency action for

8   purposes of the APA?  This is not cognizable under the APA and

9   the E-Government Act does not include a cause of action.

10          MR. MCCLANAHAN:  I mean, quite simply, if that were

11  the case, then we would not have any of the other cases about

12  PIAs.

13          THE COURT:  You only have one; right?

14          MR. MCCLANAHAN:  Pardon?

15          THE COURT:  We only have one; right?

16          MR. MCCLANAHAN:  We have few a EPIC cases and that --

17  Electronic Privacy Information Center.

18          THE COURT:  Yep.

19          MR. MCCLANAHAN:  And if you can't sue someone for

20  writing a bad PIA, because the PIA -- because the E-Government

21  Act does not give you a right of action, because it is not a

22  final agency action, then you can't sue them for not writing

23  one.  It is well established that you can sue for not writing

24  one.

25          THE COURT:  Is there any Circuit opinion that holds

1    that you can sue?

2              MR. MCCLANAHAN:  It has never gotten to that.  They

3    all sort of took it for granted.

4              THE COURT:  Well, that is my point and concern.

5              MR. MCCLANAHAN:  Yeah.

6              THE COURT:  Because there are lots of areas where

7    government does stuff and you can't sue over it.  And it is

8    just sort of the nature of things.  The question here is

9    whether you can sue over this, which requires an analysis of

10   whether this actually is final agency action for purposes of

11   the APA.  And the government made a fairly detailed argument

12   about that to which you didn't really offer a response other

13   than citing to a case in which it was assumed, but not ever

14   discussed.

15             MR. MCCLANAHAN:  I think the fact that the D.C.

16   Circuit has presumed that you can sue in one of the EPIC cases

17   should be enough for this Court.  Because they did not say, we

18   are dismissing this because you can't sue under the

19   E-Government Act.  And I don't recall off the top of my head if

20   the government argued that.  I can tell you that the Circuit

21   did not endorse that.

22             THE COURT:  I don't think it is jurisdictional, so I

23   don't think it is the sort of thing that the Court would have

24   to consider sua sponte.

25             MR. MCCLANAHAN:  I mean, that is my argument.

1              THE COURT:  Okay.  Fair enough.

2              All right.  Anything else before you finish?

3              MR. MCCLANAHAN:  I have nothing else unless you have

4     other questions.

5              THE COURT:  Nothing else from me.

6              And, Ms. Horton, any final words?  Anything else you

7     want to add?

8              MS. HORTON:  No.

9              THE COURT:  Thank you all.  I will get you an opinion

10    at least on the TRO promptly and then we'll figure out where to

11    go from there.

12             MR. MCCLANAHAN:  All right.  Thank you, Your Honor.

13             (Proceedings concluded at 11:51 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T E

2

3           I, SHERRY LINDSAY, Official Court Reporter, certify

4    that the foregoing constitutes a true and correct transcript of

5    the record of proceedings in the above-entitled matter.

6

7

8

9

10                      Dated this 25th day of February, 2025.

11

12                      _____
                        Sherry Lindsay, RPR
13                      Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

MR. MCCLANAHAN: [65]
MS. HORTON: [14]  17/17 17/19
18/20 19/7 19/16 19/19 20/1 20/3
21/2 21/8 23/1 23/5 23/8 33/8
MS. SHAPIRO: [3]  2/9 2/13 2/16
THE COURT: [81]
THE COURTROOM DEPUTY: [1]  2/2

**.**

.FBI [1]  26/24
.gov [2]  18/17 23/24
.mil [5]  6/11 6/12 18/16 19/14
23/24

**1**

1100 [1]  1/18
11:06 [1]  1/6
11:51 [1]  33/13
130 [4]  30/14 30/16 30/20 30/25
14 [1]  1/5
1451 [1]  1/14

**2**

2.2 million [1]  4/20
20 [2]  7/7 8/9
2000 [1]  30/18
20001 [1]  1/24
2025 [2]  1/5 34/10
20530 [1]  1/19
20852 [1]  1/15
20th [1]  24/5
22 [1]  23/13
234 [2]  1/4 2/2
25-234 [2]  1/4 2/2
250 [1]  1/14
25th [1]  34/10

**3**

333 [1]  1/23

**4**

400 [2]  10/3 10/5

**6**

65 [1]  12/3
6710 [1]  1/24

**A**

a.m [2]  1/6 33/13
able [7]  8/24 9/6 9/7 15/4 23/16
25/7 26/1
about [29]  3/9 4/1 4/16 4/22 5/21
5/23 6/10 8/9 8/13 8/19 8/20 10/4
10/7 10/13 13/5 13/17 15/10 18/21
19/23 19/25 23/21 24/6 28/4 28/4
28/13 28/18 31/2 31/11 32/12
above [1]  34/5
above-entitled [1]  34/5
accept [2]  5/24 15/6
accepted [1]  30/20
access [3]  3/9 3/21 4/1
according [2]  30/9 30/10
accurate [1]  12/12
across [3]  9/22 9/24 13/5
Act [7]  5/13 17/21 30/17 31/1
31/9 31/21 32/19
acting [1]  2/24
action [13]  1/3 18/2 18/22 21/10
21/18 21/19 22/7 30/21 31/7 31/9
31/21 31/22 32/10
active [1]  4/25
activities [1]  21/13
actual [2]  22/3 22/15
actually [5]  20/16 21/23 25/16
31/4 32/10
add [3]  17/12 29/12 33/7
addition [2]  18/3 22/7
additional [1]  12/24
address [25]  5/4 5/6 5/11 6/1
6/11 6/13 6/22 7/5 12/23 13/11

13/13 13/19 13/21 14/12 15/6
15/20 16/15 22/4 22/5 24/9 24/11
26/23 27/9 27/13 27/21 27/24
addressed [1]  21/20
addresses [11]  4/25 5/2 5/22 7/10
12/21 12/21 14/2 18/17 28/5 28/7
29/12
addressing [1]  2/14
administrative [3]  4/8 11/23 12/4
administrator [1]  20/19
ads [1]  15/8
advertise [1]  9/20
advertised [1]  10/3
after [2]  10/4 29/10
again [2]  3/16 20/10
against [2]  6/12 25/15
agencies [9]  12/25 13/1 13/6 14/8
19/24 26/2 26/5 29/3 29/19
agency [15]  5/3 26/22 27/10 28/19
28/20 28/21 29/17 29/19 29/20 29/25
30/1 30/3 30/19 31/7 31/12 32/10
ago [2]  4/3 14/21
agree [1]  4/2
al [2]  1/3 2/3
Alabama [1]  31/6
alarms [2]  13/5 14/21
all [30]  2/17 7/6 8/15 9/6 10/10
10/18 14/8 14/18 15/25 17/2 17/2
17/11 17/14 17/25 19/7 20/16
21/24 22/11 23/2 23/4 24/11 24/11
24/17 28/24 29/13 31/1 32/3 33/2
33/9 33/12
allegations [6]  15/16 15/19 15/22
16/1 16/7 16/11
alleged [3]  3/13 3/18 3/20
alleging [2]  20/6 26/13
Allison [4]  8/4 8/21 8/25 13/17
allow [2]  2/25 10/2
allowed [1]  24/19
allowing [1]  30/13
allows [2]  21/12 22/14
already [2]  17/1 27/17
also [2]  7/8 15/3
alternatives [1]  10/22
always [1]  20/20
am [19]  3/25 4/1 6/14 7/8 9/20
9/20 9/23 10/14 10/15 11/24
14/16 14/16 14/23 21/3 29/1 29/22
29/24 30/4
AmeriCorps [1]  24/16
among [1]  22/22
ample [1]  10/11
analysis [2]  11/11 32/9
analyze [1]  8/24
animated [1]  3/10
annoy [1]  10/15
answers [1]  17/8
any [16]  13/22 16/5 16/10 18/11
22/15 23/3 25/18 26/13 26/19
26/21 27/2 30/8 30/13 31/11 31/25
33/6
anyone [3]  19/22 24/4 26/13
anything [6]  7/10 17/5 17/11 23/6
33/2 33/6
anyway [1]  30/5
APA [4]  21/19 31/8 31/8 32/11
apologize [2]  4/5 23/12
appear [1]  4/18
APPEARANCES [1]  1/12
applies [1]  3/12
apply [1]  26/1
appointees [1]  3/21
approach [2]  2/4
appropriate [1]  10/22
are [71]
areas [1]  32/6
argue [1]  24/18
argued [1]  32/20
argument [10]  5/25 12/6 16/13
16/23 18/7 18/18 18/11 31/7 32/11
32/25

