```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA


NATIONAL SECURITY              :
COUNSELORS,                    :
                               : Docket No.: CA 11-443
          Plaintiff,           :
                               :        Washington, DC
       vs.                     :    10:53 a.m., Friday
                               :     February 15, 2013
CENTRAL INTELLIGENCE           :
AGENCY,                        :
                               :
          Defendant.           :
_____X
```

```
      REPORTER'S OFFICIAL TRANSCRIPT OF STATUS HEARING
          BEFORE THE HONORABLE BERYL A. HOWELL
              UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

  For the Plaintiff:    KELLY BRIAN MCCLANAHAN, ESQ.
                        National Security Counselors
                        1200 S. Courthouse Road
                        Suite 124
                        Arlington, VA 22204
                        (301) 728-5908


  For the Defendant:    DAVID M. GLASS, ESQ.
                        RYAN BRADLEY PARKER, ESQ.
                        ELIZABETH J. SHAPIRO, ESQ.
                        U.S. Department of Justice
                        20 Massachusetts Avenue, NW
                        Washington, DC 20001
                        (202) 514-4336


  The Court Reporter:   CHANTAL M. GENEUS, RPR, CRR
                        Certified Realtime Reporter
                        Registered Professional Reporter
                        United States District Court
                        333 Constitution Avenue, NW
                        Washington, DC 20001


Proceedings reported by machine shorthand. Transcript
produced by computer-aided transcription.

Ex. C

```
 1                    P R O C E E D I N G S

 2                    (Whereupon, at 10:53 a.m. the proceedings

 3               commenced and the following ensued:)

 4               THE COURTROOM DEPUTY:  Matter before the

 5   Court, Civil Action Number 11-443, National Security

 6   Counselors versus Central Intelligence Agency.

 7               Counsel, please come forward and identify

 8   yourselves.

 9               THE COURT:  Welcome back, Counsel.

10               MR. McCLANAHAN:  Nice to be back, Your

11   Honor.  Kel McClanahan for the plaintiff.

12               THE COURT:  Good morning, Mr. McClanahan.

13               MR. PARKER:  Good morning, Your Honor.  Ryan

14   Parker for Defendant Central Intelligence Agency.

15               THE COURT:  Good morning, Mr. Parker.

16               MR. GLASS:  I'm David Glass, also from the

17   Civil Division of the Justice Department on the

18   sanctions motion.

19               THE COURT:  Good morning, Mr. Glass.

20               MS. SHAPIRO:  Elizabeth Shapiro, Your Honor.

21   Good morning from the Justice Department.  And I won't

22   be speaking today.

23               THE COURT:  Hello, Miss Shapiro.  How are

24   you?

