**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____          )
                                         )
JANE DOES 1-7,                           )
                                         )
                    Plaintiffs,          )
                                         )
            v.                           )          Civil Action No. 1:25-CV-00234
                                         )
OFFICE OF PERSONNEL                      )
MANAGEMENT,                              )
                                         )
                    Defendant.           )
_____          )

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ...............................................................................................1

ARGUMENT .......................................................................................................2

    I.    Plaintiffs Lack Standing.......................................................................... 2

        A.    Plaintiffs Have Not Established that Disclosure of their Government Email Addresses is Likely, Let Alone Certainly Impending…............................. 2

        B.    Plaintiffs Have Also Not Established that any Hypothetical Disclosure of their Government Email Addresses Would Cause Them Actual Injury…………………………………………………...………… 5

        C.    Plaintiffs' "Informational Standing" Arguments Fail………………………………………………...…………7

    II.    This Case is Moot…………….................................................................. 7

    III.    Alternatively, Plaintiffs Fail to State a Claim ....................................... 10

        A.    A PIA is Not Final Agency Action That May Be Reviewed or Compelled under the APA…………………………………………………10

        B.    No PIA was Required……………………………………………...………….....11

        C. The PIA OPM Prepared Satisfies Any Plausible Standard……………………………………………...……………........12

CONCLUSION…………………………………………………………………..14

## **TABLE OF AUTHORITIES**

### **Cases**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)..................................................................................................... 9

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam,*
    406 F. Supp. 3d 72 (D.D.C. 2019) ............................................................................. 4

*Clapper v. Amnesty International USA,*
    568 U.S. 398 (2013)..................................................................................................... 3

*\*Electronic Privacy Information Center v. Presidential Advisory Commission on Election
    Integrity,*
    878 F.3d 371 (D.C. Cir. 2017) ............................................................................... 7, 8

*Electronic Privacy Information Center v. United States Department of Commerce,*
    928 F.3d 95 (D.C. Cir. 2019) ..................................................................................... 8

*FC Investors Group LC v. IFX Markets, Ltd.,*
    529 F.3d 1087 (D.C. Cir. 2008) ................................................................................. 4

*Felder v. WMATA,*
    105 F. Supp. 3d 52 (D.D.C. 2015) ............................................................................. 5

*Hi-Tech Pharmacal Co. v. U.S. Food & Drug Administration,*
    587 F. Supp. 2d 1 (D.D.C. 2008) ............................................................................. 10

*\*Industrial Safety Equipment v. EPA,*
    837 F.2d 1115 (D.C. Cir. 1988) ............................................................................... 10

*Joshi v. National Transportation Safety Board,*
    791 F.3d 8 (D.C. Cir. 2015) ..................................................................................... 10

*Natural Resources Defense Council v. EPA,*
    755 F.3d 1010 (D.C. Cir. 2014) ................................................................................. 2

*\*Natural Resources Defense Council v. Wheeler,*
    955 F.3d 68 (D.C. Cir. 2020) ..................................................................................... 2

*Norton v. Southern Utah Wilderness Alliance,*
    542 U.S. 55 (2004)............................................................................................... 10, 11

*Perkins v. Department of Veterans Affairs,*
    No. 07-310, 2010 WL 11614156 (N.D. Ala. Apr. 21, 2010).................................... 8

*Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission,*
    324 F.3d 726 (D.C. Cir. 2003) ................................................................................. 10

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021)......................................................................................... 6

*Trudeau v. Fed. Trade Comm'n*,
 456 F.3d 178 (D.C. Cir. 2006)...................................................................... 10

*Urquhart-Bradley v. Mobley*,
 964 F.3d 36 (D.C. Cir. 2020)........................................................................ 4

**Statutes**

5 U.S.C. § 552(b)(6) ................................................................................................ 6

44 U.S.C. § 3501 ..................................................................................................... 9

Pub. L. No. 107-347............................................................................... 7, 11, 14

