# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JANE DOES 1-7,

                *Plaintiffs*,

      v.

OFFICE OF PERSONNEL
MANAGEMENT,

             *Defendant.*

Civil Action No. 1:25-cv-00234

## DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

BACKGROUND..................................................................................................................1

LEGAL STANDARD ...........................................................................................................3

ARGUMENT.......................................................................................................................4

      I.      The class cannot be certified because the named Plaintiffs do not have standing...........................................................................................................4

      II.     Even if Plaintiffs had standing and a cognizable claim, the Court should not certify a class.......................................................................................6

            A.     Plaintiffs fail to identify a definite and ascertainable class.......................6

            B.     Plaintiffs cannot satisfy the commonality and typicality requirements....10

            C.     Plaintiffs and their counsel cannot adequately represent the proposed class............................................................................................................13

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013).................................................................................................. 4

*Attias v. CareFirst, Inc.,*
    344 F.R.D. 38 (D.D.C. 2023).............................................................................. 6, 7

*Beal v. Lifetouch, Inc.,*
    No. CV 10-8454-JST MLGX, 2012 WL 3705171 (C.D. Cal. Aug. 27, 2012) ...................... 11

*Beck v. United States,*
    318 F. Supp. 3d 55 (D.D.C. 2018), *aff'd*, 777 F. App'x 525 (D.C. Cir. 2019) ........................ 9

*Bynum v. District of Columbia,*
    214 F.R.D. 27 (D.D.C. 2003).......................................................................... 7, 8, 12

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013) ................................................................................... 7

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)............................................................................................... 5

*Coleman ex rel. Bunn v. District of Columbia,*
    306 F.R.D. 68 (D.D.C. 2015)................................................................................. 5

*Curtis v. Progressive N. Ins. Co.,*
    No. CIV-17-1076-PRW, 2020 WL 2461482 (W.D. Okla. May 12, 2020)........................... 11

*DL v. District of Columbia,*
    302 F.R.D. 1 (D.D.C. 2013)................................................................................... 7

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
    878 F.3d 371 (D.C. Cir. 2017).............................................................................. 5

*Fisher v. United States,*
    69 Fed. Cl. 193 (2006) ......................................................................................... 16

*Frank v. Gaos,*
    586 U.S. 485 (2019)............................................................................................... 4

*Friends of Animals v. Jewell,*
    828 F.3d 989 (D.C. Cir. 2016)............................................................................... 5

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ........................................................................................ 4, 10, 13

*Girdler v. United States*,
    923 F. Supp. 2d 168 (D.D.C. 2013) ................................................................... 9

*Hinton v. District of Columbia*,
    567 F. Supp. 3d 30 (D.D.C. 2021) ..................................................................... 7

*In re Copper Antitrust Litigation*,
    196 F.R.D. 348 (W.D. Wis. 2000) ...................................................................... 8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002) ............................................................................. 4

*In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.* (*"In re McCormick"*),
    422 F. Supp. 3d 194, (D.D.C. 2019) ............................................................... 6, 7

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017) ............................................................................... 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
    725 F.3d 244 (D.C. Cir. 2013) ........................................................................... 4

*Kingsepp v. Wesleyan Univ.*,
    142 F.R.D. 597 (S.D.N.Y. 1992) ................................................................. 14, 15

*Lebron v. Nat'l R.R. Passenger Corp.*,
    513 U.S. 374 (1995) ........................................................................................... 9

*Lightfoot v. District of Columbia*,
    273 F.R.D. 314 (D.D.C. 2011) ........................................................................... 4

*Miller v. United States*,
    24 F.E.P.Cases 696 (D.D.C.1980) .................................................................... 15

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ............................................................................. 7

*Palumbo v. Tele-Comm'ns, Inc.*,
    157 F.R.D. 129 (D.D.C. 1994) ..................................................................... 14, 15

*Pigford v. Glickman*,
    182 F.R.D. 341 (D.D.C. 1998) ........................................................................... 8

*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000)...............................................................4

*Ramirez v. U.S. Immigr. & Customs Enf't*,
338 F. Supp. 3d 1 (D.D.C. 2018)..........................................................3-4

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016)...................................................................7

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014)...............................................................14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)................................................................................3

*Twelve John Does v. District of Columbia*,
117 F.3d 571 (D.C. Cir. 1997)...............................................................14

*United States ex rel. Totten v. Bombardier Corp.*,
286 F.3d 542 (D.C. Cir. 2002)................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................4, 10, 11, 12

*Walter v. Palisades Collection, LLC*,
CIV.A. No. 06-378, 2010 WL 308978 (E.D. Pa. Jan. 26, 2010).....15, 16

*Warth v. Seldin*,
422 U.S. 490 (1975)................................................................................4

*Wells v. Allstate Ins. Co.*,
210 F.R.D. 1 (D.D.C. 2002)...................................................................15

