# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOES 1-7, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | *  Civil Action No. 1:25-cv-00234 (RDM) |
| OFFICE OF PERSONNEL MANAGEMENT, | * |
| | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' MOTION FOR RECONSIDERATION

On 22 December 2025, the Court issued an opinion dismissing this case without prejudice. On 15 January 2026, the Court issued a final judgment because Plaintiffs had not sought leave to file an amended complaint. Pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request reconsideration of the Court's judgment.

A Memorandum of Points and Authorities and a proposed Order accompany this Motion. Defendant opposes this Motion.

Date:   February 28, 2026

                                                Respectfully submitted,

                                               /s/ Kelly B. McClanahan
                                              Kelly B. McClanahan, Esq.
                                              D.C. Bar #984704
                                              National Security Counselors
                                              1451 Rockville Pike
                                              Suite 250
                                              Rockville, MD  20852
                                              501-301-4672
                                              240-681-2189 fax
                                              Kel@NationalSecurityLaw.org

                                              *Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANE DOES 1-7, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:25-cv-00234 (RDM) |
| OFFICE OF PERSONNEL MANAGEMENT, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION**

On 22 December 2025, the Court issued a Memorandum Opinion dismissing this case without prejudice and holding that Plaintiffs were not entitled to force Defendant Office of Personnel Management ("OPM") to file a new Privacy Impact Assessment ("PIA") for the Government-Wide Email System ("GWES") or take any remedial measures after previously refusing to do so. On 15 January 2026, the Court issued a final Judgment because Plaintiffs had not sought leave to file an amended Complaint. Pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request reconsideration of the Court's Memorandum Opinion and Judgment and accordingly request the following specific relief: (1) the Judgment should be vacated; (2) the Court should accept the attached Second Amended Complaint as timely filed; and (3) the Court should amend the Memorandum Opinion to the extent that it denied Plaintiffs' Motion for Class Certification as moot. This case clearly meets the standard set by the Rule and the case law.

The facts and background of this Court's Memorandum Opinion are presumed to be known to the Court, so Plaintiffs will not discuss them in any significant detail. In summary, the

Court held that Plaintiffs' First Amended Complaint failed to demonstrate standing for multiple overlapping reasons, including:

- "Plaintiffs have failed to allege any non-speculative basis to believe that providing Plaintiffs with the additional *information* that they seek here—that is, a more comprehensive or better prepared or properly executed PIA—would avoid or mitigate 'a colorable privacy harm of the type that Congress sought to prevent' by requiring publication of PIAs." (Mem. Op., Dkt. #45, at 17 (filed Dec. 22, 2025) [hereinafter Dkt. #45]);

- "Although Plaintiffs note that the government often invokes the privacy interests of its employees in withholding email addresses in FOIA litigation, they fail to point to any authority—or to offer any argument—addressing whether a purported privacy interest in a .gov email address is sufficiently personal and concrete and whether the procedures contained in Section 208 of the E-Government Act are intended to protect any such purported privacy interest." (*Id.* at 21 (citation omitted).);

- "The Amended Complaint, most notably, fails to identify any specific ways in which the February 5 PIA—much less the February 28 PIA, which was issued *after* Plaintiffs filed their Amended Complaint—is deficient or omits statutorily required information." (*Id.* at 22.);

- "It fails, for example, to describe what OPM should have—but did not—include in the PIA, and it fails to indicate why Greg Hogan, who is listed as OPM's Chief Information Officer and as the 'Reviewing Official' was not a 'legally sufficient Chief Information Officer.'" (*Id.* (citations omitted).);

2

- "Plaintiffs point to no part of the E-Government Act or the OMB Guidance that requires the Reviewing Official to be a full-time OPM employee." (*Id.* at 22 n.1.);

- "Plaintiffs fail to explain why the subsequent issuance of the PIA (or PIAs) did not suffice to address the *prospective* risk of harm upon which their claim of standing hinges." (*Id.* at 23.);

- "The fact that the system was rapidly deployed might raise reasonable questions about whether OPM cut any corners, but speed alone does not equate to the type of vulnerability sufficient to establish a demonstrable risk that Plaintiffs' .gov or .mil email addresses will be unlawfully obtained and exploited to Plaintiffs' disadvantage." (*Id.* at 25.);

