**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JANE DOES 1-7,

                    *Plaintiffs*,

          v.

OFFICE OF PERSONNEL
MANAGEMENT,

                    *Defendant*.

---

Civil Action No. 1:25-cv-00234

**DEFENDANT'S OPPOSITION TO MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 1

I.      Procedural Background ................................................................................... 1

II.     Dismissal ........................................................................................................ 2

III.    Reconsideration .............................................................................................. 4

LEGAL STANDARD ................................................................................................. 6

ARGUMENT ............................................................................................................. 7

I.      Plaintiffs' motion for reconsideration is meritless. ........................................ 7

        A.      The alleged "new evidence" could have been discovered with due
                diligence within 28 days after entry of judgment. ............................... 7

        B.      The alleged "new evidence" will not change anything in the Court's
                analysis. ............................................................................................... 10

                1.      The "new evidence" does not establish an informational injury. ............. 11

                2.      The "new evidence" does not show a substantial likelihood that
                        Plaintiffs' PII will be misappropriated. ........................................ 12

                3.      The alleged "new evidence" does not establish standing based on
                        an interest in ensuring compliance with the law. ....................... 14

II.     Another amendment to the complaint would be futile. ................................. 14

III.    Plaintiffs' class certification motion is still moot. ....................................... 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Akins v. U.S. Bank, Nat'l Ass'n,*
  No. 2:18-CV-02725-SHM-DKV, 2019 WL 6878877 (W.D. Tenn. Dec. 17, 2019) .................. 7

*Bain v. MJJ Prods. Inc.,*
  751 F.3d 642 (D.C. Cir. 2014) .................................................................................. 6

*Batres v. HMS Host USA, Inc.,*
  No. SACV-10-01458, 2012 WL 13049691 (C.D. Cal. May 31, 2012) ................................... 17

*Boryan v. United States,*
  884 F.2d 767 (4th Cir. 1989) .................................................................................. 10

*Buaiz v. United States,*
  No. CIV.A.06 1312 RMC, 2007 WL 666468 (D.D.C. Mar. 5, 2007) ...................................... 15

*Canady v. Erbe Elektromedizin GmbH,*
  99 F. Supp. 2d 37 (D.D.C. 2000) .............................................................................. 10

*Ciralsky v. CIA,*
  355 F.3d 661 (D.C. Cir. 2004) .................................................................................. 7

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ............................................................................................... 17

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ....................................................................................... 16, 17

*Epps v. Howes,*
  573 F. Supp. 2d 180 (D.D.C. 2008) ......................................................................... 7, 14

*Foman v. Davis,*
  371 U.S. 178 (1962) ............................................................................................. 14

*Friends of Animal v. Jewell,*
  828 F.3d 989 (D.C. Cir. 2016) ................................................................................. 11

*Good Luck Nursing Home, Inc. v. Harris,*
  636 F.2d 572 (D.C. Cir. 1980) .................................................................................. 6

*Howard v. Evans,*
  193 F.Supp.2d 221 (D.D.C. 2002) ............................................................................ 15

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity ("Epic I"),*
  878 F.3d 371 (D.C. Cir. 2017) ................................................................................. 12

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Com. ("EPIC II"),*
  928 F.3d 95 (D.C. Cir. 2019) ............................................................................... 12

*Lightfoot v. District of Columbia,*
  555 F. Supp. 2d 61 (D.D.C. 2008) ......................................................................... 6

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................... 14, 16

*McMillian v. District of Columbia,*
  241 F.R.D. 12 (D.D.C. 2006) ................................................................................ 6

*Mitchell v. Shalala,*
  48 F.3d 1039 (8th Cir. 1995) ................................................................................ 6

*Murray v. District of Columbia,*
  52 F.3d 353 (D.C. Cir. 1995) .............................................................................. 10

*Reese v. McGraw-Hill Companies, Inc.,*
  293 F.R.D. 617 (S.D.N.Y. 2013), *aff'd sub nom. Reese v. Bahash*, 574 F. App'x 21 (2d Cir.
  2014) ............................................................................................................ 8, 13

*Ricketts v. CBS Corps.,*
  2020 WL 3881620 (C.D. Cal. June 18, 2020) ........................................................ 9

*Roane v. Gonzales,*
  832 F. Supp. 2d 61 (D.D.C. 2011) ........................................................................ 7

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ............................................................................................ 2

*Thomas v. Holder,*
  750 F.3d 899 (D.C. Cir. 2014) ............................................................................ 10