arguments [1]  23/21
around [2]  25/1 28/19
article [3]  4/16 8/14 14/21
articles [2]  8/3 16/8
as [22]  2/20 2/24 11/8 12/12
12/25 13/9 13/12 14/1 14/6 16/21
18/10 18/17 20/5 21/3 21/22 22/2
22/6 22/13 22/17 24/22 26/1 28/1
aside [3]  7/22 8/2 28/18
ask [3]  24/7 30/8 31/5
asked [2]  17/23 30/12
asking [6]  2/20 4/7 4/7 4/11 4/12
5/21
asserting [1]  12/15
assessment [2]  17/9 23/25
assigned [2]  3/6 3/25
assumed [1]  32/13
attention [1]  9/23
authorities [1]  16/8
automatic [1]  13/8
available [2]  9/17 11/10
Avenue [1]  1/23
average [1]  26/6
aware [2]  21/3 22/25
away [1]  7/6
Azure [1]  14/14

**B**

back [8]  7/21 10/5 16/14 16/19
18/3 18/6 26/19 28/23
background [1]  5/19
bad [1]  31/20
balance [1]  16/13
Bankruptcy [1]  1/23
based [2]  25/17 30/19
basically [1]  2/20
basis [1]  11/19
be [43]
because [25]  6/25 6/25 10/2 10/6
14/4 14/25 15/8 16/24 18/5 20/20
21/10 21/24 22/10 26/12 28/11
29/24 30/15 30/25 32/6 32/10
31/20 31/21 32/6 32/17 32/18
become [1]  25/16
been [12]  6/21 7/7 8/16 19/2 19/5
19/19 22/8 24/4 24/8 24/10 24/10
26/13
before [10]  1/10 6/21 13/12 14/3
18/22 24/4 26/12 28/2 30/8 33/2
behind [2]  8/11 10/10
being [4]  4/17 7/4 14/6 16/20
believe [6]  2/22 3/23 4/3 19/19
24/14 25/18
better [1]  2/16
between [1]  17/22
beyond [3]  8/15 18/3 22/15
BFS [1]  3/21
big [5]  6/1 11/2 11/5 26/6 30/7
blast [1]  28/21
blind [1]  9/10
Boasberg [1]  29/11
both [1]  27/5
bottom [1]  10/1
branch [5]  19/24 22/22 24/2 24/4
24/6
breach [1]  20/7
Brian [2]  1/13 28/16
brief [6]  8/18 18/7 20/13 21/5
22/12 23/18
briefing [1]  11/13 23/15
brings [1]  21/8
broadcasting [1]  9/18
brought [2]  17/20 21/21
bunch [1]  12/10 13/20
burden [2]  12/8 16/7

**C**

call [1]  12/4
called [1]  8/17
calling [1]  22/23
came [5]  9/4 14/4 14/5 14/15
18/13

**C**

**can** [25]  4/1 4/10 6/4 9/8 9/11
9/19 9/20 10/18 11/5 14/14 15/3
15/12 21/20 26/18 26/23 28/15
29/6 29/8 29/12 30/5 31/23 32/1
32/9 32/16 32/20
**can't** [7]  7/6 11/1 19/20 31/19
31/22 32/7 32/18
**cannot** [1]  4/20
**care** [2]  26/6 26/8
**career** [3]  10/12 10/15 18/14
**case** [11]  2/2 6/16 6/22 17/10
17/20 18/5 30/13 30/22 31/5 31/11
32/13
**cases** [8]  6/20 6/21 9/25 9/25
10/1 31/11 31/16 32/16
**categories** [1]  27/3
**cause** [6]  18/2 21/10 21/18 21/19
22/7 31/9
**Center** [1]  31/17
**certain** [4]  3/12 4/24 15/11 21/14
**certainly** [3]  20/17 22/1 24/24
**certainty** [1]  19/21
**certify** [1]  34/3
**CFPB** [2]  25/23 26/8
**challenge** [2]  18/2 22/15
**change** [3]  4/1 9/8 27/24
**Chinese** [1]  6/6
**chipper** [1]  26/4
**Circuit** [3]  31/25 32/16 32/20
**Circular** [5]  30/14 30/15 30/20
30/20 30/25
**circumstances** [2]  21/15 27/1
**citations** [1]  16/8
**cited** [2]  21/5 22/12
**citing** [2]  7/7 32/13
**Citizen** [1]  30/18
**Civil** [2]  1/3 2/2
**claim** [4]  21/9 21/19 27/16 28/16
**claims** [4]  17/19 27/7 27/13 28/15
**clear** [2]  6/15 22/4
**clerk** [2]  14/1 14/1
**clients** [6]  10/16 12/15 25/24
26/1 26/22 27/2
**closed** [1]  10/11
**code** [1]  13/18
**cognizable** [2]  20/4 31/8
**colleague** [3]  2/13 2/25 3/1
**collect** [2]  18/25 19/3
**collection** [2]  10/21 10/22
**COLUMBIA** [1]  1/1
**come** [5]  6/22 8/7 11/9 15/25
16/19
**comes** [1]  25/5
**coming** [1]  26/17
**Commerce** [1]  26/7
**communicating** [1]  22/18
**community** [1]  14/16 26/25
**company** [2]  25/5 25/9
**complaint** [9]  3/13 3/18 12/8
12/10 12/12 16/8 21/6 21/7 23/13
**complete** [2]  7/19 16/15
**completely** [4]  11/24 12/15 15/9
28/2
**complied** [2]  30/19 30/20
**component** [1]  28/20
**computer** [1]  11/5
**computers** [1]  10/3
**concede** [1]  15/12
**conceivably** [1]  20/21
**concern** [2]  5/19 32/4
**concerned** [1]  6/10
**concerns** [1]  7/7
**concluded** [1]  33/13
**conclusory** [1]  17/7
**concrete** [1]  7/14
**conditions** [1]  30/10
**configured** [1]  15/11
**confirm** [1]  4/2
**confirming** [1]  4/24
**Congress** [1]  19/23 21/12

**congressional** [1]  19/24
**consequently** [1]  20/23
**consider** [4]  3/1 29/18 29/21
32/24
**consistent** [2]  12/1 12/3
**consistently** [1]  24/25
**constitutes** [1]  34/4
**Constitution** [1]  1/23
**construed** [1]  12/12
**consult** [1]  18/14
**consultation** [1]  18/21
**contact** [1]  27/19
**contains** [1]  5/25
**context** [1]  24/25
**continued** [2]  19/9 22/18
**continuum** [1]  20/23
**contractor** [1]  19/14
**contractors** [4]  12/19 18/11 18/17
24/16
**contrary** [1]  16/6
**convince** [2]  7/23 8/2
**convinced** [1]  7/8
**core** [1]  5/8
**correct** [7]  3/4 3/23 3/25 4/25
5/1 20/17 34/4
**could** [12]  5/10 6/11 15/5 16/10
19/1 21/25 23/23 24/5 24/18 27/1
29/20 29/23
**counsel** [3]  2/4 2/5 12/11
**COUNSELORS** [1]  1/13
**couple** [3]  4/3 14/21 25/21
**COURT** [16]  1/1 1/22 1/22 2/14
12/2 20/7 20/8 22/2 22/9 29/1
29/1 30/17 32/17 32/23 34/3 34/13
**courts** [3]  1/23 24/25 26/11
**courts'** [1]  19/13
**criteria** [1]  30/10
**crosscheck** [1]  19/20
**currently** [1]  9/3
**Cyberintelligence** [1]  8/17
**Cybersecurity** [1]  11/1