25               MS. SHAPIRO:  I'm fine.  Thank you.
```

1          THE COURT:  All right.  We are here because

2     we have two pending motions, the plaintiff's motion to

3     file the plaintiff's opposition to the defendant's

4     motion for summary judgement and its exhibits on the

5     public record and also Mr. McClanahan's motion for

6     sanctions.

7          So I thought -- I will be glad to hear you,

8     Mr. McClanahan, on either -- or in both of those

9     motions before I hear from the government.

10          MR. McCLANAHAN:  Well, would you like me to

11     address both motions at the same time, or just --

12          THE COURT:  Yes.

13          MR. McCLANAHAN:  -- do one and then the

14     other?

15          THE COURT:  No.  Go ahead.

16          MR. McCLANAHAN:  Okay.  The easy motion is

17     the motion to file on the public record.  This is

18     something that, because of Your Honor's ruling in the

19     status conference that the information that was in

20     those indices that they had said was protected under

21     the CIA Act should not be publicly disseminated, I

22     should file that information in camera, I also filed

23     in camera all of the other information --

24          THE COURT:  And you're referring to my

25     October --

1          MR. McCLANAHAN:  October 22nd -- no.  Sorry.

2    October 12th.

3          THE COURT:  -- October 12, 2012, order?

4          MR. McCLANAHAN:  Yes, ma'am.

5          THE COURT:  Well, I know both parties seem

6    to suggest that that order directed you to file

7    material in camera.  And it was puzzling to me,

8    because I realize I'd never done that.  And I went

9    back and looked at my October 12th order, and what it

10   specifically says is, it asks the parties to confirm

11   and cooperate as officers of the court regarding "any

12   procedures that will be required to submit any

13   protected information to the Court in connection with

14   the motion for summary judgment or the opposition

15   thereto."

16          There's no reference in my October 12, 2012,

17   minute order about filing material in camera.  I

18   presumed that you all had conferred and that's what

19   you had decided to do.

20          MR. McCLANAHAN:  That was what you had said

21   we should do in the actual status conference, the

22   transcript of which was actually attached to the

23   motion for sanctions.  We talked about in camera

24   filings and you said, file it in camera, because if

25   it's under seal, somebody may still see it.  And so I

1   do concede --

2           THE COURT:  Okay.

3           MR. McCLANAHAN:  -- it didn't make it in the

4   minute order, but we did cover in-camera filings.

5           THE COURT:  Okay.  I will look at the

6   transcript.  I thought that when you filed it in

7   camera it was because that's what you all had decided

8   to do.  And so I was interested to see if I had

9   directed it.  I would have to look at the transcript.

10  All right.

11          MR. McCLANAHAN:  In any case, the reason

12  that the plaintiff filed the entire thing in camera,

13  as opposed to just the portions of information that

14  were from those documents that were contested, is

15  because the other information that was in there was

16  also claimed by the CIA to be classified and/or

17  protected by the CIA Act in their *Vaughn* index and in

18  their briefings, even though it was publicly

19  available.  And because it was classified, I cannot

20  disclose it to the Court until you say it's not

21  classified.

22          And so we're now moving to put all of the

23  evidence of things that are on the public record, not

24  the stuff that was in the -- stuff that they say I

25  wasn't supposed to have, on the public record.

1          THE COURT:  And the redactions that you're

2    proposing to make for the publicly filed versions of

3    these -- your opposition are coextensive with the

4    redactions that the government has said are subject to

5    the -- or classified -- contain classified material

6    and material covered by the CIA Act?

7          MR. McCLANAHAN:  No, Your Honor.  They are

8    only coextensive with the redactions that were made in

9    those indices that I got from a third party.  They --

10   I do wish to file on the public record evidence of the

11   filings already on the public record of the documents

12   that they're saying are classified and I'm saying have

13   been officially disclosed.

14         Of these sixty-some-odd things that were in

15   the declaration that listed all of the places I have

16   found official disclosures, four pertain to the

17   unredacted indices I had gotten from the third party.

18   The rest are on the CIA's website.  They are on a book

19   published by the CIA.  They are declassified by the

20   NSA.  They are official disclosures in the purest

21   sense of the word.

22         The only reason that I have not done what

23   everybody else in my position would do and just

24   presented to the Court, hello, these are official

25   disclosures, here's proof, is that I'm bound by the

1    nondisclosure agreement.