**INTRODUCTION**

Plaintiffs' opposition (Opp.) fails to persuasively address the numerous reasons this case must be dismissed. Initially, Plaintiffs lack standing. Plaintiffs continue to allege that the harm at issue in this case is a *risk* of a breach of their data from a third-party hack of the Government Wide Email System (GWES), but such alleged future injury must be "certainly impending" to satisfy Article III, and Plaintiffs do not come close to satisfying this requirement. Plaintiffs' amended complaint contains essentially no allegations relevant to alleged hacking risk and their opposition largely relies on material that this Court already concluded was insufficient to establish standing when it denied Plaintiffs' motion for a temporary restraining order (TRO). Plaintiffs have thus failed to plausibly plead any Article III injury based on possible future harm.

That is not the only jurisdictional defect. As this Court also noted in finding that Plaintiffs failed to demonstrate irreparable harm justifying a TRO, Plaintiffs in this case seek to protect their government email addresses, not highly sensitive personal information. Even if this Court were to credit Plaintiffs' speculation about possible disclosure, Plaintiffs have failed to plead any facts suggesting that any hypothetical disclosure of their government email addresses would cause them harm even were that disclosure to occur. This case is also now moot because the Office of Personnel Management (OPM) conducted the Privacy Impact Assessment (PIA) that Plaintiffs (wrongly) contend was legally required.

Even if this Court had jurisdiction, Plaintiffs' claims would fail on the merits for multiple reasons. Plaintiffs do not dispute that the E-Government Act itself—which imposed the requirement to create a PIA under certain circumstances—does not supply Plaintiffs with a cause of action or otherwise suggest that Congress intended to give individual plaintiffs a right to nitpick the government's internal IT choices. Plaintiffs thus attempt to bring suit under the Administrative

1

Procedure Act (APA) but a PIA is not an agency action—let alone a final agency action—reviewable under the APA. Plaintiffs' cursory discussion of this issue does not persuade otherwise.

Finally, even if the Court had jurisdiction (it does not) and even if a PIA were a final agency action that could be compelled as unlawfully withheld under the APA (it is not), Plaintiffs still fail to state a claim. No PIA was required here to begin with. And the Complaint in any event fails to state a claim that the PIA OPM did prepare was legally insufficient. The PIA was signed by OPM's Chief Information Officer (CIO) and addresses each substantive element that the statute mandates, which is more than sufficient to survive judicial review—even putting aside that, again, substantive review of PIAs is unavailable in the first place.

## ARGUMENT

### I.    Plaintiffs Lack Standing

#### A.    Plaintiffs Have Not Established that Disclosure of their Government Email Addresses is Likely, Let Alone Certainly Impending

"To establish standing, a party must demonstrate: '(1) an injury in fact that is concrete and particularized as well as actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.'" *Natural Resources Defense Council v. Wheeler*, 955 F.3d 68, 76 (D.C. Cir. 2020) (quoting *Natural Resources Defense Council v. EPA*, 755 F.3d 1010, 1016 (D.C. Cir. 2014)). Although Plaintiffs contend that they "face a reasonably foreseeable risk that their PII will be unlawfully obtained" because of a data breach, First Am. Compl. ¶ 58, they do not suggest that any such breach has occurred. As this Court previously stated in its decision denying Plaintiffs' TRO motion, "[a]lthough an actual hacking incident or an imminent hack might suffice, Article III requires more than a possibility of future harm—a 'theory of future injury' must be 'certainly impending' and non-speculative." Memorandum Opinion and Order Dated February

17, 2025 (TRO Opinion) at 11 (quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 401 (2013)). And since Plaintiffs seek preparation of a new PIA—when OPM has already prepared one—Plaintiffs must also show that any such certainly impending injury is attributable to their vague allegations about the adequacy of the PIA, and that any favorable decision requiring a new PIA more to Plaintiffs' liking will redress that alleged injury.