*Young v. Magnequench Int'l, Inc.*,
188 F.R.D. 504 (S.D. Ind. 1999)...........................................................16

**Rules**

Federal Rule of Civil Procedure 12.............................................................6

Federal Rule of Civil Procedure 23......................................................12, 13

**Other Authorities**

1 Newberg & Rubenstein on Class Actions § 3:3 (6th ed. Nov. 2024 update)...........7

1 Newberg & Rubenstein on Class Actions § 3:54 (6th ed. Nov. 2024 update)........14

Mark S. Zaid, P.C., Attorney Profiles,
    https://markzaid.com/attorney-profiles/ ............................................................... 17

National Security Counselors, About Us, a
    https://www.nationalsecuritylaw.org/about-us ...................................................... 16

## INTRODUCTION

A class action requires a clear class definition, consistency in the claims, and capable, experienced representation—none of which Plaintiffs have provided. Their motion for class certification falls short at every turn.

First, the named Plaintiffs lack standing to bring this suit, which is the subject of a pending motion to dismiss. That alone forecloses certification of this class. Second, the proposed class definitions are neither definite nor ascertainable. Plaintiffs offer two inconsistent class definitions—one in their amended complaint and another in their motion—each riddled with vague and undefined terms that render the class unclear and unascertainable. Third, the claims of the named Plaintiffs are neither common nor typical. The proposed representatives include both federal agency employees and non-federal agency employees, whose claims and interests diverge and cannot support a unified theory with common legal answers. Fourth, neither the named Plaintiffs nor their counsel can adequately represent the proposed class. The Court should deny the motion.

## BACKGROUND

Plaintiffs sued the Office of Personnel Management ("OPM") on January 27, 2025, raising claims under the E-Government Act of 2002 and the Administrative Procedure Act ("APA"). Compl., ECF No. 1. Plaintiffs electronically served the complaint and moved for a TRO on February 4, 2025. ECF No. 4. The same day, the Chief Judge granted plaintiffs' second motion to proceed using pseudonyms, and the case was assigned to this Court. Mem. Op. & Order, ECF No. 7. On February 6, the Court held a Motion Hearing and denied Plaintiffs' Motion for a Temporary Restraining Order, finding that the motion for a TRO was moot. Minute Entry (Feb. 6, 2025); Transcript of TRO & Status Hearing (Feb. 6, 2025), ECF No. 19 at 3 ("Feb. 6 Transcript").

1

Plaintiffs then filed a Motion for leave to add additional plaintiffs to the suit using pseudonyms, which the Court granted.  *See* Pls.' Mot. for Leave to Add Pseudonyms, ECF No. 12; Order, ECF No. 13.  The same day, Plaintiffs filed an Amended Complaint and submitted a Renewed Motion for a Temporary Restraining Order.  *See* Am. Compl. Class Action, ECF No. 14 ("Am. Compl."); Pls.' Renewed TRO Mot., ECF No.15.  In both their amended complaint and TRO motion, Plaintiffs claim that OPM created and published a legally insufficient Privacy Impact Assessment ("PIA") when it set up a Government-Wide Email System ("GWES").  *See* ECF Nos. 14–15.

According to Plaintiffs' amended complaint, only Does 1 and 2 are employees of an Executive Branch agency. Am. Compl. ¶¶ 3–4.  Does 3–7 are allegedly not employees of an Executive Branch agency but still have .gov email addresses.  *Id.* ¶¶ 5–9. Also in the amended complaint, Plaintiffs provide the following definition of the class they seek to certify: "anyone who received an email to an email address ending in .gov or .mil ('Government email address') purporting to be from HR@opm.gov, as well as any individuals with Government email addresses whose PII is stored in the system in question but who did not receive an email from HR@opm.gov." *Id.* ¶ 13.[1]

OPM simultaneously opposed the renewed Motion for a TRO and moved to dismiss the amended complaint.  Defs.' Mot. to Dismiss, ECF No. 17.  In its combined motion and opposition, OPM argued, among other things, that Plaintiffs lacked standing and that their claim was moot.

---

[1] Defendant notes that it is not clear whether Plaintiffs' class definition is at paragraph 10 of the amended complaint or paragraph 13 of the amended complaint.  *See* Am. Compl. ¶¶ 10, 13.  The two paragraphs confusingly provide differing class definitions.  *Id.*  Paragraph 10 is more consistent with the class definition proposed in the motion for class certification.  But paragraph 13 fits under the header "Class Action Allegations," indicating that it is the class definition.

*See* Def.'s Combined Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss & in Opp'n to Plaintiffs' Renewed Mot. for a TRO, ECF No. 17-1.