- "The fact that the server: (1) was placed in a conference room used by Elon Musk's team, (2) was quickly established, and (3) was constructed using commercial hardware that was not procured using the usual federal procurement process might, again, raise reasonable questions, but it does not establish a demonstrable risk that Plaintiffs will suffer a future privacy injury." (*Id.* at 26.);

- "Plaintiffs have failed to allege facts sufficient to show that they face a 'substantial probability' that their PII will be misappropriated from the server used to maintain the GWES. Nor do Plaintiffs allege any colorable nexus between the untimely PIA or any other (unidentified) legal insufficiencies in the PIA and a substantial probability that they will suffer a privacy injury." (*Id.* at 26-27);

- "[T]o the extent Plaintiffs have a theory regarding how the ongoing existence of the GWES (assuming that it remains in use) creates a 'substantial probability' that

3

an unlawful, third-party actor will gain access to their .gov email addresses, their Amended Complaint fails to offer any insight about that theory." (*Id.* at 27.); and

- "Plaintiffs do not posit that they sent any sensitive information in response to a GWES email." (*Id.* at 28.)

While Plaintiffs respectfully disagree with the Court's Memorandum Opinion, they did not seek leave to file a Second Amended Complaint because they believed that they lacked sufficient evidence at the time to address the Court's concerns to its satisfaction, and so such an amendment would likely be deemed futile. However, on 19 February, the undersigned became aware of a Report released a week earlier by the minority staff of the Committee on Oversight and Government Reform of the U.S. House of Representatives. House Comm. on Oversight & Gov't Reform, *Breaking Government: How DOGE and Trump Cost Taxpayers, Federal Workers, and Public Services* (Feb. 12, 2026), *at* https://oversightdemocrats.house.gov/imo/media/doc/doge_report.pdf (last accessed Feb. 19, 2026) [hereinafter House DOGE Rep.]. This Report revealed significant facts which are directly material to the Court's stated concerns in this case, which, had Plaintiffs known them before the Court issued its final Judgment, would have allowed them to amend their Complaint to easily "allege facts sufficient to show that they face a 'substantial probability' that their PII will be misappropriated from the server used to maintain the GWES." (Dkt. #45 at 26.)

## ARGUMENT

Plaintiffs have shown good cause to vacate the Court's Judgment, accept the attached Second Amended Complaint; and amend the Court's Memorandum Opinion to the extent that it denied Plaintiffs' Motion for Class Certification as moot.

4

I.   THE COURT SHOULD VACATE ITS JUDGMENT UNDER RULE 60(B)(2)

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). "A Rule 59[] motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

Rule 60(b)(2) requires reasonable diligence, not perpetual vigilance. Where evidence existed prior to judgment but was effectively buried, unpublicized, and not reasonably discoverable through ordinary research methods, courts recognize that relief may be appropriate. This Circuit applies a five-part test: (1) the evidence is newly discovered since judgment; (2) the movant exercised reasonable diligence; (3) the evidence is not cumulative or merely impeaching; (4) the evidence is material; and (5) the evidence would likely produce a different result. *See Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

The most relevant question before the Court is whether Plaintiffs could have discovered this evidence with reasonable diligence earlier than it did. The facts clearly demonstrate that they could not have done so. The Report was not published until 12 February. More importantly, the Report cited three primary sources of authority for the relevant revelations, none of which Plaintiffs would have had reason to know of and two of which Plaintiffs would not have had access to in any event. First, the Report cites "a flash report that found OPM failed to perform the basic due diligence necessary to implement this system" issued by the OPM Office of the

5

Inspector General ("OIG") "[f]ollowing a request from Oversight Committee Democrats." House DOGE Rep. at 24 & n.94 (citing OPM OIG, *Audit of the U.S. Office of Personnel Management's Government-Wide Email System* (Sept. 26, 2025)). While this OIG flash report was technically publicly available since September, there was no reason for Plaintiffs to have discovered it sooner than they did, as will be discussed below. The remaining two sources of information for the House DOGE Report were a 5 December briefing provided to the committee staff by the OPM OIG, House DOGE Rep. at 24 n.96-97, and "[c]ommunications with Democratic Committee Staff," *id.* at 25 n.98, neither of which were publicly available.