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.,*
  441 F.3d 552 (8th Cir. 2006) .............................................................................. 15

*United States v. Int'l Bhd. of Teamsters,*
  247 F.3d 370 (2d Cir. 2001) ................................................................................. 6

*West v. Holder,*
  309 F.R.D. 54 (D.D.C. 2015) ............................................................................... 6

*Willoughby v. Potomac Elec. Power Co.,*
  100 F.3d 999 (D.C. Cir. 2007) ............................................................................ 15

## Rules

Fed. R. Civ. P. 15 ...................................................................................... 4, 7, 14

Fed. R. Civ. P. 59 .................................................................................................................. 6, 7

Fed. R. Civ. P. 60 .............................................................................................................. *passim*

**<u>Other Authorities</u>**

Fed. Prac. & Proc. Civ. § 2812 ................................................................................................ 8

OPM OIG, *Audit of the U.S. Office of Personnel Management's Government-Wide Email System*, Rep. No. 2025-ISAG-018 (Sept. 24, 2025) ("Flash Report"), https://oig.opm.gov/reports/audit/audit-us-office-personnel-managements-government-wide-email-system ............................................................................................................................. 9

OPM, Privacy Impact Assessment for Government-Wide Email System (Feb. 28, 2025), https://perma.cc/9X8D-BWMS ........................................................................................... 2

Oversight Transparency Accountability, February 4, 2025, Letter, https://oversightdemocrats.house.gov/news/press-releases/ranking-members-connolly-and-brown-request-answers-opm-musks-private-server ................................................................. 8

U.S. House of Representatives, Comm. on Oversight & Gov't Reform, *Breaking Government: How DOGE and Trump Cost Taxpayers, Federal Workers, and Public Services* (Feb. 12, 2026), at https://oversightdemocrats.house.gov/imo/media/doc/doge_report.pdf ["DOGE Report"]............................................................................................................. *passim*

Wired.com, Makena Kelly, *DOGE Used a Meta AI Model to Review Emails From Federal Workers* (May 22, 2025) https://www.wired.com/story/doge-used-meta-ai-model-review-fork-emails-from-federal-workers .................................................................................................. 8

## INTRODUCTION

Federal Rule of Civil Procedure 60(b)(2) permits a court to grant relief from a judgment based on "newly discovered evidence" only when a plaintiff can show (1) that the evidence could not have been discovered through due diligence within 28 days *after* entry of judgment and (2) that the evidence would probably change the outcome. Plaintiffs can show neither. The purported "newly discovered" evidence Plaintiffs rely on is not new: the underlying information is redundant of information easily available through a Google search starting in September 2025, months *before* the Court entered judgment. And this "new" evidence will not change Plaintiffs' lack of Article III standing. The "new" evidence does not establish a cognizable informational injury, because the evidence says nothing about whether a differently prepared Privacy Impact Statement ("PIA") would avoid or mitigate a privacy harm of the type that Congress sought to prevent. The "new" evidence also does not establish a cognizable privacy injury, because the evidence says nothing about what a PIA should have included, nor does the evidence establish a certainly impending threat that Plaintiffs' PII will be misappropriated as a result of an allegedly deficient PIA. And for similar reasons, Plaintiffs' motion to amend their complaint for a second time should be denied as futile.

## BACKGROUND

### I.    Procedural Background

Plaintiffs sued the Office of Personnel Management ("OPM") on January 27, 2025. They claimed that OPM violated Section 208 of the E-Government Act when it implemented and used a Government Wide Email System ("GWES") without filing a privacy impact assessment ("PIA"). *See generally* Compl., ECF 1. Plaintiffs twice moved

for a temporary restraining order. ECF 4, 15. Both motions were denied. *See* February 6, 2025 Minute Entry Order; ECF 21. After OPM filed a PIA in connection with the GWES, ECF 10-1, Plaintiffs filed an amended complaint, bringing a single Administrative Procedure Act ("APA") claim, First Am. Compl. ¶¶ 43–61, ECF 14. Plaintiffs asserted that OPM did not conduct a "legally sufficient" PIA before implementing and using the GWES. First Am. Compl. ¶¶ 43–61. After Plaintiffs filed their amended complaint, and despite OPM's contention that a PIA was not required, OPM conducted another PIA in connection with the GWES. *See* OPM, *Privacy Impact Assessment for Government-Wide Email System* (Feb. 28, 2025), https://perma.cc/9X8D-BWMS.