**D**

**D.C** [1]  32/15
**damage** [1]  11/13
**data** [3]  5/14 24/5 24/13
**databases** [1]  6/2
**date** [2]  3/5 4/4
**Dated** [1]  34/10
**day** [5]  15/25 21/13 21/13 28/21
34/10
**days** [3]  4/3 14/21 25/23
**DC** [3]  1/5 1/19 1/24
**dealt** [1]  28/1
**deeply** [1]  6/10
**Defendant** [2]  1/7 1/16
**definitely** [1]  26/8
**definitively** [1]  15/15
**degree** [1]  4/15
**deleted** [1]  24/10
**demonstrated** [2]  7/12 13/3
**denial** [2]  27/13 27/16
**denied** [2]  28/16
**deny** [3]  25/5 27/7 28/15
**DEPARTMENT** [3]  1/18 2/10 26/7
**depending** [1]  27/5
**detail** [2]  9/19 12/14
**detailed** [1]  32/11
**details** [2]  4/1 4/10
**determined** [2]  3/14 3/19
**devastating** [1]  6/13
**DHS** [1]  30/5
**did** [22]  3/8 3/11 3/12 8/4 8/10
9/11 9/12 10/25 11/7 13/25 14/6
16/5 16/12 17/1 17/4 17/23 23/17
24/2 24/7 24/9 32/17 32/21
**didn't** [10]  9/16 11/3 11/3 13/22
13/24 18/14 18/15 21/12 24/7
32/12
**difference** [1]  17/22
**different** [3]  5/20 13/25 17/25
**differently** [1]  28/4

**difficult** [1]  28/2
**diligence** [1]  27/19
**directly** [2]  26/11 27/19
**directory** [1]  5/10
**disagree** [1]  6/19
**disclose** [2]  5/5 5/6
**disclosing** [1]  26/22
**discovery** [2]  4/11 11/12
**discussed** [1]  32/14
**dismiss** [3]  12/9 16/2 16/6
**dismissing** [1]  32/18
**distribute** [1]  19/3
**DISTRICT** [5]  1/1 1/1 1/10 1/23
12/2
**do** [31]  4/20 5/18 9/5 9/6 11/1
11/3 11/3 11/11 11/20 11/21 12/11
12/13 13/19 15/12 16/25 17/5
17/12 18/4 19/24 19/24 20/1
22/20 23/6 23/25 26/4 26/19 26/21
27/5 29/2 29/8
**DOE** [2]  1/3 2/3
**does** [12]  5/20 8/8 15/10 18/18
20/19 24/1 25/12 27/4 28/19 31/9
31/21 32/7
**doesn't** [4]  11/14 13/12 14/25
30/2
**Doge.gov** [1]  4/16
**doing** [6]  10/10 11/13 26/16 27/5
29/18 30/24
**dollars** [1]  25/6
**domain** [2]  9/18 13/22
**don't** [34]  2/18 3/5 3/11 4/4 4/14
5/16 8/1 10/8 10/9 11/20 12/1
12/2 12/3 13/1 13/7 13/10 15/12
16/9 18/10 19/7 21/1 22/23 23/1
25/18 25/19 26/20 27/5 27/15 29/3
29/20 29/23 30/1 32/19 32/22
32/23
**done** [16]  7/19 10/10 10/20 10/25
11/4 18/22 19/20 20/3 21/16 22/5
22/8 24/9 26/12 26/15 26/16 30/16
**doors** [2]  6/3 10/11
**dot** [2]  5/3 5/3
**down** [4]  3/16 4/9 6/8 10/24
**downloading** [1]  20/16
**due** [1]  24/3

**E**

**E-Government** [5]  17/20 31/1 31/9
31/20 32/19
**earlier** [1]  18/4
**easier** [3]  19/12 28/12 28/13
**easily** [3]  19/17 29/6 29/12
**EHRI** [2]  6/1 24/5
**either** [3]  8/19 20/3 21/8
**electronic** [2]  20/19 31/17
**electronically** [1]  9/9
**elements** [2]  22/11 22/16
**Elizabeth** [2]  1/16 2/9
**Elizabeth.Shapiro** [1]  5/5
**Elon** [1]  26/3
**else** [8]  10/9 15/8 17/11 23/6
33/2 33/3 33/5 33/6
**else's** [1]  24/21
**email** [37]
**emails** [14]  7/3 13/4 14/10 15/6
18/24 19/9 19/10 19/12 19/20
22/10 24/9 24/11 24/13 26/18
**emergency** [4]  2/24 3/4 3/24 3/24
**employee** [1]  6/22
**employees** [21]  3/22 7/1 7/2 7/2
10/12 10/15 12/19 18/9 18/9 18/12
18/25 22/19 24/2 24/4 24/6 24/12
24/15 24/17 24/18 26/2 26/17
**encourage** [1]  21/14
**encrypted** [1]  13/24
**end** [3]  17/2 20/18 30/8
**ended** [1]  3/1
**endorse** [1]  32/21
**Engelmayer** [9]  2/21 2/23 3/13
3/19 3/23 4/2 4/14 7/25 16/23
**Engelmayer's** [2]  4/6 7/21

**E**
enlargement [1]   27/20
enormous [1]   8/1
enough [4]   15/25 25/10 32/17 33/1
entered [2]   2/25 4/3
entire [2]   11/11 14/6
entirely [1]   30/14
entitled [3]   22/9 29/15 34/5
environment [1]   14/15
eOPF [2]   6/1 24/5
EPIC [2]   31/16 32/16
equitable [1]   20/9
equivalent [1]   9/9
eradicate [1]   28/2
errors [1]   18/23
especially [2]   12/18
establish [1]   20/10
established [2]   15/20 31/23
et [2]   1/3 2/3
evaluate [1]   12/8
even [10]   5/24 10/1 10/11 18/23
 21/25 22/8 22/8 24/8 26/13 28/9
ever [4]   26/10 26/11 26/12 32/13
every [6]   5/11 6/11 6/21 20/18
 20/19 28/21
everybody [3]   6/3 15/7 24/21
everyone [1]   6/12
everyone's [1]   20/14
everything [2]   15/8 20/18
evidence [6]   8/4 10/19 16/6 16/10
 20/11 21/1
evidentiary [3]   4/12 11/10 11/12
ex [4]   3/14 3/20 29/1 29/10
exactly [1]   22/13
example [4]   15/4 20/13 20/13
 26/24
examples [1]   26/13
excise [1]   19/18
executive [5]   19/24 22/22 24/2
 24/3 24/6
Exemption [1]   25/1
exhibit [1]   23/21
existence [1]   25/9
expedition [1]   6/12
expeditions [1]   21/13
experience [1]   17/6
experienced [1]   18/14
expert [3]   8/13 15/12 15/13
expose [2]   9/5 26/23
exposed [2]   8/10 8/16
extensively [1]   13/14
extraordinary [1]   25/11