2              And so I cannot release what they say is

3    classified information, even if it's completely

4    incorrectly classified, until somebody authorizes me

5    to.

6              THE COURT:  All right.  I thought that the

7    extent of the redactions that you were going to make

8    in your publicly filed opposition was going to be, as

9    I said, coextensive with what the CIA has marked as

10   classified information in the indices.

11             MR. McCLANAHAN:  That is correct, Your

12   Honor.

13             THE COURT:  Is that correct?

14             MR. McCLANAHAN:  That is correct.

15             THE COURT:  Just classified?

16             MR. McCLANAHAN:  Things in the indices, not

17   in their FOIA response where they redacted many things

18   under B1 and said this is classified.  That

19   information that I found officially disclosed, I wish

20   to file.  The redactions in the indices have been

21   redacted in my proposed redactions.

22             THE COURT:  And these -- and the indices --

23   the redactions that you're gonna make coextensive are

24   the ones that the CIA and the government have produced

25   in response to the court orders to denominate which

1    parts of the indices were classified or CIA Act

2    protected information; is that right?

3              MR. McCLANAHAN:  Yes, ma'am.

4              THE COURT:  Okay.  So I'm not talking about

5    the -- we're not talking about the documents produced

6    in response to the FOIA request; we're talking about

7    the other exhibits, and I can't remember which one it

8    is.

9              What's the exhibit?  Is it 35?

10             MR. McCLANAHAN:  35 is one, 40 is another.

11             THE COURT:  Okay.  40.  So we can be

12   absolutely precise about which indices.

13             MR. McCLANAHAN:  That is correct, Your

14   Honor.

15             THE COURT:  So the government, in response

16   to your motion for public filing, actually doesn't

17   style its responding papers as an opposition.  It

18   basically just files a response.  It doesn't even

19   style it as an opposition.  So I guess we'll -- I'll

20   hear from them about, you know, exactly what their

21   position is, whether it's not an opposition, so I'm

22   sort of a little puzzled about exactly what the --

23   exactly what the government's position is.

24             All right.  So I think I -- I think I

25   understand your position on that.  So move on to your

1  motion for sanctions.

2          MR. McCLANAHAN:  The motion for sanctions is

3  the entire October 12th status conference and the two

4  months of briefing before that about whether or not

5  redacted information was classified or unclassified.

6          When I kept saying, this is an error; they

7  got it backwards.  They kept saying, there is no

8  error.

9          And then after you ordered me to go by the

10 most recent release, I went back to Mr. Parker and

11 said, are you certain you want to do this, because if

12 I follow her order, I'm going to -- I know in my

13 heart, I'm going to be giving classified information

14 to the Court.

15         THE COURT:  Well, no.  I'm reading right

16 from my October 12th minute order, which is we got

17 to -- you tried your hardest to get the CIA to take

18 another look at it.  They represented during the

19 status conference that you could rely on what they had

20 produced, and so at ECF Numbers 35-1 and 35-2, that

21 those were properly designated and that's why I

22 specifically said in my minute order, "Plaintiff is

23 entitled to rely on those destinations" in those two

24 documents.

25         MR. McCLANAHAN:  And then they, on the 22nd,

1    they filed a notice to the Court, "In order to clarify

2    the issue," and these are direct quotes, "and resolve

3    any lingering confusion."  And in that notice, they

4    reversed the numbers.  They did what I had said they

5    needed to do in August before any of the briefings

6    started.

7            And that, for two months tying up this

8    Court, using the Court's own words, bringing the case

9    to a screeching halt over this argument where they

10   were refusing to acknowledge that they had made a

11   simple order, and it was only the specter of imminent

12   disclosure of classified information that they finally

13   said, oops, we got it backwards.  And they didn't even

14   acknowledge they got it backwards until I filed a

15   motion for sanctions.  The opposition to the motion

16   for sanctions is the first time they ever actually

17   came out and said everything that we said was

18   classified was not.

19           THE COURT:  All right, Mr. McClanahan.  I'll

20   hear from Mr. Parker.

21           Are you talking on both these motions today,

22   Mr. Parker?

23           MR. PARKER:  Actually, Your Honor, I'd like

24   to address the document issue, and Mr. Glass will be

25   representing -- discussing the sanctions issue.

1           THE COURT:  Okay.

2           MR. PARKER:  Your Honor, I'd like to just

3    start, you posed a question during Mr. McClanahan's

4    remarks about the government's position on his motion