Plaintiffs fall far short of meeting these requirements. Initially, although Plaintiffs characterize their alleged "harm [as] the information being stored in an insecure system where it is more vulnerable to hacking," Opp. at 3 (emphasis omitted), this Court has already correctly noted that "the mere fact that [Plaintiffs'] .gov email addresses are being stored on an allegedly unsecured system" is insufficient to establish standing. TRO Opinion at 10. And as to "vulnerab[ility] to hacking," Plaintiffs plead no facts suggesting that any such injury—which would require a third-party hacking or other data breach exposing their information outside of the federal government—is certainly impending.

The amended complaint in particular contains virtually no allegations suggesting vulnerability of the GWES to hacking, let alone that such an occurrence is likely or certainly impending. Plaintiffs first spend several paragraphs describing the emails from the GWES themselves, *see* Am. Compl. ¶¶ 20-26, which has nothing to do with Plaintiffs' professed fear of hacking. Plaintiffs next recount allegations from a since-deleted Reddit post alleging that the prior OPM Chief Information Officer (CIO) "was pushed aside just one week into his tenure because he refused to setup email lists to send out direct communications to all career civil servants," which—even if true—also has nothing to do with the security of the GWES, *id.* ¶¶ 28-29. Plaintiffs then cite the since-deleted Reddit post and an article from the online publication "Musk Watch" for the proposition that a new server was set up. *Id.* ¶¶ 32-33. The amended complaint then states—

"[u]pon information and belief," in a paragraph that is almost entirely conclusory—that "this server is not sending these emails securely due to the rapid deployment." *Id.* ¶ 35. Even to describe Plaintiffs' hacking allegations as "speculative" would be charitable—the amended complaint simply does not come close to pleading any certainly impending future injury.

The few additional alleged sources discussed in Plaintiffs' Opposition—even if the Court were to consider them—provide no further support. Plaintiffs relegate this issue to a footnote and rely primarily on a podcast discussing supposed vulnerabilities related to the GWES. Opp. at 3 n.3. This Court already addressed this podcast in denying Plaintiffs' TRO motion, concluding— correctly—that it did "not provide any specific information that would permit the Court to conclude that the servers housing .gov email addresses collected for purposes of the GWES are at imminent risk due to likely cyberattack." TRO Opinion at 12-13. "To the contrary," the Court noted, "the anonymous expert mostly addresses a past vulnerability that has since been rectified." *Id.* at 13. Plaintiffs also cite a Substack post, which the Government does not address here because that post says nothing even about OPM in general, let alone the GWES in particular. *See* Opp. at 3 n.3 (citing *DOGE Exposes Once-Secret Government Networks, Making Cyber-Espionage Easier than Ever Cyber-Intelligence Brief* (Feb. 9, 2025), at https://cyberintel.substack.com/p/doge-exposes-once-secret-government)).

Nor are Plaintiffs entitled to "jurisdictional discovery" to cure their failure to sufficiently allege standing. Opp. at 4. "[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 48 (D.C. Cir. 2020) (quotation marks omitted). "But whatever the context, jurisdictional discovery cannot be based on mere conjecture or speculation.'" *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 82 (D.D.C. 2019) (quoting *FC Investors*

*Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008)). Relatedly, a plaintiff may

not "use discovery to obtain the facts necessary to establish a claim that is plausible on its face

pursuant to *Twombly* and *Iqbal* – even when those facts are only within the head or hands of the

defendant." *Felder v. WMATA*, 105 F. Supp. 3d 52, 59 (D.D.C. 2015). Here, because Plaintiffs

have wholly failed to provide any basis for their allegation that any future injury is certainly

impending and would be redressed by the relief they seek (a new PIA), jurisdictional discovery is

unwarranted).[1]

> ### B.    Plaintiffs Have Also Not Established that any Hypothetical Disclosure of their Government Email Addresses Would Cause Them Actual Injury

In addition to Plaintiffs' failure to show that future disclosure of their government email

addresses is certainly impending—which is itself dispositive for standing purposes—Plaintiffs

have failed to plausibly allege even the more modest proposition that disclosure of their

government email addresses, *if such disclosure occurred*, would cause them concrete harm.