In a memorandum opinion and order, this Court denied Plaintiffs' Renewed Motion for a Temporary Restraining Order. ECF No. 21. In addition to finding a lack of irreparable harm, the Court found that Plaintiffs failed to establish a likelihood of standing to bring the suit. *Id.* at 7–15. The Court first found that Plaintiffs' first theory of standing—that Plaintiffs' .gov email addresses are being stored on an allegedly unsecured system—was "no more concrete or actual than the alleged injury of those members of the *TransUnion* class who [unsuccessfully] complained about uncommunicated erroneous OFAC alerts." *Id.* at 10–11 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)). The Court similarly found Plaintiffs' second theory of standing—that OPM computers that are connected to the GWES are allegedly more vulnerable to hacking—rested on a "highly attenuated chain of possibilities." *Id.* at 11–12 (citation omitted).

At this time, Defendant's motion to dismiss is fully briefed and awaiting a decision. ECF Nos. 17, 30, 33. Despite that, on April 27, 2025, Plaintiffs filed a motion for class certification or, in the alternative, for pre-certification discovery. ECF No. 38 ("Mot."). In their motion, Plaintiffs provide a different definition of the class than that in their amended complaint. Plaintiffs' motion seeks class certification for "[a]ll individuals who have an email address assigned by an Executive Branch agency ending in .gov or .mil whose Personally Identifiable Information has been stored in the Government-Wide Email System or any system connected to it." Mot. at 1.

Plaintiffs' motion should be denied in full.

## LEGAL STANDARD

"The burden of proving each of the requisite elements of Rule 23 is on the party seeking certification, and the failure to prove any element precludes certification." *Ramirez v. U.S. Immigr.*

& Customs Enf't, 338 F. Supp. 3d 1, 43 (D.D.C. 2018) (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 249 (D.C. Cir. 2013)). Courts must "conduct a 'rigorous analysis' to ensure that all of the requirements of class certification are satisfied." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 323 (D.D.C. 2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *In re Rail*, 725 F.3d at 249 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

Plaintiffs failed to meet their burden in establishing all the prerequisites for class certification.

## ARGUMENT

### I.    The class cannot be certified because the named Plaintiffs do not have standing.

The named plaintiffs must have standing for a class's claim to proceed. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (upholding dismissal of class claims because named plaintiffs lacked standing.); *see also Frank v. Gaos*, 586 U.S. 485, 492-93 (2019) (per curiam) (observing that "federal courts lack jurisdiction if no named plaintiff has standing" and remanding for a determination whether "any named plaintiff" has standing). Standing "is a prerequisite to Rule 23 class certification because it goes to the court's jurisdiction." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107-08 (D.C. Cir. 2002); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review,

4

the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."); *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 74 (D.D.C. 2015).

As outlined more fully in OPM's motion to dismiss, ECF No. 17, Plaintiffs fail to establish standing. Plaintiffs allege two sources of injury, neither of which establishes standing. First, Plaintiffs argue that they "face a reasonably foreseeable risk that their PII will be unlawfully obtained from these unknown systems." *See* Am. Compl. ¶ 58. But Plaintiffs do not allege that any such data breach has occurred, and as this Court has already found, any alleged injury stemming from a hypothetical, future data breach is too speculative to establish standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); ECF 21 at 10–13.

Second, Plaintiffs allege that they have suffered an informational injury because OPM did not create a "legally sufficient" PIA. *See* Am. Compl. ¶¶ 58–59. A plaintiff suffers a "sufficiently concrete and particularized informational injury" only if "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). But Plaintiffs have not pointed to a specific piece of information that they have been deprived of under the statute. Other than speculation on social media, Plaintiffs provide no evidence that OPM took any of the actions that would trigger the PIA requirement under sections 208(b)(1)(A)(i)–(ii) of the E-Government Act. Even if Plaintiffs could establish an informational injury flowing from an alleged failure to prepare and publish a PIA, they still could not establish standing. OPM conducted a PIA and published it on its website. Although Plaintiffs

take issue with the substance of the PIA, they cite no case suggesting that the accuracy of the PIA can be challenged. Here, the PIA contains all the elements that the statute proscribes. Accordingly, the alleged informational injury about which Plaintiffs complain is moot.

The Court, therefore, should deny Plaintiffs' motion without reaching the class certification inquiry, because the Court cannot exercise jurisdiction over the class certification motion when plaintiffs lack standing. In addition to a lack of standing, OPM also moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs failed to state a cognizable claim. Thus, even if Plaintiffs had standing, which they do not, the Court should fully rule on the pending motion to dismiss before considering Plaintiffs' motion for class certification.

## II.    Even if Plaintiffs had standing and a cognizable claim, the Court should not certify a class.

Even if Plaintiffs were able to demonstrate injury sufficient to establish standing and a cognizable cause of action, Plaintiffs' case should still not be certified as a class action. To certify a class, Plaintiffs must establish by a preponderance of the evidence that they have satisfied the Rule 23 prerequisites of ascertainability, commonality, typicality, numerosity, and adequacy of representation. *Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 44, 48 (D.D.C. 2023). Other than numerosity,[2] Plaintiffs have failed to meet their burden for establishing these requirements.