Regarding the 26 September OPM OIG flash report, Plaintiffs maintain that they had no reason to know that this report was even *requested* let alone issued. Courts have rejected a categorical rule that mere public availability bars Rule 60(b)(2) relief. In *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989), the court emphasized that diligence depends on whether the movant could have uncovered the material through reasonable efforts. Similarly, in *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir. 1987), the court denied relief where evidence was readily accessible through ordinary discovery—highlighting that the standard is contextual. Courts instead examine whether the movant ignored obvious leads or failed to pursue known sources. *See United States v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003).

The OPM OIG flash report was not reported in the media when it was issued, nor was it reported when the investigation was requested, meaning that Plaintiffs would have to have had reason to go searching for it in the first place. Rule 60(b)(2) does not impose a duty of continuous surveillance of agency websites or obscure publication channels absent notice that relevant evidence exists. *See Boryan*, 884 F.2d at 771; *Coastal Transfer*, 833 F.2d at 211.

6

Where a motion to dismiss has been fully briefed and pending for six months, reasonable diligence does not require counsel to repeatedly re-search every potential governmental source in anticipation of unannounced publications. The law requires prudence—not omniscience.

      Furthermore, even if Plaintiffs had known of the request sent to the OPM OIG by the House Committee, they would have had no reason to expect that a report would have been issued so quickly. Inspector General audits generally take *at least* one year, *see* Dep't of Commerce OIG, *Audits and Evaluations FAQs*, *at* https://www.oig.doc.gov/about/faqs/faqs-audits-evaluations/ (last accessed Feb. 28, 2026) ("While it depends on the individual project, we generally issue a final report within a year after the audit announcement date."), and OIGs generally do not issue a report until the audit is complete. In fact, a survey of OPM OIG audit reporting shows only one other instance of such a flash report being issued during the past five years. Therefore, even if Plaintiffs had been aware of the audit, they would not have reasonably expected any sort of report to have been issued in 2025, let alone in September.

      Regarding other relevant criteria, Plaintiffs satisfy this Circuit's requirement that the evidence must have existed at the time of judgment. *See Good Luck Nursing Home*, 636 F.2d at 577; *Corex Corp. v. United States*, 638 F.2d 119, 121 (D.C. Cir. 1981). It is indisputable that the evidence contained in these reports existed before the Court ruled, even if the House DOGE Report was not itself published until February. Furthermore, courts give substantial weight to the movant's promptness after discovering new evidence. *See Good Luck Nursing Home*, 636 F.2d at 577; *Lepkowski v. Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir. 1986). Filing this Motion within days of learning of the new evidence clearly meets the diligence requirement.

      The equitable principles underlying Rule 60(b)(2) support relief here. The OPM OIG flash report existed prior to judgment but was quietly published without announcement or

citation, and the other information cited in the House DOGE Report was never made public until this month. Reasonable diligence does not require perpetual vigilance during judicial deliberation. Because the newly discovered evidence is material and likely to alter the result, Rule 60(b)(2) relief is warranted.

## II.   THE COURT SHOULD ACCEPT THE SECOND AMENDED COMPLAINT

For this relief, Plaintiffs rely on Rule 15(a)(2), which provides in relevant part that a party may amend its pleading with leave of the Court and that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). *See also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C. Cir. 1996).

Plaintiffs have good cause to request leave to amend, this request is made in good faith and not for purpose of delay, and if leave is granted it will not unfairly prejudice OPM. "[N]o unfair prejudice exists simply because a party has to defend against new or better pleaded claims." *See* Baicker-McKee, Janssen, & Corr, *Federal Civil Rules Handbook 2016* 579 (Thomson/Reuters 2016) (citing *Popp Telecom v. American Sharecom, Inc.,* 210 F.3d 928, 943 (8th Cir. 2000) ("The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party."), and *Busam Motor Sales v. Ford Motor Co.,* 203 F.2d 469, 472 (6th Cir. 1953) (Rule 15 amendment is not barred simply because it raises new issue of law)). *See also Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir. 1999) (holding that undue delay justifies denial of leave to amend only when accompanied by unfair prejudice, bad faith, or futility).