## II.    Dismissal

OPM moved to dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim, ECF 17, and separately opposed class certification, ECF 42. On December 22, 2025, this Court granted the motion to dismiss upon finding that Plaintiffs failed to allege Article III standing. Mem. Op., ECF 45 (ECF pagination used throughout). In their first amended complaint, Plaintiffs advanced three theories of injury: (1) an informational injury, Mem. Op. at 14–19; (2) a privacy-related injury, *id.* at 18–29; and (3) a general grievance that OPM did not follow statutory requirements, *id.* at 29. This Court rejected all three theories of standing in dismissing the first amended complaint. *Id.* at 14–29.

On the first theory of injury, this Court determined that a "bare procedural violation, divorced from any concrete harm [does not] satisfy the injury-in-fact requirement of Article III." *Id.* at 14 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). The Court noted, however, that a concrete informational injury can sometimes fill that void, but concluded that Plaintiffs failed to demonstrate such an injury here. *Id.* This Court concluded that

Plaintiffs had "failed to allege any non-speculative basis to believe that providing Plaintiffs with the additional information that they seek here—that is, a more comprehensive or better prepared or properly executed PIA—would avoid or mitigate 'a colorable privacy harm of the type that Congress sought to prevent' by requiring publication of PIAs." *Id.* at 17–18 (citation omitted).

The Court then went on to find at least three defects with Plaintiffs' second theory of injury based on an alleged increased risk that Plaintiffs' PII may be "unlawfully obtained." *Id.* at 18. First, the Court noted that Plaintiffs "fail[ed] to point to any authority—or to offer any argument—addressing whether a purported privacy interest in a .gov email address is sufficiently personal and concrete and whether the procedures contained in Section 208 of the E-Government Act are intended to protect any such purported privacy interest." *Id.* at 21. Second, the Court held that Plaintiffs failed to establish a nexus between their alleged privacy injury and the challenged government act, because Plaintiffs failed to articulate "what OPM should have—but did not—include in the PIA[.]" *Id.* at 22. Third, the Court also held that Plaintiffs' allegations did not establish a "substantial probability" of a future data breach attributable to a delayed PIA. *Id.* at 22–27.

The Court then quickly rejected Plaintiffs' final theory of standing based on an "interest in ensuring that OPM conducts and publishes a legally sufficient PIA for these systems." *Id.* at 29 (citation omitted). The Court held that this theory amounted to nothing more than a generalized grievance that cannot satisfy Article III. *Id.*

Having dismantled each of Plaintiffs' standing theories, the Court dismissed the amended complaint without prejudice. *Id.* at 40. The Court also denied Plaintiffs' motion for class certification as moot. *Id.* at 29–40. Weeks passed and Plaintiffs did not seek leave

to file a second amended complaint. So, on January 15, 2026, this Court entered final judgment. ECF 46. Over a month passed again with nothing from Plaintiffs until February 20, 2026, when they filed an *ex parte* motion to extend their appeal deadline, which this Court granted. *See* ECF 46; February 24, 2026 Minute Order. To this day, OPM has no idea on what basis Plaintiffs sought an extension or on what basis the motion was granted.

### III.    Reconsideration

Another week passed before Plaintiffs moved for reconsideration of the Court's dismissal under Rule 60(b)(2), moved to amend their complaint under Rule 15(a)(2), and moved for reconsideration of the Court's denial of class certification as moot. *See generally* Plaintiffs' Mot. for Reconsideration, ECF 49 ("Mot."). As part of that motion, Plaintiffs attached a proposed second amended complaint. *See* ECF 49-1 ("Proposed Second Am. Compl.").

To excuse their delay in bringing this motion, Plaintiffs state that "they did not seek leave to file a Second Amended Complaint because they believed that they lacked sufficient evidence at the time to address the Court's concerns to its satisfaction, and so such an amendment would likely be deemed futile." Mot. at 5 (ECF pagination used throughout). But Plaintiffs now maintain that a recently published report "revealed significant facts which . . . would allow[] [Plaintiffs] to amend their Complaint to easily 'allege facts sufficient to show that they face a substantial probability that their PII will be misappropriated from the server used to maintain the GWES.'" Mot. at 5 (citing Mem. Op. at 26). This report was published on February 12, 2026, and Plaintiffs claim they became aware of the report on February 19, 2026.  *Id. See* U.S. House of Representatives, Comm. on Oversight & Gov't Reform, *Breaking Government: How DOGE and Trump Cost*

*Taxpayers, Federal Workers, and Public Services* (Feb. 12, 2026), at https://oversightdemocrats.house.gov/imo/media/doc/doge_report.pdf ["DOGE Report"].