**F**
face [2]   12/11 12/11
fact [7]   13/13 16/5 18/15 21/22
 26/22 29/18 32/15
facts [2]   19/8 21/4
failed [1]   20/9
fails [1]   21/19
fair [3]   12/6 18/13 33/1
fairly [1]   32/11
fake [2]   4/18 14/15
fall [1]   27/2
false [1]   17/8
faster [1]   26/18
FBI [2]   9/25 26/9
February [5]   1/5 3/5 3/11 4/5
 34/10
February 8 [2]   3/11 4/5
fed [1]   26/3
federal [3]   18/24 24/17 24/18
feel [1]   28/3
feeling [1]   2/16
FEMA [1]   30/5
few [2]   13/12 31/16
figure [2]   19/12 33/10
file [3]   29/1 29/10 30/9
filed [3]   12/9 23/17 28/25
filings [1]   26/20
filter [1]   27/25

filtered [1]   24/1
filtering [2]   9/9 24/24
final [5]   17/3 31/7 31/22 32/10
 33/6
find [9]   7/12 7/13 7/15 11/16
 11/18 24/19 26/13 28/12 28/13
finish [1]   33/2
firewall [1]   15/9
firewalls [3]   8/12 13/8 15/7
first [5]   4/5 5/3 8/21 21/2 25/22
fishing [5]   6/12 13/5 13/6 13/8
 13/9 14/20 21/12
fix [1]   11/6
fixed [3]   14/18 14/18 14/19
flag [1]   13/15
flagged [2]   13/6 14/6
flaws [1]   13/3
flooded [1]   7/3
FOIA [7]   5/8 6/20 6/20 6/21 6/22
 10/1 24/24
follow [2]   4/15 27/15
follows [1]   21/23
foregoing [1]   34/4
form [1]   28/15
formatted [1]   28/11
forward [1]   22/21
found [3]   26/11 30/15 30/17
frankly [1]   20/12
Friday [1]   23/18
front [2]   4/4 25/17
fully [1]   3/25
funky [1]   14/12
future [3]   10/6 10/8 20/6

**G**
gaping [2]   11/2 18/18
Gas [1]   22/2
gave [4]   16/7 16/7 17/7 20/13
generally [1]   26/15
get [10]   4/10 6/7 7/21 12/3 13/10
 14/13 17/10 24/2 25/11 33/9
gets [4]   5/19 6/4 26/5 27/16
getting [4]   10/19 15/8 24/3 24/12
Gill [3]   8/4 8/22 13/17
give [7]   7/4 11/11 14/1 16/12
 16/13 29/8 31/21
given [3]   16/15 24/14 28/12
glasses [1]   14/15
go [8]   9/19 15/10 16/14 19/17
 26/19 28/23 29/10 33/11
goes [6]   8/6 24/15 24/15 24/16
 24/17 27/25
going [27]   3/25 4/1 9/3 10/9
 13/14 16/10 18/3 18/6 19/13 19/20
 19/21 22/20 24/9 24/11 25/6 25/7
 25/8 25/16 25/19 26/4 26/8 27/10
 27/10 28/15 28/18 29/24 30/4
gone [1]   26/3
good [7]   2/6 2/8 2/9 11/7 15/4
 17/17 17/18
got [6]   3/16 13/7 15/7 16/1 16/17
 21/11
gotten [1]   32/2
gov [1]   5/3
government [51]
government's [1]   31/6
Grace [1]   1/17
grant [8]   3/10 3/14 3/19 3/20
 7/11 11/15 12/13 29/24
granted [2]   3/24 32/3
granting [4]   3/2 11/19 15/24 16/3
greater [1]   8/16
grounds [1]   16/2
group [2]   19/4 19/5
groups [1]   19/9
guess [4]   5/17 13/10 18/13 27/2
guideline [1]   31/3
guy [1]   26/6
GWES [2]   6/4 24/13

**H**
hack [6]   4/13 6/5 8/7 9/16 10/2

 11/14
hacked [2]   9/24 10/4
 9/14
hackers [1]   6/6
hacking [8]   3/10 7/9 7/16 7/16
 16/22 16/24 16/25 20/21
had [18]   5/23 6/6 7/18 8/12 10/19
 10/25 13/11 14/8 14/9 15/9 17/6
 17/6 18/24 22/10 23/24 24/4 24/10
 24/10
half [2]   13/5 16/11
handled [1]   6/20
happen [6]   6/18 25/19 25/20 26/4
 27/7 27/23
happened [3]   6/14 15/4 25/22
happens [2]   4/19 25/6
happy [2]   29/1 29/22
harassed [1]   7/4
harassment [1]   7/1
hard [1]   14/14
harder [1]   19/11
harm [11]   20/3 20/4 20/6 20/10
 21/23 21/24 21/25 22/3 26/23 27/6
 27/14
harms [3]   3/10 3/13 3/18
has [22]   6/22 9/7 10/2 19/5 19/19
 20/7 20/9 20/25 21/16 22/8 22/17
 24/5 24/8 24/23 25/22 26/10 26/12
 28/1 30/15 30/17 32/2 32/16
hasn't [1]   19/9
have [100]
having [6]   6/10 7/3 20/15
he [17]   2/24 3/3 8/8 8/8 9/4 9/4
 9/5 9/6 9/6 9/12 9/12 9/14 9/16
 9/19 10/4 11/9 11/10
head [1]   32/19
headers [2]   13/18 13/19
hearing [6]   1/9 4/12 11/10 11/12
 21/3 30/12
held [2]   22/2 22/9
her [6]   5/6 27/12 27/13 27/14
 28/17 28/18
here [23]   4/23 8/15 8/20 9/20
 9/23 14/16 15/12 15/13 17/22
 20/11 20/23 21/9 21/19 21/21 22/5
 22/7 24/7 25/5 25/16 29/10 29/24
 30/24 32/8
hey [2]   9/20 9/23
hidden [2]   8/11 10/4
highlighted [1]   23/15
him [1]   8/1
hire [3]   8/7 13/25 14/1
his [5]   2/25 3/1 9/5 11/10 20/13
hold [1]   11/20
holding [1]   20/8
holds [1]   31/25
hole [2]   11/2 18/18
Honor [16]   2/6 2/9 2/19 3/4 5/14
 7/20 17/15 18/4 19/7 21/6 21/11
 23/1 23/8 23/11 25/21 33/12
HONORABLE [1]   1/10
hope [1]   2/16
Horton [5]   1/17 2/11 2/13 17/16
 33/6
house [3]   9/7 9/12 9/12
how [18]   4/16 6/5 8/10 8/23 8/23
 9/18 13/17 13/19 15/11 16/1 16/17
 19/17 27/5 27/19 27/19 29/20
 29/23 30/19
however [1]   4/8
HR [1]   13/21
HR.OPM [1]   9/15
human [1]   6/1
hundreds [3]   8/10 9/23 18/16
hurt [1]   6/25
hypothetical [1]   21/25

**I**
I'm [3]   19/17 20/25 27/15
identifies [1]   12/25
identify [1]   11/8
identity [1]   9/6

**I**

ignore [1]   12/3
imagine [1]   26/24
immediately [1]   15/7
imminence [1]   22/4
imminent [3]   7/15 12/15 22/24
impact [2]   17/9 23/25
important [1]   5/2
inboxes [1]   7/3
incident [4]   7/9 7/17 7/18 20/22
include [1]   31/9
included [2]   10/13 17/25
includes [1]   11/17
indexed [1]   9/21
indicates [3]   10/18 17/4 17/4
individual [1]   6/15
individuals [3]   7/14 20/4 22/10
information [27]   4/21 4/23 5/8
 6/2 6/3 9/17 9/18 9/21 12/18
 12/18 12/20 12/22 12/24 12/25
 13/1 18/25 19/3 19/3 20/17 24/10
 24/14 24/21 28/12 29/16 30/23
 31/2 31/17
informative [2]   25/23 25/25
informed [1]   26/15
initial [1]   23/17
injunction [2]   4/10 25/12
injunctive [1]   10/7
injuries [1]   16/15
injury [15]   4/13 6/16 6/16 7/15
 10/14 10/16 10/17 11/18 12/15
 12/17 16/15 16/20 18/5 24/23
 25/11
insecure [1]   14/17
inside [2]   9/11 9/12
instance [5]   5/4 14/13 14/14
 21/16 27/6
instead [1]   12/5
insufficient [1]   26/14
intelligence [1]   26/25
intelligent [1]   11/5
intended [1]   24/2
intending [1]   19/3
intent [1]   18/23
interest [5]   22/17 22/18 25/1
 25/2 25/3
interview [3]   8/4 8/22 13/17
interviewer [1]   8/25
introduced [1]   8/3
intrusive [1]   25/14
investigations [1]   5/20
invoke [1]   6/24
involve [1]   30/2
irreparable [4]   11/18 21/23 24/23
 25/11
IRS [1]   26/9
is [217]
isn't [2]   24/21 27/9
issue [2]   4/23 25/22
issued [1]   2/21
it [127]
its [3]   8/24 22/18 22/19
itself [3]   4/17 14/24 14/24