5    to file these in-camera filings on the public record.

6    And the government's position is that the record

7    should remain in camera and that that solution would

8    be beneficial to all the parties.  It would provide

9    Mr. McClanahan with protection from disclosing

10   potentially sensitive national security information;

11   it would protect the interests of the government and

12   would allow the Court to continue on with this case.

13           All of the documents that Mr. McClanahan

14   needs to support his opposition have been -- are now

15   before the Court and the Court has everything that it

16   needs to rule upon Mr. McClanahan's motion.

17           THE COURT:  Well, this is what confuses me

18   about your position because, you know, typically in

19   these situations, the parties, without any need for

20   Court intervention, simply confer with each other,

21   they decide what needs to be redacted for whatever

22   reason.  If there's a dispute, they bring it to me.

23   I've never had a dispute over this even once.

24           They figure out what needs to be redacted,

25   and the -- as much information as possible is then put

1    into a version that can be publicly filed.  So the

2    situation I have here is an opposition that clearly

3    should be on the public record as much as possible,

4    and I have a plaintiff who's doing his best with me to

5    responsibly keep out information that the government

6    has identified as classified information and then

7    filed the rest of it in a public -- in a public

8    version for public consumption and transparency of

9    what's going on in our judicial system and what's

10   before me in terms of whatever decision I decide to

11   make in this case when I finally get to the summary

12   judgment motion.

13           So at the outset, it's just a nonstarter for

14   the government to come in and say, keep it all in

15   camera.  No, that's just a nonstarter.  And then, when

16   I try and tease out of your three-page paper why it

17   should all be kept in camera or which parts of it

18   should be kept in camera, you know, I see this

19   statement, "The CIA cannot perform a classification

20   review of these documents because doing so would

21   confirm for plaintiff precisely what material in the

22   unredacted versions of the records is classified."

23           And I look at that, and I look at Exhibits

24   35, the indices, 35 on the docket, 35-1 and -2 where

25   the government has already indicated on the indices

1    what's classified, what's subject to the CIA Act and I

2    think, what -- what are you talking about?  He already

3    knows what's classified in those indices.

4            So what -- so, really, what is the point of

5    not conferring with him and saying, yes, those

6    redactions you've identified are the classified

7    version -- classified information that we've

8    identified in the indices, so clearly that should stay

9    off the public record and any other material that you

10   think might have to stay off the public record.

11           I just -- he already knows that information.

12   You've already done the classification review of those

13   indices.

14           MR. PARKER:  Your Honor, those indices --

15           THE COURT:  So I'm really not understanding

16   your position because you're leaving me in the

17   position of, for all I know -- I mean, everything that

18   Mr. McClanahan has made sense in terms of what he's

19   redacting from his opposition, and I am prepared to --

20   unless I hear a better reason than not telling him

21   what's classified when you already have done so in

22   Exhibits 35-1 and -2, I'm going to grant his motion.

23           MR. PARKER:  Your Honor, if I could have a

24   moment to clarify.  I do think there are potentially

25   some factual misunderstandings here.

1          Mr. McClanahan filed with the Court more

2    than an opposition and the two-document indices that

3    we've provided to him.  He actually filed hundreds of

4    pages of tangentially related exhibits.  And within

5    those hundreds of pages, he chose to file those other

6    exhibits also in camera, raising the specter that

7    there could, presumably, be sensitive national

8    security information in those documents, or else,

9    we're not sure why he would file those in camera in

10   the first instance.

11         Today, for the first time, he said that he

12   plans to file documents that contain information that

13   the CIA has noted are classified in its *Vaughn* index.

14   And we think that it would be inappropriate for him to

15   file these documents.

16         I'd also like to explain, just to clarify

17   for Your Honor, when a third-party individual, like

18   Mr. McClanahan, comes forward with documents and asks

19   to file them on the public record, the CIA position is

20   that it does not confirm or deny whether the documents

21   in the possession of a third party contain classified

22   information.  To do so would provide the third party

23   with information -- the very classified information

24   that the government is trying to protect.