Not all disclosures related to an individual constitute actual injury to that individual for

standing purposes. Rather, "publication to a third party" of such information suffices if it results

in injury that "bears a close relationship to a harm traditionally recognized as providing a basis for

---

[1] Plaintiffs reference this Court's statement in the TRO Opinion that, although the Court concluded that Plaintiffs failed to establish standing for purposes of the TRO, "[t]his is not to say that Plaintiffs will not be able to establish standing at a later stage of the proceeding." Opp. at 4 (quoting TRO Opinion at 13). But this Court analyzed Plaintiffs' factual allegations—including allegations concerning a hack of OPM databases nearly a decade ago, and the podcast Plaintiffs discuss in their opposition—and squarely held that none of those allegations established standing for purposes of Article III. TRO Opinion at 11-14. The Court appropriately reserved the possibility that Plaintiffs might establish standing at a later stage of the proceedings, because it was merely deciding Plaintiffs' TRO motion, not addressing the adequacy of Plaintiffs' amended complaint. The Court's reservation of this issue does not suggest that Plaintiffs' amended complaint sufficiently alleges standing—particularly since neither the amended complaint nor Plaintiffs' opposition to the motion to dismiss contains any meaningful allegations or information that the Court did not already consider in denying a TRO partially based on lack of standing.

a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021). That requirement was met in *TransUnion* because "TransUnion provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists," which resembled "the reputational harm associated with the tort of defamation." *Id.*

By contrast, as this Court noted when it previously concluded that Plaintiffs failed to establish irreparable harm at the TRO stage, "this is not a case in which Plaintiffs seek to protect highly sensitive personal information, like tax records or sensitive medical files. Instead, they seek to protect their work email addresses." TRO Opinion at 14 (emphasis omitted). To be sure, there may be some circumstances in which disclosing an individual's government email address constitutes concrete harm to that person. As the Court noted in its TRO opinion, the Government sometimes seeks to redact government email addresses in FOIA cases. TRO Opinion at 15; *see also* 5 U.S.C. § 552(b)(6). But Plaintiffs do not plead any facts suggesting that any speculative disclosure of *their* email addresses would harm them. The amended complaint does not suggest, for example, that their association with the government components for whom they work is unknown or not easily discoverable. Plaintiffs' various filings in support of their efforts to litigate this case pseudonymously also contain no such facts—at most, those filings contend that Plaintiffs are concerned about their *participation in this case* being publicly disclosed. *See, e.g.*, ECF No. 12-1 ¶ 3.[2] Plaintiffs have thus failed to identify any cognizable injury that would result from disclosure of their government email addresses—but for the reasons stated above, the Court need

---

[2] At the February 14, 2025 motion hearing, Plaintiffs' counsel disclosed that one of the Plaintiffs "works for FEMA and DHS." ECF No. 31-2 at 30. Plaintiffs have not provided further information concerning this individual's circumstances—including whether this person's affiliation with these agencies or even this person's email address itself is publicly known—and the mere fact that this plaintiff apparently works for these two agencies does not satisfy Plaintiffs' obligation to plead an injury in fact that would result from any speculative disclosure of this individual's email address.

not reach this issue because Plaintiffs' contention that their email addresses may be disclosed in the future is wholly speculative to begin with.

### C.    Plaintiffs' "Informational Standing" Arguments Fail

Plaintiffs fare no better in their contention that they have informational standing. A plaintiff suffers a "sufficiently concrete and particularized informational injury" only if "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (quotation marks omitted). As explained in our motion to dismiss, Plaintiffs satisfy neither requirement. As to the first, although Plaintiffs continue to attack the adequacy of the PIA OPM conducted, they do not point to any specific piece of information that they have been deprived of under the statute. In any event, Plaintiffs plainly flunk the second requirement. As we explained in the motion to dismiss, MTD Mem. at 8, Section 208 has nothing to do with informational harm and that is certainly not "the type of harm Congress sought to prevent" in enacting the statute. Rather, the purpose of the Act is to "ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." Pub. L. No. 107-347, § 208(a). Plaintiffs' opposition does not respond to this point at all. Because Plaintiffs lack standing, the amended complaint should be dismissed for lack of jurisdiction.