### A. Plaintiffs fail to identify a definite and ascertainable class.

"Rule 23 does not expressly require that a class be ascertainable, and the D.C. Circuit has not addressed whether Rule 23 implicitly contains an ascertainability requirement for class certification." *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.* ("*In re McCormick*"), 422 F. Supp. 3d 194, 241 (D.D.C. 2019) (cleaned up). But most other federal

---

[2] Under either of Plaintiffs' class definitions, Plaintiffs likely meet the numerosity requirement. But Plaintiffs fail on all the other Rule 23(a) requirements.

circuits have held that "ascertainability" is an implied requirement under Rule 23. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016) (citing cases from First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits); *but see DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013) (indicating that the "First and Tenth Circuits do not require precise ascertainability for certification of (b)(2) classes"). And district courts in this circuit have followed the circuit majority and applied the ascertainability requirement. *See In re McCormick*, 422 F. Supp. 3d at 241 (applying the ascertainability requirement); *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 51 (D.D.C. 2021) (assuming without deciding that an ascertainability requirement applies); *Attias*, 344 F.R.D. at 48 (same as *Hinton*).

Although the circuits diverge slightly as to the meaning of ascertainability,[3] "courts generally agree that ascertainability means that a class definition must render potential class members identifiable according to objective criteria." *In re McCormick*, 422 F. Supp. 3d at 241; *see also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015) ("[A] class must be defined clearly and . . . by objective criteria rather than by, for example, a class member's state of mind."); *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017) (class should be "defined using objective criteria that establish a membership with definite boundaries"); 1 Newberg & Rubenstein on Class Actions § 3:3 (6th ed. Nov. 2024 update) ("All courts essentially focus on the question of whether the class can be ascertained by objective criteria.").

In *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003), the court applied a version of the objective criteria standard for ascertainability, noting that while the standard it

---

[3]  The Third Circuit, for example, adds an additional requirement to the ascertainability inquiry that "[t]he method of determining whether someone is in the class must be administratively feasible." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (citation omitted). The Seventh and Ninth Circuits have expressly rejected that interpretation, applying only the objective criteria test. *See In re McCormick*, 422 F. Supp. 3d at 241 & n.70.

applied was "not designed to be a particularly stringent test, . . . plaintiffs must at least be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation." *Id.* at 31 (quoting *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998)). This preliminary inquiry examines whether "an individual would be able to determine, simply by reading the definition, whether he or she was a member of the proposed class." *Id.* at 32.

The *Bynum* court found the proposed class definition satisfied this test because "no terms in the definition . . . require[d] further clarification." *Id.* The proposed definition there required only that an individual have been incarcerated in a District of Columbia Department of Corrections facility during a particular timeframe, and not have been released by midnight on the date on which he was entitled to release. *See id.* By contrast, the Court highlighted the class definition rejected as unascertainable in *In re Copper Antitrust Litigation*, 196 F.R.D. 348 (W.D. Wis. 2000). That case proposed a class of "all copper or metal dealers . . . that purchased physical copper" during a specified period "at prices expressly related to LME or Comex copper future prices.'" *Bynum,* 214 F.R.D. at 31–32 (quoting *In re Copper Antitrust Litig.*, 196 F.R.D. at 350). "[B]ecause it failed to explain the meaning of the terms 'copper or metals dealers,' 'physical copper,' and 'expressly related to,'" this class definition "fell 'far short of communicating to copper purchasers what they would need to know to decide whether they were in or outside the proposed class." *Id.* at 32 (cleaned up) (quoting *In re Copper Antitrust Litig.*, 196 F.R.D. at 358–60).

Here, Plaintiffs have not established an ascertainable and definite class. From the outset, it is not even clear which class definition they seek to certify. Plaintiffs' amended complaint proposes one definition, while their motion for class certification proposes a different one. *Compare* Am. Compl. ¶ 13 *with* Mot. at 1. This inconsistency alone makes the class definition confusing and unascertainable. But whichever definition the Court may consider, both fail because

they are not objectively ascertainable.

The definition Plaintiffs propose in their motion contains vague and imprecise terms that would prevent this Court from identifying class members based on objective criteria. The phrase "Executive Branch Agency," for example, is an ambiguous phrase that Plaintiffs fail to define. The Smithsonian, for instance, is generally not considered an executive branch agency. *See Girdler v. United States,* 923 F. Supp. 2d 168, 186 (D.D.C. 2013) ("[T]he Smithsonian is not an executive branch agency[.]"). But, for purposes of the Federal Tort Claims Act, it is considered a "federal agency." *See Beck v. United States*, 318 F. Supp. 3d 55, 59 (D.D.C. 2018), *aff'd*, 777 F. App'x 525 (D.C. Cir. 2019). Plaintiffs offer no objective criteria or definition to determine whether Smithsonian employees fall within the class.