The decision whether to grant leave to amend a complaint is entrusted to the sound discretion of the Court, but leave "should be freely given unless there is a good reason . . . to the

contrary." *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996).

According to the Supreme Court:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182.

As discussed above, this Court identified several alleged infirmities with the First Amended Complaint but dismissed the case without prejudice to give Plaintiffs an opportunity to cure them. Using the new evidence gleaned from the House DOGE Report, Plaintiffs have now been able to do so to a significant degree, addressing a significant majority of the Court's criticisms.[1] For example, Plaintiffs have now included numerous particularized allegations drawn directly from the House DOGE Report, including:

- "DOGE employees flouted cybersecurity, privacy, and procurement laws to stand up this capability and exposed employees across a wide variety of agencies to spear-fishing and social engineering cyberattacks." House DOGE Rep. at 24;
- "OPM failed to perform the basic due diligence necessary to implement this system." *Id.*;

---

[1] Plaintiffs have also addressed some of the Court's more fundamental criticisms, such as demonstrating "that they sent any sensitive information in response to a GWES email" (Dkt. #45 at 28) and "explain[ing] why the subsequent issuance of the PIA (or PIAs) did not suffice to address the *prospective* risk of harm" (*id.* at 22). However, as those amendments do not rely primarily on the newly discovered evidence, they will not be discussed any further.

- "Trump appointees at OPM overrode career civil servants and ignored their warnings about security, privacy, and operations to force implementation of DOGE's goals." *Id.*;

- "DOGE staffers reportedly fed . . . responses into a version of Meta's *Llama 2* AI model without regard for the model's approval for use in the federal government or the potential leakage of sensitive information that might have been included in the emails." *Id.*;

- "DOGE employees also reportedly stored files on a mixture of Microsoft OneDrive, servers, and email attachments without traditional access controls." *Id.*;

- "OPM OIG determined that Trump Administration officials bypassed good practice and may have enabled foreign entry into these servers through the implementation of DOGE's makeshift government-wide email system." *Id.*;

- "Experts have shown evidence raising concerns of potential Russian and Chinese access to OPM servers shortly after DOGE created the government-wide email infrastructure." *Id.*; and

- "DOGE employees lowered all firewall protections at OPM to enable the exfiltration of data for use outside of a government environment." *Id.*

These allegations, drawn from official government reports, are more than sufficient to address the Court's concerns at this early stage of the litigation.

Similarly, there is no undue prejudice to OPM. In fact, granting leave to amend is especially favored where the proposed changes do not radically reshape the action. *See Smith v. Café Asia*, 598 F. Supp. 2d 45, 48 (D.D.C. 2009). Plaintiffs' only significant additions are "based on essentially the same nucleus of facts supporting Plaintiffs' other claims." *Council on Amer.-*

10

*Islamic Relations Action Ntwk., Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 328 (D.D.C. 2011). Similarly, Plaintiffs' "proposed amendments do not catch [OPM] by surprise or radically reshape this action, let alone deprive them of an opportunity to mount a fair defense." *Id.* at 326. *See also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case."); *City of Moundbridge v. Exxon Mobil Co.*, 250 F.R.D. 1, 6 (D.D.C. 2008) ("Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely.").

The Court should accordingly accept the Second Amended Complaint attached to this Motion.

### III.   PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IS NOT MOOT

Lastly, the Court should amend its Memorandum Opinion to the extent that it held that Plaintiffs' motion for class certification was moot because the Court had dismissed the case. (Dkt. #45 at 39-40.) Plaintiffs believe that the amendment of their Complaint is sufficient to warrant a ruling on the merits of their motion to certify the requested class, and none of their amendments would alter the nature or membership of that class or the legal arguments for and against its certification. Plaintiffs accordingly request that, if the Court accepts the Second Amended Complaint, it should also issue a new decision adjudicating their request for class certification on the merits.

## **CONCLUSION**

The Court should grant Plaintiffs' Motion, vacate the 15 January 2026 Judgment, accept the Second Amended Complaint, and partially amend the 22 December 2025 Memorandum Opinion.

Date:   February 28, 2026

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*