Plaintiffs block quote the following eight allegations from the DOGE Report: "DOGE employees flouted cybersecurity, privacy, and procurement laws to stand up this [GWES] capability and exposed employees across a wide variety of agencies to spear-fishing and social engineering cyberattacks"; "OPM failed to perform the basic due diligence necessary to implement this system"; "Trump appointees at OPM overrode career civil servants and ignored their warnings about security, privacy, and operations to force implementation of DOGE's goals"; "DOGE staffers reportedly fed these responses into a version of Meta's *Llama* 2 AI model without regard for the model's approval for use in the federal government or the potential leakage of sensitive information that might have been included in the emails"; "DOGE employees also reportedly stored files on a mixture of Microsoft OneDrive, servers, and email attachments without traditional access controls"; "OPM OIG determined that Trump Administration officials bypassed good practice and may have enabled foreign entry into these servers through the implementation of DOGE's makeshift government-wide email system"; "Experts have shown evidence raising concerns of potential Russian and Chinese access to OPM servers shortly after DOGE created the government-wide email infrastructure"; and "DOGE employees lowered all firewall protections at OPM to enable the exfiltration of data for use outside of a government environment." Mot. at 10–11 (citing DOGE Rep. at 24). Based on these eight allegations, Plaintiffs conclude that there is "good cause to vacate the Court's judgment." *Id.* at 5.

## **LEGAL STANDARD**

**Reconsideration.** Federal Rules of Civil Procedure 60(b) permits a court to relieve a party from a final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). The party seeking relief under Rule 60(b) bears the burden of proof to show that he or she is entitled to relief. *McMillian v. District of Columbia*, 241 F.R.D. 12, 14 (D.D.C. 2006). A court considering a Rule 60(b) motion must "strike a 'delicate balance between the sanctity of final judgments. . . and the incessant command of a court's conscience that justice be done in light of all the facts." *Bain v. MJJ Prods. Inc.,* 751 F.3d 642, 645 (D.C. Cir. 2014) (quotation omitted). Although courts are granted with some discretion in granting Rule 60(b) relief, such relief "cannot be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *West v. Holder*, 309 F.R.D. 54, 59 (D.D.C. 2015) (citing *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)).

To prevail on a Rule 60(b)(2) motion, the movant must demonstrate the following: "(1) the newly discovered evidence [is] of facts that existed at the time of trial or other dispositive proceeding, (2) the [party seeking relief] must have been justifiably ignorant of [the evidence] despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *Lightfoot v. District of Columbia,* 555 F. Supp. 2d 61, 68 (D.D.C. 2008) (citing *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 392 (2d Cir. 2001) and *Mitchell v. Shalala,* 48 F.3d 1039, 1041 (8th Cir. 1995)). Failure to establish any single element of this test is fatal.

**Amendment.** A court can grant leave to amend a complaint under Rule 15(a)(2) "when justice so requires." Fed. R. Civ. P. 15(a). However, "once a final judgment has been entered, an amendment to a complaint can only be granted after the requisites of Rule 59(e) or 60(b) have been satisfied." *Epps v. Howes*, 573 F. Supp. 2d 180, 186–87 (D.D.C. 2008); *cf. Ciralsky v. CIA,* 355 F.3d 661, 673 (D.C. Cir. 2004) (finding that once a final judgment is entered, a court cannot permit amendment of the complaint unless the plaintiff has "first satisfy[ied] Rule 59(e)'s more stringent standard for setting aside that judgment").

## ARGUMENT

### I.    Plaintiffs' motion for reconsideration is meritless.

Of the four elements necessary to obtain relief under Rule 60(b)(2), *supra* at 6, Plaintiffs here fail on at least elements two and three.