**J**

JANE [2]   1/3 2/2
January [1]   24/5
January 20th [1]   24/5
Jay [2]   11/8 13/17
Jerome [2]   1/17 2/11
judge [24]   1/10 2/21 2/23 2/24
 3/4 3/5 3/6 3/6 3/13 3/18 3/23
 3/24 3/25 4/2 4/5 4/13 4/14 7/21
 7/21 7/25 12/12 12/22 29/11
judicial [2]   20/20 24/12
judiciary [2]   19/9 19/12
jurisdictional [1]   32/22
just [29]   2/24 2/25 4/3 4/15 4/22
 5/10 5/21 5/25 7/4 7/22 9/13 10/3
 10/18 12/4 16/11 18/6 18/9 19/14
 20/20 20/23 21/11 23/12 24/7

24/10 27/10 30/2 30/7 31/7 32/8
JUDGE MOSS: [7]   3/5 3/10 3/18 4/8
justification [1]   15/14

**K**

Kel [2]   2/6 28/10
Kelly [4]   1/13 14/2 28/10 28/16
key [1]   13/23
keys [1]   14/5
know [38]
knowing [1]   25/12
knowledge [1]   5/1
known [3]   8/23 19/1 23/23

**L**

last [5]   5/3 7/7 17/22 23/18
 30/12
later [2]   3/5 11/9
launch [1]   6/12
law [3]   30/13 30/19 30/22
lawsuit [1]   21/20
least [4]   4/20 27/4 29/20 33/10
leaves [1]   21/1
left [1]   4/17
legal [1]   28/9
legally [1]   17/23
legislative [1]   24/15
legitimate [3]   24/19 26/17 30/21
less [1]   6/15
let [2]   15/1 19/23
let's [4]   4/22 9/7 11/20 13/15
letting [1]   10/12
level [1]   25/14
Library [1]   19/23
like [6]   10/20 14/6 16/6 20/4
 22/6 26/25
likelihood [6]   7/12 11/16 11/17
 11/18 15/20 22/6
likely [5]   7/14 12/7 15/16 15/19
 20/10
LINDSAY [3]   1/22 34/3 34/12
link [1]   6/4
linked [3]   3/20 6/1 8/14
list [1]   16/15
listen [1]   23/16
listened [1]   20/24
lists [1]   27/20
litigation [1]   5/9
little [2]   6/15 19/11
living [1]   8/8
logged [1]   6/6
logic [1]   25/25
long [1]   15/25
longer [2]   3/24 24/12
look [6]   10/21 13/17 18/20 26/20
 26/21 28/23
looks [1]   14/6
lose [1]   25/6
lots [1]   32/6
Lou [1]   30/18
loudspeakers [1]   28/22
lowering [1]   9/9
Lyons [1]   20/7

**M**

machine [3]   13/18 14/13 14/14
machines [2]   15/2 15/3
made [6]   6/19 15/15 15/19 16/11
 18/7 32/11
mail [1]   5/2
mailing [1]   27/20
maintained [1]   13/3
major [1]   30/22
make [7]   9/10 14/1 15/5 17/1 24/3
 27/25 29/13
makes [2]   28/12 28/13
MANAGEMENT [2]   1/6 2/3
manager [1]   6/23
manuals [1]   6/6
many [2]   5/2 6/20
material [1]   8/12

matter [2]   24/1 34/5
may [7]   4/11 5/23 5/24 20/21
 25/13 26/6 26/16
maybe [4]   16/2 26/24 27/1 27/13
McClanahan [10]   1/13 2/7 2/18
 14/2 18/10 20/25 23/10 28/10
 28/10 28/16
MD [1]   1/15
me [26]   2/10 4/4 7/13 7/15 7/23
 8/2 9/23 11/5 12/14 13/12 14/1
 14/1 16/15 17/9 20/17 23/2 25/12
 25/17 26/21 28/13 28/13 29/8
 29/18 30/12 31/4 33/5
mean [12]   5/17 5/18 6/16 12/20
 12/21 13/7 13/11 20/12 22/21
 26/23 31/10 32/25
means [4]   14/23 15/1 15/2 15/3
measures [1]   10/22
media [2]   4/15 8/13
member [1]   14/16
members [1]   24/16
memo [1]   23/14
mention [1]   16/22
merits [5]   7/23 8/2 11/17 18/6
 22/6
message [2]   13/18 13/19
might [5]   5/9 5/9 6/10 25/19
 27/23
military [1]   19/14
million [2]   4/20 25/6
mind [1]   6/15
minute [1]   7/22
minutes [1]   8/9
misleading [1]   17/7
misstated [1]   23/12
mitigate [2]   10/23 11/12
Monday [1]   2/22
monitoring [1]   7/2
months [1]   7/17
mooted [1]   17/10
more [9]   3/10 7/10 7/19 9/19 11/4
 16/6 16/21 16/23 28/12
morning [6]   2/6 2/8 2/9 4/15
 17/17 17/18
MOSS [1]   1/10
most [1]   5/7
motion [8]   1/9 2/18 3/1 4/11 12/9
 16/2 16/6 23/14
Mr [3]   2/18 18/10 23/10
Mr. [1]   20/25
Mr. McClanahan [1]   20/25
Ms [1]   5/4
Ms. [3]   2/13 17/16 33/6
Ms. Horton [3]   2/13 17/16 33/6
Mueller [1]   8/5
Musk [1]   26/3
must [4]   6/23 6/24 22/3 30/9
mustache [1]   14/15
my [11]   2/23 5/17 6/15 15/23
 25/24 25/25 28/11 30/8 32/4 32/19
 32/25

**N**

name [15]   2/4 5/3 5/3 5/6 5/6
 9/18 12/24 19/13 27/12 27/16
 27/18 28/9 28/10 28/12 30/2
names [2]   25/4 29/11
NATIONAL [1]   1/13
nature [1]   32/8
necessarily [3]   27/19 27/19 28/10
need [12]   4/10 7/11 7/12 11/3
 11/6 11/9 11/11 11/21 12/8 22/4
 26/3 29/17
needed [1]   19/2
needs [2]   6/8 29/14
never [3]   14/3 25/7 32/2
new [9]   2/21 4/16 9/14 9/22 9/24
 13/13 14/1 14/2 14/12
news [1]   16/8
next [2]   7/17 21/9
no [32]   1/4 3/23 14/10 14/10
 14/10 15/24 16/11 17/6 18/2 18/5

**N**

no... [22]   19/1 20/3 20/11 21/9
21/10 21/18 21/19 21/22 21/24
21/24 22/7 22/14 23/8 23/23 24/2
24/12 24/14 25/9 26/10 26/10
30/15 33/8
NOAA [3]   15/5 15/5 15/8
nobody [1]   26/12
non [1]   7/16
non-speculative [1]   7/16
not [99]
note [2]   5/2 23/14
nothing [4]   12/9 24/20 33/3 33/5
notifying [1]   22/22
now [7]   7/5 11/6 16/4 24/8 24/18
26/6 30/5
number [2]   2/2 20/14
NW [2]   1/18 1/23