25         THE COURT:  But we're beyond that because he

1    was already told that these two indices had classified

2    information in them.

3              MR. PARKER:  Your Honor, there's much

4    more -- the indices comprise only a small fraction of

5    the documents that he's filed in camera.  He's filed

6    hundreds of pages of documents.  The indices comprise

7    perhaps a dozen pages.  He's filed hundreds of pages

8    of exhibits.  And the CIA cannot confirm or deny for

9    Mr. McClanahan whether those other exhibits that he

10   has submitted with the Court contain classified

11   information.

12             THE COURT:  Okay.  Mr. McClanahan, please

13   come forward.

14             No, you stay right there.

15             The other exhibits that you filed -- and

16   I'll be honest, I haven't looked at all the in-camera

17   filing in the opposition.  Until I turn my attention

18   to that, I haven't looked at it.  Are there other

19   documents or exhibits that you have submitted in your

20   in camera submission that potentially contain

21   classified information?

22             And I will be honest with you, Mr. Parker,

23   the one party before me in the court on this case who

24   has paid the most attention to not disclosing

25   classified information, to my view, has been

1    Mr. McClanahan.  Do you understand that?

2              MR. PARKER:  Yes, Your Honor.

3              THE COURT:  Mr. McClanahan.

4              MR. McCLANAHAN:  Your Honor, all of the

5    exhibits contain information that the CIA currently

6    says is classified.  However --

7              THE COURT:  All the exhibits?

8              MR. McCLANAHAN:  All the exhibits.  However,

9    they are printouts from the CIA's own website.  They

10   are printouts from -- they are articles from the CIA's

11   website.  They are articles from the CIA CREST system

12   in NARA, which is their archive, freely available.

13   They are being offered to show that the information

14   that the CIA is claiming is classified has been

15   previously officially disclosed.  However, because

16   they are saying --

17             THE COURT:  But, Mr. McClanahan, do you

18   understand that saying that it's been officially

19   disclosed in one area is different than when that

20   information is in a totally different context,

21   perhaps?

22             Is that your point, Mr. Parker?

23             MR. PARKER:  Yes, Your Honor.

24             MR. McCLANAHAN:  And, Your Honor, that is an

25   issue for summary judgment.  We actually already made

1    a footnote in our motion saying, this is not

2    dispositive of whether or not they were right to

3    withhold the material from their FOIA release.  This

4    is purely in the interest of public access to court

5    records that this needs to be shown.

6                Even if you find that the disclosure of the

7    table of contents on their website means that they can

8    still withhold the table of contents from a FOIA

9    release to me in summary judgment is not the question

10   here.

11               THE COURT:  All right.  So I'm getting a

12   totally different view of your motion to release

13   this -- your opposition on the public record.  What

14   both of you are telling me is that I basically have to

15   reach the merits of the issues that have been joined

16   in summary judgment in order to decide

17   Mr. McClanahan's motion on how much of his opposition

18   can be -- can be released on the public record.

19               Mr. Parker?

20               MR. PARKER:  Frankly, Your Honor, I didn't

21   understand Mr. McClanahan's motion in that way when I

22   read the papers.

23               THE COURT:  I didn't either.

24               MR. PARKER:  As far as what he's saying now,

25   he seems to be asking you to reach the merits on

1    challenges to the CIA's redactions by allowing him to

2    file information that he's found in other context on

3    the public record and to indicate that that

4    information was redacted from the indices.  It appears

5    to me that he's asking you to address the merits in

6    a -- almost a collateral fashion.

7              MR. McCLANAHAN:  No, Your Honor.

8              THE COURT:  And why -- why -- I'm getting

9    that impression, Mr. McClanahan.  I thought this was

10   going to be a much simpler motion.  So I'm getting --

11   and I -- and I had understood that the redactions that

12   you were planning on making were basically the -- you

13   know, the redactions that were going to be consistent

14   with the government's identification of classified

15   information in the two indices.  And that all the

16   rest -- based on your papers, all the rest of the

17   information that you had in your opposition and in

18   your opposition exhibits was on the public record and

19   didn't raise any issue in terms of how you were going

20   to be using that information that would implicate

21   classified information.

22             So I think my impression has been wrong,

23   based on your papers.

24             MR. McCLANAHAN:  If I can beg the Court's

25   patience for a second.  I can explain all of those,