## II.    This Case is Moot

Even if Plaintiffs had standing when the case was filed, this case is now moot because OPM conducted a PIA and published it on its website. The amended complaint contains a single count based on failure to create what Plaintiffs describe as a legally sufficient PIA. Am. Compl.

¶¶ 43-61. Plaintiffs do not appear to dispute that preparation of a PIA would ordinarily moot this case but insist that the PIA that OPM did prepare was insufficient. Opp. at 7-12. Thus, Plaintiffs' argument against mootness depends entirely on their contention that they may challenge the PIA for substance and accuracy. *See* Opp. at 7 (describing this contention and mootness argument as "two sides of the same coin").[3]

Plaintiffs may not do so. As we noted in our motion to dismiss, Defendant is not aware of a single case where a Court has reviewed the substance of a PIA. Plaintiffs' opposition identifies no such case either. The closest Plaintiffs come is to identify a nearly fifteen-year-old unpublished Northern District of Alabama case. Opp. at 10 (citing *Perkins v. Department of Veterans Affairs*, No. 07-310, 2010 WL 11614156 (N.D. Ala. Apr. 21, 2010)). The court in that case concluded that a PIA was not required—it did not conclude that a PIA could be compelled, let alone that a court could review the substance of a PIA that *was* prepared. 2010 WL 11614156, at *7. Similarly, the D.C. Circuit has in multiple decisions rejected attempts to compel preparation of a PIA on the grounds that the plaintiffs in those cases lacked standing. *See Electronic Privacy Information Center v. United States Department of Commerce*, 928 F.3d 95 (D.C. Cir. 2019); *Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017). Neither of these cases supports Plaintiffs' argument either.

The statutory framework also lends no support to Plaintiffs' contention that PIAs may be reviewed for substance. For starters, Plaintiffs do not dispute that the E-Government Act itself— which imposed the requirement to prepare PIAs under certain circumstances—does not provide a cause of action to challenge PIAs. And for good reason. Section 208 of the Act, which is at issue

---

[3] To the extent the Court views these arguments as going to the merits rather than mootness, the arguments below also support Defendant's argument that Plaintiffs have failed to state a claim that the PIA here is legally insufficient. *See infra* pp. 12-14.

in this case, is entirely bereft of rights-creating language, and instead focuses on the agencies that are regulated by it. "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quotation marks omitted).

In addition, the Act provides no judicially manageable standards for judging the adequacy of a particular PIA. Plaintiffs' opposition underscores this point. As best as Defendant can tell, Plaintiffs fault the PIA as supposedly inconsistent with the statutory requirement that it be "commensurate with the size of the information system being assessed, the sensitivity of information that is in an identifiable form in that system, and the risk of harm from unauthorized release of that information." 44 U.S.C. § 3501 note § 208(b)(2)(B)(i). But Plaintiffs do not describe—even at a high level of generality—what would have been "commensurate" in their view. And although Plaintiffs note that the GWES "aggregate[es] data about all Executive Branch personnel," Opp. at 8, one could just as easily note that "the sensitivity of" the collected information and "the risk of harm from unauthorized release" is quite low (because the information collected consists of government email addresses). And indeed, even on Plaintiffs' theory that a PIA was required, it was only required in their view because some non-federal-government employees with .gov or .mil email addresses were *inadvertently* included in the GWES. *See infra* p. 12. The statute simply provides no standards for balancing these considerations, and Plaintiffs provide no evidence that Congress intended the judiciary to do so. And because no further relief is available given OPM's preparation of a PIA, this case is moot.

**III.    Alternatively, Plaintiffs Fail to State a Claim**

    **A.    A PIA is Not Final Agency Action That May Be Reviewed or Compelled under the APA**

Where, as here, "no other statute provides a private right of action, the agency action complained of must be final agency action" to be reviewable under the APA. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004). Similarly, "[w]hen a failure to act is the basis for an APA claim pursuant to Section 706(2), a plaintiff must show that it is the functional equivalent of final agency action. *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Administration*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008).