A similar problem arises with government corporations like Amtrak. Courts have found that Amtrak is not typically a federal agency, yet in some contexts it is treated as one. *Compare United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 544 (D.C. Cir. 2002) ("[T]he statutes governing Amtrak have indicated that the railroad is to be managed as a for-profit corporation, and not as a 'department, agency, or instrumentality' of the federal government.") *with Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 394 (1995) (concluding that Amtrak "is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the Government by the Constitution"). Again, Plaintiffs offer no objective criteria or definition to determine whether Amtrak employees fall within the class. These are just two of many other examples that raise serious questions about the ascertainability of Plaintiffs' class definition.

Another vague phrase in the motion's class definition is "any system connected to [the GWES]." Plaintiffs do not define "system," nor do they explain what "connected to" means.

Without clear definitions, neither the Court nor Plaintiffs can objectively determine class membership.

The class definition in the amended complaint fares no better. That class definition includes "anyone who received an email to an email address ending in .gov or .mil purporting to be from HR@opm.gov." Am. Compl. ¶ 13. The phrase "purporting to be from HR@opm.gov" is vague and confusing. What does "purporting to be" mean, and how would this Court, or a class member, determine whether an email is merely "purporting to be" rather than actually coming from HR@opm.gov? Plaintiffs offer no objective guidance.

Another problem is the final clause of the class definition in the amended complaint, which includes "any individual with a Government email address whose PII is stored in the system in question but who did not receive an email from HR@opm.gov." *Id*. This group is not reasonably ascertainable. Neither this Court nor potential class members could realistically determine who falls into this category, as there is no clear or objective method to identify individuals whose information was stored but who never received any communication.

In short, both class definitions fail for lack of ascertainability.

**B. Plaintiffs cannot satisfy the commonality and typicality requirements.**

The "commonality" and "typicality" requirements of Rule 23(a) "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (citation omitted). The two provisions "tend to merge." *Falcon*, 457 U.S. at 157 n.13.

**Commonality.** "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349-50. Rather, "their claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

In *Wal-mart*, the Supreme Court concluded that a Title VII putative class claiming gender discrimination at Wal-mart did not satisfy the commonality requirement because the plaintiffs there had merely shown a generalized policy "of allowing discretion by local supervisors over employment matters." *Id.* at 355. The Plaintiffs failed to identify a definite "mode" of exercising discretion that resulted in a concrete harm common to all class members. *Id.* at 355–56.

*Wal-mart* and similar class action decisions instruct that commonality requires more than abstract, generalized allegations of harm; plaintiffs must demonstrate a shared, concrete injury across the class. *See id.* at 350–56; *Beal v. Lifetouch, Inc.*, No. CV 10-8454-JST MLGX, 2012 WL 3705171, at *3 (C.D. Cal. Aug. 27, 2012) ("Even if Plaintiff did have standing as a shareholder, the injury to Plaintiff's financial interests as a result of Defendants' employment practices is not the same type of injury suffered by current employees."); *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-PRW, 2020 WL 2461482, at *2 (W.D. Okla. May 12, 2020) ("A discrete legal or factual question common to the class must exist, which means that the Court can answer the question in a single stroke. Indeed, the commonality requirement exists to ensure that proceeding as a class action will generate common answers apt to drive the resolution of the litigation." (cleaned up) (quotations omitted)).

Here, Plaintiffs fail to identify a common injury that the Court could resolve on a classwide

basis.  Indeed, Plaintiffs' standing deficiencies become even more pronounced when examined through the commonality lens.  Plaintiffs try to satisfy the commonality requirement by concluding that "any individual whose PII is included in the GWES or related system has the same rights as any individual . . . under the E-Government Act."  Mot. at 10.  But this simply states a generalized grievance—that the government has allegedly violated a statute.  The Supreme Court has directed that an alleged violation of the same legal provision does not, by itself, establish commonality. *See Wal-Mart*, 564 U.S. at 349-50 (holding that commonality "does not mean merely that they have all suffered a violation of the same provision of law.").

Plaintiffs claimed in their renewed motion for temporary restraining order that they were injured because storing email addresses in an allegedly unsecured system makes them more vulnerable to hacking.  *See* ECF No. 21 at 8–9 (outlining Plaintiffs' claimed legal injuries).  Not only does this speculative claim lack the concreteness necessary to support standing, as this Court already found (*id.* at 10–13), but it also undermines commonality.  Plaintiffs never explain how a different Privacy Impact Statement, which they claim needs to be done, would cure any of these alleged injuries for all class members.  Because they fail to show that classwide relief could redress the alleged harms, those injuries are not common enough to support certification.