### A. The alleged "new evidence" could have been discovered with due diligence within 28 days after entry of judgment.

Although Rule 60(b)(2) must be brought within "a year after entry of the judgment," that is not the only timing requirement Plaintiffs must satisfy. Rule 60(b)(2) requires that Plaintiffs establish that the new evidence "could not have been discovered in time to move" under Rule 59, which must be filed no later than 28 days after the entry of judgment. So, where, as here, "a party challenges a judgment resulting from dismissal at the motion-to-dismiss or summary judgment stage, the question is whether the party could have discovered the evidence in time to file a motion to alter or amend the judgment under Rule 59(e), which is governed by the same time limitation as a motion for new trial under Rule 59(b)." *Akins v. U.S. Bank, Nat'l Ass'n*, No. 2:18-CV-02725-SHM-DKV, 2019 WL 6878877, at *3 (W.D. Tenn. Dec. 17, 2019) (citing cases); *see Roane v. Gonzales*, 832 F. Supp. 2d 61, 65 n.3 (D.D.C. 2011) (finding that Rule 60(b)(2) "requires a showing of

'newly discovered evidence that, with reasonable diligence, could not have been discovered' within 28 days of the order"); 11 Fed. Prac. & Proc. Civ. § 2812 (3d ed.) ("[I]f newly discovered evidence comes to light *more than 28 days after judgment* but within a year of the judgment, it may be used as the basis for a motion for relief from judgment under Rule 60(b)(2) (emphasis added)); *Reese v. McGraw-Hill Companies, Inc.*, 293 F.R.D. 617, 621 (S.D.N.Y. 2013) (holding that court can only vacate a final judgment when the moving party establishes that newly discovered evidence "'could not have been discovered' within twenty-eight days after the entry of judgment" (quoting Fed. R. Civ. P. 60(b)(2)), *aff'd sub nom. Reese v. Bahash*, 574 F. App'x 21 (2d Cir. 2014).

Plaintiffs here fail out of the gate: this allegedly "new" evidence could have been discovered using the slightest of diligence on or before February 12, 2026 (i.e., 28 days after entry of the Court's judgment on January 15, 2026).

Although Plaintiffs rely on the February 12, 2026, DOGE Report as the purported basis for their "new evidence," the underling information they draw from this report is anything but new. Two of the allegations are based on sources that have been publicly available online since February and May 2025. *See* DOGE Rep. at 24 n.93 (relying on publicly available letter dated February 4, 2025[1]); *id.* at 24 n.95 (relying on a publicly available Wired article dated May 22, 2025[2]). Plaintiffs contend that two other sources underlying the Report—a December briefing and communications with House of Representatives staff—were not accessible before the Report's publication in February

---

[1]  Available at https://oversightdemocrats.house.gov/news/press-releases/ranking-members-connolly-and-brown-request-answers-opm-musks-private-server

[2]  Available at https://www.wired.com/story/doge-used-meta-ai-model-review-fork-emails-from-federal-workers/

2026. Mot. at 7. But even if true, the information from those sources is merely redundant of information already in the public domain. Indeed, Plaintiffs' remaining six allegations from the DOGE Report are simply variations on the claim that OPM allegedly bypassed security protocols, circumvented its own policies and procedures, and disregarded warnings from career civil servants when implementing the GWES. *See* Mot. at 10–11. Those same allegations appeared in a publicly released flash report by the OPM Office of Inspector General in September 2025. *See generally* OPM OIG, *Audit of the U.S. Office of Personnel Management's Government-Wide Email System,* Rep. No. 2025-ISAG-018 (Sept. 24, 2025) ("Flash Report").[3]

Plaintiffs themselves acknowledge that the Flash Report has been publicly available since September 2025. Mot. at 7–9. Still, they attempt to excuse their delay, asserting that they had no obligation to "continuous[ly] surveil[] . . . agency websites or obscure publications channels." *Id.* at 7. But nothing of the sort would have been required. A single Google search for reports relevant to the GWES at any point between September and February would have uncovered the Flash Report. Failing to conduct even that basic inquiry—especially after the Court issued its memorandum opinion in December or entered judgment in January—is not due diligence. *See Ricketts v. CBS Corps.*, 2020 WL 3881620, at *2 (C.D. Cal. June 18, 2020) (holding party did not demonstrate reasonable diligence for purpose of Rule 60(b)(2) motion where "new evidence" was available through a Google search).

---

[3] Available at https://oig.opm.gov/reports/audit/audit-us-office-personnel-managements-government-wide-email-system

Plaintiffs are correct that they are not required to be "omniscien[t]" when searching for new evidence, Mot. at 8, yet due diligence requires more than doing nothing for months, particularly when plaintiff's counsel holds himself out as sufficiently knowledgeable and resourced to represent a class action of millions. On this element alone, this Court should deny Plaintiffs' motion for reconsideration. *See Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) ("Evidence that is available to a party prior to entry of judgment . . . is not a basis for granting a motion for reconsideration as a matter of law.").