**O**

objections [1]   12/10
obviously [3]   9/5 20/18 29/8
occur [2]   7/18 20/10
occurred [1]   18/23
off [3]   13/4 14/20 32/19
offer [3]   16/5 16/10 32/12
offered [1]   20/11
office [3]   1/6 2/3 10/12
official [4]   1/22 4/18 34/3 34/13
officials [1]   3/12
offline [1]   10/5
oh [2]   13/15 29/24
okay [15]   2/12 2/15 9/2 11/25
17/11 20/2 21/7 23/2 23/9 23/19
24/18 28/18 29/5 30/6 33/1
Olivia [2]   1/17 2/10
OMB [2]   10/21 31/2
one [22]   6/17 8/4 8/21 13/16
15/10 18/6 18/7 23/16 24/22 25/15
26/10 27/4 27/6 28/6 28/19 30/15
31/5 31/13 31/15 31/23 31/24
32/16
only [9]   5/24 15/5 20/6 21/17
24/2 24/3 28/19 31/13 31/15
open [3]   4/17 15/6 15/9
opened [1]   9/13
openly [1]   9/24
opens [1]   27/13
operating [1]   22/18
opinion [2]   31/25 33/9
opinions [1]   7/21
OPM [11]   5/4 5/11 5/19 6/5 7/18
8/9 8/9 9/14 9/22 14/7 24/4
OPM.gov [3]   5/5 13/21 13/22
opposing [1]   12/11
option [1]   22/24
order [7]   2/21 2/25 4/4 4/5 4/6
7/11 15/9
ordered [1]   29/11
original [1]   6/5
other [19]   6/5 9/25 12/10 13/1
15/2 15/3 19/9 19/24 20/18 22/22
22/24 23/3 23/24 28/19 30/8 31/5
31/11 32/12 33/4
otherwise [1]   7/4
our [12]   5/1 12/8 12/11 12/12
15/16 16/8 17/24 22/12 23/14
23/14 23/14 23/17
out [16]   6/11 7/4 8/6 13/14 14/8
14/9 18/10 18/16 19/12 20/5 24/9
24/11 26/3 26/5 26/18 33/10
outright [1]   7/7
outside [5]   6/9 9/11 10/18 14/7
19/4
outsiders [1]   26/16
over [2]   32/7 32/9

**P**

page [2]   10/2 23/13
Paperwork [1]   30/16
parameters [1]   30/21

Pardon [1]   31/14
pardon [1]   20   29/16
partially [1]   3/3
particular [3]   8/19 27/1 29/25
particularly [2]   25/15 29/19
partners [1]   24/16
passwords [1]   14/5
past [1]   20/10
pay [1]   9/23
payment [1]   3/21
payout [1]   22/24
penetration [1]   8/5
penis [1]   27/20
people [10]   4/17 11/1 11/4 18/15
18/16 18/25 19/4 23/24 24/6 26/4
people's [4]   4/20 5/19 27/7 28/4
per [1]   10/17
perform [1]   21/15
performance [1]   17/3
performed [1]   18/21
period [1]   7/17
permanent [1]   3/6
person [5]   9/3 27/11 28/15 29/24
30/2
person's [2]   27/16 27/18
personal [1]   28/5
PERSONNEL [2]   1/6 2/3
persuaded [1]   18/8
phrase [2]   4/9 27/5
PI [1]   25/5
PIA [22]   7/19 10/20 12/24 17/1
17/2 17/21 17/23 17/25 18/3 18/19
18/21 19/2 22/8 22/9 22/11 22/13
21/11 26/14 30/9 31/2 31/20 31/20
PIAs [2]   17/7 31/12
pie [1]   10/19
piece [1]   10/19
PII [1]   13/2
Pike [1]   1/14
place [2]   11/20 15/1
places [1]   9/21
plainly [1]   3/20
plaintiff [2]   1/13 22/15
plaintiffs [14]   1/4 2/7 6/15
12/18 17/20 18/4 20/6 20/9 20/13
21/19 22/5 22/9 22/19 22/19
plaintiffs' [1]   2/5
plans [2]   22/20 22/24
please [2]   2/4 10/24
podcast [5]   8/5 20/24 21/3 23/13
23/15
podcaster [1]   9/1
podium [1]   2/4
point [11]   5/17 7/9 7/11 15/11
17/12 19/6 20/4 21/9 25/18 26/10
32/4
pointed [2]   18/10 20/5
pointing [1]   31/5
points [4]   22/13 23/12 24/22 30/8
policymakers [1]   26/15
political [1]   3/21
porn [1]   15/8
position [3]   17/24 27/6 27/7
possibility [1]   20/21
possible [3]   13/8 20/11 21/11
possibly [3]   14/13 29/20 29/23
preliminary [2]   4/10 25/12
President [1]   26/2
presumed [1]   32/16
pretty [2]   6/13 18/18
previously [2]   8/11 10/4
principally [2]   4/23 6/17
privacy [10]   5/8 5/13 6/24 7/6
17/8 23/25 25/1 25/2 25/3 31/17
private [3]   4/21 4/23 21/18
probably [7]   6/13 6/13 18/13
18/15 19/11 19/12 20/15
problem [7]   11/6 11/15 18/18
23/21 24/7 26/6 26/9
proceed [2]   25/24 26/17
proceedings [2]   33/13 34/5
produced [2]   17/24 19/2

professionals [1]   11/2
promptly [1]   23   29   13
proof [3]   12/8 16/7 16/12
proper [1]   27/25
protected [1]   5/9
protocols [1]   15/1
proven [1]   15/15
provision [1]   22/14
pseudonym [1]   9/4
pseudonyms [2]   25/25 26/1
public [6]   8/11 8/16 9/21 22/17
25/16 30/18
publically [1]   9/17
publication [1]   17/2
publicly [1]   5/15
publish [3]   5/10 5/15 21/17
published [1]   20/14
purged [1]   24/14
purposes [11]   12/16 16/16 20/5
22/1 22/2 22/3 22/22 25/1 25/10
31/8 32/10
put [7]   7/22 8/1 9/22 13/2 16/20
27/24 30/8
puts [1]   16/6
putting [1]   4/17

**Q**

question [10]   16/14 20/23 23/22
25/14 27/2 30/14 30/18 30/22 31/4
32/8
questions [3]   23/3 30/9 33/4
quirky [1]   13/11
quite [4]   7/25 15/18 20/25 31/10

**R**

raising [1]   9/9
RANDOLPH [1]   1/10
reaffirm [1]   3/8
real [2]   9/5 14/10
realize [1]   18/15
really [2]   5/18 32/12
reason [7]   18/19 21/11 24/14
24/20 25/18 25/19 26/14
reasonable [2]   7/17 18/11
reasons [2]   6/24 25/24
rebut [1]   16/10
rebutted [2]   16/11 22/19
recall [2]   32/19
receive [1]   19/9
received [4]   12/25 13/1 13/6
19/10
receiving [1]   7/3
recent [1]   25/23
recognized [4]   4/14 13/23 13/25
14/4
record [4]   2/5 12/10 24/20 34/5
recover [1]   25/7
red [1]   8/6
redacted [1]   10/2
Reduction [1]   30/17
reference [1]   6/20
referenced [1]   20/25
refocus [1]   17/19
regarding [1]   19/8
regulation [1]   10/21
reiterated [1]   3/22
related [1]   5/24
relatively [1]   29/12
relevant [2]   26/12 31/1
relief [7]   3/2 7/12 10/7 12/13
17/21 22/4 25/11
relying [1]   16/16
remedy [1]   20/9
reminds [1]   31/4
removed [1]   19/5
reply [2]   8/15 23/14
report [5]   17/3 17/4 17/4 17/8
17/9
Reporter [4]   1/22 1/22 34/3 34/13
reporting [1]   10/11
represent [1]   19/21
Republican [1]   28/21