```
1    but it's going to take a three-part explanation to get

2    to it.

3                THE COURT:  I'm listening.

4                MR. McCLANAHAN:  Number one, with the

5    Court's permission, I would like to read a couple of

6    lines from the motion to publish on the public record.

7                "Whether or not CIA was correct to withhold

8    this information from its FOIA release is not an issue

9    in this motion, although the two issues are obviously

10   related.

11               "However, the rightness or wrongness of the

12   CIA's FOIA withholdings does not change the fact that

13   this information is already in the public domain

14   because the government placed it there.  In the

15   context of this motion, the Court is required to

16   consider this fact through the prism of a presumption

17   in favor of public access to court records."

18               That goes to the "am I asking you to rule on

19   the merits of their motion."  No, I am not.  I am

20   simply saying that whether or not you rule that these

21   were prior official disclosures in the context of

22   their motion for summary judgment does not change the

23   fact that they are currently in the public domain on

24   government websites.

25               THE COURT:  Let me ask you this --
```

1          MR. McCLANAHAN:  Okay.

2          THE COURT:  -- let's say you never got the

3    classified versions of the indices.  Okay?  Let's say

4    you never got that, which has complicated this

5    litigation enormously.

6          MR. McCLANAHAN:  Okay.

7          THE COURT:  Would you have all these

8    exhibits in your opposition that you have now?

9          MR. McCLANAHAN:  Oh, yes, ma'am.  These

10   were -- these are on their website.  These are in a

11   book called *Inside CIA's Private World* published by

12   the agency.  These are public domain things.  One of

13   them was declassified by the NSA a few years ago.

14         These -- everything -- I have redacted in

15   the motion to publish on the public record everything

16   that did not come from a secondary source.  I have

17   redacted everything that the -- sort of the fruit of

18   the poisonous tree argument.  If I could not have

19   found that without looking at the unredacted indices,

20   I redacted it.  The only thing that is at issue in

21   publishing on the public record is things that anybody

22   with Google can find on government publications.

23         THE COURT:  Well, you know, I -- it makes me

24   very uncomfortable having an opposition on a brief

25   that I have to consider all in camera.  And so I am

1    going to grant the motion to make this opposition

2    public and publicly file it on the docket with all

3    attachments, with the redactions that Mr. McClanahan

4    has indicated that are consistent with the

5    identifications of classified information that the

6    government has said.

7            If the government, having looked at the

8    opposition, believes that there is other information

9    that should be redacted, I suggest you confer with

10   Mr. McClanahan about that.

11           And we'll file a regular order about making

12   all of the documents that contain arguments and

13   evidence that the Court is considering in rendering a

14   judgment as publicly available on the docket as

15   possible.

16           So if the government has some serious

17   concerns, they can talk to Mr. McClanahan.  But

18   otherwise, the motion is granted with the redactions

19   that Mr. McClanahan has indicated that he's going to

20   make in his papers.

21           Mr. Parker.

22           MR. McCLANAHAN:  Thank you, Your Honor.

23           MR. PARKER:  Your Honor, this is the first

24   time that I have understood, at least, from

25   Mr. McClanahan that --

1              THE COURT:  Have you looked at all the

2    exhibits in his opposition?

3              MR. PARKER:  I have, Your Honor.

4              THE COURT:  And is it all from your website?

5    I mean, what -- it's hard to -- if it's from your

6    website and publicly available information, it's

7    really hard for me to say that shouldn't be on the

8    public record without anything further from the

9    government about that.  So --

10             MR. PARKER:  Your Honor, this is the first

11   time that we've heard from Mr. McClanahan that he

12   plans to attach information that the government has

13   identified as classified in its *Vaughn* index.  I, at

14   least, did not understand that from Mr. McClanahan's

15   motion.

16             THE COURT:  Is that correct, Mr. McClanahan?

17             MR. McCLANAHAN:  No, Your Honor.  In fact,

18   in my reply, I said that they were only attacking the

19   parts I agreed to redact and the rest were from their

20   website and from their publications.  I said that in

21   the motion.  I said that in the reply.  I said that in

22   the e-mails with Mr. Parker before any of this

23   happened.

24             THE COURT:  So, Mr. Parker, I think your

25   understanding is incorrect.

1          MR. PARKER:  Your Honor, we will comply with

2     the Court's order.  The CIA respectively suggests that

3     because there is, it sounds to me, like some confusion

4     about the nature of these documents and what they

5     contain, we submit that the best course would be to

6     leave it in camera, but we will respectfully comply

7     with the Court's order.

8          THE COURT:  Well, it's the lazy -- that's

9     the lazy way out, Mr. Parker.  The lazy way out is

10    just to keep it all in camera as opposed to conferring

11    with opposing counsel and satisfying the public