As explained at length in the motion to dismiss, a PIA is not agency action at all, let alone final agency action. Like the Environmental Protection Agency report considered in *Industrial Safety Equipment v. EPA*, a PIA does not change any official law or policy, was not published in the Federal Register or Code of Federal Regulations and does not penalize anyone. 837 F.2d 1115, 1119-21 (D.C. Cir. 1988); *see also* MTD Mem. at 10-11. And as further explained in the motion to dismiss, a PIA certainly does not qualify as *final* agency action because—like the numerous decisions holding that similar agency reports opinions, press releases, and similar publications do not constitute final agency action under the APA—a PIA does not impose obligations nor deny rights to Plaintiffs (or any other citizens), and does not alter the legal relationship between OPM and Plaintiffs in any way. *Id.* at 11-13 (discussing, inter alia, *Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission*, 324 F.3d 726, 731 (D.C. Cir. 2003), *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189 (D.C. Cir. 2006), and *Joshi v. National Transportation Safety Board*, 791 F.3d 8, 11 (D.C. Cir. 2015)).

In their opposition, Plaintiffs do not meaningfully engage with any of this, and do not attempt to distinguish the cases discussed in the motion to dismiss. Plaintiffs instead assert that

this argument does "not warrant serious discussion" because it is supposedly "well-recognized" that litigants can sue to compel or challenge the contents of PIAs. Opp. at 12-13. But Plaintiffs fail to cite a single case supporting this supposedly "well-recognized" proposition. As discussed previously, there do not appear to be any cases compelling or reviewing a PIA for substance and Plaintiffs cite none. Because a PIA is not a final agency action—and because Plaintiffs do not contend that the E-Government Act or any other statute provides them with a cause of action to challenge one—Plaintiffs fail to state a claim.

**B. No PIA was Required**

Even if a PIA qualified as reviewable final agency action for APA purposes, "the only agency action that can be compelled under the APA is action legally *required*." *Southern Utah Wilderness Alliance*, 542 U.S. at 63 (emphasis in original). OPM was not required to prepare a PIA for the GWES—and when it did so, it did more than was legally required.

The purpose of the PIA requirement is to "to ensure sufficient protections for the privacy of personal information as agencies implement *citizen-centered* electronic Government."  Pub. L. No. 107-347, § 208(a) (emphasis added). Accordingly, Section 208 requires that an agency take specified steps (including preparation of a PIA) before "(i) developing or procuring information technology that collects, maintains, or disseminates information that is in an identifiable form; or (ii) initiating a new collection of information that" "will be collected, maintained, or disseminated using information technology" and "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posted to, or identical reporting requirements imposed on, 10 or more persons, *other than agencies, instrumentalities, or employees of the Federal Government*." *Id.* § 208(b)(1)(A)(i)-(ii) (emphasis added). Thus, it has long been understood that "no PIA is required where information relates to

internal government operations." U.S. Office of Management and Budget, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, at § II(B)(9)(c) (Sept. 26, 2003), https://georgewbush-whitehouse.archives.gov/omb/memoranda/m03-22.html#a.

Plaintiffs do not and cannot dispute that the GWES concerns information related to internal government operations and is not designed to collect information about the public at large. Plaintiffs instead contend that the GWES included some recipients—including two Plaintiffs here—with .gov or .mil email addresses who Plaintiffs contend are not federal government employees.[4] We do not address here Plaintiffs' contention that these two Plaintiffs and the other categories of individuals Plaintiffs discuss, *see* Opp. at 6, do not qualify as "agencies, instrumentalities, or employees of the Federal Government." Assuming Plaintiffs are right on this point, there is no dispute that the GWES was *intended* to collect information solely from federal employees. To the extent the GWES erroneously included certain non-federal-employee recipients, OPM did not know that at the time and could not have reasonably been expected to prepare a PIA based on information that it did not know. In any event, such a past error certainly does not require OPM to prepare a PIA for all uses of the GWES going forward.