**Typicality.** "[T]he typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Bynum*, 214 F.R.D. at 34.  In other words, Rule 23(a)(3)'s "typicality" requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc.*, 564 U.S. at 349.  Under Rule 23(a)(3), Plaintiffs must establish that their claims or defenses "are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  At a minimum, "a class representative must be part of the class and possess the same interest and suffer the same injury as

the class members." *Falcon*, 457 U.S. at 156 (citation omitted).

Here, the typicality requirement is likewise not satisfied because the named Plaintiffs and class members have divergent employment statuses and legal interests. The record provides little information about the Doe Plaintiffs, leaving the Court and Defendant without clarity as to whether the representative Plaintiffs have suffered injuries typical of the class. What is known from the amended complaint suggests meaningful differences among them: Does 1–2 are alleged federal agency employees, while Does 3–7 are not. Am. Compl. ¶¶ 3–9. The named Plaintiffs thus represent two groups of individuals with different employee statuses and different legal harms. In effect, Plaintiffs are attempting to litigate two distinct cases with varying legal harms under the guise of one class action—precisely what Rule 23 is meant to avoid.

This problem is compounded by the motion's proposed class definition, which is apparently limited to individuals who received a .gov or .mil email account assigned by an Executive Branch agency. Mot. at 1. Yet, the Amended Complaint indicates that most of the named Doe Plaintiffs are not federal agency employees. Am. Compl. ¶¶ 3–9. As such, it is unclear whether Does 3–7 even fall within the class Plaintiffs seek to certify. *Id.*

In short, Plaintiffs cannot establish either commonality or typically as required under Rule 23(a).

### C. Plaintiffs and their counsel cannot adequately represent the proposed class.

Rule 23 provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2)

the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 150 (D.D.C. 2014*) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)); *see also* Newberg & Rubenstein on Class Actions § 3:54 ("[T]he standard for adequacy splits into two prongs: adequacy of the proposed class representative and adequacy of the attorneys seeking appointment as class counsel."). Plaintiffs here fulfill neither of these criteria.

**The named Plaintiffs will not adequately represent the class.** Plaintiffs have failed to demonstrate that the seven Doe Plaintiffs can adequately represent the interests of the proposed class. Neither this Court nor OPM has sufficient information to assess the adequacy of the Doe Plaintiffs. The amended complaint provides only minimal details about them. For example, the Amended Complaint does not say at which federal agency Does 1 and 2 work or any other details about them. Although Plaintiffs' counsel emailed Defendant's counsel the names of Does 3–7, no further meaningful information has been disclosed. This lack of disclosure alone precludes the Court from making a reasoned determination on adequacy at this stage.

**Counsel would not adequately represent the class.** The Court should also deny class certification because Plaintiffs have not established that they would be "able to vigorously prosecute the interests of the class through qualified counsel." *Thorpe*, 303 F.R.D. at 150 (quoting *Twelve John Does*, 117 F.3d at 575). The Court's assessment of the qualifications of class counsel "lies at the heart of the rationale supporting class actions." *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992) (internal quotation marks omitted). This step is crucial "because in certifying a class action, the Court confers on absent persons the status of litigants and 'creates an attorney-client relationship between those persons and a lawyer or group of lawyers.'" *Palumbo v. Tele-Comm'ns, Inc.*, 157 F.R.D. 129, 133 (D.D.C. 1994) (quoting *Kingsepp*, 142 F.R.D. at 599);

14

*see also Walter v. Palisades Collection, LLC*, CIV.A. No. 06-378, 2010 WL 308978, at *9 (E.D. Pa. Jan. 26, 2010) ("[W]here counsel is charged with representing the interests of absentee class members, it is necessary and appropriate to delve into the particular qualifications of [the attorneys]."). Indeed, because absent class members will be bound by their actions, "[a]ttorneys in class actions are held to higher standards of competence and diligence than counsel in other lawsuits." *Palumbo,* 157 F.R.D. at 133 (quoting *Miller v. United States*, 24 F.E.P.Cases 696 (D.D.C.1980)); *see also Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 11 (D.D.C. 2002) ("a finding that class counsel are adequate is . . . not to be undertaken lightly").

Accordingly, the competency analysis "encompasses careful scrutiny of the 'character, competence and quality of counsel retained.'" *Walter*, 2010 WL 308978, at *9 (quoting *Kingsepp*, 142 F.R.D. at 599). "In assessing the adequacy of counsel, a court may examine class counsel's conduct in both: (1) prior litigations, and (2) the putative class action before the court." *Id*. (quoting *Kingsepp*, 142 F.R.D. at 599).