### B. The alleged "new evidence" will not change anything in the Court's analysis.

Setting aside Plaintiffs' due diligence and timing problems, their Rule 60(b)(2) motion also fails on the third element of the governing test because they cannot demonstrate that their new evidence is "admissible and credible, and of such a material and controlling nature as will *probably* change the outcome." *Canady v. Erbe Elektromedizin GmbH*, 99 F. Supp. 2d 37, 44 (D.D.C. 2000) (emphasis added). Plaintiffs must demonstrate that the "new evidence" will provide "a meritorious claim or defense to the motion upon which the district court dismissed the complaint." *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995) (citation and internal quotation marks omitted); *see also Thomas v. Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014) ("The requirement that parties seeking Rule 60(b) relief show some prospect of succeeding on the merits flows from the basic principle that courts should revive previously-dismissed claims only if they have some reason to believe that doing so will not ultimately waste judicial resources."). This "established . . . precondition" assures that "vacating [a] judgment will not be an empty exercise or a futile gesture." *Murray*, 52 F.3d at 355.

Plaintiffs here seek relief from this Court's determination that Plaintiffs lack Article III standing to challenge the legal adequacy of OPM's PIA. But as a preliminary matter, Plaintiffs fail to provide *any* explanation in their motion on how the DOGE Report will change the outcome of the Court's decision on standing. Plaintiffs spend pages of its background block quoting the Court's memorandum opinion, Mot. at 3–5, and then spend pages of its argument block quoting eight allegations from the DOGE Report, *id.* at 10–11. Plaintiffs then conclude without analysis that "[t]hese allegations, drawn from official government reports, are more than sufficient to address the Court's concerns at this early stage of the litigation." *Id.* at 11. Such a bare conclusion adds nothing and avoids any analysis as to how Plaintiffs have established standing. Nonetheless, it is clear that these allegations, even taken as true, do not cure the standing deficiencies that this Court identified as the basis for dismissal.

1.    The "new evidence" does not establish an informational injury.

To establish informational standing in this context, Plaintiffs must allege that (1) they were deprived of information that Section 208 of the E-Government Act requires to be disclosed and (2) the resulting deprivation constitutes the type of harm Congress sought to prevent by requiring that disclosure. Mem. Op. at 15–16 (citing *Friends of Animal v. Jewell,* 828 F.3d 989, 992 (D.C. Cir. 2016)). The Court held that Plaintiffs failed the second prong of that inquiry; the allegations from the DOGE Report do nothing to cure that deficiency.

As this Court recognized, Section 208 was not designed to create a general right to information in the public. Mem. Op. at 15–16. Instead, it was designed to "protect individual privacy by focusing agency analysis and improving internal agency decision-

making." *Id.* at 16 (citing *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 (D.C. Cir. 2017) ("*Epic I*") and *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 103–04 (D.C. Cir. 2019) ("*EPIC II*")). Plaintiffs' burden here, therefore, is to show that additional information in a better prepared PIA would avoid or mitigate "'a colorable privacy harm of the type that Congress sought to prevent' by requiring publication of PIAs." *Id.* at 17 (quoting *EPIC II,* 928 F.3d at 103).

Plaintiffs cannot make that showing. The eight "new" allegations generally concern the implementation of the GWES and whether OPM took adequate security measures. These allegations do not concern the PIAs that OPM published nor do they establish that a better PIA would have changed OPM's implementation or security measures surrounding the GWES. This "new evidence" thus would not change the Court's holding that Plaintiffs failed to allege an informational injury.

2.     The "new evidence" does not show a substantial likelihood that Plaintiffs' PII will be misappropriated.

As explained above, this Court found three defects with Plaintiffs' claim that they faced an increased risk that their PII would be misappropriated. None of the allegations from the DOGE Report cures those three defects.

First, the DOGE Report does not address whether a .gov email address is sufficiently personal and concrete or whether Section 208 was intended to protect a privacy interest in a .gov email address. Mem. Op. at 21. Plaintiffs attempt to provide such an argument in their proposed second amended complaint. *See* Proposed Second Am. Compl. ¶¶ 27–28. But in the Rule 60 posture that argument cannot be considered, since such an argument has nothing to do with the DOGE Report and could have been raised at any time before February 12, 2026.