**R**

requested [1]   25/24
requesting [1]   17/21
require [2]   7/13 7/15
required [4]   13/22 15/1 21/16
21/18
requires [5]   7/15 17/25 18/21
22/12 32/9
reserve [2]   17/12 17/13
resource [1]   6/2
respect [1]   8/1
respond [1]   14/11
responded [1]   16/9
response [5]   14/22 15/23 23/22
31/6 32/12
responses [1]   25/21
rest [1]   6/7
result [4]   3/9 16/21 17/3 20/21
retirement [1]   22/24
revealing [1]   30/2
review [1]   20/20
reviews [2]   21/15 21/17
right [27]   2/17 5/7 5/16 7/24
11/6 12/22 14/4 14/5 15/18 17/11
17/14 23/2 23/4 24/24 27/12 27/17
27/22 27/25 28/24 29/13 30/11
30/14 31/13 31/15 31/21 33/2
33/12
rises [1]   25/14
risk [9]   6/16 7/9 7/16 10/6 10/8
10/23 20/6 25/15 30/7
Rockville [2]   1/14 1/15
role [1]   12/2
room [2]   1/24 6/3
routine [1]   5/14
RPR [1]   34/12
Rule [1]   12/3
rules [1]   30/9
runs [1]   9/24
rushed [1]   4/19

**S**

said [20]   3/11 7/23 11/1 11/2
11/8 13/7 13/8 16/22 18/8 20/8
20/8 21/23 22/7 22/14 23/22 23/22
24/25 26/3 28/14 30/16
sake [1]   5/24
same [6]   2/20 3/2 5/7 6/16 9/25
14/22
saw [1]   9/12
say [22]   3/12 7/8 9/7 10/1 11/5
11/19 12/4 12/7 12/11 15/25 23/7
24/9 25/8 25/9 25/10 27/5 27/10
27/10 28/3 28/18 29/23 32/17
saying [8]   3/25 6/8 7/5 11/6
14/10 16/11 17/2 18/4
says [6]   6/23 13/14 14/2 14/16
24/8 25/6
science [1]   11/5
se [1]   10/17
sealed [1]   26/20
searches [1]   28/13
second [3]   4/22 8/14 18/6
sections [1]   22/13
secure [2]   13/2 16/18
security [7]   1/13 13/25 15/1
20/14 28/19 28/20 28/21
see [8]   8/7 9/11 9/11 10/18 13/20
13/21 23/2 29/20
seem [3]   5/20 18/18 25/12
seems [2]   19/8 20/17
seen [2]   5/23 13/11
send [6]   13/4 14/3 14/8 14/9
18/24 26/18
senior [1]   6/23
sensitive [3]   5/8 29/19 29/25
sent [3]   13/21 14/3 22/10
serve [1]   18/17
server [18]   4/9 4/9 4/16 4/18 8/9
9/15 9/15 9/20 9/22 9/24 10/9
10/12 11/14 14/6 14/7 14/17 14/24

15/11
servers [1]   5/24
servers [2]   6/5 13/24
set [8]   8/10 8/24 9/22 10/13 13/4
18/13 28/17 30/21
setting [1]   14/20
seven [2]   17/25 22/16
Shapiro [2]   1/16 2/10
Shapiro's [1]   5/4
she [16]   3/11 3/11 3/12 3/22 5/4
5/6 8/4 8/5 8/23 23/22 24/8 24/9
27/6 28/19 28/20 30/5
SHERRY [3]   1/22 34/3 34/12
shifts [1]   16/13
should [2]   15/3 32/17
shouldn't [1]   19/22
show [2]   20/15 24/20
showing [1]   13/24
shut [2]   4/9 6/8
side [1]   6/3
sidetracked [1]   16/17
sign [1]   27/20
Simon [2]   1/17 2/11
simply [5]   4/24 11/9 12/4 15/25
31/10
since [1]   12/9
site [2]   13/14 14/23
slow [2]   3/16 10/24
so [40]
Social [1]   20/14
software [1]   27/24
some [6]   4/4 14/18 20/20 22/9
22/10 27/24
somebody [1]   17/6
someone [15]   6/11 8/6 8/7 9/11
10/2 11/14 13/7 13/14 14/7 20/16
26/7 26/25 27/15 28/1 31/19
someone's [2]   25/13 28/9
something [4]   8/12 17/9 26/17
26/25
somewhat [1]   25/13
sorry [3]   3/17 27/15 28/8
sort [6]   12/14 13/18 30/8 32/3
32/8 32/23
spam [3]   27/25 28/1 28/2
spammed [1]   15/7
special [1]   3/22
specific [1]   16/7
spectrum [1]   20/18
speculative [2]   7/11 7/16
sponte [1]   32/24
spoof [1]   14/7
standard [1]   21/22
standards [1]   12/4
standing [8]   7/13 11/17 12/16
16/16 18/5 20/5 21/24 22/1
start [1]   2/18
started [3]   10/4 15/8 20/16
starting [1]   2/5
state [2]   2/4 30/9
stated [1]   21/9
STATES [5]   1/1 1/10 6/10 6/14
6/17
statute [8]   17/24 18/20 21/10
21/12 21/14 21/18 22/12 22/14
stay [2]   4/8 12/5
still [6]   14/3 14/20 14/22 24/13
24/19 24/21
stolen [1]   5/20 7/10
stop [2]   24/9 24/11
stories [1]   10/13
street [2]   1/18 26/6
strike [1]   13/12
stuck [2]   16/24 16/25
stuff [3]   11/7 24/1 32/7
sua [1]   32/24
subject [4]   7/1 7/1 7/2 20/20
Substack [1]   28/13
substance [2]   18/3 22/15
substantial [4]   24/24 25/2 25/3
25/10
succeed [2]   12/7 22/6

success [4]   7/13 11/16 11/17
11/21 17/19
such [3]   3/21 22/4
sue [9]   30/13 31/19 31/22 31/23
32/1 32/7 32/9 32/16 32/18
sued [2]   26/10 30/15
suffer [1]   7/14
sufficiency [1]   26/11
sufficient [14]   3/14 3/19 15/16
15/19 15/22 16/1 17/23 20/7 20/15
20/22 21/25 22/1 22/11 31/2
suing [2]   30/24 30/25
suit [1]   17/21
Suite [1]   1/14
supposed [1]   10/20
Supreme [1]   20/8
sure [10]   10/14 10/15 14/23 19/16
19/17 20/25 21/2 24/7 27/25 29/13
survive [1]   16/2
system [21]   6/6 6/7 8/7 8/20 8/24
9/25 10/3 13/2 13/3 13/4 14/25
15/6 16/18 16/21 16/24 16/25
20/19 22/21 22/25 24/13 30/23
systems [11]   3/9 3/21 5/24 8/11
8/16 9/19 13/2 13/24 14/4 14/5
22/18

**T**

take [1]   25/25
taken [2]   13/2 18/22
talk [4]   4/22 8/13 15/3 28/18
talked [3]   5/23 8/9 13/17
talking [7]   3/8 8/20 10/4 10/7
15/2 23/21 28/4
teams [1]   8/6
tell [12]   11/3 12/14 15/10 26/21
29/6 29/8 29/19 29/22 29/25 30/4
30/5 32/20
temporary [1]   2/25
tens [1]   18/15
terribly [2]   18/8 18/14
tester [1]   8/5
testify [2]   9/4 11/9
testifying [1]   11/14
text [1]   13/20
than [7]   7/10 9/19 11/5 12/10
13/25 31/5 32/13
Thank [9]   2/17 2/19 17/14 17/15
23/4 23/5 23/9 33/9 33/12
that [302]
that means [1]   14/23
their [15]   5/21 7/3 7/4 8/2 12/17
12/20 12/21 13/2 13/8 15/5 24/13
26/22 27/21 28/9 29/11
them [14]   7/22 20/15 22/10 24/5
26/23 27/4 27/5 27/6 27/19 27/20
28/6 29/19 30/5 31/22
then [9]   3/1 6/9 9/1 20/16 24/2
29/8 31/11 31/22 33/10
theoretical [1]   22/3
there [51]
these [15]   4/19 5/2 7/10 7/14
8/15 14/8 14/9 15/8 20/4 21/15
24/9 24/12 28/4 30/10 30/10
they [81]
thing [3]   21/17 29/11 32/23
things [9]   4/19 10/10 12/12 13/16
15/1 17/8 17/25 22/22 32/8
think [26]   3/12 5/18 12/1 12/2
12/3 12/7 12/7 12/13 13/5 13/7
16/4 16/5 16/9 18/10 18/10 18/12
21/11 23/20 25/19 25/22 25/23
26/4 31/6 32/15 32/22 32/23
this [72]
those [16]   6/5 7/1 7/2 7/2 8/19
9/23 10/5 18/17 18/19 18/21 21/17
22/13 22/15 26/4 26/5 27/3
though [1]   5/17
thought [1]   20/12
thousands [1]   18/16
threat [1]   4/13
threaten [1]   25/8