12    interest in having public documents on the record.  So

13    the lazy man's way out is not -- does not work for me.

14          Your motion is granted.

15          All right.  Let's move to the motion for

16    sanctions.

17          MR. GLASS:  Thank you, Your Honor.

18          We always strive to accommodate opposing

19    counsel in all of our litigations.  That makes

20    litigation a lot easier.  It makes litigation a lot

21    more pleasant, makes a lot less work for everybody.

22    And we especially strive to accommodate opposing

23    counsel in FOIA actions, because FOIA actions, in a

24    lot of ways, are collaborative ventures, much more

25    than other kinds of litigation.  And we strove to do

1    that here.

2            Mr. McClanahan came to us at one point and

3    said that, you are applying the wrong rationales for

4    your redactions for these indices.  These indices, by

5    the way, are not at issue in the FOIA case; they

6    somehow got added to the case afterwards.  But he came

7    to us, and he said, you're using the wrong rationales.

8            Getting an answer or responding to an

9    inquiry like that is not quite as easy in the

10   government as Mr. McClanahan might think.  There is

11   bureaucracy involved.  We have to contact our agency

12   counsel and convey the information.  It doesn't make

13   any difference if it's the CIA or if it's the

14   agriculture department, that's the way it works.  And

15   then they have to contact the people who actually

16   review the documents and make the -- make the

17   decisions whether to withhold or release.

18            That's a cumbersome procedure that's

19   inefficient, but that's the way -- that's the way the

20   system works.

21            In this case, it took us a while to realize

22   that certain of the redactions, certain of the

23   rationales that we were using for certain of the

24   redactions were incorrect; by no means all of them.

25   And when we realized that, we made the change.  We

1    filed the corrected version of the indices on

2    October 22nd, and there haven't been any complaints

3    since then about the substance of what rationales we

4    were using for --

5            THE COURT:  Mr. Glass, in its brief, the CIA

6    says that sanctions are not warranted under 28 U.S.C.

7    1927 "because no attorney involved in the defense of

8    this action has engaged in repeated or singularly

9    egregious behavior."  That's at ECF 53 at Page 1.

10            I looked at this record, and it shows that

11    the government counsel incorrectly maintained that its

12    redactions were accurate on at least three occasions

13    after being notified of a potential error by

14    Mr. McClanahan via e-mail on August 29, 2012:  The

15    government, in its opposition to the second motion to

16    compel filed on September 13th, 2012; in the joint

17    status report that was filed on September 27th, 2012;

18    and in the statements to the Court on October 12,

19    2012, at that status conference where the government

20    kept saying, Mr. McClanahan, you're wrong, our

21    denominations of what's classified and what isn't on

22    those indices is correct; rely on it.

23            Which is why, in my minute order, I

24    specifically made it clear, Mr. McClanahan, no matter

25    what your gut is telling you, the government is saying

1    you can stick by those designations.

2              So why isn't that repeated?  How many times

3    does it have to be repeated to be a "repeated error"?

4              MR. GLASS:  Your Honor, what happened here,

5    at most, is that we were slow on the uptake.  We

6    apologize for that.  If Mr. McClanahan wants an

7    apology, he has that apology from us.

8              THE COURT:  Well, there was one line in the

9    brief, one line in the brief that said, the government

10   regrets --

11             MR. GLASS:  And we do.

12             THE COURT:  -- that it made the error.

13             MR. GLASS:  We strive --

14             THE COURT:  But it also had a statement that

15   really was eyebrow raising, which I thought was much

16   more telling than the one statement of regret for the

17   error.  It was the -- it was -- you know, I think that

18   better reflected the government's attitude about this

19   whole issue.  It states, "The CIA invokes the maxim

20   '*de minimis non curat lex*' in imposing the position of

21   sanctions because the law does not concern itself with

22   trifles."

23             In my view, this issue has required status

24   conferences, minute orders, briefing, two motions to

25   compel.  Is this really a -- is this a trifling matter

1    that has diverted my attention, slowed up getting an

2    opposition to a pending summary judgment

3    motion?really, is this trifling?

4              MR. GLASS:  It is a matter that has gotten

5    out of hand.  We regret that, and we will redouble our

6    efforts to respond fully and completely to whatever

7    points Mr. McClanahan raises with us.  Frankly, it

8    would be easier if Mr. McClanahan would be -- would --

9    would be a little more selective in what he raises

10   with us.  But we will respond and we will redouble our

11   efforts to do that in the future.

12             In this case we feel that we were simply

13   slow on the uptake.  That's regrettable.  We're sorry.

14   We'll try to be more -- we will try to be -- to act

15   more promptly, to get the correct answer in the future

16   more quickly.  But we didn't here, and being slow on

17   the uptake is not acting recklessly or efficaciously