## C.  The PIA OPM Prepared Satisfies Any Plausible Standard

Finally, even if the Court had jurisdiction, the failure to prepare a PIA was reviewable, and OPM was required to prepare one, OPM *did* prepare a PIA here. Plaintiffs cannot challenge the sufficiency and accuracy of the PIA but, even if they could, Plaintiffs' allegations regarding the sufficiency of the PIA are insufficient to state a claim. MTD Mem. at 15-16. As noted in the motion

---

[4] Thus, at the very least, Plaintiffs' contention that the data collected by the GWES "is precisely the type of 'personal information' in 'identifiable form' that the PIA provision was intended to protect," Opp. at 11, is disingenuous. Even on Plaintiffs' theory, any supposed requirement to prepare a PIA was triggered only by a historical accident—i.e., the mistaken inclusion of some .gov and .mil email addresses for individuals who are allegedly not federal government employees.

to dismiss, the PIA addresses each of the seven substantive elements that the statute requires. *Id.* at 15. It is also signed by OPM's CIO.[5] *Id.* Plaintiffs' opposition appears to abandon their previous argument that the fact that this PIA was signed by OPM's CIO rather than its Chief Privacy Officer somehow invalidates the PIA; and that argument is in any event clearly wrong for the reasons discussed in the motion to dismiss. *Id.* at 16. Plaintiffs do contend without elaboration that the PIA was not reviewed "by any legitimate CIO or equivalent official." Opp. at 8. Although Plaintiffs previously contended in their renewed TRO motion that OPM's CIO, Greg Hogan, "appears from the available evidence to be a Special Government Employee and may not be legally authorized to serve as CIO," ECF No. 15 at 4, we have explained that, even assuming the CIO is an SGE, that designation has no legal relevance here, MTD Mem. at 16. Plaintiffs provide no response. And as explained elsewhere in this reply, *see supra* p. 9, the E-Government Act provides no judicially manageable standards for judging the adequacy of a particular PIA and Plaintiffs' assertion that the PIA was not commensurate with the size and sensitivity of the collected information—and the risk from unauthorized release—has no merit.

Finally, Plaintiffs also contend in conclusory fashion that "OPM has not made such a legally sufficient PIA available to the public" Opp. at 8. To the extent that Plaintiffs are separately arguing that Defendant did not satisfy a legal obligation to make the PIA available—as opposed to merely repeating their assertion that the PIA was not legally sufficient—any such assertion is a non-starter. The E-Government Act allows for publication of a PIA in the Federal Register, *see* E-

---

[5] Plaintiffs' Opposition notes that OPM issued a new PIA on February 28, 2025. *See* OPM, Privacy Impact Assessment for Government-Wide Email System (GWES) (Feb. 28, 2025), *available at* https://www.opm.gov/media/kfpozkad/gwes-pia.pdf. The new PIA is also signed by OPM's CIO and addresses each of the seven elements. OPM's Motion to Dismiss sets forth the sections in the prior PIA where each element is addressed, MTD Mem. at 15; the more recent PIA addresses the same subjects in the same numbered sections. Accordingly, and notwithstanding Plaintiffs' rhetoric, the issuance of the new PIA has no bearing on the motion to dismiss.

Government Act, Pub. L. No. 107-347, § 208(b)(1)(B)(iii), but it also allows for a PIA to be made publicly available through other means, such as publication on the agency website, *id.*, which is what OPM did here.

## CONCLUSION

For the foregoing reasons and those set forth in Defendant's motion to dismiss, this Court should dismiss the case under Rule 12(b)(1) and Rule 12(b)(6).

Dated: March 12, 2025                      Respectfully submitted,

                                           YAAKOV M. ROTH
                                           Acting Assistant Attorney General

                                           ELIZABETH J. SHAPIRO
                                           Deputy Branch Director, Federal Programs Branch

                                           */s/ Andrew M. Bernie*
                                           Andrew M. Bernie
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington, D.C. 20005
                                           (202) 353-7203
                                           andrew.m.bernie@usdoj.gov

                                           *Attorneys for Defendant*

14