In *Kingsepp*, although counsel's conduct in prior litigation was sufficient to preclude certification, the court also observed that counsel's handling of that action constituted an "independent basis for concluding that he [was] not adequate counsel." 142 F.R.D. at 602. Specifically, the court cited deficiencies in two sets of legal memoranda counsel had filed, including the motion for class certification and the reply in support. *See id*. at 602–03. Counsel's submissions consisted largely of quotations and conclusory statements and failed to present analysis or discussion regarding the issues raised by the opposing party. *See id*.

In *Walter*, the court concluded that "the resources available to Plaintiffs' counsel and their relative lack of experience" should be considered in determining whether Plaintiffs are adequately represented. 2010 WL 308978, at *10. There, the court determined that Plaintiffs' counsel's two-

lawyer firm with two paralegals made them "ill-equipped to handle a class composed of thousands of plaintiffs nationwide." *Id.*; *see also Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 508 (S.D. Ind. 1999) (plaintiff's counsel failed to adequately allege the resources available to devote to a consuming class action litigation); *Fisher v. United States*, 69 Fed. Cl. 193, 200–01 (2006) (plaintiff failed to present any evidence that his counsel had prior experience in class action litigation, and it was not clear that counsel had the resources necessary to litigate on behalf of a class that plaintiff believed could potentially encompass 250,000 members).

Here, Plaintiffs' counsel, Mr. McClanahan, is not sufficiently competent, experienced in class representation, or adequately resourced, to represent this class. First, Mr. McClanahan has not demonstrated the class-action experience necessary to represent a class that he claims could include millions of individuals. Mot. at 1 ("The number of persons who fall within this proposed class are unknown at present but is reasonably believed to significantly exceed 2.4 million."). In his motion for class certification, Mr. McClanahan provides no indication that he has previously handled any class action litigation—whether as lead counsel or in a supporting role. The absence of any class action experience strongly suggests that he is not qualified to manage litigation of this scale.

Second, even apart from experience, Mr. McClanahan seems to lack the resources to adequately represent the proposed class. According to his organization's website, his firm consists of three attorneys and an "information director" who is a nonlawyer.[4] *See* National Security Counselors,                About                Us,                https://www.nationalsecurity law.org/about-us (last visited May 25, 2025). But one of those attorneys appears to be a partner at

---

[4] Mr. McLanahan's website claims that Bradley P. Moss works for Mr. McLanahan's National Security Counselors, despite Mr. Moss's affiliation with the law firm of Mark S. Zaid, P.C.

a different law firm. *See* Mark S. Zaid, P.C., Attorney Profiles, https://markzaid.com/attorney-profiles/ (last visited May 25, 2025) (listing "Bradley P. Moss" as a partner of Mark S. Zaid, P.C.). Mr. McClanahan's webpage also provides no information as to the number of paralegals or administrative assistants he employs. For a putative class potentially exceeding two million members, this minimal staffing raises serious concerns. Indeed, courts have found similar or even slightly larger teams inadequate to handle far smaller proposed classes, as in *Walter*, where the court declined class certification in part on the inadequacy of a two-lawyer and two-paralegal team representing a class of thousands.

Third, Mr. McClanahan's conduct in this case demonstrates his inadequacy. In his motion, Mr. McClanahan invites the Court to "judge for itself whether he is competent to represent the interests of this class[.]" Mot. at 13. The record in this case indeed speaks for itself:

1. Upon filing the complaint, Mr. McClanahan filed a motion to proceed under a pseudonym, but he failed to engage with the controlling five-factor test required of such a motion. ECF No. 2. Chief Judge Boasberg denied it outright. *See* Jan. 29, 2025 Min. Order ("The Court ORDERS that . . . Plaintiffs' Motion . . . is DENIED WITHOUT PREJUDICE as it does not address the five-factor inquiry that applies to such motions."). Only after a second motion and hearing did the Court grant the motion. *See* ECF Nos. 3, 7.

2. Mr. McClanahan failed to appear for a hearing on his own motion for a temporary restraining order, claiming that he believed he could appear by Zoom—despite the fact that the Court expressly ordered in-person appearances and only allowed members of the public to listen in by telephone. *See* Feb. 4, 2025 Min. Order ("In light of Plaintiffs' motion for temporary restraining order, Dkt. 4 , it is hereby ORDERED that the parties

shall appear for a status conference on February 5, 2025, at 11:00 a.m. in Courtroom 8 and by telephone for members of the public."); Feb. 5, 2025 Min. Order ("Because Plaintiffs' counsel failed to appear for today's status conference (and apparently assumed that the status conference would take place by Zoom), today's proceeding is hereby VACATED and RESCHEDULED[.]").

3.   At the rescheduled February 6 hearing on the TRO, Mr. McClanahan advanced arguments that differed entirely from those in his written motion. Although OPM had already completed the PIA he sought to compel, he argued that the completed PIA was inadequate. *See* Feb. 6 Transcript at 1–9. The Court had to remind him that "this is another motion you need to bring some other day . . . There is no briefing in front of me on any of that." *Id.* at 9.