12

Second, the Court held that Plaintiffs failed to establish a nexus between their alleged privacy injury and the challenged government act, because Plaintiffs failed to articulate "what OPM should have—but did not—include in the PIA." Mem. Op. at 22. Again, Plaintiffs provide no analysis explaining how the DOGE Report addresses this part of the Court's opinion. Nor could they. The DOGE Report says nothing about what a legally sufficient PIA for the GWES would have contained, what specific information OPM omitted in its PIAs, or how any particular procedural deficiency in the PIA process differed from what Section 208 requires. This is another fatal deficiency that the DOGE Report does nothing to remedy.

Third, the Court held that Plaintiffs failed to allege a "substantial probability" attributable to the PIA that Plaintiffs' PII will be misappropriated. *Id.* at 22–27. The DOGE Report does not change that determination. The Court's standing analysis did not turn on whether OPM's cybersecurity practices were sound or its processes were followed. Instead, it turned on whether Plaintiffs had adequately alleged a concrete, particularized injury traceable to the alleged procedural violation. Said another way, Plaintiffs need to connect any purported deficiency in OPM's PIAs to a particularized injury the Plaintiffs suffered as holders of .gov and .mil email addresses. *Id.* at 22-23. The DOGE Report, even accepted at face value, contains *no* allegations about the privacy interests of .gov and .mil email address holders, nor does the Report explain or even hint at how a better-prepared PIA would have ameliorated concerns with the GWES.

And the DOGE Report provides no non-speculative basis to conclude that these Plaintiffs face a substantial probability traceable to the allegedly deficient PIA that their PII will be misappropriated. The Court previously determined that evidence about rapid

server deployment, commercial hardware procurement, and general hacking practices was insufficient to establish the requisite causal connection between the challenged conduct and Plaintiffs' alleged privacy injury. Mem. Op. at 24–26. The DOGE Report's characterizations are no more particularized and no less speculative than the evidence that this Court already rejected as insufficient. The standing deficiencies identified by this Court remain and will not be cured by this purportedly new evidence.

3.   <u>The alleged "new evidence" does not establish standing based on an interest in ensuring compliance with the law.</u>

Finally, Plaintiffs' third theory about having an interest in ensuring compliance with the law requires no extended discussion. Nothing in the DOGE Report alters the well-established legal principle that asserting such a "generally available grievance about government . . . does not state an Article III case or controversy." Mem. Op. at 29 (citing *Lujan,* 504 U.S. 555, 574–75 (1992))

**II.    Another amendment to the complaint would be futile.**

As explained above, Plaintiffs must first establish the requirements under Rule 60 before the Court can consider whether to permit amendment under Rule 15. *See Epps*, 573 F. Supp. 2d at 186–87. Plaintiffs failed to establish that the information underlying the DOGE Report could not have been discovered within 28 days after entry of judgment, nor have they established that the evidence would have changed the Court's analysis or outcome. But even if the Court disagrees, Plaintiffs should still not be allowed to amend their complaint under Rule 15.

Although leave to amend should be freely granted, leave should be denied when amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962) (holding that leave to amend under Rule 15(a) may be denied if amendment would be futile); *Willoughby*

14

*v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 2007) (same). "A proposed claim is futile if the claim would not survive a motion to dismiss." *Buaiz v. United States*, No. CIV.A.06 1312 RMC, 2007 WL 666468, at *1 (D.D.C. Mar. 5, 2007) (citing *Howard v. Evans,* 193 F.Supp.2d 221, 226 n.2 (D.D.C. 2002)).

Plaintiffs attach a proposed amended complaint. The proposed amendments largely fall into four categories of allegations; none of them would survive a motion to dismiss.

*First*, Plaintiffs add numerous statements asserting that "upon information and belief" various sources are accurate. *E.g.*, Proposed Second Am. Compl. at ¶¶ 30–31. Repeating that formulation throughout the complaint does nothing to cure the defects in the first amended complaint. *See U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 558 (8th Cir. 2006) (finding that pleading based on "information and belief" does not strengthen a complaint when the plaintiff does not "set forth the source of the information and the reasons for the belief").

*Second*, Plaintiffs attempt to argue that a .gov email address is sufficiently private and concrete to give rise to a cognizable privacy injury. That argument takes Plaintiffs nowhere. Plaintiffs contend that .gov email addresses can be used to "identify and harass individuals" because online data brokers allegedly collect email addresses and attempt to link them to personal contact information already contained in their databases. Proposed Second Am. Compl. ¶¶ 27–29. Even if that is true, it does little to establish a privacy interest in the email address itself.