**T**

**through [6]**  9/12 17/10 15/10
15/22 19/18 21/20
**time [8]**  6/21 7/18 11/11 17/12
17/13 17/22 21/2 25/18
**tint [1]**  9/8
**tinted [2]**  9/8 9/10
**tiny [1]**  10/19
**tips [1]**  27/20
**today [7]**  2/14 2/20 9/5 17/23
21/21 22/5 23/21
**told [2]**  18/12 24/5
**took [2]**  10/5 32/3
**top [1]**  32/19
**transcript [2]**  1/9 34/4
**transparent [1]**  9/10
**tried [1]**  13/4
**TRO [18]**  3/11 3/15 3/20 3/24 4/8
11/11 11/15 11/19 12/3 15/14 16/1
16/3 21/22 22/2 22/3 23/17 29/24
33/10
**TROs [1]**  15/24
**true [4]**  3/3 12/12 16/12 34/4
**trust [2]**  11/7 14/10
**truth [1]**  18/12
**try [1]**  8/7
**trying [2]**  13/21 14/7
**turning [1]**  7/5
**twice [1]**  23/15
**two [3]**  6/1 8/3 15/1
**type [1]**  27/24

**U**

**U.S [2]**  1/18 1/23
**unable [1]**  26/13
**unavailable [1]**  20/9
**under [9]**  9/4 20/7 21/10 22/11
25/24 27/2 30/21 31/8 32/18
**understand [3]**  5/18 6/9 22/21
**understandable [1]**  23/16
**understanding [1]**  2/24
**UNITED [5]**  1/1 1/10 6/9 6/14 6/17
**unknown [2]**  12/24 25/17
**unless [2]**  7/5 33/3
**unpersuaded [1]**  11/24
**unplug [1]**  4/9
**unsecure [1]**  16/21
**until [1]**  4/9
**unwanted [1]**  7/3
**up [12]**  3/1 6/23 8/10 8/24 9/22
10/13 15/6 18/13 18/13 27/14
27/20 29/7
**URL [1]**  10/1
**us [7]**  11/7 11/11 12/13 16/13
21/1 21/8 24/14
**USAID [1]**  25/23
**uscourts.gov [1]**  14/2
**use [2]**  5/14 9/10
**used [2]**  6/7 22/21
**using [2]**  13/4 22/25

**V**

**Vargas [3]**  3/6 4/14 8/1
**Vargas' [1]**  7/21
**various [1]**  9/21
**versus [4]**  2/3 14/14 19/13 28/5
**very [4]**  2/25 5/20 28/2 28/3
**view [1]**  13/19
**views [1]**  8/2
**violate [1]**  5/13
**violated [5]**  30/15 30/16 30/17
30/25 31/1
**violations [1]**  30/13
**virtual [1]**  14/13
**vs [1]**  1/5
**vulnerability [2]**  8/24 13/13
**vulnerable [8]**  3/10 8/8 14/23
14/24 14/24 16/22 16/23 16/24

**W**

**waive [1]**  7/6

**walk [1]**  11/10
**wall [2]**  2/14 2/15
**wanted [4]**  5/10 5/11 16/19 23/6
**warnings [2]**  14/9 14/9
**warrant [2]**  3/14 3/19
**was [51]**
**Washington [3]**  1/5 1/19 1/24
**way [7]**  15/2 15/5 19/1 20/3 21/8
23/23 28/11
**ways [1]**  8/15
**we [80]**
**we'll [1]**  33/10
**wearing [1]**  14/15
**web [3]**  9/22 9/24 20/14
**website [2]**  4/16 4/18
**weighs [1]**  25/15
**weird [1]**  13/15
**well [14]**  5/16 7/6 7/25 11/20
15/11 16/9 21/3 24/8 28/23 29/7
29/24 30/4 31/23 32/4
**went [2]**  8/15 20/16
**were [21]**  3/8 3/14 3/19 6/9 6/18
8/11 9/17 10/3 10/20 13/24 15/6
17/22 18/23 19/2 22/8 22/9 24/3
26/1 27/23 28/4 31/10
**weren't [1]**  23/16
**what [48]**
**whatever [3]**  4/8 7/17 27/10
**when [12]**  4/19 5/19 5/21 8/10
9/10 9/20 9/22 13/4 16/12 19/2
19/13 25/15
**where [15]**  7/20 9/25 10/1 10/12
11/22 16/4 20/9 20/23 21/1 25/17
26/22 27/6 27/21 32/6 33/10
**whether [10]**  14/14 15/20 18/21
21/15 25/14 25/15 27/2 30/18 32/9
32/10
**which [19]**  3/9 4/15 7/9 7/13 7/15
9/4 9/9 9/24 11/17 13/18 21/9
21/15 21/23 22/13 25/16 31/5 32/9
32/12 32/13
**while [2]**  11/13 11/20
**who [21]**  2/24 3/6 4/1 8/6 9/3
11/4 11/8 12/18 17/6 18/16 19/12
19/20 22/10 24/4 24/6 24/12 26/2
26/2 26/15 26/16 28/1
**whoever [2]**  18/13 28/14
**whole [1]**  13/20
**why [12]**  2/18 5/23 6/7 6/9 10/14
10/15 14/8 14/23 16/19 21/11
23/25 25/25
**will [18]**  2/13 6/25 6/25 7/1 7/2
7/14 7/16 11/8 12/4 13/20 13/20
14/3 15/15 15/16 25/5 25/20 28/23
33/9
**willing [2]**  9/5 11/9
**win [3]**  15/15 15/16 15/19
**window [3]**  9/8 9/8 9/13
**Wisconsin [1]**  22/2
**withhold [1]**  6/24
**without [2]**  7/23 20/15
**witness [1]**  15/17
**wood [1]**  26/3
**words [1]**  33/6
**work [11]**  9/19 11/21 26/5 26/8
26/8 26/9 26/22 27/21 28/20 29/4
29/18
**worked [2]**  5/4 6/5
**workers [1]**  22/23
**works [10]**  5/6 13/19 16/18 26/7
27/6 27/11 28/19 28/20 29/25 30/5
**world [1]**  11/4
**worth [1]**  4/20
**would [39]**
**write [3]**  17/6 17/9 21/12
**writing [5]**  17/7 26/17 31/20
31/22 31/23
**wrote [2]**  8/5 21/14

**Y**

**yeah [5]**  13/10 25/8 28/14 28/17

32/5
**years [1]**  13/23
**Yep [1]**  31/18
**yes [3]**  3/7 8/21 23/11
**yesterday [1]**  23/17
**yet [1]**  20/24
**York [1]**  2/21
**you [131]**
**your [32]**  2/4 2/6 2/9 2/17 2/19
3/4 5/14 5/25 5/25 6/2 7/20 8/7
9/11 10/16 12/15 16/15 17/15 18/4
18/7 19/7 21/6 21/11 23/1 23/8
23/11 23/22 25/21 26/21 27/2
28/16 31/6 33/12