18   or in bad faith, and that's --

19             THE COURT:  Well, I have to tell you, this

20   kind of apology was not in your papers.  And the

21   government making mistakes like this -- I understand

22   the complications of working with agency counsel in

23   order to make sure, particularly with classified

24   information and, you know, that everything that's

25   presented in court with a number of FOIA cases going

1    on is totally accurate, but what really is of concern

2    to me is the attitude reflected in the papers and how

3    the government chose to correct it.

4         When the government ultimately made its

5    submission, it said only that it was submitting clear

6    documents that were merely intended to clarify the

7    issue, making it seem like Mr. McClanahan was confused

8    and I was confused as opposed to the government had

9    made an error.

10         There was nothing in that filing or that

11   notice that said, oops, we actually went back and

12   reviewed, and we made a mistake.  That filing was

13   subterfuge, obfuscation, covering up of the

14   government's error, and I find very disturbing.

15         How did that notice get filed without

16   bluntly saying it was an error?

17         MR. GLASS:  Your Honor, candor is always

18   advisable.

19         THE COURT:  Always advisable.  Candor to the

20   Court.

21         MR. GLASS:  And we will make sure that that

22   doesn't happen again.

23         THE COURT:  Well, to me, that lack of candor

24   comes pretty close to bad faith --

25         MR. GLASS:  Well, Your Honor --

1          THE COURT:  -- just so you know how the

2     Court's viewing those papers that have been filed in

3     connection with this case.

4          MR. GLASS:  Well, as I said, we regret that.

5     We apologize for that, and we will make sure that it

6     doesn't happen again.

7          THE COURT:  And how are you going to do

8     that?  Because how do you know how this happened?  I

9     have gotten no declarations in response to -- in the

10    government's submission in opposition to the motion

11    for sanctions that I would have expected, particularly

12    given the nonchalant filing on October 22nd, 2012,

13    correcting the error.

14          I would have expected some kind of

15    declaration or explanation that said, this is what

16    happened; this is how the error was made; this is how

17    the -- this is how this filing got filed in Court

18    without forthrightly saying our prior direct responses

19    to the Court were in error.

20          I got no declarations, just a lot of legal

21    argument saying, it's -- you know, bad faith can't be

22    shown here, you know, it was a trifling error.

23    Nothing saying, this is how it came about, so please

24    accept our apology.

25          MR. GLASS:  Well, Your Honor, we could have

1    done that and we will do that.

2            THE COURT:  And yes, you will, in ten days.

3    I would like the government to submit to me a detailed

4    explanation of how, over the course of three months,

5    this error was made, repeated again and again and in

6    direct responses to questions from the Court at a

7    status conference.  I want to know how this happened.

8            MR. GLASS:  We will do that.

9            THE COURT:  And I'm going to reserve

10   judgment on the sanctions motion until I review the

11   facts --

12           MR. GLASS:  Very good, Your Honor.

13           THE COURT:  -- as set forth in the

14   declaration.

15           MR. GLASS:  Thank you.

16           THE COURT:  Is there anything further?

17           MR. McCLANAHAN:  Your Honor, will I be given

18   a chance to respond to their declaration before you

19   consider the motion?

20           MR. GLASS:  No.  Your Honor, that would be

21   completely inappropriate.

22           THE COURT:  I -- you know, Mr. McClanahan,

23   once I get their declaration, if there's anything that

24   you think needs to be said, you can submit something

25   five days thereafter, but I don't want to go down this

1    rabbit hole much further.

2             MR. McCLANAHAN:  Understood, Your Honor.

3    Thank you.

4             THE COURT:  And only if you feel it's

5    absolutely necessary.  You've said your piece in both

6    your moving papers, your reply papers.  I've got

7    enough papers on this issue.

8             MR. McCLANAHAN:  Yes, Your Honor.

9             THE COURT:  I really want to see the facts

10   before I make a decision.

11            Is there anything further from the

12   government?

13            MR. GLASS:  No, Your Honor.

14            THE COURT:  Thank you.  You're excused.

15            (Whereupon, at 11:31 a.m. the proceedings

16            concluded.

17

18

19

20

21

22

23

24

25

<u>REPORTER'S CERTIFICATE</u>

 I, Chantal M. Geneus, RPR, CRR, a Certified Realtime Reporter and Registered Professional Reporter of the United States District Court for the District of Columbia, do hereby certify that I stenographically reported the proceedings in the matter of CA 11-443, *National Security Counselors v. Central Intelligence Agency*, on Friday, February 15, 2013, in the United States District Court for the District of Columbia, before the Honorable Beryl A. Howell, United States District Judge.

 I further certify that the Page Numbers 1 through 31 constitute the official transcript of the proceedings as transcribed by me from my stenographic notes to the within typewritten matter.

 In witness whereof, I have affixed my signature on February 18, 2013.

       <u>/s/ Chantal M. Geneus</u>
       Chantal M. Geneus, RPR, CRR
       Official Court Reporter