4.   Also at the February 6 hearing, Mr. McClanahan submitted exhibits purporting to show harm to individuals who were neither named plaintiffs nor part of the putative class. *Id.* at 7 (Mr. McClanahan: "I understand the confusion here. We are not offering these exhibits to show these people were harmed. These people are not members of the putative class."). The Court understandably questioned their relevance, asking: "I guess I am a little confused as to why you are giving these to me. What purpose they are serving in this case?" *Id.* at 4.

5.   Following the Court's oral denial of the TRO on the February 6 hearing, Mr. McClanahan requested a new briefing and hearing schedule. *Id.* at 25. That scheduling discussion—which occupies several transcript pages (see *id.* at 25–36)—reflects Mr. McClanahan's disorganization and unsuitability to handle a class action comprised of millions. While asking for an expedited schedule, he repeatedly stated he was

unavailable on most days and emphasized that he does most of his legal work at night. *See, e.g.*, *id.* at 28 (Mr. McClanahan: "So I have a security clearance appeal hearing that is going to take all day on Wednesday that cannot be rescheduled."); *id.* at 29 (discussing whether he is available Tuesday, he replies: "I can do that. Are we going to run into the same problem we ran into today, where if they file something brand new and I don't file a reply brief because I am prepping, you are going to say, well, you didn't file a reply brief."); *id.* at 35 (Mr. McClanahan: "I do most of my work at night.").

6.  Finally, Mr. McClanahan filed a frivolous sanctions motion against counsel in this case, relying primarily on alleged statements made during the TRO hearing. *See* ECF No. 28. Yet, in that motion, he did not cite a single statement from the transcript (which he did not have), choosing instead to mischaracterize what had occurred. For example, Mr. McClanahan claimed that at both the February 6 and the February 14 hearings OPM counsel stated "that the GWES PIA was accurate." *Id.* ¶¶ 5, 10. No citation accompanies either paragraph. In fact, OPM counsel argued only that the PIA contained the statutory elements. *See* Feb. 6 Transcript at 19 ("Although OPM maintains that there was no need to file the PIA, but it did do the PIA. It is a PIA that looks very much like others. It contains all of the requisite elements."); Transcript of February 14, 2025 ("Feb. 14 Transcript"), at 17–18, ECF No. 24 ("And the relief they are requesting is a PIA . . . Our position is that is what we have produced. The statute requires seven different things to be included in a PIA. All of those are there. There is no cause of action to challenge the substance of a PIA beyond that."). The word "accurate" does not appear in either transcript. *Id.* Mr. McClanahan on reply conceded that he filed his sanctions motion prior to receiving the transcripts and admitted that he

"knew" some of his characterizations contained some inaccuracies. *See* ECF No. 31 at

5 n.3.[5]

    In sum, Mr. McClanahan is not an adequate representative for this class. This Court should

deny Plaintiffs' Motion for Class Certification.[6]

**CONCLUSION**

    For the foregoing reasons, this Court should deny Plaintiffs' Motion for Class Certification

or for Pre-Certification Discovery.

DATED: May 27, 2025          Respectfully submitted,

                    YAAKOV M. ROTH
                    Acting Assistant Attorney General
                    Civil Division

                    ELIZABETH J. SHAPIRO
                    Deputy Director
                    Federal Programs Branch

                    */s/ Samuel S. Holt*
                    SAMUEL S. HOLT
                    Trial Attorney
                    U.S. Department of Justice
                    Civil Division, Federal Programs Branch
                    1100 L Street, N.W.
                    Washington, D.C. 20005
                    Telephone: (202) 674-9761
                    Fax: (202) 616-8470
                    Email: Samuel.Holt2@usdoj.gov

                    *Counsel for Defendant*

---

[5] Footnote three of Mr. McClanahan's reply brief reads in part: "Unless directed to do so by this Court, Plaintiffs will not respond to OPM's attempt to malign the undersigned for serving OPM's counsel with a motion for sanctions while awaiting a transcript which, prior to OPM's sudden and public reversal of its position, *he did not need*. Nor does the undersigned apologize for filing the served copy in accordance with Rule 11(c)(2) even though he then knew it to contain some minor inaccuracies which could later be addressed." ECF No. 31 at 5 n.3.

[6] There is also no need for pre-certification discovery. The deficiencies of Plaintiffs' motion and amended complaint speak for themselves, and Plaintiffs identify no reason why pre-certification discovery would be helpful or necessary.

## CERTIFICATE OF SERVICE

I certify that on May 27, 2025, I electronically filed the foregoing and thereby caused a copy to be served on counsel of record.

*/s/ Samuel S. Holt*
SAMUEL S. HOLT