Plaintiffs never explain, for example, how a government email address consisting of a first and last name would enable a broker to connect that address to other personal information. A government email address associated with "Steven Johnson" would not

readily allow a broker to identify to which of the many "Steven Johnsons" it corresponds. And even if a broker could make that connection, that would merely show that an individual's personal information was already in the broker's database; it would not show that the email address itself meaningfully increased any risk of harm to someone's privacy that did not already exist. Similarly, Plaintiffs allege that some plaintiffs responded to the government-wide emails with additional contact information, including one time a personal cell phone number. *Id.* ¶ 29. But at most, that allegation reflects independent actions and choices taken by Plaintiffs, not a concrete injury fairly traceable to OPM's failure to prepare a PIA in a particular way.

*Third*, Plaintiffs quote portions of the DOGE Report to allege a risk of a data breach. *E.g.*, *id.* ¶¶ 40–42. For the reasons explained above in Part I.B., those allegations do not establish Plaintiffs' Article III standing. Speculation about potential vulnerabilities in the GWES is not sufficient to show that a data breach attributable to an alleged inadequate PIA is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Indeed, it is hard to see how Plaintiffs could get anywhere close to the "certainly impending" threshold given that the GWES was set up over a year ago and yet Plaintiffs are still trying to claim a risk of "someday" future harm. *See Lujan*, 504 U.S. at 564 (Allegations of "some day" harm—without any description of when that some day will likely be—does not support a finding of actual or imminent future injury.).

*Finally*, Plaintiffs attempt to identify what they believe should have been included in a "legally adequate" PIA. *See* Proposed Second Am. Compl. ¶¶ 65–67. But Plaintiffs again fail to cogently explain how a more robust PIA would remedy the injuries they claim. For example, Plaintiffs assert that "an accurate PIA" "would have allowed all individuals

who *did* receive emails to know about the lack of firewalls and access control before they responded[.]" *Id.* ¶ 65. But Plaintiffs do not allege that such government-wide emails are continuing to be sent (or have been sent recently), so any alleged past harm cannot be remedied through the prospective relief they seek. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Even if similar emails were sent in the future, a proposition that is wholly speculative, Plaintiffs' theory is that those receiving government-wide emails would have reviewed the new PIA, understood the alleged risks outlined in the PIA, and changed their responses based on reviewing the new PIA. Article III standing cannot rest on such "a highly attenuated chain of possibilities." *Clapper*, 568 U.S. at 410.

In sum, permitting Plaintiffs to amend their complaint for the second time would be futile and would not cure Plaintiffs' lack of Article III standing.

### III.    Plaintiffs' class certification motion is still moot.

Plaintiffs' motion for class certification based on their first amended complaint is still moot because it is based on an inoperative, dismissed complaint. *See Batres v. HMS Host USA, Inc.*, No. SACV-10-01458, 2012 WL 13049691, at *4 (C.D. Cal. May 31, 2012) ("The motion for class certification is DENIED as the motion is based on an inoperative complaint."). Even if the Court grants Plaintiffs' motion for reconsideration and amendment (which the Court should not), Plaintiffs would then need to file an amended motion for class certification based on the second amended complaint. *See id.* (finding that a plaintiff should file an amended motion for class certification after it files its new amended complaint). The Court need not reconsider its correct holding that Plaintiffs' motion for class certification based on a dismissed complaint is moot.  In all events, the

arguments against class certification articulated in Defendants' original motion to dismiss remain true, and nothing in the proposed Second Amended complaint rebuts them.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court should deny Plaintiffs' motion for Rule 60(b)(2) relief and should deny Plaintiffs' motion to amend its complaint.


DATED: March 16, 2026                              Respectfully submitted,


                                                   BRETT A. SHUMATE
                                                   Assistant Attorney General
                                                   Civil Division

                                                   ELIZABETH J. SHAPIRO
                                                   Deputy Director
                                                   Federal Programs Branch

                                                   */s/ Alexander Severance*
                                                   Alexander Severance
                                                   Trial Attorney
                                                   U.S. Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   1100 L Street, N.W.
                                                   Washington, D.C. 20005
                                                   Telephone: 202-598-3123
                                                   Fax: 202-616-8470
                                                   alexander.j.severance@usdoj.gov